UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 ) |
| FIRSTENERGY SOLUTIONS CORP., *et al.*,[1] | ) Case No. 18-50757 ) (Jointly Administered) |
| Debtors. | ) ) Hon. Judge Alan M. Koschik ) |

**APPLICATION OF THE DEBTORS PURSUANT
TO 11 U.S.C. §§ 105(a) AND 363(b) TO (I) RETAIN
ALVAREZ & MARSAL NORTH AMERICA, LLC TO
PROVIDE THE DEBTORS A CHIEF RESTRUCTURING OFFICER
AND CERTAIN ADDITIONAL PERSONNEL AND (II) DESIGNATE
CHARLES MOORE AS CHIEF RESTRUCTURING OFFICER
FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

FirstEnergy Solutions Corp. and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), file this application (the "Application") for entry of an order, substantially in the form of **Exhibit C** hereto (the "Proposed Order"), pursuant to section 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), authorizing, but not directing, the Debtors to (i) retain Alvarez & Marsal North America, LLC ("A&M") to provide the Debtors with a Chief Restructuring Officer ("CRO") and certain Additional Personnel (as defined below) and (ii) designate Charles Moore as the Debtor's CRO, *nunc pro tunc* to the Petition Date (as defined below). In support of the Application, the Debtors rely on the Declaration of Charles

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: FE Aircraft Leasing Corp. (9245), case no. 18-50759; FirstEnergy Generation, LLC (0561), case no. 18-50762; FirstEnergy Generation Mansfield Unit 1 Corp. (5914), case no. 18-50763; FirstEnergy Nuclear Generation, LLC (6394), case no. 18-50760; FirstEnergy Nuclear Operating Company (1483), case no. 18-50761; FirstEnergy Solutions Corp. (0186), and Norton Energy Storage L.L.C. (6928), case no. 18-50763. The Debtors' address is: 341 White Pond Dr., Akron, OH 44320.

Moore (the "Moore Declaration"), annexed hereto as **Exhibit B**, and respectfully represent as follows:

## BACKGROUND

1. On March 31, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their property as debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have requested joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). The Court has not appointed a trustee and the Office of the United States Trustee for the Northern District of Ohio (the "US Trustee") has not yet formed any official committees in these chapter 11 cases.

2. Debtor FirstEnergy Solutions Corp. ("FES"), an Ohio corporation, is the parent company for Debtors FE Aircraft Leasing Corp. ("FEALC"), an Ohio corporation, FirstEnergy Generation, LLC ("FG"), an Ohio limited liability company, and FirstEnergy Nuclear Generation, LLC ("NG"), an Ohio limited liability company. Debtor FG is the parent company for Debtors FirstEnergy Generation Mansfield Unit 1 Corp. ("FGMUC"), an Ohio corporation, and Norton Energy Storage L.L.C. ("NES"), a Delaware limited liability company.[2] Debtor FirstEnergy Nuclear Operating Company ("FENOC"), an Ohio corporation, is an affiliate of FES. Non-Debtor FirstEnergy Corp. ("FE Corp."), an Ohio corporation, is the parent company of FES and FENOC and the ultimate parent company for

---

[2] FG also owns a 99% limited partnership interest in Nautica Phase 2 Limited Partnership, which has $10 million in outstanding debt.

each of the Debtors in these chapter 11 cases and certain of FE Corp.'s non-Debtor affiliates (collectively, "FirstEnergy" or "FirstEnergy Group").

3. The facts and circumstances supporting this Application, along with a detailed discussion of the Debtors' business operation and capital structure, are set forth in the *Declaration of Donald R. Schneider, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration").

## JURISDICTION

4. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

5. By this Application, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors request entry of an order, substantially in the form of **Exhibit C** annexed hereto, authorizing, but not directing, the Debtors to (i) retain A&M to provide the Debtors with a CRO and certain Additional Personnel (as described below) and (ii) designate Charles Moore as the Debtors' CRO, *nunc pro tunc* to the Petition Date.

6. Charles Moore will serve as the CRO to assist the Debtors with their reorganization efforts and their chapter 11 cases (the "Chapter 11 Cases"), as further described below. A&M will provide additional employees of it and its professional service provider affiliates (all of which are wholly-owned by its parent company and employees) ("Additional Personnel" and, collectively with the CRO, the "Engagement Personnel") as necessary to assist the CRO in the execution of the duties set forth more fully herein.

