UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 18-50757 |
| FIRST ENERGY SOLUTIONS CORP. et.al, | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Hon. Alan. M. Koschik |
| | ) | |

**FEDERAL ENERGY REGULATORY COMMISSION'S RESERVATION OF RIGHTS AND LIMITED OBJECTION WITH RESPECT TO MOTION OF DEBTORS TO APPROVE STIPULATION BETWEEN DEBTORS AND MEYERSDALE WINDPOWER, L.L.C. REGARDING REJECTION OF CERTAIN ENERGY CONTRACTS AS OF THE PETITION DATE**

The Federal Energy Regulatory Commission ("FERC") hereby submits this Reservation of Rights and Limited Objection to the *Motion of Debtors to Approve Stipulation Between Debtors and Meyersdale Windpower, L.L.C. Regarding Rejection of Certain Energy Contracts as of the Petition Date* [Docket No. 451] (the "Motion")[1] and, in support thereof, respectfully states as follows:

**STATUTORY AND REGULATORY BACKGROUND**

**A.   The Federal Power Act**

In enacting the Federal Power Act ("FPA"), Congress declared that the provision of electric energy in interstate commerce is affected with the public interest. 16 U.S.C. § 824(a). Accordingly, Congress developed a comprehensive regulatory framework for protecting that interest and created FERC's predecessor, the Federal Power Commission, to implement it. As the Supreme Court has recognized, "the purpose of the power given [FERC under the FPA] is the protection of the public interest." *Federal Power Comm'n v. Sierra Pacific Power Co.*, 350

---

[1] Any capitalized term not defined herein shall have the meaning ascribed to it in the Motion.

U.S. 348, 355 (1956). In furtherance of its important public policy mission, FERC is vested under the FPA with exclusive authority to regulate rates for interstate transmissions and wholesale sales of electric energy, and it is empowered to establish rules and regulations governing such rates. *See* 16 U.S.C. §§ 824, 824d, 824e.

FERC oversees the FPA's core mandate that all rates and charges for or in connection with interstate transmissions and wholesale sales of electricity must be "just and reasonable" and not "unduly discriminatory or preferential." 16 U.S.C. §§ 824d(d)-(e), 824e(a). Public utilities must file their rates and charges for interstate transmissions and wholesale sales of electricity with FERC, 16 U.S.C. § 824d(c) and (d), and to safeguard the public interest, the FPA grants FERC "an opportunity in every case to judge the reasonableness of the rate." *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 583 (1981) (interpreting parallel provision in Natural Gas Act, 15 U.S.C. § 717c).[2] Indeed, where FERC determines that a proposed rate is not just and reasonable, it may wholly reject it. 16 U.S.C. § 824d(d). *See, e.g.*, *Maine Pub. Utils. Comm'n v. FERC*, 454 F.3d 278, 285 (D.C. Cir. 2006).

**B.     FERC's Broad Jurisdiction Under the FPA**

The scope of FERC's statutory jurisdiction over rates is broad, expressly including "rates, and charges . . . by any public utility for or in connection with" interstate transmissions and wholesale sales of electricity, 16 U.S.C. § 824d(a); "all rules and regulations affecting or pertaining to such rates," *id.*; "rate, charge, classification, or service," 16 U.S.C. § 824d(d); and "any rule, regulation, or contract relating thereto," *id.*; *see FERC v. Elec. Power Supply Ass'n*, 136 S. Ct. 760, 773-74 (2016) (affirming FERC's authority to regulate practice affecting rates,

---

[2] Parallel provisions of the FPA and Natural Gas Act have been treated by courts as identical in substance. *City of Winnfield, La. v. FERC*, 744 F.2d 871, 875 (D.C. Cir. 1984).

2

noting "FPA delegates responsibility to FERC to regulate . . . wholesale rates and the panoply of rules and practices affecting them. . . . FERC has the authority—and, indeed, the duty—to ensure that rules or practices 'affecting' wholesale rates are just and reasonable."); *Tenn. Gas Pipeline Co. v. FERC*, 860 F.2d 446, 447 n.1 (D.C. Cir. 1988) (noting "rate" includes "contractual provisions, methodologies for allocating costs, restrictions on availability of the [service] as well as quantity and price terms"); *Northern Natural Gas Co. v. Kansas Corp. Comm'n*, 372 U.S. 84, 90-91 (1963) (same). FERC's exclusive authority to determine the reasonableness of wholesale rates also extends to the rates, terms, and conditions of wholesale power agreements, as well as changes to those agreements. *See Miss. Power & Light Co. v. Mississippi ex rel. Moore*, 487 U.S. 354, 355 (1988) ("The reasonableness of rates and agreements regulated by FERC may not be collaterally attacked in state or federal courts.").

