# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FIRSTENERGY SOLUTIONS CORP., *et al.*,[1] | ) Case No. 18-50757 (AMK) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) Hon. Judge Alan M. Koschik |

## STIPULATION

FirstEnergy Solutions Corp. ("FES") and FirstEnergy Generation, LLC ("FG" and together with FES, "Movants"), together with the Ohio Valley Electric Corporation ("OVEC"), Duke Energy Ohio, Inc. ("Duke"), and the Office of the Ohio Consumers' Counsel (the "OCC," and together with OVEC and Duke, the "Objectors"), jointly submit this Stipulation in connection with and solely for the purposes of the *Motion for Entry of an Order Authorizing FirstEnergy Solutions Corp. and FirstEnergy Generation, LLC to Reject a Certain Multi-Party Intercompany Power Purchase Agreement With the Ohio Valley Electric Corporation* [Docket No. 44] (the "OVEC ICPA Rejection Motion").[2] **Absent agreement of the parties, this Stipulation may not be used or introduced in any other administrative or judicial proceeding, including, but not limited to, any proceeding before the Public Utilities Commission of Ohio or the Federal Energy Regulatory Commission. Nothing set forth in**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: FE Aircraft Leasing Corp. (9245), case no. 18-50759; FirstEnergy Generation, LLC (0561), case no. 18-50762; FirstEnergy Generation Mansfield Unit 1 Corp. (5914), case no. 18-50763; FirstEnergy Nuclear Generation, LLC (6394), case no. 18-50760; FirstEnergy Nuclear Operating Company (1483), case no. 18-50761; FirstEnergy Solutions Corp. (0186); and Norton Energy Storage L.L.C. (6928), case no. 18-50764. The Debtors' address is: 341 White Pond Dr., Akron, OH 44320.

[2] Capitalized terms not defined herein are defined in the OVEC ICPA Rejection Motion.

**this Stipulation shall constitute an admission or a waiver of: (1) the right of any party to dispute and/or take discovery respecting the facts set forth herein following the hearing on the OVEC ICPA Rejection Motion to the extent relevant to matters remaining in dispute; or (2) any claim, defense, argument, or position of any party with respect to (a) any subsequent appeal of any Order granting the OVEC ICPA Rejection Motion or post-appellate hearings; (b) the Debtors' request for *nunc pro tunc* relief with respect to the effective date the OVEC ICPA shall be deemed rejected; (c) the calculation of OVEC's claim against FES for rejection damages; or (d) any proceeding outside of the contested matter associated with the OVEC ICPA Rejection Motion.**

1. FES is an Ohio-based power company and a wholly-owned subsidiary of non-Debtor FirstEnergy Corp. ("FE Corp."). FES provides energy-related products and services to retail and wholesale customers. FES owns and operates, through its subsidiary FirstEnergy Generation, LLC ("FG"), certain fossil-generating facilities. FES also owns nuclear-generating facilities through its subsidiary FirstEnergy Nuclear Generation, LLC ("NG"), which are operated by Debtor FirstEnergy Nuclear Operating Company ("FENOC"). FES purchases the entire output of both FG and NG, as well as the output of other FE Corp. subsidiaries, and sells that output to one or more regional transmission organizations, principally PJM Interconnection LLC ("PJM"). This represents the great majority of FES's power purchases and sales, totaling close to 10,000 megawatts ("MWs") of capacity, and generation of 52 terawatt hours ("TWh") in 2017.

2. FES is party to a multi-party intercompany power agreement pursuant to which FES and several other power companies have the right to purchase power from OVEC (the "OVEC ICPA"). OVEC, together with its wholly-owned subsidiary, Indiana-

Kentucky Electric Corporation ("IKEC"), are an investor-owned utility that operates two coal-fired power plants—the Kyger Creek plant in Cheshire, Ohio and the Clifty Creek plant in Madison, Indiana (the "Power Stations")—as well as transmission facilities through which it connects and transmits power to its various constituents.

