# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FIRSTENERGY SOLUTIONS CORP., *et al.*,[1] | ) Case No. 18-50757 |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) Hon. Judge Alan M. Koschik |

### DECLARATION OF DISINTERESTEDNESS IN SUPPORT OF EMPLOYMENT OF THE BOSTON CONSULTING GROUP, INC. AS A PROFESSIONAL UTILIZED IN THE ORDINARY COURSE OF BUSINESS

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. I am a Partner and Managing Director of the firm The Boston Consulting Group, Inc. (the "Firm"), which maintains offices at the address and phone number listed below:

   Address: 2501 North Harwood, Dallas, Texas 75201

   Phone: (214) 849-1671

2. The Firm has been employed by non-debtor affiliate FirstEnergy Service Company ("FESC") to render services to one or more of the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") in the ordinary course of their business. The Debtors wish to retain the Firm to continue providing ordinary course services during their chapter 11 cases. This declaration (the "Declaration of Disinterestedness") is submitted in

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: FE Aircraft Leasing Corp. (9245), case no. 18-50759; FirstEnergy Generation, LLC (0561), case no. 18-50762; FirstEnergy Generation Mansfield Unit 1 Corp. (5914), case no. 18-50763; FirstEnergy Nuclear Generation, LLC (6394), case no. 18-50760; FirstEnergy Nuclear Operating Company (1483), case no. 18-50761; FirstEnergy Solutions Corp. (0186); and Norton Energy Storage L.L.C. (6928), case no. 18-50764. The Debtors' address is: 341 White Pond Dr., Akron, OH 44320.

compliance with the *Order Authorizing the Debtors to Employ and Compensate Professionals Utilized in the Ordinary Course of Business* (the "OCP Order") [Docket No. 428].

1. I am familiar with and have personal knowledge of the facts set forth below.

2. Since October 8, 2018, the Debtors have requested that the Firm provide services to assist FESC with the development of a retail rebuild and growth strategy plan, and the Firm has agreed to provide such services. The Firm has provided services to the Debtors prior to the Petition Date. The Firm, through me, and other members, partners, associates, or employees of the Firm, plans to provide the following services to the Debtors from and after the Petition Date: assistance with FESC's development of a retail rebuild and growth strategy plan.

3. Neither I, the Firm, nor any employee thereof, insofar as I have been able to ascertain, has any connection with the Debtors, their creditors or stockholders, or any party in interest herein.

4. To the best of my knowledge, information, and belief, formed after due inquiry, (a) except for the proposed retention of the Firm in these chapter 11 cases, the Firm does not currently provide services to any party in any matter related to these chapter 11 cases, and (b) the Firm does not represent or hold an interest adverse to the Debtors.

5. The Debtors do not owe the Firm any amounts for prepetition services rendered.

6. The Firm does not hold any retainer that is applicable to post-petition services.

7. If the Firm represents the Debtors on a contingency fee basis with respect to any services provided to the Debtors, the terms of such contingency fee arrangement are attached to this Declaration of Disinterestedness.

8. This Firm and certain of its employees may have in the past represented, currently represent, and may in the future represent FESC and other non-Debtor affiliates, or other entities

that are claimants or equity security holders of the Debtors in matters totally unrelated to the Debtors' chapter 11 cases. The Firm will be compensated for professional services rendered to one or more of the Debtors in accordance with the Compensation Procedures set forth in the OCP Order, based on the agreed fees set forth in the Purchase Order attached to this Declaration of Disinterestedness.

9. The fees delineated in the Purchase Order are set at a level designed to fairly compensate the Firm for the work of its professionals and to cover fixed and all overhead expenses.

10. Except as provided in the OCP Order, no representations or promises have been received by the Firm nor by any employee thereof as to compensation in connection with these cases other than in accordance with the provisions of title 11 of the United States Code. The Firm has no agreement with any other entity to share with such entity any compensation received by the Firm in connection with these chapter 11 cases.

11. If, at any time during its employment by the Debtors, the Firm should discover any facts bearing on the matters described herein, the Firm will supplement the information contained in this Declaration of Disinterestedness.

12. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*/s/ Konark Singh*

Konark Singh
Partner and Managing Director
2501 North Harwood
Dallas, Texas 75201

# EXHIBIT A

# PURCHASE ORDER



```
                                              ┌─────────────────────────────────────────────┐
                                              │ **Purchase Order**                          │
                                              │                                             │
                                              │ PO number/date                              │
        THE BOSTON CONSULTING GROUP INC       │ 55127246  /  11/28/2018                     │
        ONE BEACON STREET 10TH FLOOR          │ Contact person/Telephone                    │
        BOSTON MA   02108                     │ Maire Hazen Field/330-374-6512              │
                                              │ Contact person Email                        │
                                              │ mfield@firstenergycorp.com                  │
                                              │                                             │
                                              │                                             │
                                              │                                             │
  Your number with us                         │                                             │
  210033021                                   └─────────────────────────────────────────────┘

                                                Valid from:           10/01/2018
                                                Valid to :            01/31/2019
 Please deliver to:
 FE Solutions Corp
 Service Items Direct
 76 S. MAIN ST.
 AKRON OH  44304
```

 Freight Charges & FOB Terms: No freight, FOB destination
 Terms of payt.: within 45 days Due net                                        Currency USD


"Purchaser" means FirstEnergy Solutions Corp., an Ohio corporation.  FirstEnergy Service
Company is the authorized agent of FirstEnergy Solutions Corp. for purposes of executing
and administering this Agreement and is acting in each such case solely in its capacity as
authorized agent.

If a proposal/quote is attached or referenced in a purchase order, any terms or conditions
contained within the proposal/quote shall be considered additional and material terms and
conditions and are hereby objected to and rejected.

SUPPLIER CONTACT:
Attention:  Pattabi Seshadri
Phone:   214 849 1505   214 435 3011
Email:   seshadri.pattabi@bcg.com

FIRSTENERGY CONTACTS:
Buyer:   Maire Field
Phone:   330 374 6512
Email:   mfield@firstenergycorp.com

Technical Representative:   Trevor Fernandez
Phone:   330 315 6851
Email:   TFernandez@firstenergycorp.com

DESCRIPTION:  The purpose of this Purchase Order is for Retail Rebuild & Growth Plan as requested by FirstEnergy Solutions.

PERIOD OF PERFORMANCE:  The contract period of performance shall be from 10/01/2018 through 01/31/2019. FirstEnergy reserves the right to extend this Agreement as mutually agreed upon by both parties.

Invoicing:

Questions about invoices or payments or electronic payment/presentment may be directed to the Accounts Payable Help Desk at (814) 539-3200.

Please submit or view invoices electronically at the FirstEnergy Supplier Portal at vendorportal.firstenergycorp.com

Invoices must include pricing detail and must show the Purchase Order number, respective Purchase Order line item number, the transaction date, price data, taxpayer identification number, and the name of the FirstEnergy representative receiving the material or service. Each invoice must be sufficiently detailed to give the reviewer an accurate assessment of all the work performed by contractor.

---

| Item | FE Material No. | | | |
|---|---|---|---|---|
| | Order qty. | Unit | Price per unit | Net value |

---

   00001

BCG to provide Retail Rebuild & Growth Plan Consulting Services for FirstEnergy Solutions. Project to be co-led by Konark Singh and Edwardo Sackey.

