**This document was signed electronically on December 19, 2018, which may be different from its entry on the record.**

**IT IS SO ORDERED.**

**Dated:  December 19, 2018**



**ALAN M. KOSCHIK**
**U.S. Bankruptcy Judge**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FIRSTENERGY SOLUTIONS CORP., *et al.*,[1] | ) Case No. 18-50757 |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) Hon. Judge Alan M. Koschik |
| | ) |

### ORDER APPROVING (A) BID PROCEDURES, (B) PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND RELATED NOTICES, (C) NOTICE OF AUCTION AND SALE HEARING, AND (D) RELATED RELIEF

Upon consideration of the *Motion of FirstEnergy Generation, LLC Pursuant to 11 U.S.C.*

*§§ 105, 363, 365, and 503 and Fed. R. Bankr. P. 2002, 6004, and 6006 for Entry of (I) Order*

*Approving (A) Bid Procedures, (B) Procedures for Assumption and Assignment of Certain*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: FE Aircraft Leasing Corp. (9245), case no. 18-50759; FirstEnergy Generation, LLC (0561), case no. 18-50762; FirstEnergy Generation Mansfield Unit 1 Corp. (5914), case no. 18-50763; FirstEnergy Nuclear Generation, LLC (6394), case no. 18-50760; FirstEnergy Nuclear Operating Company (1483), case no. 18-50761; FirstEnergy Solutions Corp. (0186); and Norton Energy Storage L.L.C. (6928), case no. 18-50764.  The Debtors' address is: 341 White Pond Dr., Akron, OH 44320.

*Executory Contracts and Related Notices, (C) Notice of Auction and Sale Hearing, and (D)*
*Related Relief and (II) Order (A) Approving the Sale of FirstEnergy Generation, LLC's West*
*Lorain Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests, (B) Approving*
*Assumption and Assignment of Certain Executory Contracts and Related Cure Amounts, and (C)*
*Granting Related Relief* [Docket No. 1730] (the "<u>Motion</u>")[2] filed by FirstEnergy Generation, LLC

("<u>FG</u>"), one of the debtors and debtors-in-possession in the above-captioned chapter 11 cases

(collectively, the "<u>Debtors</u>"); and upon (i) the Cowan Declaration and (ii) the Warvell

Declaration; and the Court having conducted a hearing on December 18, 2018; and all parties in

interest having been heard or having had the opportunity to be heard regarding the Motion; and it

appearing that adequate and proper notice of the Motion has been given and that no other or

further notice need be given; and upon the record of hearing and all of the proceedings had before

the Court; and the Court having found and determined that the relief sought in the Motion is in the

best interests of FG, its estates, its creditors and all other parties in interest; and that the legal and

factual bases set forth in the Motion, and the testimony adduced at the hearing, establish just

cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefore, it is HEREBY FOUND AND DETERMINED THAT:[3]

  A.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).  This

is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief

requested in the Motion are sections 105, 363 and 365 of title 11 of the United States Code, 11

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to those terms in the Motion.

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

U.S.C. §§ 101, *et seq*. (the "<u>Bankruptcy Code</u>") and Rules 2002, 6004, 6006, 9006 and 9014 of the Federal Rules of Bankruptcy Procedures (the "<u>Bankruptcy Rules</u>").

B.        On the Petition Date, the Debtors commenced the Chapter 11 Cases.  On April 3, 2018, the Court entered an order [Docket No. 126] authorizing the joint administration of the Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b).  The Debtors have operated their businesses and managed their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases.

C.        Proper, timely, adequate and sufficient notice of the Motion has been provided, as relevant, in accordance with Bankruptcy Code Sections 102(1), 363 and 365 and Bankruptcy Rules 2002, 6004, 6006 and 9014 to all creditors, parties in interest and other interested persons and entities.  Specifically, notice of this Motion has been provided to: (i) the Office of the United States Trustee for the Northern District of Ohio (the "<u>U.S. Trustee</u>"); (ii) the Stalking Horse Purchaser; (iii) the Official Committee of Unsecured Creditors (the "<u>Committee</u>"); (iv) all persons known by FG to have expressed an interest to FG in a transaction with respect to the West Lorain Assets during the past twelve (12) months; (v) all non-Debtor parties to the Assigned Contracts, (vi) all entities known by FG to have asserted any lien, claim, encumbrance or other interest in the West Lorain Assets (for whom identifying information and addresses are available to FG); (vii) any Governmental Authority known to have an interest related to the West Lorain Assets; (viii) all parties who have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002; and (ix) any other persons as directed by the Court (for whom identifying information and addresses are available to FG) (collectively, the "<u>Sale Notice Parties</u>").  The

3

foregoing notice was good, sufficient and appropriate under the circumstances, and no other or further notice is required.

D.     The legal and factual bases set forth in the Motion, the Cowan Declaration and the Warvell Declaration establish just cause for the relief granted herein.  The entry of this Order and approval of the relief sought in the Motion (including approval of the Bid Protections) are in the best interests of FG, its estates, its creditors and other parties in interest.

E.     FG has articulated good and sufficient reasons for the Court to approve (i) the Bid Procedures for the sale of the West Lorain Assets, (ii) the Assumption and Assignment Procedures, (iii) the establishment of a date for the Auction, (iv) the form and manner of notices of the Auction and the Assumption and Assignment Procedures,[4] and (v) related relief in connection with the sale of the West Lorain Assets.  Such good and sufficient reasons were set forth in the Motion or have been described at the hearing, are incorporated by reference herein, and, among other things, form the basis of the findings of fact and conclusions of law set forth herein.

F.     FG has demonstrated that the Bid Procedures are fair, reasonable and appropriate and are designed to maximize the value of FG's estate.

G.     The Stalking Horse Agreement with the Stalking Horse Purchaser represents the highest or otherwise best offer FG has received to date for the sale of the West Lorain Assets. Approval of the Stalking Horse Purchaser as a "stalking horse" bidder and the Stalking Horse Agreement as a "stalking horse" sale agreement is in the best interests of FG and FG's estate and creditors, and it reflects a sound exercise of FG's business judgment.  The Stalking Horse Agreement provides FG with the opportunity to sell the West Lorain Assets to preserve and

---

[4] A copy of the Notice of Assumption and Assignment to be served on the Contract Notice Parties (as defined herein) (the "Notice of Assumption and Assignment") are annexed hereto as **Exhibit 2**.

realize their highest available value.  The Stalking Horse Agreement will enable FG to secure a fair baseline price for the West Lorain Assets at the Auction and, accordingly, will provide a clear benefit to FG's estate, its creditors and all other parties in interest.

H.      The Bid Protections, including, but not limited to, the Termination Fee and Expense Reimbursement[5] (i) have been negotiated by the Stalking Horse Purchaser and FG, and their respective advisors, at arms' length and in good faith and (ii) are necessary to ensure that the Stalking Horse Purchaser will continue to pursue its Stalking Horse Agreement and the proposed sale of the West Lorain Assets.  The Termination Fee and Expense Reimbursement, to the extent payable under the Stalking Horse Agreement, (a) are an actual and necessary cost and expense of preserving assets of FG within the meaning of section 503(b) of the Bankruptcy Code and shall be treated as allowed administrative expense claims against FG's estate pursuant to section 105(a), 503(b) and 507(a)(2) of the Bankruptcy Code, (b) are commensurate to the real and material benefits conferred upon FG's estate by the Stalking Horse Purchaser, and (c) are fair, reasonable and appropriate, including in light of the size and nature of the sale and the efforts that have been and will be expended by the Stalking Horse Purchaser.  The Bid Protections, including, but not limited to, the Termination Fee and Expense Reimbursement, are a material inducement for, and condition of, the Stalking Horse Purchaser's execution of the

---

[5] In connection with payment of the Expense Reimbursement authorized under this Order, the Stalking Horse Purchaser shall provide a statement (the "Expense Invoice") via e-mail to the United States Trustee and the Committee.  Upon receipt of an Expense Invoice, the United States Trustee and the Committee shall have ten (10) days (the "Review Period") to provide the Stalking Horse Purchaser with written objections to any expenses (the "Disputed Expenses") requested in such Expense Invoice.  Following the expiration of the Review Period, the Debtors shall pay to the Stalking Horse Purchaser all amounts due under the Expense Reimbursement other than Disputed Expenses, if any.  To the extent any objections to the Disputed Expenses cannot be resolved, the United States Trustee, the Committee or the Stalking Horse Purchaser may request a determination by the Court with respect to such Disputed Expenses by filing with the Court a motion or other pleading, on at least seven (7) days' prior written notice to the United States Trustee, the Committee, and the Stalking Horse Purchaser, as applicable, of any hearing on such motion or other pleading, setting forth specific objections to the Disputed Expenses.  In the event any Disputed Expenses are resolved either by the parties or by the Court in favor of the Stalking Horse Purchaser, the Debtors, upon notice of any such resolution, shall pay such Disputed Expenses to the Stalking Horse Purchaser.