3

## RETENTION OF A&M

7. In consideration of the size and complexity of their business, as well as the exigencies of the circumstances, the Debtors have determined that the services of experienced restructuring managers will substantially enhance their attempts to maximize the value of their estates. The Engagement Personnel are well qualified to act on the Debtors' behalf given their extensive knowledge and expertise with respect to chapter 11 proceedings.

8. The Engagement Personnel specialize in interim management, turnaround consulting, operational due diligence, creditor advisory services, and financial and operational restructuring. A&M's debtor advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including developing or validating forecasts and business plans and related assessments of a business's strategic position; monitoring and managing cash, cash flow, and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages.

9. Further, A&M has provided similar services and personnel in recent cases in the energy industry as well as other industries. *See, e.g., In re Ameriforge Grp. Inc.*, No. 17-32660 (DRJ) (Bankr. S.D. Tex. June 9, 2017) [Docket No. 169]; *In re Azure Midstream Partners, LP*, No. 17-30461 (DRJ) (Bankr. S.D. Tex. Mar. 10, 2017) [Docket No. 146]; *In re Erickson Inc.*, No. 16-34393 (HDH) (Bankr. N.D. Tex. Dec. 16, 2016) [Docket No. 192]; *In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex. June 23, 2016) [Docket No. 289]; *In re Southcross Holdings LP*, No. 16-20111 (MI) (Bankr. S.D. Tex. May 6, 2016) [Docket No. 229]; *In re Swift Energy Co.*, No. 15-12670 (MFW) (Bankr. D. Del. Feb. 1, 2016) [Docket No. 217]; *In re Magnum Hunter Res. Corp.*, No. 15-12533 (KG) (Bankr. D.

Del. Jan. 28, 2016) [Docket No. 426]; *In re Offshore Grp. Inv. Ltd.*, No. 15- 12422 (BLS) (Bankr. D. Del. Jan. 5, 2016) [Docket No. 133]; *In re Samson Res. Corp.*, No. 15-11934 (BLS) (Bankr. D. Del. Jan. 5, 2016) [Docket No. 549]; *In re Energy Future Holdings Corp.*, Case No. 14-10979 (CCS) (Bankr. D. Del. Sept. 16, 2014) [Docket No. 2055]; *In re Payless Holdings LLC*, Case No. 17-42267 (KAS) (Bankr. E.D. Mo. May 16, 2017) [Docket No. 768]; *In re Golfsmith Int'l Holdings, Inc.*, Case No. 16-12033 (LSS) (Bankr. D. Del. Oct. 12, 2016) [Docket No. 230].

10. Charles Moore is a managing director of A&M. He has nearly twenty-five years of experience providing turnaround consulting and advisory services to organizations in a variety of industries. Mr. Moore has substantial knowledge and experience serving either in senior management positions or as a restructuring advisor in large organizations and in assisting troubled companies with stabilizing their financial condition, analyzing their operations and developing an appropriate business plan to accomplish the necessary restructuring of their operations and finances. Specifically, Mr. Moore has served as CRO, for, among others, The Budd Company, Cynergy Data and National Real Estate Information Services. Additionally, Mr. Moore served as Chief Restructuring Advisor to Greektown Casino-Hotel during its chapter 11 proceeding and as Lead Operational Restructuring Advisor to the City of Detroit during its Chapter 9 proceeding.

11. In addition, A&M and the CRO are intimately familiar with the Debtors' businesses, financial affairs, and capital structure. Since A&M's initial engagement by the Company on November 16, 2016, the Engagement Personnel have worked closely with the Debtors' management and other professionals in assisting with the myriad requirements of these Chapter 11 Cases.

12. Consequently, the Debtors believe that A&M has developed significant relevant experience and expertise regarding the Debtors, their operations and the unique circumstances of these cases. For these reasons, A&M is both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of these cases. Accordingly, the Debtors submit that the retention of A&M and the designation of Charles Moore as CRO on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

## SCOPE OF SERVICES

13. Subject to approval by the Court, the Debtors propose to retain A&M, to provide Charles Moore as CRO, and to provide the Additional Personnel on the terms and conditions set forth in the engagement letter, dated March 31, 2018 (which superseded the previously executed engagement letter, dated November 16, 2016), attached hereto as **Exhibit A** (the "Engagement Letter")[3], except as otherwise explicitly set forth herein or in any order granting this Application.