FERC's broad, plenary authority over wholesale electricity rates led to the development of the "filed rate" doctrine. *See Montana–Dakota Utilities Co. v. Northwestern Public Service Co.*, 341 U.S. 246 (1951). Under the filed rate doctrine, a party "can claim no rate as a legal right that is other than the filed rate, whether fixed or merely accepted by the Commission, and not even a court can authorize commerce in the commodity on other terms." *Id.* at 251. First designed to "ensure that federal courts respect the decisions of federal administrative agencies," the filed rate doctrine recognizes that "[FERC] alone is empowered to make that judgment of reasonableness, and until it has done so, no rate other than the one [approved by FERC] may be charged." *Nantahala Power and Light Co. v. Thornburg*, 476 U.S. 953, 964 (1986) (quoting *Arkansas Louisiana Gas Co.*, 453 U.S. at 581-82). In short, under the FPA, FERC determines the filed rate and "except for review of the Commission's orders, the courts can assume no right to a different one." *Montana–Dakota Utilities*, 341 U.S. at 252.

3

Whether embodied in a tariff or wholesale power contract, including those executed under market-based rate authority (*see infra* at 6), rates for wholesale sales of electric energy approved by FERC carry the "force of law." *See Lowden v. Simonds-Shields-Lonsdale Grain Co.*, 306 U.S. 516, 520 (1939) ("Until changed, tariffs bind both carriers and shippers with the force of law."); *see also Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 839 (9th Cir. 2004) (citations omitted) (finding that electric tariffs are "the equivalent of federal regulation"); *Calpine*, 337 B.R. at 33 (internal quotation marks and citations omitted) (finding that wholesale power contracts are the "the equivalent of federal regulation"). "[T]he filed rate . . . is to be treated as though it were a statute, binding upon the seller and the purchaser alike." *Boston Edison Co. v. FERC*, 856 F.2d 361, 372 (1st Cir. 1988) (quoting *Northwestern Public Serv. Co. v. Montana-Dakota Util. Co.*, 181 F.2d 19, 22 (8th Cir. 1950), *aff'd*, 341 U.S. 246 (1951)).

In determining whether wholesale rates, terms, and conditions are just and reasonable, FERC brings to bear its specialized regulatory expertise to evaluate all factors involving the public interest. *See Tenn. Gas Pipeline Co.*, 40 FERC ¶ 63,008, at 65,072 (1987) ("[T]he 'just and reasonable' standard is not susceptible of precise definition and the Commission is to 'evaluate all factors bearing on the public interest'. . . .") (citing *Pub. Serv. Comm'n v. Federal Power Comm'n*, 543 F.2d 757, 785 (D.C. Cir. 1974)). The Supreme Court has recognized that the statutory requirement that rates be just and reasonable "is obviously incapable of precise judicial definition, and [upon judicial review] we afford great deference to [FERC] in its rate decisions." *Morgan Stanley Capital Grp. Inc. v. Pub. Util. Dist. No. 1 of Snohomish Cty., Wash.*, 554 U.S. 527, 532 (2008) (*Morgan Stanley*). In executing its duty to "promote the orderly production of plentiful supplies of electric energy . . . at just and reasonable rates," *Nat'l Ass'n for Advancement of Colored People v. Fed. Power Comm'n*, 425 U.S. 662, 670 (1976) (*NAACP*),

FERC balances investor and the consumer interests.  *See Fed. Power Comm'n v. Hope Nat. Gas Co.*, 320 U.S. 591, 603 (1944).  FERC considers "not only the potential economic burden which the proposed rate will place on the public but also the potential of any rate to jeopardize the ability of the utility to continue its service."  *City of Newark v. Delmarva Power & Light Co.*, 467 F. Supp. 763, 769-770 (D. Del. 1979) (footnote omitted).