3. OVEC and IKEC were formed on October 1, 1952 to provide electric power in support of the operation of uranium enrichment facilities then under construction by the Atomic Energy Commission (the "AEC") near Portsmouth, Ohio (the "Portsmouth Facilities"). The AEC's facilities are now operated by its successor agency, the Department of Energy ("DOE"). On October 15, 1952, OVEC and the AEC entered into a power supply agreement supporting the AEC's Portsmouth facilities (the "DOE Power Agreement"). On July 10, 1953, OVEC and fifteen public utility companies (each, an "Original Sponsoring Company") entered into the OVEC ICPA. The OVEC ICPA was executed to support the DOE Power Agreement and provide for excess energy sales to the Original Sponsoring Companies of power and energy not utilized by DOE or its predecessors.

4. On September 29, 2000, DOE notified OVEC of its cancellation of the DOE Power Agreement, effective April 30, 2003. The OVEC ICPA, and all of the amendments thereto, collectively constitute a cost-sharing agreement of delineated costs based upon each company's power participation ratio (defined below).

5. The OVEC ICPA was subsequently amended and restated in its entirety, first on March 13, 2006, and again on September 10, 2010. The current term of the OVEC ICPA extends through June 30, 2040.

3

6.      As with prior iterations of the OVEC ICPA, on March 23, 2011, OVEC filed the current OVEC ICPA with the Federal Energy Regulatory Commission ("FERC"), initiating a proceeding captioned *Ohio Valley Elec. Corp.*, Docket No.s ER11-3181-000, ER11-3440-000, ER11-3441-0000. Notice of the OVEC ICPA's filing was published in the Federal Register. In accordance with the Code of Federal Regulations, FERC set a deadline by which interested parties could intervene, protest, or otherwise comment on the filed OVEC ICPA. No protests or comments were received. FERC accepted the filed OVEC ICPA in a delegated letter order issued on May 23, 2011. As provided in the letter order, the OVEC ICPA was "accepted for filing, effective May 23, 2011," and the "order constitutes final agency action." The OVEC ICPA governs the rates, terms, and conditions of wholesale sales of electricity.

7.      Under the OVEC ICPA, all of the delineated costs associated with OVEC's operation are collectively allocated to all of the Sponsoring Companies based upon their power participation ratios (defined below).

8.      The current parties to the OVEC ICPA (the "Sponsoring Companies") are listed in the chart below, and are each assigned a "Power Participation Ratio," which dictates the allocation of corresponding benefits and related payment obligations under the OVEC ICPA:

| Sponsoring Company | % Share |
|---|---|
| Allegheny Energy Supply Company L.L.C. | 3.01% |
| Appalachian Power Company | 15.69% |
| Buckeye Power Generating, LLC | 18.00% |
| The Dayton Power and Light Company | 4.90% |

4

| Duke Energy Ohio, Inc. | 9.00% |
|---|---|
| FirstEnergy Solutions Corp. | 4.85% |
| Indiana Michigan Power Company | 7.85% |
| Kentucky Utilities Company | 2.50% |
| Louisville Gas and Electric Company | 5.63% |
| Monongahela Power Company | 0.49% |
| Ohio Power Company | 19.93% |
| Peninsula Generation Cooperative | 6.65% |
| Southern Indiana Gas and Electric Company | 1.50% |
| **Total:** | 100.00% |

9. Pursuant to the terms of the OVEC ICPA, FES is responsible for its 4.85% share of all of OVEC's delineated costs and expenses, and is entitled to receive its 4.85% share of the available power and energy produced by the Power Stations. Last year, FES purchased approximately 0.6 TWh of power from OVEC under the OVEC ICPA.

10. On March 31, 2018 (the "Petition Date"), FES filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The next day, the Debtors filed the *Motion for Entry of an Order Authorizing FirstEnergy Solutions Corp. and FirstEnergy Generation, LLC to Reject a Certain Multi-Party Intercompany Power Purchase Agreement With the Ohio Valley Electric Corporation as of the Petition Date* [Docket No. 44] (the "OVEC ICPA Rejection Motion").