Objectives:
1. Pressure test and refine the retail growth plan that is being developed by the management team (to grow from 25 TWh to 40 TWh within 2 years).  Evaluate growth potential (TWh), margins, cost to acquire, and cost to serve across multiple channels (POLR, Muni Agg, C&I, Muni/Coop), and refine a first pass business plan and high level financials.

2. Outline a low cost technology rebuild plan to scale the business very quickly (including approximate inestmeny needs and timing).  Assess scalability (post-separation) of the current platforms (including CRM, costing tools, pricing tools, risk management platforms, etc.).  Outline target technology stack that could support a low cost build-out of the retail business.

3. Support the development of the retail growth plan presentation to the creditors. Provide detailed outline of the 10/26 presentation on Day 1, and flesh out iteratively thereafter.

Payments shall be made according to the following schedule:
$100,000 due by October 31, 2018
$100,000 due by November 30, 2018
$100,000 due by December 31, 2018
$100,000 due by January 31, 2019

___

SALES TAX
Taxes, if any, shall be shown separately on any bids or invoices sent to Purchaser. Direct Payment Permit Numbers authorizing purchase of tangible personal property without payment of the tax at the time of purchase, have been issued by various states to Purchaser.  The Direct Payment Permit Numbers/Sales Tax Exemptions by state are as follows:

Maryland
The Potomac Edison Company - Direct Pay Permit issued by unnumbered
Allegheny Energy Supply Company - Sales Tax Exemption Certificate is available upon request
In Maryland, Sales and Use Tax Regulations 03.06.01.32-2 and 03.06.01.19.C.(3) provide for tax-exempt purchase of materials used in a production activity by contractors performing real property construction, improvements, alterations and repairs.  In order to qualify for tax exemption, the property must be used directly and predominantly in the production activity of generating electricity for sale.  Contract bids should be submitted accordingly.  The successful bidder will be issued a Maryland Sales and Use Tax Exemption Certificate upon request to permit tax-exempt purchase of qualifying materials.

Michigan
Sales Tax Exemption Certificate is available upon request.

New Jersey
Jersey Central Power & Light Company - 00118

Ohio
American Transmission Systems, Inc. - 98-002721
FirstEnergy Generation, LLC - 98-002723
FirstEnergy Nuclear Operating Company - 98-002722
Ohio Edison Company - 98-001123
The Cleveland Electric Illuminating Company - 98-000312
The Toledo Edison Company - 98-001495
In Ohio, Direct Payment Permits do not apply to construction contracts under which the contractor is considered to be the consumer and liable for the tax on materials incorporated into a structure or improvement as provided in Section 5739.01 (B) Ohio Revised Code.

Pennsylvania
FirstEnergy Generation, LLC - 00398
FirstEnergy Nuclear Operating Company - 00399
Metropolitan Edison Company - 00135
Pennsylvania Electric Company - 00127
Pennsylvania Power Company - 00128
West Penn Power Company - 00290
Allegheny Energy Supply Company - Sales Tax Exemption Certificate is available upon request
Trans-Allegheny Interstate Line Company - Sales Tax Exemption Certificate is available upon request
Pennsylvania Direct Payment Permits do not apply to construction contracts under which a contractor is considered to be the consumer and liable for the tax on materials incorporated into the property of Pennsylvania companies.  Pennsylvania Sales and Use Tax Regulations Sections 31.11 through 31.16 provide for tax-exempt purchase of materials by a contractor for those materials that will be incorporated into and become a part of the property of Pennsylvania companies.  In order to qualify, the property must be directly used in the rendition of the Public Utility Service.  Contract bids should be submitted accordingly.  The successful bidder will be issued a properly executed "Certification" form

upon request to permit tax-exempt purchase of qualifying materials.

Pennsylvania Withholding Tax: If applicable, in accordance with Pennsylvania law, payments of Pennsylvania source non-employee compensation, business income, or real estate lease to non-PA resident individual, single member LLC, or disregarded entity that has a non-PA resident member, reported/reportable on 1099-MISC will be subject to Pennsylvania state income tax.  Purchaser will withhold a portion of payments made to Supplier for qualifying PA 1099-MISC tax payments, unless an exemption applies and a PA 1099-MISC Withholding Exemption Certificate Form REV-1832 is provided.

West Virginia
Allegheny Energy Supply Company - 94-2-002482
Monongahela Power Company - 91-1-024150
PATH Allegheny Transmission Company - L-2000193792
The Potomac Edison Company - 91-1-086241
Trans-Allegheny Interstate Line Company - L-1375690752
West Penn Power Company - 91-1-064620
In West Virginia, Direct Payment Permits will apply to contractors performing construction contracting services. West Virginia Sales and Use Tax Regulation Section 11-15-9-(b)(2), and Administrative Notice 2011-24, provide for tax exemption for services, machinery, supplies and materials directly used or consumed in the activities of generation/production/selling of electric power, provision of a public utility service, operation of a utility service/utility business or transmission of electricity by wires. Contract bids should be submitted accordingly.  The successful bidder will be issued a WV Contractor Tax Exemption Instructions form upon request for items qualifying for tax exemption.

When Direct Payment Permits apply, Purchaser agrees to maintain adequate records of all purchases and pay tax on the taxable items directly to the Treasurer of each respective State.

Questions concerning Pennsylvania, New Jersey and Ohio sales taxes call General Taxes at (973) 401-8383.  Questions concerning Maryland, Virginia and West Virginia sales taxes call General Taxes at (724) 838-6490.


The payment terms shown on the face of this purchase order supersede the payment terms listed in the General Terms and Conditions.

The attached General Terms and Conditions dated June 01, 2010 apply to this Purchase Order.

Veterans Rule: "This contractor and subcontractor shall abide by the requirements of 41 CFR 60-300.5(a). This regulation prohibits discrimination against qualified protected veterans, and requires affirmative action by covered prime contractors and subcontractors to employ and advance in employment qualified protected veterans."

Disability Rule: "This contractor and subcontractor shall abide by the requirements of 41 CFR 60-741.5(a). This regulation prohibits discrimination against qualified individuals on the basis of disability, and requires affirmative action by covered prime contractors and subcontractors to employ and advance in employment qualified individuals with disabilities."

In the event Supplier will have access to Purchaser's Network/Systems or any of Purchaser's customer data, Supplier is required to provide Cyber Liability Insurance with limits not less than $2,000,000 per occurrence.

NEW:  The requirements of Executive Order 13496 found at 29 CFR 471 Appendix A to Subpart A (pertaining to posting of required notices of Employee Rights Under The National Labor Relations Act) are hereby incorporated by reference into this Purchase Order.

<u>Gifts and Gratuities/Conflicts of Interest</u>

Purchaser's employees are subject to conflicts of interest and gifts and gratuities policies, which generally prohibit such employees and/or their family members from giving or receiving gifts, favors, services, or privileges (including travel and entertainment, and discounts that would not be available to the general public) from existing or potential customers, suppliers, or contractors that are more than a nominal value, or that exceed the level of standard business courtesies, and the acceptance of cash, gift certificates, or loans in any amount.  The conflicts of interest policy generally prohibits Purchaser's employees and/or their family members from serving as an officer, director, employee, consultant, agent, of, or owning any beneficial interest in, an organization which has a business relationship with FirstEnergy as a supplier or contractor, if the employee is in a position to influence decisions concerning the relationship.  The entire text of these policies may be found within the Supply Chain Section at <u>www.firstenergycorp.com.</u> Suppliers and prospective suppliers to Purchaser are expected to be aware of and comply with these policies in their dealings with FirstEnergy employees and their family members. Any suspected or actual violations of these policies should be reported; and, may be reported anonymously and confidentially by a customer, supplier, contractor, or employee by calling the Employee Concerns Line (1-800-683-3625), 24 hours a day, 7 days a week.