Stalking Horse Agreement. FG's decision to enter into the Stalking Horse Agreement and grant the Bid Protections is a sound exercise of FG's business judgment. The Bid Protections, including, but not limited to, the Termination Fee and Expense Reimbursement, are an actual and necessary cost and expense of preserving FG's estate. The Stalking Horse Purchaser has provided an actual and necessary benefit to FG, its estate and its creditors by providing a baseline of value, increasing the likelihood of competitive bidding at the Auction, and facilitating participation of other bidders in the sale process, thereby increasing the likelihood that FG will receive the best possible price and terms for the West Lorain Assets. Without the Bid Protections, including, but not limited to, the Termination Fee and Expense Reimbursement, the Stalking Horse Purchaser is unwilling to remain obligated to consummate a sale or otherwise be bound under the Stalking Horse Agreement (including the obligation to maintain its committed offer while such offer is subject to higher or better offers as contemplated by the Bid Procedures).

I.    The Stalking Horse Purchaser is not an "insider" or "affiliate" of FG, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling shareholders exists between the Stalking Horse Purchaser and FG. The Stalking Horse Purchaser and its respective counsel and advisors have acted in "good faith" within the meaning of section 363(m) of the Bankruptcy Code in connection with the Stalking Horse Purchaser's negotiation of and entry into the Stalking Horse Agreement. All negotiations between the Stalking Horse Purchaser, FG, and their respective advisors have been in good faith, at arms' length and without collusion.

J.    The proposed Notice of Assumption and Assignment, substantially in the form annexed as **Exhibit 2**, is adequate and reasonably calculated to provide adequate notice

concerning the proposed assumption, assignment and sale of FG's executory contracts (the "Assumed Contracts") and will provide due and adequate notice of the relief sought in the Motion.

K.      The procedures set forth below regarding notice to all parties in interest of the time, date and place of the hearing to consider approval of the sale of FG's West Lorain Assets (the "Sale Hearing"),[6] and the filing of objections thereto, comply with Bankruptcy Rule 2002 and constitute sufficient notice to all interested parties and provide sufficient notice of the proposed Sale Transaction.

L.      The notice of the Motion, the Bid Procedures Hearing and the proposed entry of this Order are adequate and sufficient under the circumstances of these Chapter 11 Cases, and such notice complied with all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules.  Accordingly, no further notice of the Motion, the Bid Procedures Hearing or this Order is necessary or required.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.      The Motion is granted as provided herein.

2.      All objections to the relief granted herein that have not been withdrawn with prejudice, waived or settled, and all reservations of rights included in such objections, are hereby overruled with prejudice.

3.      The Bid Procedures are hereby approved in their entirety in the form annexed hereto as **Exhibit 1** and are incorporated herein.  The failure to specifically include or reference any particular provision of the Bid Procedures in the Motion or this Order shall not diminish or

---

[6] A form of notice of the Sale Hearing is annexed hereto as **Exhibit 3**.

otherwise impair the effectiveness of such procedures, it being this Court's intent that the Bid Procedures are approved in their entirety, as if fully set forth in this Order. All actions of FG as authorized herein may be taken by any officer or director of FG. Notwithstanding the foregoing, the consummation of the sale of the West Lorain Assets shall remain subject to entry of a further order of the Court (the "Sale Order"), which shall serve as an order approving the Sale Transaction free and clear of any interests under section 363 of the Bankruptcy Code.

4.      FG is authorized to proceed with the bidding process in accordance with the Bid Procedures and is authorized to take any and all actions necessary or appropriate to implement the Bid Procedures in accordance with the terms thereof and the following timeline:

| | |
|---|---|
| **Deadline to File Notice of Assumption and Assignment and Schedule of Proposed Cure Costs, If Any** | **December 20, 2018** |
| **Deadline to Serve Sale Hearing Notice** | **December 20, 2018** |
| **Bid Deadline** | **January 9, 2019 (at 5:00 p.m.)** |
| **Deadline to Notify Qualified Bidders** | **January 10, 2019 (at 5:00 p.m.)** |
| **Auction (if required)** | **January 15, 2019 (at 9:00 a.m.)** |
| **Deadline to Publish Notice of Auction Results** | **January 16, 2019** |
| **Deadline to Object to Sale Transaction** | **January 18, 2019 (at 4:00 p.m.)** |
| **Assumption and Assignment Objection Deadline** | **January 18, 2019 (at 4:00 p.m.)** |
| **Sale Hearing** | **January 25, 2019 (at 10:00 a.m.)** |

5.      The process for submitting Qualified Bids (as defined in the Bid Procedures) is fair, reasonable and appropriate and is designed to maximize recoveries for the benefit of FG's

8

estate, its creditors and other parties in interest. Any disputes as to the selection of a Qualified Bidder and the Successful Bidder(s) (as defined in the Bid Procedures) shall be resolved by this Court.

6. FG is authorized to conduct the Auction in the event they receive one or more timely and acceptable Qualified Bids (other than the Stalking Horse Purchaser's bid). If the Stalking Horse Purchaser's bid, as reflected in the Stalking Horse Agreement, is determined by FG, in its sole and absolute discretion, subject only to the exercise of its business judgment in accordance with its fiduciary duties, in consultation with the Supporting Parties and the Committee, to be the only Qualified Bid in respect of the West Lorain Assets that is received by FG by the Bid Deadline, no Auction will be conducted for the West Lorain Assets and the Stalking Horse Purchaser shall be deemed the Successful Bidder for the West Lorain Assets.

7. Subject to final Court approval at the Sale Hearing, FG is authorized to enter into the Stalking Horse Agreement with the Stalking Horse Purchaser. Any material amendment to the Stalking Horse Agreement must be filed with and approved by the Bankruptcy Court while the Chapter 11 Cases remain pending.

8. The Bid Protections are approved in their entirety, including, without limitation, the right to a Termination Fee of 2.5% of the Initial Purchase Price, as defined in the Stalking Horse Agreement, plus an Expense Reimbursement of up to 1% of the Initial Purchase Price, as defined in the Stalking Horse Agreement. Except as expressly provided for herein, no other Bid Protections are authorized or permitted under this Order.

9. FG is authorized to pay the Termination Fee and Expense Reimbursement, to the extent payable under the Stalking Horse Agreement, without further order of the Court. The Termination Fee and Expense Reimbursement, to the extent payable under the Stalking Horse

Agreement, shall constitute an allowed administrative expense claim against FG's estate pursuant to sections 105(a), 503(b) and 507(a)(2) of the Bankruptcy Code. The Termination Fee and Expense Reimbursement shall only be paid pursuant to the provisions of the Stalking Horse Agreement. Notwithstanding the terms of the Stalking Horse Agreement, a termination of the Stalking Horse Agreement pursuant to Section 9.01(h) thereof shall not entitle the Buyer to the Expense Reimbursement.

10. The form of Notice of Assumption and Assignment annexed hereto as **<u>Exhibit 2</u>** is approved. The Notice of Assumption and Assignment (i) contains the type of information required under Bankruptcy Rule 2002 that is currently known to FG and (ii) is reasonably calculated to provide due, adequate, and timely notice to all counterparties of (a) the potential assumption and assignment of the Assumed Contracts and rights thereunder, (b) the proposed Cure Costs for Assumed Contracts, if any, and (c) the deadline to file objections to such assumption and assignment, applicable Cure Costs, the existence of any defaults, and/or adequate assurance of future performance.

11. No later than December 20, 2018, FG shall file with the Court and serve via first class mail on (i) all counterparties to FG's executory contracts (the "<u>Executory Contracts</u>") that the Stalking Horse Purchaser wishes to assume in connection with the Sale Transaction (the "<u>Assumed Contracts</u>") and (ii) all parties who have requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002, a notice of assumption, and assignment, substantially in the form of the Notice of Assumption and Assignment as **<u>Exhibit 2</u>**, listing all of the Assumed Contracts that the Stalking Horse Purchaser proposes to be assumed and assigned to it, which shall include FG's calculation of the amount necessary to cure any monetary defaults (the "<u>Cure Costs</u>") for each Assumed Contract. Service of such Notice of Assumption and Assignment as

approved and set forth herein shall be deemed proper, due, timely, good, and sufficient notice of, among other things, the proposed assumption and assignment of the Assumed Contracts and rights thereunder, the Cure Costs, and the procedures for objecting thereto, and no other or further notice is necessary. In the event that the Stalking Horse Purchaser is not the Successful Bidder, FG shall file a schedule of any Executory Contracts that were not designated as Assumed Contracts by the Stalking Horse Purchaser (such contracts, "Newly Designated Assumed Contracts," but which the Successful Bidder wishes to assume, no later than one (1) day following the conclusion of the Auction. Any counterparty to such Newly Designated Assumed Contract that objects to the assumption and assignment of such contract to the Successful Bidder must file an objection no later than the commencement of the Sale Hearing.