14. Among other things, the Engagement Personnel will support the Debtors with respect to:

    (a)    The CRO, with the assistance of the Additional Personnel and in cooperation with the President, Chief Financial Officer ("CFO"), Chief Nuclear Officer ("CNO") and other applicable officers of the Debtors, shall perform a financial review of the Debtors' businesses, including, but not limited to, a review and assessment of financial information, short and long-term

---

[3] The summaries of the Engagement Letter (and indemnification agreement attached thereto) contained in this Application are provided for purposes of convenience only. In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control unless otherwise set forth herein. Capitalized terms used in such summaries but not otherwise defined herein shall have the meanings set forth in the Engagement Letter.

(a) projected cash flows and operating performance (collectively, the "Financial Review");

(b) The Engagement Personnel, together and in cooperation with the President, CFO, CNO and other applicable officers of the Debtors, shall seek to identify and, if applicable, implement, cost reduction and operations improvement opportunities;

(c) The Engagement Personnel will assist with the development and implementation of cash management strategies, tactics and processes and work with the Debtors' treasury department and other professionals and coordinate the activities of the representatives of other constituencies in the cash management process;

(d) The Engagement Personnel, together with the President, CFO, CNO, other officers of the Debtors, and the Debtors' investment bankers and other engaged professionals, shall develop restructuring plans or strategic alternatives to be presented to the Boards, including planning activities necessary to implement such options, and present such findings and recommendations regarding the appropriate restructuring path to the Boards;

(e) The CRO will serve as the Debtors' principal contact with the Debtors' stakeholders with respect to the Debtors' restructuring matters, and shall act as contact for any official statutory or ad hoc committee that may be appointed in a chapter 11 case;

(f) The Engagement Personnel shall assist in the performance of cost/benefit analyses related to executory contracts and the assumption/rejection of each;

(g) The Engagement Personnel shall assist in discussions with and provide information to potential investors, secured creditors, official committees, ad-hoc committees, the Office of the United States Trustee for the Northern District of Ohio (the "U.S. Trustee") as required;

(h) The Engagement Personnel will assist the Debtors finance staff in managing the administrative requirements of the Bankruptcy Code, including assisting with development of bankruptcy schedules and statement of financial affairs, monthly operating reports and other post-petition reporting requirements and assisting with claim reconciliation efforts;

(i) The Engagement Personnel, at the direction of the Debtors and counsel, will assist with the analysis and investigation of potential claims and causes of action ("Dispute & Investigations Services");

(j) The Engagement Personnel will assist in the development and implementation of key employee compensation and other critical employee benefit programs and provide court testimony in support thereof; and

(k) The Engagement Personnel shall perform such other services as requested or directed by the Boards or other Debtors' personnel as authorized by the Boards, and agreed to by A&M, that is not duplicative of work others are performing for the Debtors.

15. These services are necessary to enable the Debtors to maximize the value of their estates and successfully complete their restructuring.

## A&M'S DISINTERESTEDNESS

16. To the best of the Debtors' knowledge, information, and belief, other than as set forth in the Declaration of Charles Moore (the "Moore Declaration"), A&M: (i) has no connection with the Debtors, their creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the United States Trustee or any person employed in the Office of the United States Trustee; and (i) does not hold any interest adverse to the Debtors' estates.

17. Although the Debtors submit that the retention of A&M is not governed by section 327 of the Bankruptcy Code, the Debtors attach the Moore Declaration, which discloses, among other things, any relationship that A&M, Mr. Moore or any individual member of the Additional Personnel has with the Debtors, their significant creditors, or other significant parties in interest known to A&M. Based upon the Moore Declaration, the

Debtors submit that A&M is a "disinterested person" as that term is defined by section 101(14) of the Bankruptcy Code.

18. In addition, as set forth in the Moore Declaration, if any new material facts or relationships are discovered or arise, A&M will provide the Court with a supplemental declaration.

## TERMS OF RETENTION

**B.** **Compensation**

19. Subject to approval by the Court, the Debtors propose to employ and retain A&M to serve as the Debtors' restructuring advisor on the terms and conditions set forth in the Engagement Letter.