**C.      The FERC Approval Process for Power Purchase Agreements**

While FERC often approves wholesale power contracts individually under 16 U.S.C. § 824d, it also exercises its authority over filed rates by approving tariffs for certain public utilities.  A public utility may submit to FERC an application for a market-based rate tariff, and, if approved, the public utility's market-based rate tariff on file with the Commission will allow it to enter into freely negotiated contracts with purchasers without submitting individual contracts under section 824d of the FPA.  FERC will grant approval of a market-based tariff only if a public utility demonstrates that it lacks or has adequately mitigated market power, lacks the capacity to erect other barriers to entry, and has avoided giving preferences to its affiliates.[3]  The utility's filed market-based rate tariff serves as FERC's *ex ante* determination that the rates charged pursuant to any contract consistent with that tariff are presumed "just and reasonable."  FERC Order No. 697 at ¶¶ 943, 961.

**D.      Modification of Power Purchase Agreements Under the *Mobile-Sierra* Standard**

Where a party seeks to modify or abrogate the rates, terms, and conditions set forth in a wholesale power purchase contract, the Supreme Court found that the FPA requires FERC to

---

[3] *See generally Market-Based Rates for Wholesale Sales of Electric Energy, Capacity and Ancillary Services by Public Utilities*, Order No. 697, FERC Stats. & Regs. ¶ 31,252 (2007) (subsequent history omitted) ("FERC Order No. 697").

5

apply a more rigorous application of the just and reasonable standard, which involves a complex, fact-specific analysis to determine whether the modification or abrogation is lawful. *See United Gas Pipe Line Co. v. Mobile Gas Serv. Corp.*, 350 U.S. 332 (1956) (*Mobile*); *Fed. Power Comm'n v. Sierra Pac. Power Co.*, 350 U.S. 348 (1956) (*Sierra*). Under the *Mobile-Sierra* doctrine, as articulated by the Supreme Court, FERC must presume that certain freely negotiated, arms-length contracts are just and reasonable, and, where a contract is presumed to be just and reasonable, a party may not unilaterally modify or abrogate that contract absent a showing that continuation of the existing contract would seriously harm the public interest. Binding upon both buyers and sellers to a contract, *see Morgan Stanley*, 554 U.S. at 548; *Potomac Elec. Power Co. v. FERC*, 210 F.3d 403 (D.C. Cir. 2000); *Boston Edison Co. v. FERC*, 856 F.2d 361 (1st Cir. 1988), the *Mobile-Sierra* doctrine gives effect to "[the FPA's recognition] that contract stability ultimately benefits consumers." *Morgan Stanley*, 554 U.S. at 551. This is because "uncertainties regarding rate stability and contract sanctity can have a chilling effect on investments and a seller's willingness to enter into long-term contracts and this, in turn, can harm customers in the long run." *Id.* (internal quotation omitted); *see Boston Edison*, 856 F.2d at 370 (concluding the *Mobile-Sierra* doctrine "acknowledges that a salient purpose of the [FPA] was to preserve the integrity of contracts [thereby permitting] the stability of supply arrangements.") (internal quotation omitted).

Determining whether a presumption of justness and reasonableness has attached to a particular contract requires scrutiny of the circumstances under which the contract was formed, including whether the contract embodies individualized rates, terms or conditions that apply only to sophisticated parties who negotiated them freely and at arm's length. *See Morgan Stanley*, 554 U.S. at 547; *see also New England Power Generators Ass'n v. FERC*, 707 F.3d 364 (D.C.

Cir. 2013). Where such a presumption does attach, FERC may not permit modification or abrogation simply to relieve a party of its improvident bargain; rather, in order to prevail, the party must meet the high burden of showing "'unequivocal public necessity' or 'extraordinary circumstances,'" *Morgan Stanley*, 554 U.S. at 550 (internal citations omitted), such as circumstances where the contract "'might impair the financial ability of the public utility to continue its service, cast upon other consumers an excessive burden, or be unduly discriminatory,'" *id.* at 548 (quoting *Sierra*, 350 U.S. at 355). FERC's assessment of whether a contract imposes an excessive burden on consumers is fact-intensive and has involved, for example, an evaluation of "the disparity between the contract rate and the rates consumers would have paid (but for the contracts) further down the line," *id.* at 553, and could require FERC to build a record regarding many factors, such as supply and demand factors and the cost of substitute power. *See, e.g., Puget Sound Energy, Inc. v. All Jurisdictional Sellers of Energy and/or Capacity*, 151 FERC ¶ 61,173, at 62,083-84, *reh'g denied*, 153 FERC ¶ 61,386 (2015).