11. On July 13, 2018, the Court issued an Order (the "Interlocutory Order on Standard") providing, among other things, that it would apply the business judgment standard in adjudicating the OVEC ICPA Rejection Motion. Specifically, the Court determined that: 1) the business judgment standard shall govern the Court's

determination of whether the Debtors may reject the OVEC ICPA pursuant to 11 U.S.C. § 365; 2) in applying the business judgment standard, the Court will consider whether the OVEC ICPA is burdensome to the Debtors' estates and whether rejection of the OVEC ICPA will advance the Debtors' chapter 11 reorganization; and 3) the Court rejected any legal standard that would require consideration of anything other than whether rejection is consistent with the Debtors' sound business judgment. In the Interlocutory Order on Standard, the Court also incorporated by reference its findings and conclusions from the *Preliminary Injunction Against the Federal Energy Regulatory Commission* [Adv. Proc. Docket No. 114] (the "<u>Preliminary Injunction Order</u>") and the *Memorandum Decision Supporting Order Granting Preliminary Injunction* [Adv. Proc. Docket No. 125] (the "<u>Memorandum Opinion</u>").

12. FES asserts and has offered evidence that it has no need for the OVEC ICPA to reorganize. For purposes of this Stipulation for establishing the business judgment standard under 11 U.S.C. § 365 only, the Objectors do not contest that assertion.

13. FES also asserts and has offered evidence that the OVEC ICPA is burdensome to the Debtors' estates and that rejection of the OVEC ICPA will relieve it of near-term losses of at least $10 million on an annual average basis (2018 to 2023). Through discovery, OVEC has received and reviewed some of FES's underlying assumptions and projections for those projected losses. For purposes of this Stipulation for establishing the business judgment standard under 11 U.S.C. § 365 only, the Objectors do not contest FES's assertion that it will incur material, cumulative losses from its obligations under the OVEC ICPA and the resulting sale of capacity and energy in the PJM market in the near term. FES has also projected that it will continue to incur material losses under the

6

OVEC ICPA from 2022-2040. The Objectors take no position with respect to FES' assertions regarding the amount or duration of losses it may incur under the OVEC ICPA between 2018 and 2040.

14. The OVEC ICPA is an executory contract within the meaning of 11 U.S.C. § 365(a).

15. OVEC does not contest that FES's asserted projected near term losses and stated lack of need for the OVEC ICPA to reorganize are sufficient to meet the business judgment standard set by the Court in its Interlocutory Order on Standard.

16. OVEC agrees that to the extent the Court grants the OVEC ICPA Rejection Motion in a subsequent Order (the "Rejection Order") over OVEC's objection, it will not dispute that the rejection of the OVEC ICPA will be deemed effective no later than July 31, 2018 (the "Proposed Rejection Date"). For the avoidance of doubt, each party hereto agrees not to seek to appeal any forthcoming Order on the OVEC ICPA Rejection Motion on the ground that the facts herein did not support rejection under the standard articulated in the Interlocutory Order on Standard.

17. Subject to paragraph 19 of this Stipulation, upon the Bankruptcy Court granting the OVEC ICPA Rejection Motion, FES will have no obligation to either (a) take its previously applicable share of energy and capacity rights and obligations pursuant to the OVEC ICPA, or (b) offer any energy into PJM's energy market pursuant to the OVEC ICPA. FES and OVEC agree concurrently upon the execution of this Stipulation, and hereafter, to take commercially reasonable and good faith efforts to assist any interested Sponsoring Companies to (x) take a share, if any, of the energy and capacity rights and obligations previously committed to FES under the OVEC ICPA, and (y) be able to

7

continue to offer such energy into PJM's energy market. To the extent the Court enters a Rejection Order, FES shall remit to OVEC an amount in cash equal to the sum of all energy and capacity revenue received from or credited by PJM on account of FES's portion of the energy and capacity under the OVEC ICPA for the period from the date of entry of such Rejection Order to the date on which PJM recognizes that the change in control over such power and energy under the OVEC ICPA for purposes of receiving payments from PJM has been transitioned from FES to OVEC or one or more of the non-Debtor Sponsoring Companies (such date, "Transition Date") within five (5) business days of the Transition Date; provided however, that to the extent any such revenue is received or credited from PJM after such date, then FES shall remit it to OVEC within five (5) business days of receipt by FES.