Supplier or Contractor to execute this order and return a copy to the appropriate address below.

The Agreement may be executed in multiple counterparts, which taken together shall constitute an original without the necessity of all parties signing the same page or the same documents, and may be executed by signatures to electronically transmitted counterparts in lieu of original printed or photocopied documents. Signatures transmitted by facsimile shall be considered original signatures.

FirstEnergy Solutions Corp. (A-GO-9)
76 South Main Street
Akron, Ohio 44308-1890
Attn: Maire Field
Email: mfield@firstenergycorp.com

Supplier or Contractor to retain a copy for Supplier's/Contractor's records.

Supplier or Contractor acknowledges receipt of and agreement to this writing and the terms contained herein and in the attached terms and conditions.

***SIGNATURE LINE*

Purchaser:

FIRSTENERGY SOLUTIONS CORP.

By: _*Donald R. Schneider*_  Field, Maire 4649
    Donald R. Schneider, President  Supply Chain Specialist V
                                Nov 29 2018 10:54 AM
                                DocuSign

Seller:

By: _*Konark Singh*_

Name: Konark Singh     Title: Manager
    (Print)
Date: 11/30/2018

# FIRSTENERGY SERVICE COMPANY – GENERAL TERMS AND CONDITIONS
## FOR PURCHASE OF CONSULTING SERVICES

### ARTICLE I - DEFINITIONS
The following terms, when used in this Agreement with initial capitalization, shall have the meanings given below unless in any particular instance the context clearly indicates otherwise:

A. "Consultant," the party to be engaged in performing consulting services under the terms of this Agreement, is in the business of providing such consulting services, products, deliverables, outcomes and results.

B. "Data" - Material that includes documentation, manuals, maps, plans, schedules, programs, specifications, software, reports, drawings, designs and other relevant information furnished by Purchaser in connection with the Services;

C. "Purchaser" means FirstEnergy Service Company for itself and/or as an authorized agent of the affiliate company or companies set forth on the face of the Request for Proposal and/or Purchase Order attached hereto for which the services as specified elsewhere herein shall be performed hereunder. If more than one company is identified as the Purchaser, the liability of each company named shall be several and not joint and shall be limited to such company's interest in this Agreement, as identified on the Request for Proposal and/or Purchase Order.

D. "Purchaser's Site" includes generating stations, steam plants, substations, transmission and distribution lines, towers, poles, buildings, or other locations owned or leased by Purchaser, for which the services are intended, to which the services are to be delivered or where the services are to be carried out (if it is not to be performed at the facility of Consultant or others).

E. "Specifications" means the portion of this Agreement that describes the products and services to be delivered by Consultant under this Agreement, including dimensions, components, attachments, technical and non-technical requirements and characteristics, standards, performance requirements, and tolerances. Should any conflict occur between portions of the Specifications and these terms and conditions, the Specifications shall take precedence only when and to the extent that such does not result in any way in the dilution or diminution of the rights or benefits of the Purchaser under these terms and conditions.

F. "Deliverable" means all final versions of proposals, materials, reports and presentations prepared by Consultant for delivery to Purchaser.

### ARTICLE II – TERMS OF AGREEMENT

A. Agreement. The terms and conditions set forth in this document, together with the Request for Proposal and/or Purchase Order and all attachments, exhibits, revisions, and supplements thereof, shall constitute the agreement between Purchaser and Consultant (the "Agreement"). In case of any error, inconsistency or omission in the various documents of the Agreement, the matter will be submitted immediately to Purchaser, without whose decision said discrepancy shall not be adjusted by Consultant.

B. Offer and Acceptance. Consultant's acknowledgement, commencement of performance to furnish the materials, equipment, or services which are the subject of this Agreement, or any conduct by Consultant which recognizes the existence of a contract pertaining to the subject matter hereof shall constitute acceptance by Consultant of this Agreement and all of its terms and conditions. Acceptance of this Agreement is expressly limited to Consultant's assent to all of the terms and conditions of this Agreement. Additional or different terms provided in Consultant's acceptance of Purchaser's offer which vary in any degree from any of the terms herein or expressly referenced on the face of the Request for Proposal and/or Purchase Order herewith shall be deemed material and are hereby objected to and rejected. If this Agreement shall be deemed an acceptance by Purchaser in response to an offer by Consultant and if any terms herein are additional to or different from any terms of such offer, then the issuance of this Agreement by Purchaser shall constitute an acceptance expressly conditioned upon Consultant's assent to all of the terms and conditions of this Agreement. Additional or different terms in any acknowledgement, invoice, or communication submitted by Consultant, or any attempt by Consultant to vary in any degree any of the terms of this Agreement, unless expressly agreed to by Purchaser, shall be deemed material and are hereby objected to and rejected. Any such terms proposed by Consultant, whether by offer or acceptance, shall be void unless expressly agreed to in writing by Purchaser.

C. Integration; Modification. This Agreement sets forth the entire agreement of Purchaser and Consultant concerning the subject matter hereof. No other agreements or understandings, whether written or oral, whether express or implied, shall be binding on Purchaser and Consultant. No amendment, modification, or rescission of this Agreement shall be enforceable unless the same is in writing and signed by the party against whom the terms of such amendment, modification, or rescission are sought to be enforced.

D. Non-Exclusivity. This Agreement is not exclusive, and Purchaser may at its sole discretion contract with others to perform such work as is herein contemplated, or may perform such work with its own forces.

E. Audit. Consultant will maintain complete auditable records directly related to the Services provided to Purchaser under this Agreement for the purpose of assessing Consultant's compliance with the terms of this Agreement for a period of at 2 years after the completion of such Services. Any such review of Consultant's records, shall be conducted at reasonable times, on reasonable notice, during normal business hours and no more than once annually during the term of this Agreement or any extension of the term. Nothing herein shall obligate Consultant to disclose to Purchaser any documents or other material relating to the profitability or internal profit and loss/balance sheets associated with Consultant's business, payroll information, or information or material that constitute, in the opinion of Consultant's legal counsel, legally privileged documents or information that the Consultant is bound to maintain as confidential by written obligation to a third party.

### ARTICLE III - CONSULTANT'S PERSONNEL

A. Relationship of Parties. In performing the Services, Consultant shall operate as and have the status of an independent Consultant and shall not act as or be an agent or employee of Purchaser. Nothing in this Agreement or in the performance of the Services shall be construed to create a partnership, joint venture or other joint business arrangement between Purchaser and Consultant.

B. Employees. Consultant shall employ for the Services only persons known to it to be experienced, qualified, reliable and trustworthy. At Purchaser's request, the credentials of any of Consultant's employees assigned to perform the Services shall be submitted to Purchaser in advance of such assignment. During the performance of the Services, Purchaser may object to any Consultant employee who, in Purchaser's opinion, does not meet these criteria. In such case, Consultant shall, at its expense and risk, replace or remove such employee as soon as reasonably practicable.