12. Any counterparty to an Assumed Contract that objects to the proposed Cure Costs or the assumption of its Assumed Contract must file any objection to (i) the proposed assumption and assignment of the applicable Assumed Contract (and must state in its objection, with specificity, the legal and factual basis thereof) and (ii) if applicable, the proposed Cure Costs (and must state in its objection, with specificity, what Cure Costs are required with appropriate documentation in support thereof) no later than **January 18, 2019 at 4:00 p.m. (Eastern Time)** (the "Assumption and Assignment Objection Deadline"), on (i) FG, FirstEnergy Generation, LLC, 341 White Pond Drive, Akron, OH 44320 (Attn: Rick Giannantonio, Esq.); (ii) counsel for FG, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036-6745 (Attn: David H. Botter, Esq. and Zachary Wittenberg, Esq.) and 1333 New Hampshire Avenue, N.W., Washington, DC 20036 (Attn: Scott L. Alberino, Esq. and Kate Doorley, Esq.); (iii) local counsel for FG, Brouse McDowell LPA, 388 South Main St., Suite 500, Akron, OH 44311 (Attn: Kate Bradley, Esq. and Bridget A. Franklin, Esq.); (iv) the Office of the United States Trustee, Howard

M. Metzenbaum U.S. Courthouse, 201 Superior Avenue East, Suite 441, Cleveland, OH 4414 (Attn: Tiiara Patton, Esq.); (v) counsel to the Stalking Horse Purchaser King & Spalding LLP, 1185 Avenue of the Americas, New York, NY 10036 (Attn: Jonathan M.A. Melmed, Esq.); (vi) counsel to the Ad Hoc Noteholder Group, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036 (Attn: Joshua K. Brody, Esq.); (vii) counsel to the Mansfield Certificateholders Group, Latham & Watkins LLP, 885 Third Avenue, New York, NY 10022 (Attn: George A Davis, Esq. and Andrew Parlen, Esq.); (viii) counsel to the Committee, Milbank, Tweed, Hadley & McCloy LLP, 28 Liberty Street, New York, NY 10005 (Attn: Evan Fleck, Esq. and Parker Milender, Esq.); and (ix) counsel to the Mortgage Trustee, Pryor Cashman LLP, 7 Times Square, New York, NY 10036 (Attn: Patrick Sibley, Esq.) (collectively, the "Objection Notice Parties"); *provided* that if a Successful Bidder other than the Stalking Horse Purchaser prevails at the Auction, then as soon as practicable after the conclusion of the Auction, FG shall file with the Bankruptcy Court a notice that identifies the Successful Bidder(s).

13.     If a counterparty to an Assumed Contract files a timely objection asserting a higher Cure Cost than the Cure Costs set forth in the Notice of Assumption and Assignment or otherwise objecting to the assumption and assignment of the Assumed Contract, and the parties are unable to resolve the dispute consensually prior to the commencement of the Sale Hearing, the amount to be paid or reserved with respect to such objection shall be determined at the Sale Hearing or at a subsequently scheduled hearing as mutually agreed to by FG and the relevant counterparty.  The Cure Costs set forth in the Notice of Assumption and Assignment, if any, shall be controlling, notwithstanding anything to the contrary in any Assumed Contract, or any document, and the counterparty to the Assumed Contract shall be deemed to have consented to the Cure Costs and shall be forever barred from asserting any other claims related to such

Assumed Contract against FG or the Successful Bidder, or the property of any of them. All other objections to the proposed assumption and assignment of FG's right, title, and interest in, to, and under the Assumed Contracts shall be heard at the Sale Hearing.

14. If no objection is timely filed and served, the counterparty to an Assumed Contract shall be deemed to have consented to the assumption and assignment of the Assumed Contract to the Successful Bidder and shall be forever barred from asserting any objection. Any objections by a counterparty to an Assumed Contract to any Successful Bidder's proposed adequate assurance of future performance must be raised prior to the Sale Hearing and shall be resolved at the Sale Hearing.

15. The form of Sale Hearing Notice, substantially in the form annexed hereto as **Exhibit 3**, is approved.

16. Within two (2) business days after the Court enters this Order, FG (or its agents) shall serve the Sale Hearing Notice by first class mail on the Sale Notice Parties.

17. By December 20, 2018, FG (or its agents) shall cause a summary version of the Sale Hearing Notice to be published on the website established by FG's court approved claims and noticing agent, PrimeClerk LLC, at http://www.cases.primeclerk.com/FES.

18. Service of the Sale Hearing Notice as approved and set forth herein shall be deemed proper, due, timely, good, and sufficient notice of, among other things, the entry of this Order, the Bid Procedures, the Auction, the Sale Hearing, and the proposed sale, including the transfer of FG's right, title, and interest in, to, and under the West Lorain Assets free and clear of any and all liens, claims, encumbrances, and other interests, and no other or further notice is necessary.

19.     Objections to the sale of the West Lorain Assets (including the sale of the West Lorain Assets subject to such objection free and clear of liens, claims, encumbrances, and interests pursuant to section 363(f) of the Bankruptcy Code) and entry of the Sale Order (other than objections to the assumption and assignment of Assumed Contracts) (each, a "Sale Objection") must: (i) be in writing and specify the nature of such objection; (ii) comply with the Bankruptcy Rules; (iii) be filed with the Clerk of the Court, United States Bankruptcy Court for the Northern District of Ohio at 455 U.S. Courthouse, 2 South Main Street, Akron, Ohio 44308, together with proof of service on or before **January 18, 2019 at 4:00 p.m. (Eastern Time)** (the "Sale Objection Deadline"); and (iv) be served, so as to be actually received on or before the Sale Objection Deadline upon the Objection Notice Parties.  All Sale Objections will be heard by the Court at the Sale Hearing.

20.     The failure of any objecting person or entity to timely file and serve a Sale Objection by the Sale Objection Deadline shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, or to the consummation and performance of the sale contemplated by the Stalking Horse Agreement or any purchase agreement with any Successful Bidder, including the transfer of the West Lorain Assets to the Stalking Horse Purchaser or the Successful Bidder, free and clear of all liens, claims, encumbrances and other interests pursuant to section 363(f) of the Bankruptcy Code and will be deemed to consent to the sale, including the transfer of FG's right, title, and interest in, to and under the West Lorain Assets in accordance with the Stalking Horse Agreement or asset purchase agreement with any Successful Bidder, free and clear of all liens, claims encumbrances and other interests pursuant to section 363(f) of the Bankruptcy Code.

14

21.     Any party desiring to submit a bid for FG's right, title and interest in, to and under the West Lorain Assets must comply with the Bid Procedures.  Only representatives of FG, Qualified Bidders, the Stalking Horse Purchaser, the Mortgage Trustee, and the advisors for the Committee and the Supporting Parties shall be entitled to be present at the Auction.  Any and all other creditors or parties interested in attending the Auction must provide FG with notice of their intent to attend the auction no later than ten (10) days before the Auction by sending a fax or email to counsel for FG, Akin Gump Strauss Hauer & Feld LLP (Attn: David H. Botter, Esq., Zachary Wittenberg, Esq., and Kate Doorley, Esq. email: dbotter@akingump.com; zwittenberg@akingump.com; kdoorley@akingump.com; Fax: (212) 872-1002).  FG may object to and request a hearing regarding the attendance of any particular Person at the Auction.

22.     FG may, in its sole and absolute discretion, subject only to the exercise of its business judgment in accordance with its fiduciary duties, following consultation with the advisors to the Supporting Parties and the Committee, adjourn or cancel the Auction at or prior to the Auction.  If the Auction is cancelled or if the date, time, or place of the Auction is changed, FG shall file a notice with the Court regarding such cancellation or modification and shall publish the notice on the website established by PrimeClerk at http://cases.primeclerk.com/FES.

23.     The Auction shall be transcribed and may be videotaped.

24.     FG may, in its sole and absolute discretion, subject only to the exercise of its business judgment in accordance with its fiduciary duties, following consultation with the advisors to the Supporting Parties and the Committee, make alterations to the Bid Procedures and/or terminate discussions with any and all prospective acquirers at any time and without specifying the reasons therefor, but only to the extent not materially inconsistent with the Bid Procedures, but including changes so as to modify deposit amounts, subsequent bid increments,

the makeup of Qualified Bids, and to modify or eliminate the requirements with respect to Back-Up Bidders.

25.     On or before January 16, 2019, FG shall cause the results of the Auction, including a copy of the Successful Bid, the identity of the Successful Bidder, and the Successful Bidder's proposed form of adequate assurance of future performance, to be filed with the Court and published on the website of PrimeClerk.

26.     Copies of the Stalking Horse Agreement and Bid Procedures may be downloaded at http://cases.primeclerk.com/FES or obtained upon receipt of a written request to the attorneys for FG, Akin Gump Strauss Hauer & Feld LLP, 1333 New Hampshire Avenue, NW, Washington, DC 20036 (Attn: Kate Doorley, Esq.).

27.     The notice to be provided pursuant to the procedures set forth herein is good and sufficient notice to all parties in interest, and no other further notice need be provided.

28.     FG is hereby authorized to execute any additional or supplemental documents incident to the relief granted pursuant to this Order.

29.     Notwithstanding Bankruptcy Rules 6004, 6006, or otherwise, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  To the extent applicable, the stays described in Bankruptcy Rules 6004(h) and 6006(d) are hereby waived.