20. In accordance with the terms of the Engagement Letter, A&M will receive a monthly fee for the services of the CRO of $150,000 per month ("Monthly Fee") payable as set forth in the Engagement Letter. A&M will also be paid by the Debtors for the services of the Additional Personnel at their customary hourly billing rates which shall be subject to the following ranges.

Restructuring Services

| | | |
|---|---|---|
| (a) | Managing Director | $850 - 1,050 |
| (b) | Director | $650 - 800 |
| (c) | Associate/Analyst | $400 – 625 |

9

Claims Management Services

    (a)     Managing Director     $750–875

    (b)     Directors     $575–725

    (c)     Consultants     $450–550

    (d)     Analysts     $375–425

Dispute & Investigations Services

    (a)     Managing Directors     $750-950

    (b)     Directors     $500-750

    (c)     Analysts/Associates     $275-475

21. Such rates shall be subject to adjustment annually at such time as A&M adjusts its rates generally. A&M will cooperate with the Company's claims agent to ensure that any services provided by A&M's claims management personnel are not duplicative of work the claim agent retained by the Company is performing.

22. In addition to compensation for professional services rendered by Engagement Personnel, A&M will seek reimbursement for reasonable and necessary expenses incurred in connection with these Chapter 11 Cases, including, but not limited to travel, lodging, computer research, and messenger and telephone charges.

23. In addition to the compensation described above, A&M will be entitled to a completion fee of $3,000,000 payable upon the earlier of (a) the consummation of a Chapter 11 plan of reorganization or (b) the sale, transfer, or other disposition of all or a substantial portion of the assets or equity of the Company in one or more transactions.

24. As a material part of the consideration for which the Engagement Personnel have agreed to provide the services described herein, pursuant to the Engagement Letter

(including the indemnification agreement attached to and made a part of the Engagement Letter (the "Indemnification Agreement"), the Debtors have agreed to (a) indemnify the Engagement Personnel acting as officers to the same extent as the most favorable indemnification it extends to its officers and directors and to cover such Engagement Personnel under the Debtors' director and officer liability policy and (b) indemnify and hold harmless A&M, its affiliates and their respective shareholders, members, managers, employees, agents, representatives, and subcontractors (collectively, the "Indemnified Parties") under certain circumstances.[4] The rights to indemnification shall survive the termination of these Chapter 11 Cases or any cases into which they may be converted.

25. The Debtors believe the indemnity provisions are a reasonable term and condition of A&M's engagement and were, along with all terms of the Engagement Letter, negotiated by the Debtors and A&M at arm's-length and in good faith. A&M and the Debtors believe that the indemnity provisions are comparable to those indemnification provisions generally obtained by crisis management firms of similar stature to A&M and for comparable engagements, both in and out of court. The Debtors respectfully submit that the indemnification provisions contained in the Indemnification Agreement, viewed in conjunction with the other terms of A&M's proposed retention, are reasonable and in the best

---

[4] The Indemnification Agreement generally provides that the Debtors will indemnify and hold harmless A&M and the other Indemnified Parties (as defined in the Indemnification Agreement) from and against any losses, claims, damages, liabilities, penalties, obligations, and expenses, including the costs for counsel and others in investigating, preparing, or defending any action or claim caused by, relating to, based upon, or arising out of the Indemnified Party's acceptance of or the performance or nonperformance of their obligations under the Engagement Letter. Notwithstanding the terms of the Indemnification Agreement, the Debtors and A&M have agreed, subject to the Court's approval of this Application, that in no event shall an Indemnified Person be indemnified or receive contribution or other payment under the Indemnification Agreement if the Debtors, their estates or the statutory committee of unsecured creditors appointed in these Chapter 11 Cases assert a claim against an Indemnified Person and the Court determines by final order that such claim arose out of the bad-faith, self-dealing, breach of fiduciary duty, if any, gross negligence or willful misconduct on the part of that or any other Indemnified Person.

11

interests of the Debtors, their estates, and creditors in light of the fact that the Debtors require A&M's services to successfully reorganize.