Importantly, contracts entered into pursuant to market-based rate authority remain FERC-jurisdictional and subject to *Mobile-Sierra*. *See Morgan Stanley*, 554 U.S. 527; *see also Blumenthal v. NRG Power Mktg., Inc.*, 103 FERC ¶ 61,344, at 62,318 (2003) (finding that wholesale power contracts executed under market-based rate authority constitutes the rates, terms, and conditions of a public utility's sale for resale in interstate commerce).

**RELEVANT FACTS**

Prior to bankruptcy, the Debtor FirstEnergy Solutions Corp. ("FES") entered a Master Power Purchase and Sale Agreement, dated as of April 21, 2003, as amended, (the "Power Purchase Agreement" or "PPA") with Meyersdale Windpower, L.L.C. ("Meyersdale"). The PPA was entered into under the contracting parties' market-based rate authority (after FERC's

7

approval of the market-based tariff), and that rate is presumed to be "just and reasonable" under the FPA.

On April 1, 2018, the Debtors filed a motion to reject nine power purchase agreements, including the PPA (the "Rejection Motion"). *See* Docket No. 45. The Rejection Motion has been adjourned indefinitely as the issues related to rejection necessitate a threshold finding related to FERC's jurisdiction. The Debtors now seek to reject the PPA pursuant to a stipulation with Meyersdale (the "Stipulation").

## RESERVATION OF RIGHTS AND LIMITED OBJECTION

FERC does not oppose the Debtors' request for Court approval of the Stipulation in which the Debtors and Meyersdale have mutually agreed to rejection of the PPA. However, given the pending adversary proceeding brought by Debtors against FERC, Ad. No. 18-05021, in which Debtors seek an injunction stripping FERC of its Congressionally-mandated exclusive jurisdiction to protect the public interest through the enforcement of the FPA, FERC is concerned that approval of rejection under section 365 could be interpreted as effectively divesting FERC of its FPA jurisdiction over the PPA. To the extent that Debtors' and Meyersdale's Stipulation reflecting their mutual agreement to reject the PPA could be interpreted to indicate a lack of or relinquishment of FERC's FPA jurisdiction over the PPA and changes thereto, FERC objects. Any order entered to approve this Stipulation should have no bearing upon FERC's arguments regarding Debtors' attempt to take unilateral action with regard to FERC-jurisdictional contracts or failure to comply with their regulatory obligations.

FERC, accordingly, requests that any order approving the Stipulation include the following language:

> Nothing in this Order or the Stipulation affects or limits the rights of the Federal Energy Regulatory Commission exercise its

jurisdiction with respect to the Master Power Purchase and Sale Agreement between FES and Meyersdale consistent with the Federal Power Act.

Dated: May 4, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

RUTH A. HARVEY
Director
Commercial Litigation Branch

RENÉE A. BACCHUS
Assistant U.S. Attorney
United States Attorney's Office
801 West Superior Avenue, Suite 400
Cleveland, OH 44113

/s/ Danielle A. Pham
MARGARET M. NEWELL
MARC S. SACKS
DANIELLE A. PHAM
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 875
Ben Franklin Station
Washington D.C. 20044
Tel. (202) 514-7451
Fax (202) 514-9163
danielle.pham@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on May 4, 2018, I electronically filed the foregoing FEDERAL ENERGY REGULATORY COMMISSION'S RESERVATION OF RIGHTS AND LIMITED OBJECTION WITH RESPECT TO MOTION OF DEBTORS TO APPROVE STIPULATION BETWEEN DEBTORS AND MEYERSDALE WINDPOWER, L.L.C. REGARDING REJECTION OF CERTAIN ENERGY CONTRACTS AS OF THE PETITION DATE with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

      /s/ Danielle A. Pham
DANIELLE A. PHAM
Commercial Litigation Branch
Civil Division
United States Department of Justice