18. The Debtors reserve all rights with respect to their request for *nunc pro tunc* relief, and the parties agree that the agreement of the Debtors to bifurcate adjudication of the availability of *nunc pro tunc* relief shall not prejudice the Debtors' request for such relief and shall not be used by any other party in opposing such relief.

19. Nothing contained herein, or by counsel's agreement to the submission of this stipulation, shall waive any Objector's rights to argue on appeal that the Court and FERC exercise concurrent jurisdiction over the rejection of the OVEC ICPA. For the avoidance of doubt, the Objectors continue to assert that rejection of the OVEC ICPA cannot be effectuated unless and until this Court authorizes rejection under the Bankruptcy Code and FERC authorizes rejection under the FPA.

20. The OCC joins this Stipulation solely with respect to paragraphs 1, 2, 5, 10-15, 16, 18 and 19. The OCC is not joining the stipulation with respect to the remaining

paragraphs and is not bound in any way by the agreements of the other parties contained in these paragraphs.

**RESPECTFULLY SUBMITTED:**

*/s/ John C. Fairweather*
**BROUSE MCDOWELL LPA**
Marc B. Merklin (0018195)
John C. Fairweather (0018216)
Lisa S. DelGrosso (0064938)
Kate M. Bradley (0074206)
388 South Main Street, Suite 500
Akron, OH 44311-4407
Telephone: (330) 535-5711
Facsimile: (330) 253-8601
mmerklin@brouse.com
jfairweather@brouse.com
ldelgrosso@brouse.com
kbradley@brouse.com

- and -

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira Dizengoff (admitted *pro hac vice*)
David Zensky (admitted *pro hac vice*)
Lisa Beckerman (admitted pro *hac vice*)
Brian Carney (admitted *pro hac vice*)
Brad Kahn (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
dzensky@akingump.com
lbeckerman@akingump.com
bcarney@akingump.com
bkahn@akingump.com

- and -

Scott Alberino (admitted *pro hac vice*)
David Applebaum (admitted *pro hac vice*)
Todd Brecher (admitted *pro hac vice*)
Kate Doorley (admitted *pro hac vice*)
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
salberino@akingump.com
dapplebaum@akingump.com
tbrecher@akingump.com
kdoorley@akingump.com

*Counsel for Debtors and Debtors in Possession*

**APPROVED BY:**

/s/ Mark McKane (with approval 7/27/18)
Mark McKane, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
555 California Street
San Francisco, California 94104
Telephone:   (415) 439-1400
Facsimile:   (415) 439-1500
Email:   mark.mckane@kirkland.com

*Counsel to Respondent Ohio Valley Electric Corporation*


/s/ John H. Thompson (with approval 7/27/18)
John H. Thompson
**MCGUIREWOODS LLP**
2001 K Street N.W.
Suite 400
Washington, DC 20006-1040
Telephone:   (202) 857-2474
Facsimile:   (202) 828-2976
Email: jthompson@mcguirewoods.com

*Counsel for Objector Duke Energy Ohio, Inc.*

**APPROVED PURSUANT TO PARAGRAPH 20 BY:**

/s/ David A. Beck (with approval 7/27/18)
David A. Beck
**CARPENTER LIPPS & LELAND LLP**
280 Plaza, Suite 1300
280 North High Street
Columbus, OH 43215
Telephone: (614) 365-4100
Facsimile: (614) 365-9145
Email: beck@carpenterlipps.com

*Counsel for Objector Office of the Ohio Consumers' Counsel*