C. Background Checks. Subject to applicable laws, Purchaser may on an SOW basis require, to the extent Consultant's consultants assigned to a Purchaser case team are required to enter and work on Purchaser's premises for a period greater than thirty (30) days in order to carry out the Services, to undergo a credit check and/or criminal background check consisting of the components provided for in the SOW as a condition to performing services for Purchaser. Such checks will be conducted by Consultant at Purchaser's expense. Individual test results will not be disclosed to Purchaser but Consultant will provide Purchaser a letter certifying that the requested checks have been completed. Any personnel who do not successfully pass the test(s) will not be assigned to a Purchaser case team. Purchaser acknowledges and agrees that Consultant employees subject to the credit and/or background screening will have the option of declining the opportunity to perform the Services if they do not wish to undergo a credit and/or background check subject to Consultant's obligation to provide replacement personnel.

D. Substance Abuse. Consultant agrees to comply with all applicable state and federal laws regarding drug-free workplace.

E. Gifts and Gratuities/Conflicts of Interest. Purchaser ("FirstEnergy") enforces policies governing the conduct of its employees in carrying out its business activities, including contact with third-party business partners. The conflicts of interest & gifts and gratuities policies generally prohibit FirstEnergy employees and/or their family members from giving or receiving gifts, favors, services, or privileges (including travel or entertainment) from existing or potential customers, suppliers, or contractors that are more than a nominal value, or that exceed the level of standard business courtesies, and the acceptance of cash, gift certificates, or loans in any amount. The conflicts of interest policy generally prohibits FirstEnergy employees and/or their family members from serving as an officer, director, employee, consultant, agent, or Buyer of a beneficial interest in an

Boston Consulting Group and FirstEnergy Solutions Revised Terms effective June 1, 2010 - CNSLT FINAL REV 24 01-16-09
Page 1 of 6
18-50757-amk    Doc 1780    FILED 12/03/18    ENTERED 12/03/18 11:15:33    Page 11 of 16

organization which has a business relationship with FirstEnergy as a supplier or contractor, if the FirstEnergy employee is in a position to influence decisions concerning the relationship. The entire text of these policies may be found within the Supply Chain Section at www.firstenergycorp.com. Suppliers and prospective suppliers to FirstEnergy are expected to be aware of and comply with these policies to the extent applicable to Consultant in their dealings with FirstEnergy employees and their family members. *Any suspected or actual violations of these policies should be reported; and, may be reported anonymously and confidentially by a customer, supplier, contractor, or employee by calling the Employee Concerns Line (1-800-683-3625), 24 hours a day, 7 days a week.*

### ARTICLE IV – SCOPE OF WORK

Consultant agrees to provide Purchaser with professional consulting services (the "Services") as defined in the Request for Proposal/Purchase Order. The Services shall include providing all data, technical information, reports, deliverables, products, outcomes, results, information, new discoveries, inventions, improvements, technical consulting or other technical services (including but not limited to design services, analytical services, quality assurance, and the like), direction of any work or performance of any labor, and all other facilities and services which are necessary for the performance of this Agreement by the Consultant.

### ARTICLE V – COMPENSATION AND TERMS OF PAYMENT

A. Compensation for the Services performed, as well as the terms of payment thereof, shall be as described on the face of the Request for Proposal/Purchase Order.

B. For Services specified by Purchaser to be performed on a time and materials basis, each invoice must: (a) detail by activity the man-hours worked by Consultant; (b) detail by activity the labor cost; (c) detail the direct reimbursable costs in connection with the Services; (d) indicate the cumulative cost to date for all activities; (e) indicate the total monthly cost of the Services; and (f) include other information reasonably required by Purchaser.

C. Each invoice shall, after approval by the Purchaser, be processed for payment in accordance with the terms of payment as set forth on the face of the Request for Proposal/Purchase Order, for the amount of each approved invoice less any monies retained per the terms of payment or under Section D below.

　　1. Unless otherwise set forth herein, payment terms are 2%10 Net 45 Days. Payment dates shall be calculated from the date of receipt of invoice or acceptance of the Deliverables by Purchaser, whichever is later. Payments by Purchaser shall not be deemed evidence of acceptance by Purchaser of the services or goods called for hereunder.

　　2. Electronic Invoices. If it is reasonably able, Supplier shall utilize the Purchaser's then current Electronic Invoice Presentment and Payment Program to submit invoices and receive payment electronically from Purchaser.

D. Withholding.

　　1. If Purchaser has a claim under this Agreement, regardless of when it is discovered, including a claim that: (a) Consultant's invoice is erroneous; (b) the Services is deficient, defective or incomplete; (c) a third party claim has been asserted or there is reasonable evidence indicating the possibility of a claim; (d) Consultant fails to make a payment as and when due to a subcontractor or supplier for materials, labor or equipment; (e) Purchaser, another Consultant, subcontractor, or other party suffers damage or injury which is attributable to Consultant; or (f) Consultant has failed to supply any affidavit, release or waiver of lien which Purchaser may require pursuant to law; then Purchaser may withhold payment of, or set off the amount of its claim, costs, and/or losses against, any amount invoiced to it. If any monies are so withheld, they shall be paid only when, without cost to the Purchaser, the cause of such withholding has been eliminated. Moreover, if any monies are so withheld, Purchaser shall not be responsible for any interest payment to Consultant.

　　2. New Jersey Withholding. If applicable, in accordance with New Jersey law, we shall withhold a portion of payments made to you (Supplier, Contractor, Consultant, or similar party) for services to construct, improve, alter, or repair a building, structure, or improvement to real property unless you provide written documentation that you are a corporation or registered with the State of New Jersey.

E. Consultant is deemed to be self-employed; and accordingly, no sums are contemplated to be withheld from Consultant's compensation to cover the payment of income taxes, FICA (social security), FUTA (unemployment compensation) or other taxes. Consultant agrees to file all required federal, state and local income tax and other tax returns (including, without limitation, all required declarations of estimated tax) covering Consultant's compensation hereunder. Consultant agrees to pay all such taxes and contributions when due; and Consultant hereby indemnifies Purchaser and holds it harmless from and against any and all loss, cost and liability whatsoever incurred by or claimed against Purchaser for any failure of Consultant to comply herewith.

### ARTICLE VI - STANDARD OF PERFORMANCE

A. Consultant warrants that it shall perform and supply the Services with the care, skill, and diligence set forth by the applicable professional standards, if any, currently recognized by such profession. Consultant warrants that it shall be responsible for the quality, technical accuracy, completeness, delivery, and implementation of the Services; provided, however, that Purchaser will be solely responsible for the performance of its employees and agents and for the accuracy and completeness of all data and information provided to Consultant hereunder. Purchaser acknowledges and agrees that Consultant's performance is dependent upon the timely and effective satisfaction of Purchaser's responsibilities hereunder and timely decisions and approvals of Purchaser in connection with the services provided hereunder. Consultant shall be entitled to rely on all decisions and approvals of the applicable Purchaserrepresentative or his or her designee.

　　1. In the event that there are no such standards, the Services shall be performed with due diligence and with the best efforts of the Consultant.