30.     The terms of this Order shall control to the extent of any conflict with the Motion.

31.     The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

# # #

16

SUBMITTED BY:

*/s/ Bridget A. Franklin*
**BROUSE MCDOWELL LPA**
Marc B. Merklin (0018195)
Kate M. Bradley (0074206)
Bridget A. Franklin (0083987)
388 South Main Street, Suite 500
Akron, OH 44311-4407
Telephone: (330) 535-5711
Facsimile: (330) 253-8601
mmerklin@brouse.com
kbradley@brouse.com
bfranklin@brouse.com

- and -

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira Dizengoff (admitted *pro hac vice*)
Lisa Beckerman (admitted *pro hac vice*)
David H. Botter (admitted *pro hac vice*)
Brad Kahn (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
lbeckerman@akingump.com
bkahn@akingump.com

- and -

Scott Alberino (admitted *pro hac vice*)
Kate Doorley (admitted *pro hac vice*)
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
salberino@akingump.com
kdoorley@akingump.com

*Counsel for Debtors and Debtors in Possession*

**Exhibit 1**

**Bid Procedures**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |
|---|---|
| In re: | )   Chapter 11 |
|  | ) |
| FIRSTENERGY SOLUTIONS CORP., *et al.*,[1] | )   Case No. 18-50757 (AMK) |
|  | )   (Jointly Administered) |
| Debtors. | ) |
|  | )   Hon. Judge Alan M. Koschik |
|  | ) |

## BID PROCEDURES FOR THE SALE OF FIRSTENERGY GENERATION LLC'S WEST LORAIN FACILITY

FirstEnergy Generation LLC ("FG"), one of the above captioned debtors and debtors-in-possession (collectively, the "Debtors"), sets forth the following bidding procedures (the "Bid Procedures") to be employed in connection with an auction (the "Auction") to be held if FG receives one or more Qualified Bids (as defined herein) for the sale of the West Lorain Facility and related assets and the assumption of the related liabilities (collectively, the "West Lorain Assets"). At a hearing following the Auction (the "Sale Hearing"), FG will seek the entry of an order (the "Sale Order") from the United States Bankruptcy Court for the Northern District of Ohio (the "Court") authorizing and approving the transactions contemplated by the Stalking Horse Agreement, a copy of which is attached to the Motion as Exhibit D together with any and all subsequently filed amendments thereto (the "Stalking Horse Agreement") or a Modified Asset Purchase Agreement (as defined herein) between FG and the Qualified Bidder that FG determines, in consultation with the Supporting Parties (as defined in the Process Support Agreement)[2] and the Official Committee of Unsecured Creditors (the "Committee"), to have made the highest or otherwise best bid (the "Successful Bid" and each such bidder, a "Successful Bidder"), as such Stalking Horse Agreement or Modified Asset Purchase Agreement may have been revised during the Auction. The Stalking Horse Agreement provides for the transfer of FG's right, title, and interest in, to and under the West Lorain Assets and Assumed Liabilities (as defined in the Stalking Horse Agreement) pursuant to the terms and conditions set forth therein. These Bid Procedures have been approved and authorized pursuant to the *Order Approving (a) Bid Procedures, (b) Procedures for Assumption and Assignment of Certain Executory Contracts and Related Notices, (c) Notice of Auction and Sale Hearing, and (d) Related Relief* [Docket No.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: FE Aircraft Leasing Corp. (9245), case no. 18-50759; FirstEnergy Generation, LLC (0561), case no. 18-50762; FirstEnergy Generation Mansfield Unit 1 Corp. (5914), case no. 18-50763; FirstEnergy Nuclear Generation, LLC (6394), case no. 18-50760; FirstEnergy Nuclear Operating Company (1483), case no. 18-50761; FirstEnergy Solutions Corp. (0186); and Norton Energy Storage L.L.C. (6928), case no. 18-50764. The Debtors' address is: 341 White Pond Dr., Akron, OH 44320.

[2] The Process Support Agreement is attached as Exhibit 1 to the order included with the *Motion of Debtors for Entry of Order (I) Authorizing the Debtors to Assume (A) the Process Support Agreement and (B) the Standstill Agreement and (II) Granting Related Relief* [Docket No. 203].

] entered by the Court on [    ] (the "Bid Procedures Order").  A summary of relevant deadlines is below:

| | |
|---|---|
| **Deadline to File Notice of Assumption and Assignment and Schedule of Proposed Cure Costs, If Any** | **December 20, 2018** |
| **Deadline to Serve Sale Hearing Notice** | **December 20, 2018** |
| **Bid Deadline** | **January 9, 2019 (at 5:00 p.m.)** |
| **Deadline to Notify Qualified Bidders** | **January 10, 2019 (at 5:00 p.m.)** |
| **Auction (if required)** | **January 15, 2019 (at 9:00 a.m.)** |
| **Deadline to Publish Notice of Auction Results** | **January 16, 2019** |
| **Deadline to Object to Sale Transaction** | **January 18, 2019 (at 4:00 p.m.)** |
| **Assumption and Assignment Objection Deadline** | **January 18, 2019 (at 4:00 p.m.)** |
| **Sale Hearing** | **January 25, 2019 (at 10:00 a.m.)** |

## Approvals

The proposed sale of the West Lorain Assets (the "Sale Transaction") shall in all respects be subject to approval by the Court and in compliance with: (i) the applicable provisions of title 11 of the United States Code (the "Bankruptcy Code"); (ii) the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and (iii) other applicable rules, law, and Orders of the Court.

## Assets to Be Sold

The West Lorain Assets shall consist of the Purchased Assets and Assumed Liabilities (as each is defined in the Stalking Horse Agreement) related to the West Lorain Power Plant.

## Preliminary Due Diligence

Upon execution of a valid confidentiality agreement, in form and substance satisfactory to FG, any prospective bidder (each, a "Potential Bidder") identified by FG as reasonably likely to be a Qualified Bidder (as defined herein)[3] that wishes to conduct due diligence on the West

_____

[3] FG shall consult with the Committee and the Supporting Parties to the extent it determines, in an exercise of its business judgment, that a potential bidder is not reasonably likely to be a Qualified Bidder.

2

Lorain Assets may be granted access to all material information regarding the West Lorain Assets, provided that, if any Potential Bidder is (or is affiliated with) a competitor of the Debtors, FG will not be required to disclose to such Potential Bidder any trade secrets or proprietary information unless the confidentiality agreement executed by such Potential Bidder contains appropriate provisions to ensure that such trade secrets or proprietary information will not be used for an improper purpose or to gain an unfair competitive advantage; *provided, further*, that if any documents are provided to a Potential Bidder that have not previously been provided to the Stalking Horse Purchaser,[4] FG will provide such documents to the Stalking Horse Purchaser within one (1) business day of providing such documents to such Potential Bidder.

FG shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders. All due diligence requests shall be directed to Lazard Frères & Co., LLC ("Lazard"), 300 N. LaSalle Street, 23rd Floor, Chicago, IL 60654 (Attn: Tyler Cowan and David Hales). If FG determines that a Potential Bidder does not constitute a Qualified Bidder, then such Potential Bidder shall not be entitled to receive additional due diligence access or additional non-public information. FG shall have no obligation to provide due diligence access after the Bid Deadline (as defined below) to any party that has not submitted a Qualified Bid by the Bid Deadline.

### Bid Deadline

Any person or entity interested in participating in the Auction must submit a Qualified Bid (as defined herein) on or before **January 9, 2019 at 5:00 p.m. (prevailing Eastern Time)**, or such other later date and time established by FG in accordance with the terms hereof (the "Bid Deadline") in writing, to the attorneys for FG, Akin Gump Strauss Hauer & Feld LLP, 1333 New Hampshire Ave. N.W., Washington, DC 20036 (Attn: Scott L. Alberino, Esq. and Kate Doorley, Esq.) (salberino@akingump.com and kdoorley@akingump.com) and One Bryant Park, New York, NY 10036 (Attn: David H. Botter, Esq. and Zachary Wittenberg, Esq.) (dbotter@akingump.com and zwittenberg@akingump.com). FG shall provide the Supporting Parties and the Committee with copies of each bid received, *provided, however*, that the Supporting Parties and the Committee may not contact or otherwise engage in any discussions with any Qualified Bidder or Potential Bidder concerning its bid, the bidding process or the West Lorain Assets absent the express written consent of FG, which consent may be provided by e-mail from FG's counsel. FG may extend the Bid Deadline, in consultation with the Supporting Parties and the Committee, and shall promptly notify all potential bidders of any such extension.

### Qualified Bids

To participate in the bidding process and be deemed a "Qualified Bidder" each Potential Bidder must submit a "Qualified Bid" by the Bid Deadline.[5] To constitute a Qualified Bid, a bid must:

---

[4] Capitalized Terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Sale and Bid Procedures Motion.

[5] For the avoidance of doubt, the Stalking Horse Purchaser is deemed a Qualified Bidder for purposes of these Bid Procedures.