## **FEES AND REPORTING**

26. If the Court approves the relief requested herein, A&M will be retained to provide the Debtors with the Additional Personnel and Mr. Moore will be designated as the Debtors' CRO pursuant to section 363 of the Bankruptcy Code. Because A&M is not being employed as a professional under section 327 of the Code, A&M will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. Instead, A&M will file with the Court, and provide notice to the U.S. Trustee and all official committees (together with the U.S. Trustee, the "Notice Parties"), reports of compensation earned and expenses incurred on at least a quarterly basis. Such compensation and expenses shall be subject to Court review in the event that an objection is filed. In addition, A&M will file with the Court and provide the Notice Parties a report on staffing (the "Staffing Report") by the 20th of each month for the previous month, which report would include the names and tasks filled by all Engagement Personnel involved in this matter. The Staffing Report (and A&M's staffing for this matter) would be subject to review by the Court in the event so requested by any of the Notice Parties.

27. A&M received $1,000,000 as a retainer in connection with preparing for and conducting the filing of these Chapter 11 cases, as described in the Engagement Letter. In the 90 days prior to the Petition Date, A&M received payments totaling approximately $4,912,146 in the aggregate for services performed for the Debtors. A&M has applied these funds to amounts due for services rendered and expenses incurred prior to the Petition Date.

12

18-50757-amk    Doc 205    FILED 04/05/18    ENTERED 04/05/18 22:59:17    Page 12 of 19

28. A precise disclosure of the amounts or credits held, if any, as of the Petition Date will be provided in A&M's first report filed regarding compensation earned and expenses incurred. The unapplied residual retainer, which is estimated to total approximately $1,000,000, will not be segregated by A&M in a separate account, and will be held until the end of these Chapter 11 cases and applied to A&M's finally approved fees in these proceedings, unless an alternate arrangement is agreed to by the Debtors.

29. Given the numerous issues which the Engagement Personnel may be required to address in the performance of their services, A&M's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit that the fee arrangements set forth in the Engagement Letter are reasonable.

## DISPUTE RESOLUTION PROCEDURES

30. The Debtors and A&M have agreed, subject to the Court's approval of this Application, that notwithstanding the Engagement Letter: (a) any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Application or the services provided by the Engagement Personnel to the Debtors as outlined in this Application, including any matter involving a successor in interest or agent of any of the Debtors or of A&M, shall be brought in this Court or the United States District Court for the Northern District of Ohio (the "District Court") (if the reference is withdrawn); (b) A&M, the Debtors, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such courts do not have or retain jurisdiction over such claims or controversies) for the resolution of such claims, causes of

13

actions, or lawsuits; (c) A&M and the Debtors, and any and all successors and assigns thereof, waive trial by jury, such waiver being informed and freely made; (d) if this Court, or the District Court (if the reference is withdrawn), does not have or retain jurisdiction over the foregoing claims and controversies, A&M and the Debtors, and any and all successors and assigns thereof, will submit first to non-binding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures (as set forth in **Exhibit D** attached hereto); and (e) judgment on any arbitration award may be entered in any court having proper jurisdiction. By this Application, the Debtors seek approval of this agreement by the Court. Further, A&M and the Debtors have agreed not to raise or assert any defense based upon jurisdiction, venue, abstention or otherwise to the jurisdiction and venue of this Court or the District Court (if the reference is withdrawn) to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to this Application or the services provided hereunder.

## APPLICABLE AUTHORITY

31. The Debtors seek approval of the employment of A&M pursuant to section 363 of the Bankruptcy Code, *nunc pro tunc* to the Petition Date. Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

32. Under applicable case law, in this and other circuits, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable

14

18-50757-amk    Doc 205    FILED 04/05/18    ENTERED 04/05/18 22:59:17    Page 14 of 19

business judgment on the part of the debtor, such use should be approved. *See, e.g., Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a §363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

33. The retention of A&M and its professionals is a sound exercise of the Debtors' business judgment. Mr. Moore has extensive experience as a senior officer and as an advisor for many troubled companies. The Debtors believe that the Engagement Personnel will provide services that benefit the Debtors' estates and creditors. In light of the foregoing, the Debtors believe that the retention of A&M is appropriate and in the best interests of the Debtors and their estates and creditors.