　　2. Purchaser's review and approval of Consultant's or its Subcontractor's specifications, drawings, plans and other such documents shall in no way relieve or lessen Consultant's responsibilities set forth in this Agreement.

B. Consultant shall cure any breach of the foregoing warranties at no cost to Purchaser.

### ARTICLE VII - INTELLECTUAL PROPERTY RIGHTS

A. Ownership of Deliverables and Data. Consultant agrees all Deliverables shall be owned exclusively by and be the property of Purchaser. Purchaser agrees that it will not, without first obtaining Consultant's approval, which Consultant will not unreasonably withhold, redistribute the Deliverables outside of its organization in any manner that makes attribution of the Deliverables to Consultant. Consultant will retain ownership of any drafts, notes, analyses, and other workpapers prepared or generated by Consultant during the course of providing the Services. Consultant shall also retain ownership of its underlying intellectual property, including its knowledge of business principles, and those analytical concepts, approaches, methodologies, models, processes, discoveries, ideas, and formats developed by Consultant staff in the course of its work for Purchasers, or during its own research ("Consultant Intellectual Property"). In the course of providing the Services, Consultant may also develop or enhance its collective knowledge. Consultant hereby assigns to Purchaser a perpetual, world-wide, limited, non-transferable license to use Consultant Intellectual Property to the extent necessary to enable Purchaser to implement the ideas and recommendations provided by Consultant in the course of providing the Services.

B. Infringement. Consultant agrees to indemnify, defend and hold harmless Purchaser from and against any and all liability, damages, costs and expense, including reasonable legal fees, for third party claims arising out of any allegation that the use of the Deliverables as contemplated hereunder, infringe any copyright, patent, trade secret or other proprietary right. If any such Deliverable or any portion thereof is found by final non-appealable order of a court of competent jurisdiction to infringe the intellectual property right of a third party, Consultant, at its sole option and expense, shall have the right to (i) procure for Purchaser the continued use of such Deliverable, (ii) replace such Deliverable with a non-infringing

Boston Consulting Group and FirstEnergy Solutions Revised Terms effective June 1, 2010 - CNSLT FINAL REV 24 01-16-09
Page 2 of 6

18-50757-amk    Doc 1780    FILED 12/03/18    ENTERED 12/03/18 11:15:33    Page 12 of 16

Deliverable, or (iii) modify the Deliverable such that it becomes non-infringing; provided that such remedy, together with the indemnity obligations hereunder, shall be Purchaser's sole recourse against Consultant for any such allegation of infringement. Consultant shall have no liability or obligation to indemnify Purchaser for any claim of infringement based upon use of a superseded or altered version of any Deliverable, if such infringement would have been avoided by the use of the Deliverable in the version that Consultant has provided to Purchaser.

C. Data Furnished by Purchaser. All Data furnished by Purchaser in connection with the Services shall remain Purchaser's exclusive property. Consultant shall not use Purchaser-furnished Data for any purpose other than for performing the services hereunder.

## ARTICLE VIII - INDEMNITY

A. Consultant's Indemnity. Consultant shall indemnify, defend, and hold harmless Purchaser, its subsidiaries and affiliates, and their respective officers, employees, successors, and assigns, (the "Indemnified Parties"), from and against any and all losses, costs, damages, claims, liabilities, fines, penalties, and expenses (including, without limitation, reasonable attorneys' and other professional fees and expenses, and court costs, incurred in connection with the investigation, defense, and settlement of any claim asserted against any Indemnified Party or the enforcement of Consultant's obligations under this Article VIII) (collectively, "Losses"), incurred as a result of third party claims arising directly from (i) any negligent act or omission by Consultant or its Subcontractors, (ii) any violation by Consultant or any Subcontractor of any ordinance, regulation, rule, or law of the United States or any political subdivision or duly constituted public authority, or (iii) any uncured breach by Consultant of its obligations, warranties and representations set forth in this Agreement or any SOW hereunder. As a condition to the foregoing indemnity obligations, Purchaser shall provide Consultant with prompt written notice of any claim for which indemnification is sought hereunder and shall cooperate in all reasonable respects (provided that Consultant shall cover all of Purchaser's reasonable out-of-pocket expenses associated therewith) with Consultant in connection with any such claim.

B. Consultant's indemnity obligations under Section VIII(A) shall not apply to any Losses to the extent such Losses are found to have been initiated or proximately caused by or resulting from the negligence or willful misconduct of any of the Indemnified Parties.

E. No Impairments. Consultant's obligations under this Article VIII shall not be limited to the extent of any insurance available to or provided by Consultant.

## ARTICLE IX – INSURANCE

A. Consultant's Insurance. Consultant agrees to secure and maintain in force minimum policies of insurance of the types listed below and shall furnish to Purchaser, prior to starting Services and throughout the duration of the Services, certificates of insurance evidencing current coverage listed below. These certificates shall be endorsed with substantially the following language:

"This policy will not be canceled or allowed to lapse, and no change shall be made in this policy which alters, restricts or reduces the insurance provided or changes the name of the insured without first giving at least thirty (30) days' notice in writing to FirstEnergy Service Company, Insurance Risk Management, 76 South Main Street, Akron, Ohio 44308, with receipt of notice acknowledged."

    1. Commercial General Liability (CGL) insurance including products-completed operations, independent contractors, and contractual liability coverages. Coverage under this policy shall have limits of liability of not less than $2,000,000 per occurrence, combined single limit for bodily injury (including disease or death), personal injury, and property damage (including loss of use) liability.

    2. Automobile Liability insurance, including non-ownership and hired car endorsement, with minimum limits of $1,000,000 per occurrence, combined single limit.

    3. Worker's Compensation coverage in the statutory amounts under the worker's compensation act(s) of the location(s) in which the Services is to be performed, for the current period.

    4. Employer's Liability with a minimum limit of $1,000,000 for each accident or illness.

Any of the above per-occurrence limits may be satisfied by a combination of primary and excess liability coverage.

B. Additional Insured. FirstEnergy Corp. and its subsidiaries and affiliates shall be included as an additional insured for CGL and Automobile Liability policies, it being understood that said policies shall be primary and non-contributory with insurance carried by Purchaser and shall contain a cross-liability clause providing severability of interests so that coverage will respond as if separate policies were in force for each insured. A signed copy of the endorsement adding FirstEnergy Corp. and its subsidiaries and its affiliates as an additional insured shall be attached to the certificate of insurance providing general liability coverage.

C. Lapse of Coverage. In the event of cancellation or lapse of or prohibited change in any policy for which a certificate is required to be furnished under this Agreement, Purchaser shall have the right to suspend the work of Consultant until the policy and certificates in evidence thereof are reinstated or arrangements acceptable to Purchaser are made pending issuance of new policies and certificates.

If any such insurance shall be about to lapse or be canceled, Consultant shall, at least thirty (30) days before coverage thereunder ceases, obtain a new policy with like coverage, and if Consultant fails to do so, Purchaser may obtain insurance protecting it from the hazards covered by such lapsed or cancelled policy, and all premiums and expenses of such insurance shall be charged against Consultant and shall be a legitimate deduction from any sum due it from Purchaser.

D. Waiver of Subrogation. Consultant and any of its Subcontractors shall waive and hereby waives any rights of subrogation which they or any of their insurers may have against Purchaser, its affiliates, and each non-affiliated company disclosed in this Agreement, their respective agents or employees.