(a)     be in writing;

(b)     provide for the purchase of all or substantially all of the West Lorain Assets and identify the liabilities (including, without limitation, a proposed list of contracts, if any, that the Potential Bidder proposes to assume in connection with the transaction (the "Assigned Contracts")), if any, to be assumed by the Potential Bidder;

(c)     provide for a cash purchase price equal to or greater than the sum of: (i) $144,000,000; (ii) the Termination Fee in the amount of 2.5% of the Initial Purchase Price, as defined in the Stalking Horse Agreement; (iii) the Buyer Expense Reimbursement in the amount of 1% of the Initial Purchase Price, as defined in the Stalking Horse Agreement; and (iv) $1,000,000;

(d)     provide for payment of a Closing Adjustment Amount (as defined in the Stalking Horse Agreement) in cash on terms no less favorable to FG than those set forth in the Stalking Horse Agreement;

(e)     include an acknowledgement and representation that the Potential Bidder will assume FG's obligations that arise after the closing under the Assigned Contracts proposed to be assigned pursuant to the Sale Transaction;

(f)     include information sufficient to demonstrate the Potential Bidder's ability to comply with section 365 of the Bankruptcy Code, including providing adequate assurance of such Potential Bidder's ability to perform under the Assigned Contracts proposed in the bid to be assumed by FG and assigned to the Potential Bidder, in a form that will permit the immediate dissemination of such evidence to the counterparties to such Assigned Contracts as and when deemed necessary by FG;

(g)     to the extent a potential bidder has not already executed such an agreement, include an executed version of a valid confidentiality or non-disclosure agreement, in form and substance satisfactory to FG;

(h)     fully disclose the legal identity of each entity that will be bidding for the West Lorain Assets or otherwise participating in connection with such bid, and the complete terms of any such participation;

(i)     provide current audited financial statements and latest unaudited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the West Lorain Assets, current audited financial statements and latest unaudited financial statements of the equity holders of the Potential Bidder who will either guarantee the obligations of the Potential Bidder, or provide such other form(s) of financial disclosure and credit-quality support or enhancement that will allow FG and its advisors to make a reasonable determination as to the

4

Potential Bidder's financial and other capabilities to consummate the Sale Transaction;

(j)     state that such bidder is financially capable of consummating the transactions contemplated by the Modified Asset Purchase Agreement (as defined below) and detail the source(s) of funds that will be used to consummate the transactions;

(k)     include satisfactory evidence of committed financing or other financial ability to consummate the transactions contemplated by the Modified Asset Purchase Agreement (as defined below) in a timely manner;

(l)     fully disclose any connections or agreements with FG, any non-Debtor affiliate of FG, any other known Potential Bidders or Qualified Bidders, and/or any officer or director of FG;

(m)    contain a signed definitive asset purchase agreement, including all exhibits and schedules contemplated thereby (other than exhibits and schedules that, by their nature, must be prepared by FG or which have yet to be provided to the Potential Bidders) (the "Modified Asset Purchase Agreement"), with, at minimum, the following requirements: (i) having materially similar terms and conditions as the Stalking Horse Agreement, except with higher or otherwise better consideration, and (ii) containing terms and conditions otherwise no less favorable, as determined by FG in its sole discretion in consultation with the Supporting Parties and the Committee, to FG's estate than the terms and conditions in the Stalking Horse Agreement (provided that no Qualified Bid shall provide for the payment to the Potential Bidder of any breakup fee, topping fee, termination fee, expense reimbursement or similar arrangement);

(n)     include a marked copy of the Modified Asset Purchase Agreement reflecting the differences between the Modified Asset Purchase Agreement and the Stalking Horse Agreement;

(o)     expressly acknowledge and represent that the Potential Bidder (i) has had an opportunity to conduct any and all due diligence regarding the West Lorain Assets prior to making its bid, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and the West Lorain Assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the West Lorain Assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Modified Asset Purchase Agreement ultimately accepted and executed by FG;

5

(p)    not be conditioned upon the obtaining or sufficiency of financing or any internal approval, or on the outcome or review of due diligence;

(q)    not contain any condition to closing of the transaction on the receipt of any third-party approvals, to the extent necessary (excluding required Court approval, any required consents under the Assigned Contracts subject to the terms and conditions in the Modified Asset Purchase Agreement, and required governmental and/or regulatory approval, if any);

(r)    include evidence of authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Sale Transaction;

(s)    state the specific person(s) whom FG's investment bankers, Lazard, should contact in the event that FG has any questions or wishes to discuss the Modified Asset Purchase Agreement;

(t)    include a good faith deposit (the "Good Faith Deposit") in the form of a certified or bank check (or other form acceptable to FG in its sole and absolute discretion) payable to the order of FirstEnergy Generation, LLC in an amount equal to ten (10%) percent of the purchase price offered to purchase the West Lorain Assets. All Good Faith Deposits shall be held in an escrow account established by FG pursuant to the escrow agreement provided by FG (the "Escrow Agreement"). Each bid should include any proposed modifications to the Escrow Agreement. All Good Faith Deposits shall be held until no later than five (5) business days after the Sale Hearing and thereafter returned to the respective bidders in accordance with the Bid Procedures, unless the bidder has been selected as the Successful Bidder (as defined below);

(u)    remain open and irrevocable until five (5) business days after the Sale Hearing;

(v)    contain other information reasonably requested by FG; and

(w)    be received by the Bid Deadline.

FG will determine, in consultation with the Supporting Parties and the Committee, whether to entertain bids that do not conform to one or more of the requirements specified herein and whether to deem such bids to be Qualified Bids. FG, in its sole and absolute discretion following consultation with the Supporting Parties and the Committee, shall make a determination regarding whether a bid constitutes a Qualified Bid and shall notify bidders whether their bids have been determined to be Qualified Bids by no later than **January 10, 2019 at 5:00 p.m. (prevailing Eastern Time)** or the business day following the Bid Deadline.

If FG does not receive any Qualified Bids other than the bid set forth in the Stalking Horse Agreement, the Auction shall be cancelled and FG shall report the same to the Supporting

6

Parties, the Committee, the Stalking Horse Purchaser, the Mortgage Trustee, and the Court, and subject to obtaining approval of the Court and satisfaction of the conditions set forth in the Stalking Horse Agreement, FG shall promptly proceed to consummate the Sale Transaction with the Stalking Horse Purchaser pursuant to (and subject to) the terms and conditions set forth in the Stalking Horse Agreement. In addition, if no Qualified Bid is received (other than the Stalking Horse Agreement), FG reserves the right, subject to the consent of the Stalking Horse Purchaser, which consent shall not be unreasonably withheld, to request that the Court advance the date of the Sale Hearing and provide notice of such new date to those parties in interest entitled to notice thereof.

## Auction, Auction Procedures and Overbids

In the event that FG receives one or more timely Qualified Bids in addition to the Stalking Horse Agreement, FG shall conduct the Auction. The Auction, if required, will be conducted at the offices of Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 on **January 15, 2019 at 9:00 a.m. (prevailing Eastern Time)**, or such other time, date, and location as designated by FG, in its sole and absolute discretion, in a notice to all Qualified Bidders, the Committee, the Mortgage Trustee, and the Supporting Parties. FG reserves the right, in its sole and absolute discretion, subject only to the exercise of its business judgment in accordance with its fiduciary duties, in consultation with the Supporting Parties and the Committee, to adjourn or cancel the Auction at or prior to the Auction. If the place of the Auction is changed, FG will file a notice with the Court regarding such modification and will publish the notice on the website of Prime Clerk LLC at http://cases.primeclerk.com/FES.

The Auction shall be governed by the following procedures, subject to modification by FG as permitted by these Bid Procedures, in consultation with the Supporting Parties and the Committee. At the Auction:

(a)     the Qualified Bidders shall appear in person at the Auction, or through a duly authorized representative;

(b)     only representatives of FG, the Supporting Parties, the Committee, the Office of the United States Trustee, the Mortgage Trustee, and the Qualified Bidders shall be entitled to be present at the Auction. Any and all other creditors interested in attending the Auction must provide FG with notice of their intent to attend the Auction no later than ten (10) days before the Auction by notifying counsel for FG, Akin Gump Strauss Hauer & Feld LLP (Attn: Scott L. Alberino, Esq., David H. Botter, Esq., Zachary Wittenberg, Esq. and Kate Doorley, Esq.). FG may object to and request a hearing regarding the attendance of any particular creditor at the Auction;

(c)     only Qualified Bidders shall be entitled to make any subsequent bids at the Auction;

(d)     each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or sale;

(e)      bidding shall commence at the initial highest bid, which FG, in its sole and absolute discretion following consultation with the Supporting Parties and the Committee, shall announce to all Qualified Bidders, the Supporting Parties and the Committee no later than one (1) business day prior to the Auction (such bid, the "Opening Bid"). The Opening Bid may be an Initial Topping Bid or the Stalking Horse Purchaser's bid;

(f)      Qualified Bidders may then submit successive bids higher than the previous bid, based on and increased from the Opening Bid, in increments of at least $1,000,000, *provided* that FG reserves the right, in their sole and absolute discretion, following consultation with the Supporting Parties and the Committee, to announce reductions or increases in minimum incremental bids at any time during the Auction (each, an "Overbid");

(g)      all Qualified Bidders shall have the right to submit Overbids and make additional modifications to the Stalking Horse Agreement or their respective Modified Asset Purchase Agreement, as applicable, at the Auction to improve such bids;