34. The retention of interim corporate officers and other temporary employees, therefore, is proper under section 363 of the Bankruptcy Code. Numerous courts have approved relief similar to the relief requested in this Application. *See, e.g., In re Noranda Aluminum, Inc.*, No. 16-10083 (BSS) (Bankr. E.D. Mo. Mar. 17, 2016) [Docket No. 437] (authorizing debtors to retain Alvarez & Marsal and designating a chief restructuring officer); *In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D. Va. June 10, 2015) [ Docket No. 272] (authorizing retention of advisory firm and designating a chief restructuring officer nunc pro tunc to petition date pursuant to sections 105(a) and 363(b) of the Bankruptcy Code); *In*

re The Dolan Co., No. 14-10614 (BLS) (Bankr. D. Del. Apr. 15, 2014) [Docket No. 156] (same); *In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr. D. Del. Dec. 16, 2013) [Docket No. 623] (authorizing retention of advisory firm and designating a chief restructuring officer); *In re Vertis Holdings, Inc.*, No. 12-12821 (CSS) (Bankr. D. Del. Nov. 20, 2012) [Docket No. 293] (authorizing retention of advisory firm and designating a chief restructuring officer nunc pro tunc to petition date pursuant to sections 105(a) and 363(b) of the Bankruptcy Code); *In re CHL, LTD.*, No. 12-12437 (KJC) (Bankr. D. Del. Sept. 24, 2012) [Docket No. 116] (same).

35. Based upon the foregoing, the Debtors submit that the retention of A&M, and the designation of Mr. Moore as CRO on the terms set forth herein and in the Engagement Letter, is essential, appropriate, and in the best interest of the Debtors' estates, creditors, and other parties in interest and should be granted in these Chapter 11 Cases.

## NOTICE

36. No trustee, examiner or official committee has been appointed in the Debtors' chapter 11 cases. Notice of this Motion has been served on the following parties and/or their counsel, if known, via facsimile, overnight delivery, e-mail, and/or hand delivery: (a) the Office of the U.S. Trustee for the Northern District of Ohio; (b) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under various indenture agreements; (d) counsel to UMB Bank, National Association, in its capacity as indenture trustee, paying agent, and collateral trustee under various indenture agreements, including, without limitation, certain pollution control revenue bond indentures and certain first mortgage bond indentures, and

trust agreements; (e) counsel to Wilmington Savings Fund Society, FSB, in its capacity as indenture trustee and pass through trustee under various indenture agreements and trust agreements in connection with the Bruce Mansfield Unit 1 sale-leaseback; (f) counsel to the Ad Hoc Group of Holders of the 6.85% Pass Through Certificates due 2034; (g) counsel to the ad hoc group of certain holders of (i) pollution control revenue bonds supported by notes issued by FG and NG and (ii) certain unsecured notes issued by FES (collectively, the "Ad Hoc Noteholder Group"); (h) counsel to FirstEnergy Corp.; (i) the District Director of the Internal Revenue Service; (j) the Securities and Exchange Commission; (k) the Office of the United States Attorney for the Northern District of Ohio; (l) the United States Environmental Protection Agency; (m) the Nuclear Regulatory Commission; (n) the United States Department of Energy; (o) the Federal Energy Regulatory Commission; (p) the Office of the Attorney General for Ohio; (q) the Office of the Attorney General for Pennsylvania; (r) the Office of the Attorney General for Illinois; (s) the Office of the Attorney General for Maryland; (t) the Office of the Attorney General for Michigan; (u) the Office of the Attorney General for New Jersey; (v) the National Association of Attorneys General; and (w) all other parties included in the General Service List not listed above. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

37. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: April 5, 2018

**Respectfully submitted**,

FIRSTENERGY SOLUTIONS CORP.

By:/s/ *Donald A. Moul*
Name: Donald A. Moul
Title: President, FES Generating Companies and Chief Nuclear Officer

FIRSTENERGY NUCLEAR OPERATING COMPANY

By:/s/ *Donald A. Moul*
Name: Donald A. Moul
Title: President and Chief Nuclear Officer

FIRSTENERGY NUCLEAR GENERATION, LLC

By:/s/ *Donald A. Moul*
Name: Donald A. Moul
Title: President and Chief Nuclear Officer

FIRSTENERGY GENERATION, LLC

By:/s/ *Donald A. Moul*
Name: Donald A. Moul
Title: President

FIRSTENERGY GENERATION MANSFIELD UNIT 1 CORP.

By:/s/ *Donald A. Moul*
Name: Donald A. Moul
Title: President

NORTON ENERGY STORAGE L.L.C.
By: FirstEnergy Generation, LLC, its Sole Member

By:/s/ *Donald A. Moul*
Name: Donald A. Moul
Title: President

FE AIRCRAFT LEASING CORP.

By: /s/ *Donald R. Schneider*
Name: Donald R. Schneider
Title: President