## ARTICLE X - TERM & TERMINATION

A. Purchaser may terminate this Agreement at any time, including with respect to any Services in process, if (a) Consultant fails to obtain, or maintain as valid, any license, permit or approval required to allow lawful performance of the Services; (b) Purchaser determines, in its sole discretion, that Consultant is not complying with any law; (c) Consultant has failed to perform the Services in accordance with the acceptable practices and customary diligence of the profession or industry of which Consultant is a member or in a timely way; (d) Consultant breaches any material term or condition of this Agreement; or (e) Purchaser determines, in its sole discretion, that Consultant is not financially stable or responsible. Notice of termination pursuant to this Paragraph X(A) shall be in writing and shall be effective upon receipt thereof.

B. Purchaser may terminate this Agreement for any reason at any time upon ten (10) days prior written notice. In the event of termination under this Section X, Consultant shall be entitled to and shall receive payment in full for all services provided and all reimbursable expenses incurred up to and including the effective date of termination.

## ARTICLE XI – COMPLIANCE WITH LAWS, REGULATIONS, AND PERMITS

A. During the performance of this Agreement, Consultant shall strictly comply with all federal, state and local laws, rules or regulations and executive orders applicable to the Services and Consultant.

B. Without limiting the foregoing, and unless exempted under the rules, regulations and relevant orders (41 CFR Chapter 60) of the Secretary of Labor, in connection with the Services, Consultant agrees as follows:

    1. Consultant shall not discriminate against any employee or applicant for employment because of race, color, religion, sex or national origin. Consultant shall take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex or national origin. Such action shall include, but not be limited to, employment, upgrading, demotion or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. Consultant shall post in conspicuous places, available to employees and applicants for employment, notices to be provided by the U.S. Department of Labor setting forth the provisions of this nondiscrimination clause.

    2. Consultant shall state, in all solicitations or advertisements for employees placed by or on its behalf, that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex or national origin.

Boston Consulting Group and FirstEnergy Solutions Revised Terms effective June 1, 2010 - CNSLT FINAL REV 24 01-16-09
Page 3 of 6

18-50757-amk    Doc 1780    FILED 12/03/18    ENTERED 12/03/18 11:15:33    Page 13 of 16

C. Because Purchaser (or if applicable, one or more affiliates or non-affiliated companies) is a supplier of electricity and/or services to the U.S. government, it must include, and Consultant shall comply with to the extent applicable to Consultant, the below listed clauses from the Federal Acquisition Regulation ("FAR"), 48 Code of Federal Regulations Chapter 1, as amended from time to time, if the applicable criteria specified in the FAR (those currently applicable are summarized parenthetically) are met. If Consultant's subcontracts meet such criteria, Consultant shall include the terms or substance of the applicable clause in its subcontracts. If the provisions of this paragraph C conflict with the balance of the Agreement, this paragraph C shall prevail.
   1. 52.203-6 Restrictions on Subcontractor Sales to the Government (required in all subcontracts under this Agreement which exceed $100,000);
   2. 52.203-7 Anti-Kickback Procedures (required in all subcontracts under this Agreement which exceed $100,000, other than those for commercial items);
   3. 52.204-2 Security Requirements (required in all subcontracts under this Agreement which involve access to classified information);
   4. 52.219-8 Utilization of Small Business Concerns (required in all non-personal subcontracts with a value greater than $100,000);
   5. 52.219-9 Utilization of Small Business Concerns will be included in all subcontracts that offer further subcontracting opportunities, and that Purchaser will require all subcontractors (except small business concerns) that receive subcontracts in excess of $550,000 ($1,000,000 for construction) to adopt a subcontracting plan that complies with the requirements of this clause);
   6. 52.222-4 Contract Work Hours and Safety Standards Act—Overtime Compensation (required in all subcontracts exceeding $100,000, unless otherwise exempted);
   7. 52.222-26 Equal Opportunity (required in all contracts/subcontracts; however, if the cumulative value of nonexempt Federal contracts/subcontracts is $10,000 or less in any 12 month period, including the 12 months preceding the award, the contractor/subcontractor is exempt from the clause requirements);
   8. 52.222-35 Affirmative Action for Disabled Veterans and Veterans of the Vietnam Era (required in all contracts/subcontracts with a value of $10,000 or more);
   9. 52.222-36 Affirmative Action for Workers with Disabilities (required in all contracts/subcontracts with a value of $10,000 or more);
   10. 52.222-37 Employment Reports on Disabled Veterans and Veterans of the Vietnam Era (required in all contracts/subcontracts with a value of $10,000 or more);
   11. 52.223-14 Toxic Chemical Release Reporting (Except for acquisitions of commercial items, and unless otherwise exempt, this clause is required for competitive subcontracts expected to exceed $100,000, including all options, and in any resultant subcontract exceeding $100,000, including all options);
   12. 52.225-13 Restrictions on Certain Foreign Purchases (required in all subcontracts for contracts with a value exceeding $2,500, unless otherwise exempted);
   13. 52.222-11 Subcontracts (Labor Standards) (required in all service contracts in excess of $2,000 for construction within the United States) This provision requires that the following clauses be inserted into contracts meeting the criteria: Davis-Bacon Act, Contract Work Hours and Safety Standards Act—Overtime Compensation, Apprentices and Trainees, Payrolls and Basic Records, Compliance with Copeland Act Requirements, Withholding of Funds, Subcontracts (Labor Standards), Contract Termination—Debarment, Disputes Concerning Labor Standards, Compliance with Davis-Bacon and Related Act Regulations, and Certification of Eligibility.
   14. 52.222-41 Service Contract Act of 1965, as Amended (required in all service contracts subject to the Act (i) which exceed $2,500; or (ii) which are for an indefinite dollar amount and the contracting officer does not know in advance that the contract amount will be $2,500 or less).
D. Consultant shall comply with the Department of Commerce Export Administration Regulations ("EAR") in 15 CFR Chapter VII, subchapter C, including 15 CFR Section 734.2 which prohibits the export or release of controlled technology and/or software to foreign nationals within the United States who are not lawfully admitted to the United States for permanent residence. Consultant shall confirm that these regulations either do not apply to Consultant's activities under the terms of this Agreement or that Consultant has procedures to ensure compliance. If Consultant is directly or indirectly employing a foreign national not currently lawfully admitted to the United Sates for permanent residence to perform work under this Agreement, Consultant warrants to Purchaser that such employment does not violate the foregoing regulations.
E. FOREIGN CORRUPT PRACTICES ACT PROVISIONS The following provisions shall apply to Consultant (unless it is a foreign concern) if it performs or obtains any of the Services in a foreign country:
   1. All payments to Consultant shall be by check or bank transfer only. No payment shall be in cash or by bearer instrument and no payment shall be made to any corporation or person other than Consultant. All payments due hereunder shall be made to Consultant at its principal place of business in the United States, even if Consultant performs or obtains the Services in a foreign country.
   2. Consultant represents that it is familiar with the Foreign Corrupt Practices Act (the "FCPA") and its purposes; and that, in particular, it is familiar with the prohibition against paying or giving of anything of value, either directly or indirectly, by an American company to an official of a foreign government for the purpose of influencing an act or decision in his official capacity, or inducing him to use his influence with that government, to assist a company in obtaining or retaining business for or with, or directing business to, any person.
   3. Consultant represents that none of its partners, purchasers, principals, and staff members are officials, officers, or representatives of any government or political party or candidates for political office. Consultant shall not use any part of its compensation for any purpose, and shall take no action, that would constitute a violation of any law of the United States (including the FCPA) or of any jurisdiction where it performs services or manufactures or sells goods. Purchaser represents that it does not desire and will not request any Services by Consultant that would or might constitute any such violation.
   4. Purchaser may terminate the Contract for default at any time, without any liability or obligation, if it believes, in good faith, that Consultant has violated this Article. Any action by Consultant which would or might constitute a violation of the FCPA, or a request for such action from Consultant's representative, shall result in immediate termination of the Contract for default. Should Consultant ever receive, directly or indirectly, from any Purchaser representative a request that Consultant believes will or might violate the FCPA, Consultant shall immediately notify Purchaser's general counsel.
   5. Purchaser may disclose the existence and terms of the Contract, including the compensation provisions, at any time, for any reason and to whomever Purchaser's general counsel determines has a legitimate need to know the same including, without limitation, the United States government, the government of any country where the Services is performed or obtained, and any regulatory agency with jurisdiction over Purchaser.
F. Consultant shall comply with the Occupational Safety and Health Act of 1970 and all rules, regulations, standards, requirements, and revisions thereof or adopted pursuant thereto.
G. Unless this Agreement otherwise provides, Consultant shall, at its own expense, obtain from appropriate governmental authorities all permits, inspections and licenses which are required for the Services and comply with all rules and regulations of insurance companies which have insured any of the Services.
H. Any costs, fines, penalties, awards, damages or other liabilities associated with any violations of this Article by Consultant shall be borne and paid by Consultant.
I. If applicable, Consultant agrees to comply with all Hazard Communication Standards promulgated by the Occupational Safety and Health Administration (OSHA), 29 CFR 1910.1200, et seq., as amended, to insure that chemical hazards produced, imported, or used with the workplace are evaluated, and that hazard information is transmitted to affected employees of Consultant, of any subcontractor or of Purchaser.