(h)      the Auction may include individual negotiations with the Qualified Bidders, however, all incremental bids by Qualified Bidders shall occur in open bidding in the presence of all other Qualified Bidders;

(i)      FG reserves the right to (i) determine, in their sole and absolute discretion following consultation with the Supporting Parties and the Committee, which bid is the highest or otherwise best and (ii) reject at any time, without liability, any offer that FG, in its sole and absolute discretion following consultation with the Supporting Parties and the Committee, deems to be (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, or procedures set forth therein or in these Bid Procedures, or (c) contrary to the best interests of FG and its estate;

(j)      the Auction among Qualified Bidders shall continue according to these procedures until FG determines, in its sole and absolute discretion following consultation with the Supporting Parties and the Committee, subject to Court approval, that FG has received a Successful Bid. In making this decision, FG may consider, without limitation, the amount of the purchase price, the amount of proposed assumed liabilities, the value of any excluded assets, the form of consideration being offered, the tax consequences of such bid, the likelihood of the Qualified Bidder's ability to close a given transaction, the proposed timing thereof, and rights of such Qualified Bidder and FG with respect to the termination thereof, the number, type and nature of any changes reflected in the Modified Asset Purchase Agreement requested by each Qualified Bidder, the extent to which such changes are likely to delay closing of the Sale Transaction and the cost to FG of such changes or delay, and the net benefit to FG's estate,

8

taking into account the Stalking Horse Purchaser's rights to the Termination Fee and the Buyer Expense Reimbursement. Upon making this decision, FG shall announce the Successful Bidder in the presence of all other Qualified Bidders and close the Auction. The Qualified Bidder submitting such Successful Bid for the West Lorain Assets shall become the Successful Bidder and shall have such rights and responsibilities of a purchaser, as set forth in the Modified Asset Purchase Agreement or the Stalking Horse Agreement, as applicable;

(k)     the Auction shall be transcribed and may also be videotaped;

(l)     after consultation with the Committee and the Supporting Parties, FG may, in its sole and absolute discretion subject only to its business judgment, employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make subsequent bids) for conducting the Auction, provided that such rules are (i) not materially inconsistent with these Bid Procedures, the Bankruptcy Code, or any order of the Court and (ii) disclosed to each Qualified Bidder at the Auction; and

(m)     all bidding for the West Lorain Assets will be concluded at the Auction and there will be no further bidding at the Sale Hearing, and following the closing of the Auction, FG shall not initiate contact with, solicit, or encourage proposals from any person or entity with respect to the West Lorain Assets.

Within two (2) business days following the closing of the Auction, FG shall cause the results of the Auction, including a copy of the Successful Bid and the identity of the Successful Bidder and the Back-Up Bidder, to be filed with the Court and published on the website of Prime Clerk LLC at http://cases.primeclerk.com/FES.

## Termination Fee and Buyer Expense Reimbursement

FG has agreed that it must pay the Termination Fee and Buyer Expense Reimbursement (as defined in the Stalking Horse Agreement) to the Stalking Horse Purchaser under certain conditions and circumstances as set forth in the Stalking Horse Agreement. Payment of the Termination Fee and Buyer Expense Reimbursement shall be governed by the Stalking Horse Agreement and the Bid Procedures Order. Pursuant to the Bid Procedures Order and the Stalking Horse Agreement, the Stalking Horse Purchaser's claim to the Termination Fee and the Buyer Expense Reimbursement shall constitute an administrative expense claim.

## Back-Up Bidder and Return of Good Faith Deposit

If an Auction is conducted, the Qualified Bidder (including the Stalking Horse Purchaser) with the next highest or otherwise best Qualified Bid for the West Lorain Assets at the Auction other than the Successful Bidder (the "Back-Up Bid") as determined by FG in its sole and absolute discretion following consultation with the Supporting Parties and the Committee, shall be required to serve as the back-up bidder (the "Back-Up Bidder") for the West Lorain Assets

and keep such Back-Up Bid open and irrevocable until the first to occur of (i) 60 days after the termination of the transaction with the Successful Bidder, (ii) consummation of the transaction with the Successful Bidder, or (iii) termination of the Back-Up Bidder's obligations under the Stalking Horse Agreement or under the Modified Asset Purchase Agreement with the Successful Bidder.  Following the Sale Hearing, if the Successful Bidder fails to consummate an approved Sale Transaction whether due to the Successful Bidder's breach or otherwise, the Back-Up Bidder will be automatically deemed to be the new Successful Bidder, and FG will be authorized, but not required, to consummate the sale with the Back-Up Bidder without further order of the Court.

Except as provided herein, Good Faith Deposits shall be returned, without interest, to each bidder not selected by FG as the Successful Bidder or the Back-Up Bidder by no later than the fifth (5th) business day after the completion of the Sale Hearing, as provided for above.

## Reservation of Rights

FG reserves the right, in its sole and absolute discretion, subject only to the exercise of its business judgment in accordance with its fiduciary duties, following consultation with the Supporting Parties and the Committee, to alter or terminate these Bid Procedures, to waive terms and conditions set forth herein with respect to all potential bidders, extend the deadlines set forth herein, alter the assumptions set forth herein, provide reasonable accommodations to any potential bidders with respect to such terms, conditions, and deadlines of the Bid Procedures and bid process to promote further bids by such bidders and/or, following consultation with the Supporting Parties and the Committee, to terminate discussions with any and all prospective acquirers and investors (except for the Successful Bidder) at any time and without specifying the reasons therefor, in each case to the extent not materially inconsistent with these Bid Procedures. Any modification that FG makes to the Bid Procedures shall apply to all Qualified Bidders; *provided, however* that any modification of bidding procedures shall not be inconsistent with the Bankruptcy Code, the Bankruptcy Rules, the Bidding Procedures Order or any other order of the Court entered in the chapter 11 cases.

## Sale Hearing

The Successful Bid will be subject to approval by the Court.  The Sale Hearing will take place on **January 25, 2019 at 10:00 a.m. (prevailing Eastern Time)** before the United States Bankruptcy Court, Northern District of Ohio, 455 U.S. Courthouse, 2 South Main Street, Akron, Ohio 44308.  The Sale Hearing may be adjourned by FG in its sole discretion from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open Court on the date scheduled for the Sale Hearing or on the Court's docket.

At the Sale Hearing, FG shall report the results of the Auction and FG's recommendation with respect to the Successful Bid, which is subject to Court Approval.  FG shall be deemed to have accepted a bid only when the bid has been approved by the Court at the Sale Hearing.

## Consent to Jurisdiction and Authority as a Condition to Bidding

All Qualified Bidders shall be deemed to have (i) consented to the core jurisdiction of the Court to enter an order or orders, which shall be binding in all respects, in any way related to the

Bid Procedures, the Auction, or the construction and enforcement of any Stalking Horse Agreement, Modified Asset Purchase Agreement, or any other documents relating to the Sale Transaction, (ii) waived any right to a jury trial in connection with any disputes relating to the Bid Procedures, the Auction, or the construction and enforcement of the Stalking Horse Agreement, any Modified Asset Purchase Agreement or any other document relating to the Sale Transaction, and (iii) consented to the entry of a final order or judgment in any way related to the Bid Procedures, the Auction, or the construction and enforcement of the Stalking Horse Agreement, any Modified Asset Purchase Agreement, or any other document relating to the Sale Transaction if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

### Sale is "As Is/Where Is"

Except as otherwise provided in an applicable Stalking Horse Agreement, Modified Asset Purchase Agreement, or any order approving the Sale Transaction, any and all portions of the West Lorain Assets sold pursuant to the Bid Procedures shall be conveyed at the closing of the Sale Transaction in their then-present condition, "as is, with all faults, and without any warranty whatsoever, whether express or implied."

18-50757-amk    Doc 1861    FILED 12/19/18    ENTERED 12/19/18 16:04:09    Page 29 of 41

## Exhibit 2

**Notice of Assumption and Assignment**

|  | ) | Chapter 11 |
| In re: | ) | |
| | ) | Case No. 18-50757 |
| FIRSTENERGY SOLUTIONS CORP., *et al.*,[1] | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | Hon. Judge Alan M. Koschik |
| | ) | |

## NOTICE OF EXECUTORY CONTRACTS WHICH MAY BE ASSUMED AND ASSIGNED IN CONNECTION WITH THE SALE OF FIRSTENERGY GENERATION LLC'S WEST LORAIN ASSETS AND THE PROPOSED CURE AMOUNTS WITH RESPECT THERETO

You are receiving this *Notice of Executory Contracts Which May Be Assumed and Assigned in Connection with the Sale of FirstEnergy Generation, LLC's West Lorain Assets and the Proposed Cure Amounts With Respect Thereto* (the "Notice of Assumption and Assignment") because you may be a counterparty to an executory contract with FirstEnergy Generation, LLC ("FG"), and/or certain affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") in connection with FG's West Lorain Assets. Please read this notice carefully as your rights may be affected by the transactions described herein.