Boston Consulting Group and FirstEnergy Solutions Revised Terms effective June 1, 2010 - CNSLT FINAL REV 24 01-16-09
Page 4 of 6

18-50757-amk    Doc 1780    FILED 12/03/18    ENTERED 12/03/18 11:15:33    Page 14 of 16

J. Consultant acknowledges and agrees that its employees, if given access to FirstEnergy's (FirstEnergy Corp., its subsidiaries and affiliates) Information and Control Systems, may be required to sign an agreement governing Consultant's and such employees' use of such systems.

K. Consultant shall comply with all requirements of any governmental regulatory codes of conduct applicable to the work performed under this Agreement and to Consultant, including the FERC Standards of Conduct (Order No. 2004); New Jersey BPU Affiliate Relations, Fair Competition, and Accounting Standards (N.J.A.C. 14:4-5.1 et seq.); Ohio Corporation Separation Rules (O.A.C. 4901:1-20-16); and Pennsylvania PUC Competitive Safeguard regulations (52 Pa. Code §§ 54.121 and 54.122); or any successor to those provisions.

## ARTICLE XII- SET-OFF

Purchaser shall be entitled at all times to set-off any amount owing from Consultant to Purchaser or any affiliate of Purchaser against any amount payable by Purchaser hereunder, and in no event shall Purchaser be liable for interest.

## ARTICLE XIII – LIMITATION OF LIABILITY

Under no circumstances shall either party, their respective subsidiaries and affiliates, be liable for any anticipated profits or for incidental or consequential damages. Notwithstanding anything to the contrary contained herein, each party's aggregate liability to the other for damages concerning performance or nonperformance by such party or in any way related to this Agreement, and regardless of whether the claim for such damages is based in contract, tort, strict liability, or otherwise, shall not exceed the amount of fees paid or payable by Purchaser under the applicable Statement of Work under which liability arose. Notwithstanding the foregoing, the limitation of liability set forth in this paragraph does not apply to Losses arising out of infringement or misappropriation of patents, trade secrets or other intellectual property rights.

## ARTICLE XIV – ASSIGNMENT AND SUBCONTRACTS

A. Consultant may not assign any rights or claims, or delegate any duties under this Agreement, in whole or in part, without the prior written consent of Purchaser, which may be withheld at Purchaser's sole discretion. In the event of any assignment or delegation permitted hereunder, Consultant shall continue to be liable for the performance of its obligations hereunder. For purposes of this Agreement, the term "assignment" shall include a transfer of Consultant's rights hereunder, and/or a succession to its obligations hereunder (i) by operation of law, including a merger, consolidation, corporate reorganization, reclassification or liquidation of Consultant or a sale of all or substantially all of Consultant's assets, or (ii) by a change in the control of Consultant. As used herein, "control" means the possession, directly or indirectly, of the power to direct or cause the direction of Consultant's management and policies, whether through ownership of or the right to vote a majority of the voting stock in the case of a corporation, or the comparable interest in the case of any other entity, or by contract, or otherwise.

B. If Consultant proposes to subcontract any of the Services hereunder, it shall submit to Purchaser the name of each proposed Subcontractor(s) prior to engaging such Subcontractor, with the proposed scope of the Services to be undertaken and such information about the Subcontractor(s) as Purchaser may reasonably request. Purchaser may reject any and all Subcontractors at its absolute discretion.

## ARTICLE XV - NON-WAIVER

The delay or failure of either party to assert or enforce in any instance strict performance of any of the terms of this Agreement or to exercise any rights hereunder conferred, shall not be construed as a waiver or relinquishment to any extent of its rights to assert or rely upon such terms or rights at any later time or on any future occasion.

## ARTICLE XVI-- PROHIBITION OF PUBLICITY

Consultant shall not refer to this Agreement or reference the Purchaser, its subsidiaries and affiliates, directly or indirectly, in its advertising or promotional materials without express written consent of Purchaser. Except as required by law, no reference may be made to Consultant in any prospectus, proxy statement, offering memorandum or comparable document, or materials prepared for public distribution.

## ARTICLE XVII CONFIDENTIALITY

A. Consultant agrees that the Data, drawings, plans, specifications, calculations, reports and other documents and information associated with the services provided hereunder, regardless of form, and any information that Consultant receives from Purchaser, or observes in connection with its business dealings with Purchaser, shall be deemed and treated by the parties as the confidential information of the Purchaser (referred to herein as "Confidential Information"). Consultant shall return Confidential Information to Purchaser upon completion of performance of this Agreement; provided, however, that Consultant shall have the right to retain for its internal, confidential records, one (1) copy of each final proposal, presentation, report or deliverable prepared by Consultant. Unless otherwise requested by Purchaser, Consultant will also retain information to be used in any ongoing work with Purchaser and one (1) copy of materials necessary to explain the analysis contained in Consultant presentations and reports. Except upon request by Purchaser, Consultant will not retain any drafts of its work for Purchaser.

B. Consultant shall not use or disclose Confidential Information for any reason or purpose without the prior written consent of the Purchaser. Consultant may use Confidential Information for the sole purpose of the performance of this Agreement for the benefit of the Purchaser. Consultant will take all precautions and actions to prevent sale, transfer, sublicense, use or disclosure of Confidential Information to any third party.