PLEASE TAKE NOTICE that on [ ], 2018, the United States Bankruptcy Court for the Northern District of Ohio (the "Bankruptcy Court") entered an order (the "Bid Procedures Order") approving the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105, 363, 365, and 503 and Fed. R. Bank. P. 2002, 6004, and 6006 for Entry of (i) Order Approving (a) Bid Procedures, (b) Procedures for Assumption and Assignment of Certain Executory Contracts and Related Notices, (c) Notice of Auction and Sale Hearing, and (d) Related Relief and (ii) Order Approving the Sale of the West Lorain Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests, (b) Approving Assumption and Assignment of Certain Executory Contracts, and (c) Granting Related Relief* [Docket No. __] (the "Motion"). The Motion and Bid Procedures Order set forth certain procedures (the "Bid Procedures") in connection with the sale of FG's West Lorain Assets.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: FE Aircraft Leasing Corp. (9245), case no. 18-50759; FirstEnergy Generation, LLC (0561), case no. 18-50762; FirstEnergy Generation Mansfield Unit 1 Corp. (5914), case no. 18-50763; FirstEnergy Nuclear Generation, LLC (6394), case no. 18-50760; FirstEnergy Nuclear Operating Company (1483), case no. 18-50761; FirstEnergy Solutions Corp. (0186); and Norton Energy Storage L.L.C. (6928), case no. 18-50764. The Debtors' address is: 341 White Pond Dr., Akron, OH 44320.

1

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Bid Procedures Order, FG has established procedures for the assumption and assignment of certain executory contracts (collectively, the "Executory Contracts") to a potential purchaser and the determination of related Cure Costs (as defined herein).  FG is party to numerous Executory Contracts and, in accordance with the Bid Procedures Order, hereby file this notice identifying (i) the Contracts which may be assumed and assigned to a Successful Bidder in connection with the sale (such Contracts, the "Assumed Contracts") and (ii) the proposed amounts, if any, FG believes are owed to the counterparty to the Assumed Contracts to cure any defaults or arrears existing under the Assumed Contract (the "Cure Costs") both as set forth on **Exhibit 1** attached hereto.

**PLEASE TAKE FURTHER NOTICE** that the hearing to approve the sale of the West Lorain Assets (the "Sale Hearing") will take place before the Honorable Alan M. Koschik, United States Bankruptcy Judge, United States Bankruptcy Court, Northern District of Ohio, 260 U.S. Courthouse, 2 South Main Street, Akron, Ohio 44308 on **January 25, 2019 at 10:00 a.m. (Eastern Time)**.  A summary of relevant dates and deadlines is below:

| | |
|---|---|
| **Deadline to File Notice of Assumption and Assignment and Schedule of Proposed Cure Costs, If Any** | **December 20, 2018** |
| **Deadline to Serve Sale Hearing Notice** | **December 20, 2018** |
| **Bid Deadline** | **January 9, 2019 (at 5:00 p.m.)** |
| **Deadline to Notify Qualified Bidders** | **January 10, 2019 (at 5:00 p.m.)** |
| **Auction (if required)** | **January 15, 2019 (at 9:00 a.m.)** |
| **Deadline to Publish Notice of Auction Results** | **January 16, 2019** |
| **Deadline to Object to Sale Transaction** | **January 18, 2019 (at 4:00 p.m.)** |
| **Assumption and Assignment Objection Deadline** | **January 18, 2019 (at 4:00 p.m.)** |
| **Sale Hearing** | **January 25, 2019 (at 10:00 a.m.)** |

**PLEASE TAKE FURTHER NOTICE** that the listing of Assumed Contracts on **Exhibit 1** does not constitute and admission that the agreement is an executory contract as contemplated by section 365(a) of the Bankruptcy Code or that FG has any liability thereunder, and FG expressly reserves all of their rights, claims, causes of action, and defenses with respect to the Assumed Contracts on **Exhibit 1**.

2

**PLEASE TAKE FURTHER NOTICE** that any objections to the assumption and assignment of any Assumed Contract identified in this notice (except with respect to the adequate assurance of future performance by any successful bidder) must be (i) in writing, (ii) comply with the Bankruptcy Rules, (iii) filed with the Bankruptcy Court and (iv) be served, so as to be actually received by (a) FG, FirstEnergy Generation, LLC, 341 White Pond Drive, Akron, OH 44320 (Attn: Rick Giannantonio, Esq.); (b) counsel for FG, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036-6745 (Attn: David H. Botter, Esq. and Zachary Wittenberg, Esq.) and 1333 New Hampshire Avenue, N.W., Washington, DC 20036 (Attn: Scott L. Alberino, Esq. and Kate Doorley, Esq.); (c) local counsel for FG, Brouse McDowell LPA, 388 South Main St., Suite 500, Akron, OH 44311 (Attn: Kate Bradley, Esq. and Bridget A. Franklin, Esq.); (d) the Office of the United States Trustee, Howard M. Metzenbaum U.S. Courthouse, 201 Superior Avenue East, Suite 441, Cleveland, OH 4414 (Attn: Tiiara Patton, Esq.); (e) counsel to the Stalking Horse Purchaser King & Spalding LLP, 1185 Avenue of the Americas, New York, NY 10036 (Attn: Jonathan M.A. Melmed, Esq.); (f) counsel to the Ad Hoc Noteholder Group, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036 (Attn: Joshua K. Brody, Esq.); (g) counsel to the Mansfield Certificateholders Group, Latham & Watkins LLP, 885 Third Avenue, New York, NY 10022 (Attn: George A. Davis, Esq. and Andrew Parlen, Esq.); (h) counsel to the Committee, Milbank, Tweed, Hadley & McCloy LLP, 28 Liberty Street, New York, NY 10005 (Attn: Evan Fleck, Esq. and Parker Milender, Esq.); and (i) counsel to the Mortgage Trustee, Pryor Cashman LLP, 7 Times Square, New York, NY 10036 (Attn: Patrick Sibley, Esq.) by **January 18, 2019 at 4:00 p.m. (Eastern Time)** (the "<u>Assumption and Assignment Objection Deadline</u>"). Any such objections must set forth the proposed objection to the assumption and assignment of the Assumed Contracts (and must state, with specificity, the legal and factual basis thereof) and, if applicable, the proposed Cure Costs (and must state, with specificity, what Cure Costs are required with appropriate documentation in support thereof). Other than the Cure Costs listed on **<u>Exhibit 1</u>**, FG is not aware of any amounts due and owing under the Assumed Contracts listed therein.

**PLEASE TAKE FURTHER NOTICE** that objections with respect to the Successful Bidder's proposed form of adequate assurance of future performance must be raised prior to the Sale Hearing and will be resolved at the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that if a counterparty to an Assumed Contract files a timely objection asserting a higher Cure Cost than the Cure Cost set forth in this Notice of Assumption and Assignment, and the parties are unable to consensually resolve the dispute prior to the commencement of the Sale Hearing, the amount to be paid or reserve with respect to such objection shall be determined at the Sale Hearing. All other objections to the proposed assumption and assignment of FG's right, title and interest in, to and under the Assumed Contracts, including objections to the proposed form of adequate assurance, shall be heard at the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that each non-Debtor party to any Assumed Contract that does not timely file an objection by the Assumption and Assignment Objection Deadline shall be forever barred from asserting any objection with regard to the assumption, assignment, and/or Cure Costs set forth on **<u>Exhibit 1</u>**, including any objections with respect to the adequate assurance of future performance by the Successful Bidder or FG's ability to assign

the Assumed Contract.  The Cure Costs set forth in the Notice of Assumption and Assignment shall be controlling, notwithstanding anything to the contrary in any Assumed Contract or any other document, and the counterparty to the Assumed Contract shall be deemed to have consented to the Cure Costs and shall be forever barred from asserting any other claims related to such Assumed Contract against FG or the Successful Bidder(s), or the property of any of them to the extent such counterparty does not file a timely objection to the Cure Costs set forth above.

Date: [_____], 2018

Respectfully submitted,

_____

**BROUSE MCDOWELL LPA**
Marc B. Merklin (0018195)
Kate M. Bradley (0074206)
Bridget A. Franklin (0083987)
388 South Main Street, Suite 500
Akron, OH 44311-4407
Telephone: (330) 535-5711
Facsimile: (330) 253-8601
mmerklin@brouse.com
kbradley@brouse.com
bfranklin@brouse.com

 - and -

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira Dizengoff (admitted *pro hac vice*)
Lisa Beckerman (admitted *pro hac vice*)
David H. Botter (admitted *pro hac vice*)
Brad Kahn (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
lbeckerman@akingump.com
bkahn@akingump.com

  - and -

Scott Alberino (admitted *pro hac vice*)
Kate Doorley (admitted *pro hac vice*)
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
salberino@akingump.com
kdoorley@akingump.com

*Counsel for Debtors and Debtors in Possession*

5

**Exhibit 3**

**Sale Hearing Notice**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) Case No. 18-50757 |
| FIRSTENERGY SOLUTIONS CORP., *et al.*,[1] | ) (Jointly Administered) |
| | ) |
| Debtors. | ) |
| | ) Hon. Judge Alan M. Koschik |
| | ) |

## NOTICE OF AUCTION AND SALE HEARING

**TO PARTIES IN INTEREST IN THE CHAPTER 11 CASES OF FIRSTENERGY SOLUTIONS CORP. AND ITS AFFILIATED DEBTORS:**

**PLEASE TAKE NOTICE** that:

1.      **Approval of Bid Procedures**.  By Order dated [____], 2018 [Docket No. __] (the "Order"), the United States Bankruptcy Court for the Northern District of Ohio (the "Bankruptcy Court") authorized FirstEnergy Generation, LLC ("FG") to market, solicit bids, conduct an auction (the "Auction") and select the highest or otherwise best bidder at the Auction for the sale and transfer (the "Sale Transaction") of FG's assets related to the West Lorain Power Plant (the "West Lorain Assets").   The terms of the solicitation of bids, conduct of the Auction, and selection of the highest or otherwise best bid for the West Lorain Assets shall be governed by the Bankruptcy Court-approved bidding procedures (the "Bid Procedures").   Copies of the Bid Procedures and the Order can be accessed free of charge on the website established by FG's claims and noticing agent, PrimeClerk LLC at http://cases.primeclerk.com/FES.  The Order also approved FG's selection of Vermillion Power, L.L.C. (the "Stalking Horse Purchaser") to serve as a stalking horse purchaser and the provision of bid protections thereto (the "Bid Protections").