C. Notwithstanding, the restrictions set forth in this Article XVII shall not apply to Confidential Information: (a) which is in the public domain at the time it was disclosed by Purchaser to Consultant; or (b) which can be demonstrated by written records was already known to Consultant prior to the time it was disclosed to Consultant by Purchaser; or (c) which is independently developed by employees of Consultant who did not receive Confidential Information and who developed without the use or benefit of Confidential Information; or (d) which is disclosed to Consultant from a source other than Purchaser without breach of this or any other agreement by the person disclosing to the Consultant and without breach of this Agreement or any other duty of the Consultant; or (e) is required to be disclosed by Consultant to comply with applicable laws or governmental or regulatory regulations or subpoena or other valid order of a court or administrative agency, provided that Consultant provides prior written notice of such disclosure to Purchaser and reasonably cooperates with Purchaser in its efforts to obtain a protective order or otherwise avoid and/or minimize the extent of such disclosure.

## ARTICLE XVIII– SEVERABILITY

If any portion of this Agreement is held invalid, the Parties agree that such invalidity shall not affect the validity of the remaining portions of this Agreement, and the Parties further agree to substitute for the invalid portion a valid provision that most closely approximates the economic effect and intent of the invalid provision.

## ARTICLE XIX - FORCE MAJEURE

Neither party shall be liable to the other for any expenses, loss or damage resulting from delays or prevention of performance arising from causes beyond its reasonable control caused by fire, flood, accident, strikes, civil commotion, governmental or military authority, insurrection, riots, embargo, unavoidable delays in transportation, acts of God, or public enemy. In the event of any delay arising by reason of any of the foregoing events, the time for performance shall be extended by a period of time equal to the time lost by reason of such delay or as otherwise agreed to in writing by the parties. The Consultant will notify the Purchaser as soon as reasonably practical and in writing within forty-eight (48) hours of the Consultant's becoming aware of a force majeure occurrence as defined herein which will or has caused a delay. Within seven (7) working days of such occurrence, the Consultant will further define the precise cause or causes of the delay, the measures taken or to be taken to minimize the delay, the time table by which the measures will be implemented, the duration of the delay, the extension of time for performance of the Agreement the Consultant is claiming and documented evidence that support the claim. The Purchaser will review the Consultant's claim and advise the Consultant in writing of Purchaser's decision regarding the Consultant's claim for extension of time for performance of the Agreement.

## ARTICLE XX – SALES TAX

Boston Consulting Group and FirstEnergy Solutions Revised Terms effective June 1, 2010 - CNSLT FINAL REV 24 01-16-09
Page 5 of 6

18-50757-amk    Doc 1780    FILED 12/03/18    ENTERED 12/03/18 11:15:33    Page 15 of 16

Taxes, if any, shall be shown separately on any bids or invoices sent to Purchaser. Direct Payment Permit Numbers authorizing purchase of tangible personal property without payment of the tax at the time of purchase, have been issued to Purchaser. The Permit Numbers are 98001123 for Ohio Edison Co., 128 for Pennsylvania Power Co., 98002722 for FirstEnergy Nuclear Operating Co., 98000312 for The Cleveland Electric Illuminating Co., 98001495 for The Toledo Edison Co., DP-210-485-010 for Jersey Central Power and Light Co., 127 for Pennsylvania Electric Company Co., 135 for Metropolitan Edison Co. and 98-002723 for FirstEnergy Generation Corp. In Michigan, a Michigan Sales and Use Tax Certificate of Exemption shall be made available upon request. Purchaser agrees to maintain adequate records of all purchases and pay tax on the taxable items directly to the Treasurer of each respective State. In Ohio, Direct Payment Permits do not apply to construction contracts under which the contractor is considered to be the consumer and liable for the tax on materials incorporated into a structure or improvement as provided in Section 5739.01 (B) Ohio Revised Code. Pennsylvania Direct Payment Permits do not apply to construction contracts under which a contractor is considered to be the consumer and liable for the tax on materials incorporated into the property of Pennsylvania companies. Pennsylvania Sales and Use Tax Regulations Sections 31.11 through 31.16 provide for tax-exempt purchase of materials by a contractor for those materials that will be incorporated into and become a part of the property of Pennsylvania companies. In order to qualify, the property must be directly used in the rendition of the Public Utility Service. Contract bids should be submitted accordingly. The successful bidder will be issued a properly executed "Certification" form upon request to permit tax-exempt purchase of qualifying materials.

Questions concerning Pennsylvania or New Jersey sales taxes should be directed to the FirstEnergy Service Company, at (973) 401-8323. Questions about Ohio sales taxes (and states other than Pennsylvania or New Jersey), should be directed to the FirstEnergy Service Company, at (330) 384-5334.

## ARTICLE XXI – GOVERNING LAW

Unless otherwise stated on the face of the Purchase Order, this Agreement is to be governed by and interpreted in accordance with the law of the State of Ohio. The parties expressly exclude the applicability of the United Nations Convention on Contracts for the International Sale of Goods, if the same would otherwise apply here. Any legal suit, action, or proceeding to collect payment due hereunder from Purchaser, or otherwise arising out of or relating to this Agreement, may be (and, if against Purchaser, must exclusively be) instituted in a State or Federal Court in the County of Summit, State of Ohio, and Consultant waives any objection which it may have now or hereafter to the laying of the venue of any such suit, action or proceeding and hereby irrevocably submits to the jurisdiction of any such court in any such suit, action or proceeding.

## ARTICLE XXII - INTERPRETATION

The following principles of interpretation shall apply to this Agreement: (i) paragraph headings and captions are inserted for convenience only and shall not be considered in construing intent; (ii) neither Purchaser nor Consultant shall be considered to be the party responsible for the drafting of any particular provision of this Agreement; (iii) the words "hereof," "herein," "hereunder," and words of similar import shall refer to this Agreement as a whole and not to any particular provision hereof; (iv) the word "including" means "including, but not limited to" and shall be interpreted as broadly as possible; (v) words in the singular include the plural and vice versa, (vi) All references to "days" shall be calendar days (and not merely business days, unless the Agreement so states), and (vii) any provision hereof that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction and the provision that is prohibited or unenforceable shall be reformed or modified to reflect the parties' intent to the maximum extent permitted by applicable legal requirements.

## ARTICLE XXIII - EXECUTION AND COUNTERPARTS

This Agreement may be executed in multiple counterparts, which taken together shall constitute an original without the necessity of all parties signing the same page or the same documents, and may be executed by signatures to electronically or telephonically transmitted counterparts in lieu of original printed or photocopied documents. Signatures transmitted by facsimile shall be considered original signatures.

FIRSTENERGY SOLUTIONS CORP
Signature: _____
Name: DONALD R SCHNEIDER
Title: PRESIDENT FIRSTENERGY SOLUTIONS
Date: 6/16/10

BOSTON CONSULTING GROUP
Signature: _____
Name: PATTABI SESHADRI
Title: PARTNER & MANAGING DIRECTOR
Date: 6/14/10

Boston Consulting Group and FirstEnergy Solutions Revised Terms effective June 1, 2010 - CNSLT FINAL REV 24 01-16-09
Page 6 of 6

18-50757-amk    Doc 1780    FILED 12/03/18    ENTERED 12/03/18 11:15:33    Page 16 of 16