2.      **Relevant Dates and Deadlines**.  A summary of the relevant key dates and deadlines for the Sale Transaction is below:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: FE Aircraft Leasing Corp. (9245), case no. 18-50759; FirstEnergy Generation, LLC (0561), case no. 18-50762; FirstEnergy Generation Mansfield Unit 1 Corp. (5914), case no. 18-50763; FirstEnergy Nuclear Generation, LLC (6394), case no. 18-50760; FirstEnergy Nuclear Operating Company (1483), case no. 18-50761; FirstEnergy Solutions Corp. (0186); and Norton Energy Storage L.L.C. (6928), case no. 18-50764.  The Debtors' address is: 341 White Pond Dr., Akron, OH 44320.

1

| | |
|---|---|
| **Deadline to File Notice of Assumption and Assignment and Schedule of Proposed Cure Costs, If Any** | **December 20, 2018** |
| **Deadline to Serve Sale Hearing Notice** | **December 20, 2018** |
| **Bid Deadline** | **January 9, 2019 (at 5:00 p.m.)** |
| **Deadline to Notify Qualified Bidders** | **January 10, 2019 (at 5:00 p.m.)** |
| **Auction (if required)** | **January 15, 2019 (at 9:00 a.m.)** |
| **Deadline to Publish Notice of Auction Results** | **January 16, 2019** |
| **Deadline to Object to Sale Transaction** | **January 18, 2019 (at 4:00 p.m.)** |
| **Assumption and Assignment Objection Deadline** | **January 18, 2019 (at 4:00 p.m.)** |
| **Sale Hearing** | **January 25, 2019 (at 10:00 a.m.)** |

3. **Auction**. Pursuant to the Order and the Bid Procedures, if FG receives one or more timely and acceptable Qualified Bids (as defined in the Bid Procedures), in addition to the Stalking Horse Purchaser's bid, for the Retail Power Sales Assets, an Auction shall take place on **January 15, 2019 at 9:00 a.m. (Eastern Time)**, at the offices of Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036. Only parties that have submitted a Qualified Bid, as set forth in the Bid Procedures, by no later than **January 9, 2019 at 5:00 p.m. (Eastern Time)** (the "Bid Deadline") may bid at the Auction. Any party that wishes to take part in this process and submit a bid for the West Lorain Assets must submit their bid prior to the Bid Deadline and in accordance with the Bid Procedures. Only representatives of FG, Qualified Bidders, the Committee, the Stalking Horse Purchaser, and the Supporting Parties shall be entitled to be present at the Auction. Any and all other creditors or parties in interest interested in attending the Auction must provide FG with notice of their intent to attend the Auction by sending a fax or e-mail to counsel for FG, Akin Gump Strauss Hauer & Feld LLP (Attn: David H. Botter, Esq., Zachary Wittenberg, Esq., and Kate Doorley, Esq.) (dbotter@akingump.com; zwittenberg@akingump.com; kdoorley@akingump.com) Fax: (212) 872-1002.

4. **Objections to Assumption and Assignment**. No later than December 20, 2018, FG shall file with the Court a notice of assumption and assignment (the "Notice of Assumption and Assignment") listing all of the Executory Contracts that the Stalking Horse Purchaser proposes to be assumed and assigned to it in connection with the Sale Transaction (each, an "Assumed Contract"). Any counterparty to an Assumed Contract shall file any objection to the

2

proposed assumption and assignment of the Assumed Contracts (and must state in its objection, with specificity, the legal and factual basis thereof) no later than **January 18, 2019 at 4:00 p.m. (Eastern Time)**.

5. **Sale Hearing**. A hearing (the "Sale Hearing") to consider the sale of the West Lorain Assets to the Successful Bidder will be held at **10:00 a.m. (Eastern Time) on January 25, 2019**, before the Honorable Alan M. Koschik, United States Bankruptcy Judge, United States Bankruptcy Court for the Northern District of Ohio, 260 U.S. Courthouse, 2 South Main Street, Akron, Ohio 44308. The Sale Hearing may be continued from time to time without further notice other than the announcement by FG of the adjourned date(s) at the Sale Hearing or any continued hearing or as indicated in any notice of agenda of matters scheduled for hearing filed by FG with the Bankruptcy Court.

6. **Objection to Sale Transaction**. Objections to the Sale Transaction, if any, must be filed and served so as to actually be received by (i) FG, FirstEnergy Generation, LLC, 341 White Pond Drive, Akron, OH 44320 (Attn: Rick Giannantonio, Esq.); (ii) counsel for FG, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036-6745 (Attn: David H. Botter, Esq. and Zachary Wittenberg, Esq.) and 1333 New Hampshire Avenue, N.W., Washington, DC 20036 (Attn: Scott L. Alberino, Esq. and Kate Doorley, Esq.); (iii) local counsel for FG, Brouse McDowell LPA, 388 South Main St., Suite 500, Akron, OH 44311 (Attn: Kate Bradley, Esq. and Bridget A. Franklin, Esq.); (iv) the Office of the United States Trustee, Howard M. Metzenbaum U.S. Courthouse, 201 Superior Avenue East, Suite 441, Cleveland, OH 4414 (Attn: Tiiara Patton, Esq.); (v) counsel to the Stalking Horse Purchaser King & Spalding LLP, 1185 Avenue of the Americas, New York, NY 10036 (Attn: Jonathan M.A. Melmed, Esq.); (vi) counsel to the Ad Hoc Noteholder Group, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036 (Attn; Joshua K. Brody, Esq.); (vii) counsel to the Mansfield Certificateholders Group, Latham & Watkins LLP, 885 Third Avenue, New York, NY 10022 (Attn: George A. Davis, Esq. and Andrew Parlen, Esq.); (viii) counsel to the Committee, Milbank, Tweed, Hadley & McCloy LLP, 28 Liberty Street, New York, NY 10005 (Attn: Evan Fleck, Esq. and Parker Milender, Esq.); and (ix) counsel to the Mortgage Trustee, Pryor Cashman LLP, 7 Times Square, New York, NY 10036 (Attn: Patrick Sibley, Esq.) no later than **January 18, 2019 at 4:00 p.m. (Eastern Time)**.

7. Unless an objection is timely served and filed in accordance with this notice, it may not be considered by the Bankruptcy Court and the Bankruptcy Court may grant the relief requested in the Sale Motion without further hearing and notice.

8. This Notice of Auction and Sale Hearing is subject to the fuller terms and conditions of the Order and the Bid Procedures, with such Order controlling in the event of any conflict, and FG encourages parties in interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale of the West Lorain Assets and/or copies of any related document, including the Motion, the Stalking Horse Agreement, or the Order, may make a written request to: counsel for FG, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 (Attn: David H. Botter, Esq. and Zachary Wittenberg, Esq.). In addition, copies of the Motion, the Order and this Notice may be examined by interested parties (i) free of charge at the website established for these chapter 11 cases by FG's

court appointed claims and noticing agent, PrimeClerk LLC, at http://cases.primeclerk.com/FES or (ii) on the Court's electronic docket for the Debtors' chapter 11 cases, which is posted on the internet at www.ohnb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov).

4

Dated: [____], 2018                     Respectfully submitted,

_____
**BROUSE MCDOWELL LPA**
Marc B. Merklin (0018195)
Kate M. Bradley (0074206)
Bridget A. Franklin (0083987)
388 South Main Street, Suite 500
Akron, OH 44311-4407
Telephone: (330) 535-5711
Facsimile: (330) 253-8601
mmerklin@brouse.com
kbradley@brouse.com
bfranklin@brouse.com

 - and -

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira Dizengoff (admitted *pro hac vice*)
Lisa Beckerman (admitted *pro hac vice*)
David H. Botter (admitted *pro hac vice*)
Brad Kahn (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
lbeckerman@akingump.com
bkahn@akingump.com

  - and -

Scott Alberino (admitted *pro hac vice*)
Kate Doorley (admitted *pro hac vice*)
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
salberino@akingump.com
kdoorley@akingump.com

*Counsel for Debtors and Debtors in Possession*