## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| FIRSTENERGY SOLUTIONS CORP., *et al.*[1] | § | Case No.: 18-50757 |
| | § | (Jointly Administered) |
| | § | Hon. Judge Alan M. Koschik |
| Debtors. | | |

---

### OBJECTION OF THE UNITED STATES ON BEHALF OF THE EPA AND NRC, STATE OF OHIO, AND PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION TO DEBTORS' MOTION FOR AN ORDER APPROVING DISCLOSURE STATEMENT AND GRANTING OTHER RELIEF

1.      The United States, on behalf of the U.S. Environmental Protection Agency and the U.S. Nuclear Regulatory Commission, the Office of the Ohio Attorney General, acting on behalf of the Ohio Environmental Protection Agency and the Ohio Department of Natural Resources, and the Pennsylvania Department of Environmental Protection (the "Governments"), hereby file this Objection to Debtors' February 11, 2019 motion for an order approving the Disclosure Statement, as well as requesting other relief related to voting procedures, balloting, and Plan confirmation ("Motion").  (Docket No. 2121).

2.      In various filings and hearings, the Governments have raised concerns with the Court about the broad and unlawful releases, including of independent liability, provided to FirstEnergy non-debtor affiliates in the proposed Plan.  These releases plainly exceed the Court's subject matter jurisdiction and authority under the Bankruptcy Code and Sixth Circuit caselaw.

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: FE Aircraft Leasing Corp. (9245), case no. 18-50759; FirstEnergy Generation, LLC (0561), case no. 18-50762; FirstEnergy Generation Mansfield Unit 1 Corp. (5914), case no. 18-50763; FirstEnergy Nuclear Generation, LLC (6394), case no. 18-50760; FirstEnergy Nuclear Operating Company (1483), case no. 18-50761; FirstEnergy Solutions Corp. (0186), case no. 18-50757; and Norton Energy Storage L.L.C. (6928), case no. 18-50764.

In situations such as this, where a plan includes a "defect that makes [it] inherently or patently unconfirmable," the Court should deny approval of the disclosure statement before proceeding with unnecessary hearings and discovery on an unconfirmable plan. *See In re Am. Capital Equip., LLC,* 688 F.3d 145, 154 (3d Cir. 2012) (internal quotation marks omitted).

3. Debtors' Motion should also be denied because the Disclosure Statement fails to provide adequate information, including information necessary to evaluate the broad releases that Debtors claim are key to the Plan. Other necessary information is also lacking from the Disclosure Statement, as explained more fully below.[2]

## BACKGROUND

4. The Governments oversee the protection of public health and the environment under various statutes including the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601-9675, the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. §§ 6901 *et seq.*, Clean Water Act (CWA), 33 U.S.C. §§ 1251 *et seq.*, Oil Pollution Act (OPA), 33 U.S.C. §§ 2701 *et seq.*, Clean Air Act (CAA), 42 U.S.C. §§ 7401 *et seq.*, Toxic Substances Control Act (TSCA), 15 U.S.C. §§ 2601 *et seq.*, and the Atomic Energy Act (AEA), 42 U.S.C. §§ 2011 *et seq.*, and parallel statutes enacted under Ohio and Pennsylvania public health and safety and environmental law.

5. The Debtors own and/or operate several coal-fired power plants and nuclear plants. The Governments have filed protective proofs of claim with respect to compliance obligations of the Debtors. The FE Non-Debtor Parties have significant independent liability to the Governments under environmental laws for their ownership and/or operation of (and/or disposal at) some of the same facilities for years even before the Debtors became the owners/operators. For example,

---

[2] The United States reserves its rights to raise any and all objections at confirmation, whether or not mentioned in this Objection.

according to SEC filings, FE Non-Debtor AE Supply owned and operated the Hatfield's Ferry Power Plant for a number of years prior to its ownership by Debtors.[3]

6. On September 26, 2018, the Court entered an order approving a global settlement among the Debtors, their non-debtor affiliates, and other settlement parties ("Settlement Agreement"), which obligated the Debtors to obtain non-consensual non-debtor releases ("FE Non-Debtor Releases") and third-party injunctions in any confirmed plan. (Docket No. 1465). The order provided language preserving parties' rights to object to the Non-Debtor Releases and third-party injunctions in any proposed plan without prejudice on account of the approval of the Settlement. *Id.* at ¶19.

7. The releases included in the Settlement Agreement are extremely broad. Section 6.3 of the Settlement Agreement states that FE Non-Debtors will be released "from all claims and Causes of Action that could be asserted against, or in any way relating to, or arising out of, (i) any Debtor, Reorganized Debtor, their businesses, or their property; (ii) any Causes of Action against the FE Non-Debtor Released Parties or their property arising in connection with any intercompany transactions and other matters arising in the conduct of the Debtors' business . . . ."

8. On February 11, 2019, the Debtors filed the Disclosure Statement and the proposed Plan. (Docket Nos. 2119 and 2120), which were amended on March 9, 2019 (Docket Nos. 2250 and 2251). The FE Non-Debtor release language in the Plan is lengthy and even broader than the Settlement Agreement. It makes clear that the Non-Debtor release would grant a "full and complete release to the FE Non-Debtor Released Parties and their respective property of and from any and all Causes of Action whatsoever, whether known or unknown, asserted or

---

[3] *See, e.g.,* FirstEnergy Corporation. (2011). *Form 10-K 2011.* Retrieved from SEC EDGAR website http://www.sec.gov/edgar.shtml; FirstEnergy Corporation. (2012). *Form 10-K 2012.* Retrieved from SEC EDGAR website http://www.sec.gov/edgar.shtml; FirstEnergy Corporation. (2013). *Form 10-K 2013.* Retrieved from SEC EDGAR website http://www.sec.gov/edgar.shtml.

unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising . . . arising from or related in any way to (i) the Debtors, Reorganized Debtors, their businesses, or their property." *See* (Docket No. 2120, Plan pp. 93-94).[4] There is no opt-out option with respect to the FE Non-Debtor Releases.

9.     The FE Non-Debtors benefitting from the Non-Debtor Releases include all FE non-

---

[4] The release, in its entirety, provides that:

> [E]ach Holder of a Claim or Interest is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each FE Non-Debtor Released Party from any and all Claims and Causes of Action, including derivative claims asserted or assertable by or on behalf of any of the Debtors, the Reorganized Debtors, or their Estates or Affiliates (including any FE Non-Debtor Parties) as applicable, that such Entity would have been legally entitled to assert in any of their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, **based on or relating to, or in any manner arising from in whole or in part, the Debtors, the Debtors' businesses, the Debtors' property**, the Debtors' capital structure, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring discussions, intercompany transactions between or among the Debtors and/or their Affiliates (including the FE Non-Debtor Parties), the purchase, sale, or recession of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, **the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any FE Non-Debtor Released Party** . . . .
>
> For the avoidance of doubt, on and as of the Effective Date of the Plan, the Holders of Claims and Interests shall be deemed to provide a full and complete release to the FE Non-Debtor Released Parties and their respective property of and from any and all Causes of Action whatsoever, **whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for or sounding in tort, fraud, contract, violations of federal or state securities laws, veil piercing, substantive consolidation or alter-ego theories of liability, contribution, indemnification, joint or several liability, or otherwise, arising from or related in any way to (i) the Debtors, Reorganized Debtors, their businesses, or their property; (ii) any Causes of Action against the FE Non-Debtor Released Parties or their property arising in connection with any intercompany transactions and other matters arising in the conduct of the Debtors' businesses; . . . .**

(Docket No. 2120, Plan pp. 93-94) (emphasis added).

Debtor affiliates, as well as "current and former officers, directors, members, shareholders, employees, advisors, attorneys, professionals, accountants, investment bankers, consultants, agents, and other representatives (including their respective officers, directors, employees, members and professionals)." (Docket No. 2120, Plan Art. I.A (73-74)) (defining FE Non-Debtor Parties and FE Non-Debtor Released Parties). The Plan does not provide a list of the non-Debtor affiliates that could receive a release. The Plan also provides for an injunction supporting the Non-Debtor Releases. *See* (Docket No. 2120, Plan, Art. VIII.H.).

10. In the Debtors' filings and statements to the Court, the Debtors have claimed that the FE Non-Debtor Releases are essential to the Plan. *See* (Docket No. 2119, Disclosure Statement, at 154) (suggesting that without the FE Non-Debtor Releases, "the Plan likely will not be Consummated").

## ARGUMENT

11. The Court should not approve the Debtors' Motion and Disclosure Statement for two reasons, addressed in more detail below: (1) the Disclosure Statement supports a Plan that is patently unconfirmable on its face, because of the unlawful FE Non-Debtor Releases; and (2) the Disclosure Statement lacks key information relating to the potential liabilities to be released under the Plan, as well as various other categories of information, and proposes an unreasonable and arbitrary Plan confirmation schedule.

12. It is well-settled that bankruptcy courts have the authority to refuse approval of disclosure statements when the chapter 11 plans underlying them are unconfirmable, as is the case here. *See*, *e.g.*, *In re Am. Capital Equip., LLC*, 688 F.3d at 154 ("[A] bankruptcy court may address the issue of plan confirmation where it is obvious at the disclosure statement stage that a later confirmation hearing would be futile because the plan described by the disclosure statement

is patently unconfirmable"); *In re Cardinal Congregate I*, 121 B.R. 760, 763-64 (Bankr. S.D. Ohio 1990) (recognizing that "disapproval of the adequacy of a disclosure statement may sometimes be appropriate where it describes a plan of reorganization which is so fatally flawed that confirmation is impossible"); *In re K Lunde*, LLC, 513 B.R. 587, 598 (Bankr. D. Colo. 2014) (denying approval of a disclosure statement when the "Debtor's plan is facially unconfirmable"); *In re Mahoney Hawkes, LLP*, 289 B.R. 285 (Bankr. E.D. Mass. 2002) (denying motion to approve disclosure statement because of an unconfirmable plan, based in part on the inclusion of unlawful third party releases).

13.    Here, the Plan relies on plainly unlawful non-debtor releases that exceed the Court's jurisdiction and authority.  This is precisely the scenario where a Court should deny approval of the Disclosure Statement "to avoid engaging in a wasteful and fruitless exercise of sending the disclosure statements to creditors and soliciting votes on the proposed plan when the plan is unconfirmable on its face."  *In re Atlanta West VI*, 91 B.R. 620, 622 (Bankr. N.D. Ga. 1988) (explaining that while "[c]onsideration of whether a debtor's plan satisfies the requirements of 11 U.S.C. Section 1129 is generally addressed at confirmation[,]" courts will consider whether a plan is confirmable in ruling on a disclosure statement's adequacy when doing so will "conserve judicial resources and debtor's estate").[5]

---

[5] At the February 5 hearing, the Court indicated that, "I know that we have reserved a date for at least an initial hearing on the disclosure statement.  It doesn't guarantee that it will be approved . . . these might be confirmation issues. The problem with a case this big is that by the time you get to confirmation it's a much bigger burden to unwind the whole thing and start all over again . . . And if we get to a hearing in the middle of March on the disclosure statement and this is a live issue, and you convince me it's critical enough, we may have to put off final approval, and we may then have to discuss a schedule for resolving the various legal issues that you've mentioned or discussing in what context those issues should be resolved . . . And whether mediation is something that would be productive."  February 5, 2019 Hearing – p 27, lines 11-14, 17-22; p. 28, lines 17-23, 25; and p. 29, line 1.

**I.** **The Disclosure Statement Should Not Be Approved Because the Non-Debtor Releases Make the Plan Patently Unconfirmable on its Face**

14. Evaluating the lawfulness of the FE Non-Debtor Releases in this case is a two-step process. First, the Court must determine whether it has subject matter jurisdiction to grant the releases. Second, even if subject matter jurisdiction exists, the Court must determine whether the releases are lawful and appropriate under the Bankruptcy Code and applicable caselaw. *See In re Greektown Holdings, LLC*, 728 F.3d 567, 577-79 (6th Cir. 2013) (analyzing jurisdiction, the court's authority, and the scope of a post-confirmation claims bar order).

**A. The Court does not have subject matter jurisdiction to approve the Plan's FE Non-Debtor Releases.**

15. Put simply, the Court cannot approve the Non-Debtor Releases–and thus the Plan is unconfirmable–if the Court does not have subject matter jurisdiction over the causes of action that would be barred by the releases.

16. The Court's jurisdiction over bankruptcy cases and proceedings comes from 28 U.S.C. § 1334(b), which provides for "jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *Id.* at 577. "Where a bankruptcy court is asked to adjudicate matters between non-debtor parties, the court's 'related-to' jurisdiction must necessarily be invoked." *In re Arter & Hadden, LLP*, 373 B.R. 31, 35 (Bankr. N.D. Ohio 2007) (citing *Feld v. Zale Corp.*, 62 F.3d 746 (5th Cir. 1995)).

17. "Proceedings 'related to' a bankruptcy case include '(1) causes of action owned by the debtor which become property of the estate . . . and (2) suits between third parties which have an effect on the bankruptcy estate.'" *In re Nat'l Century Fin. Enterprises, Inc.*, 323 F. Supp.2d 861, 867 (S.D. Ohio 2004) (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.5 (1995)). "[T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered." *In re*

*Dow Corning Corp.*, 86 F.3d 482, 489 (6th Cir. 1996) ("*Dow Corning I*"). In the context of non-debtor release and injunctions, the Court must determine "whether the outcome of the actions covered by the [injunction] would affect the bankruptcy estate." *In re CS DIP, LLC*, 2015 WL 5920892, at *8 (M.D. Tenn. 2015).

18.     Here, the FE Non-Debtor Releases clearly include causes of action that would have no conceivable effect on the Debtors' estate. The FE Non-Debtor Releases would bar any and all suits by third parties against the Non-Debtors, relating in any way to the Debtors' businesses and properties, even though the FE Non-Debtors themselves owned and operated some of these properties and have their own independent liabilities. For example, the plain language of the Non-Debtor Releases and Injunctions would conceivably bar suits against a FE Non-Debtor for its independent environmental liabilities at a Debtor-affiliated property, despite the fact that the suit would have no effect depleting or increasing the *res* of the bankruptcy estate.

19.     Courts analyzing this jurisdictional issue in the context of non-debtor releases draw a distinction between these *direct* or *independent* claims against non-debtors, on the one hand, and *derivative* claims belonging to the estate, on the other. *See In re Dreier LLP*, 429 B.R. 112, 133 (Bankr. S.D.N.Y 2010) ("The Bar Order, however, goes well beyond derivative claims, and ultimately exceeds the Court's subject matter jurisdiction."); *Steinberg v. Buczynski*, 40 F.3d 890, 893 (7th Cir. 1994) ("[T]here is a difference between a creditor's interest in the claims of the corporation against a third party, which are enforced by the trustee, and the creditor's own direct-not-derivative-claim against the third party, which only the creditor himself can enforce."); *In re Madoff*, 848 F. Supp. 2d 469, 488 (S.D.N.Y. 2012) ("With regard to permanent injunctions of creditor suits against a third party issued in connection with a settlement agreement between the third party and the trustee, a bankruptcy court generally may not enjoin

creditor claims against the third party when those claims are independent and personal to the creditor." (internal quotation marks omitted)). The scope of the proposed FE Non-Debtor Releases in this case, explicitly covering direct/independent causes of action against the FE Non-Debtors, leads to the inevitable conclusion that the non-consensual release exceeds the Court's subject matter jurisdiction.

20.    Importantly, the jurisdictional question is not "whether the *assertion* of the claims would effect the bankruptcy estate but whether the *outcome* of the claims would effect the estate." *Greektown*, 728 F.3d at 578 (emphasis in original) (rejecting the Eleventh Circuit's approach that when a defendant conditions its agreement to a settlement upon entry of a bar order, the claims encompassed by the bar order are necessarily related to the bankruptcy case); *Dreier*, 429 B.R. at 131 ("[T]he question is not whether the court has jurisdiction over the settlement, but whether it has jurisdiction over the attempts to enjoin the creditors' unasserted claims against the third party."). The Debtors and Non-Debtors cannot somehow create a jurisdictional nexus by conditioning the Plan upon entry of the Non-Debtor Releases, or by structuring the Plan in such a way that it depends upon contributions by the FE Non-Debtors. *See Dreier*, 429 B.R. at 131 (rejecting contention that debtor "could create subject matter jurisdiction over any non-debtor third party by structuring a plan in such a way that it depended upon third-party contributions" (internal quotation marks omitted)). Because the FE Non-Debtor Releases cover causes of action that would have no conceivable effect on the bankruptcy estate, jurisdiction is lacking, regardless of the terms of the Settlement Agreement and Plan. *In re Midway Gold,* 575 B.R. 475, 519 (Bankr. D. Colo. 2017) (rejecting attempt to "bootstrap" third-party disputes into a bankruptcy action and holding that "non-debtors [cannot] purchase immunity from unrelated torts through their contribution to a debtor's reorganization.")

**B. The Plan's broad FE Non-Debtor Releases, covering both direct and derivative causes of action, are not authorized under the Bankruptcy Code.**

21.     Even if the Court were to determine that it has subject matter jurisdiction over the proposed FE Non-Debtor Releases, the Releases would still fail because granting them would exceed the Court's authority under 11 U.S.C. § 105.  *See In re CS DIP,* 2015 WL 5920892, at *11 (explaining that in the Sixth Circuit the "second step" after determining jurisdiction is "whether the court has the power to enter the bar order" (internal quotation marks and alterations omitted)).[6]

22.     While some circuits reject non-consensual non-debtor releases in all cases, the Sixth Circuit has held that releases from derivative liabilities can be appropriate in "unusual circumstances."  *See In re Dow Corning*, 280 F.3d 648, 658 (6th Cir. 2002) ("*Dow Corning II*").[7] The Sixth Circuit has explained that the injunction of a non-consenting third party's claim against a non-debtor "is a dramatic measure to be used cautiously," and only when a number of factors are present.  *Id.*  Courts have consistently described a non-debtor release as an "extreme remedy" only to be utilized in rare, unusual circumstances.  *See In re Saleh*, 427 B.R. 415, 420-421 (Bankr. S.D. Ohio 2010).

23.     For many of the reasons discussed above, the releases and injunctions proposed in this case are fundamentally different from the release addressed in *Dow Corning II*, such that the Sixth Circuit's analysis in that case is not applicable.  Most importantly, even if the Court were

---

[6] 11 U.S.C. § 105(a) grants a bankruptcy court authority to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  While bankruptcy courts have broad authority to modify creditor-debtor relationships, the scope of Section 105(a) is not limitless, and it does not provide an independent source of federal subject matter jurisdiction.  *See In re Combustion Engineering, Inc.*, 391 F.3d 190, 225, 236-37 (3d Cir. 2004).

[7] Importantly, "no court has authorized barring claims with independent damages."  *See Greektown,* 728 F.3d at 579 (internal quotation marks omitted).

to find that it somehow had jurisdiction over independent third-party claims against the FE Non-Debtors, a release and injunction under Section 105(a) covering those independent claims would not be appropriate.

24.     The release in *Dow Corning II*, which was ultimately rejected absent additional findings from the district court, involved *derivative* personal injury claims. A release of derivative claims against a third party may sometimes be appropriate in the Sixth Circuit because those claims could have a direct bearing on the bankruptcy estate. In contrast, the FE Non-Debtor releases at issue here involve any and all claims, *derivative or direct*, relating to Debtors' businesses or property. As the Sixth Circuit pointed out in *Greektown*, "no court has authorized barring claims with independent damages," like those at issue in this case. *See Greektown,* 728 F.3d at 579 (internal quotation marks omitted) (explaining that "[a] bar order that enjoins independent claims and provides no compensation is problematic to say the least").

25.     The distinction between non-debtor releases covering derivative claims and non-debtor releases covering direct, independent claims is a consistent theme in the cases analyzing the scope of the bankruptcy court's authority under Section 105(a). Releases covering claims that are derivative or dependent on injury to the estate are sometimes authorized in unusual circumstances; releases covering independent claims are not. *See, e.g., Greektown,* 728 F.3d at 579; *CS DIP, LLC*, 2015 WL 5920892, *13; *In re Mrs. Weinberg's Kosher Foods, Inc.*, 278 B.R. 358, 365-66 (approving a third party injunction covering derivative claims, but stating that "the bankruptcy court would lack the power to enjoin" independent claims); *In re Combustion Engineering, Inc.*, 391 F.3d at 236-37.

26.     The FE Non-Debtor Release also exceeds the Court's authority under applicable caselaw because it is staggeringly overbroad. Apart from the fact that the Release covers both

derivative and direct actions, it extends to any and all actions that could in any way relate to the Debtors' businesses or property, going back in perpetuity and without regard to the fact that the Non-Debtors themselves owned and operated certain Debtor properties at various points in time. The Sixth Circuit has cautioned courts to "closely scrutinize[]" the scope of non-debtor releases and injunctions, and the Debtors have pointed to no authority suggesting that this type of broad release is lawful or appropriate. *See Greektown,* 728 F.3d at 578-79; *Arter & Hadden, LLP*, 373 B.R. at 38-39 (rejecting as overbroad a release that would bar "any person" from bringing an action against a non-debtor party); *CS DIP, LLC*, 2015 WL 5920892, at *13 (rejecting an overbroad settlement agreement that would release "truly independent claims" against non-debtors"); *In re Artra Group, Inc.*, 300 B.R. 699, 703 (Bankr. N.D. Ill. 2003) (holding that preconfirmation asbestos-related injunction that would "bind any entity that might have any sort of claim whatsoever against [settling defendant], its insiders or subsidiaries if such claim is in any way connected with [debtor] or its subsidiaries" was overbroad and raised serious jurisdictional concerns).

27.   In *In re Metromedia, Inc.,* the Second Circuit rejected as overbroad a release with similar language to that proposed by the Debtors in this case. *See In re Metromedia, Inc.*, 416 F.3d 136, 142-43 (2d Cir. 2005). That release would have protected the non-debtor from "any claims relating to the debtor, 'whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured.'" *Id.* at 142. After noting the danger that a "nondebtor release is a device that lends itself to abuse," the court held:

> [T]his is not a matter of factors and prongs. No case has tolerated nondebtor releases absent the finding of circumstances that may be characterized as unique. . . . Here, the sole finding made to justify the [nondebtor release] is that the [nondebtor] made a "material contribution" to the estate. But there is no finding

(or evidence presented) that the [nondebtor release] was *itself* important to the Plan . . . . Nor was any inquiry made into whether the breadth of the [nondebtor release] – which covers numerous third parties . . . and which covers any and all claims relating to [the debtor] – was necessary to the Plan.

*Id.* at 142-43 (emphasis in original).

28.     The FE Non-Debtor Releases exceed the Court's authority under Section 105(a) because they cover independent causes of action and are plainly overbroad. But even if the Court were to apply the Sixth Circuit's analysis in *Dow Corning II* to the releases in this case, it is clear that the "unusual circumstances" required by *Dow Corning II* are not present that would justify these overbroad releases. The Sixth Circuit held that when the following seven factors are present, the bankruptcy court may enjoin a non-consenting creditor's claims against a non-debtor:

> (1) There is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate; (2) The non-debtor has contributed substantial assets to the reorganization; (3) The injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor; (4) The impacted class, or classes, has overwhelmingly voted to accept the plan; (5) The plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction; (6) The plan provides an opportunity for those claimants who choose not to settle to recover in full and; (7) The bankruptcy court made a record of specific factual findings that support its conclusions.

*Dow Corning II*, 280 F.3d at 658. In order for a court to approve a non-debtor release, "all of the factors must be present and all the factors are important." *In re SL Liquidating, Inc.*, 428 B.R. 799, 802 (Bankr. S.D. Ohio 2010).

29.     The FE Non-Debtor Releases fail under any number of these factors. First, there is not an "identity of interests" between the Debtors and their FE Non-Debtor affiliates as it relates to the causes of action covered by the Release. As the Sixth Circuit notes, this is "usually an

indemnity relationship" such that the claims against the non-debtor would risk depleting the assets of the estate. *Dow Corning II*, 280 F.3d at 658; *see also In re Eagle-Picher Indus., Inc.,* 963 F.2d 855, 861 (6th Cir. 1992) (finding an identity of interests when third party is entitled to absolute indemnity by the debtor); *A.H. Robins, Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986). Under this factor, the key consideration is whether "there is a real threat to the debtor because such a suit against third parties 'will deplete the assets of the estate.'" *In re SL Liquidating*, 428 B.R. at 802 (quoting *Dow Corning II*); *see also In re Nat'l Staffing Servs.* 338 B.R. 35, 37 (Bankr. N.D. Ohio 2005) (finding no identity of interests even if there were joint and several liability on a debt because the suit against the non-debtors would not deplete the estate assets). Because the FE Non-Debtor Release covers all direct/independent and derivative causes of action relating in any way to the Debtors' businesses or property, the Debtors cannot demonstrate an identity of interests among the parties.

30.     Second, there has been no showing that the FE Non-Debtor Releases are somehow essential to reorganization. The Debtors seem to be making the claim that the FE Non-Debtor Releases are "essential" to the Plan because, without them, the FE Non-Debtors will not make the necessary contributions to the reorganization. But this is not the test. Instead, a debtor must show that "the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor." *Dow Corning II*, 280 F.3d at 658. Even the possibility of indemnity is not enough if the debtor is unable to show "that its reorganization is doomed without" the nondebtor release. *Nat'l Heritage Found., Inc. v. Highbourne Found.*, 760 F.3d 344, 348-349 (4th Cir. 2014). The Debtors have not, and cannot, make that showing.

31.     Third, and most obviously, the proposed Plan does not provide for a mechanism, such

as a trust or settlement fund, to address the causes of action covered by the FE Non-Debtor Releases. "Courts have approved nondebtor releases when . . . the enjoined claims were 'channeled' to a settlement fund rather than extinguished." *Metromedia*, 416 F.3d 136, 142 (2d Cir. 2005); *Dow Corning II*, 280 F.3d at 654-655 (discussing the $2.35 billion fund to pay for claims covered by the nondebtor release); *Nat'l Heritage Found.*, 760 F.3d at 350 ("This consideration has typically been used to justify release provisions where the reorganization plan includes a mechanism such as a dedicated settlement fund to pay the claims of those affected by an injunction." (internal quotation marks and alterations omitted)). No such mechanism exists under the Debtors' Plan.

## II. The Disclosure Statement Should Not Be Approved Because it Fails to Provide Adequate Information.

32. Under section 1125 of the Bankruptcy Code, a disclosure statement should not be approved unless it contains "adequate information," that is, information sufficient to enable those with claims against or interests in the debtor "to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1) and (b). A disclosure statement must contain "all pertinent information bearing on the success or failure of the proposals in the plan of reorganization." *In re Cardinal Congregate I*, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990). A disclosure statement also must contain "financial information sufficient to inform the creditors of all liens, encumbrances, security interests, loans or *other financial obligations* which may impair the Debtor or his assets." *In re Malek*, 35 B.R. at 444 (emphasis added). And it must "clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Keisler*, No. 08-34321, 2009 WL 1851413, at *4 (Bankr. E.D. Tenn. June 29, 2009) (quoting *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991)). *See also In re Malek*, 35 B.R. at 444 ("The Debtor is required to make a

full, clear, and complete disclosure of all underlying assumptions.").

### A. *Inadequate Disclosure of Information*

33.     Here, the Disclosure Statement is lacking in important information, especially relating to potential environmental liabilities of the Debtors and Non-Debtors.  The Plan relies on the approval of the broad FE Non-Debtor Releases, yet it provides no information about the types of the liabilities that would be covered by the release and the potential magnitude of those liabilities.  In fact, the Disclosure Statement does not even specify exactly who the FE Non-Debtor Released Parties are.  This lack of information makes it impossible to adequately evaluate the proposed Plan.  Surely, a decision about something that is unusual and an "extreme remedy," *see In re Saleh*, 427 B.R. at 420-421, should not be decided without full disclosure as to the scope and magnitude of exactly what is covered and the underlying acts giving rise to the Non-Debtors' liability.  The Disclosure Statement should indicate that the Governments, among others, believe that the non-Debtor releases of independent liability are not legal and will not be approved.

34.     Other categories of information are also inadequately explained in the Disclosure Statement.  The Disclosure Statement provides an estimate of recovery for various categories of noteholders.   However, noteholders may have claims on their notes against more than one Debtor.  In order to understand properly the impact of the Plan, the Disclosure Statement should reveal the average recoveries of noteholders based on their claims against multiple Debtors.

35.     The Debtors hold large sums of cash.  Some of the cash will be paid to creditors and other cash will be used for operations of the reorganized debtors.  The Disclosure Statement should provide a clearer statement of how much cash will be paid to creditors and how much will remain with the reorganized debtors.  The Disclosure Statement should clearly state whether or not there is a cap on the distribution of cash to creditors, and if so, what that cap is.

36.     The Plan provides for various undescribed and unspecified "restructurings" of the various debtors.  (Docket No. 2120, Plan at 26, 73, 74).  How a Plan proposes to reorganize or restructure the debtors should be fully explained in the Disclosure Statement.  Otherwise the feasibility of the various reorganized debtors to emerge or result cannot be properly evaluated.

37.     The Plan provides for the discretion of a Debtor to liquidate and dissolve without Court approval.  (Docket No. 2120, Plan at 71). The Disclosure Statement should fully explain any such proposed liquidations or dissolutions and whether they are forbidden by law.  Otherwise there will not be adequate information as to whether the Plan is proposed to violate non-bankruptcy law and/or the impact on Debtors which are reorganizing.

38.     The Disclosure Statement should make clear that the Governments are not entering into any settlement of environmental liabilities.  *See* (Docket No. 2120, Plan at 64).

39.     The Disclosure Statement should provide better information about the meaning and effect of Article IV.F of the Plan which states that any Reorganized Debtors will not have any liability for any acts or omissions prior to the Effective Date.  The Disclosure Statement should explain the legal authority for allowing the Reorganized Debtors to not protect public health and safety from hazards, contamination, or defects on their property should they arise in whole or part from acts or omissions prior to the Effective Date.  The Disclosure Statement should note that the Governments believe that this and any similar provision in the Plan is forbidden by law.

40.     The Plan should provide better information about the anticipated period for storage of spent fuel at the nuclear facilities until the Department of Energy takes possession of the spent fuel, and how the costs of operations and spent fuel management during this period will be funded.

41.     The Plan should provide better information as to what claims of consenting creditors'

are proposed to be released under the Plan and the legal basis for such a release.

42.     The Plan and related documents provide for the payment of attorneys' fees and expenses of various creditor groups. The Disclosure Statement should provide an estimate for the fees and expenses so that their impact on the estate can be understood.

43.     The Disclosure Statement should provide further information about the magnitude of any claims for tax refunds by the Debtors and/or FE Non-Debtors and how they will be handled under the Plan.

44.     The Disclosure Statement should explain the purpose of the Plan's provision for retention of documents and whether this provision violates federal or state requirements for the preservation of documents. *See* (Docket No. 2120, Plan at 97-98).

45.     The Disclosure Statement should explain how the Plan should be deemed to be substantially consummated on the Effective Date even if in fact it has not been substantially consummated. *See* (Docket No. 2120, Plan at 104).

46.     The Disclosure Statement should explain the legal basis for the automatic stay to remain in effect after the Effective Date. *See* (Docket No. 2120, Plan at 106).

47.     The Financial Projections estimate a $67 million shortfall in the nuclear decommissioning trust for Beaver Valley Unit 1. Exhibit D at 13, 15. The Disclosure Statement should be revised to provide that any projected shortfalls in the nuclear decommissioning trusts shall be corrected in the license transfer application submitted to the NRC and funded by the Effective Date of the Plan.

48.     The Disclosure Statement should include information as to whether the Plan will have any impact on FE Non-Debtors' obligations under the Consent Decree in *United States et al. v. Ohio Edison Company et al.*, No. C2-99-1181 (S.D. Ohio) and any alleged legal basis therefor.

49.     The Disclosure Statement should include more information about the Non-Debtors' provision of future support for financial assurances and the enforceability thereof.

50.     Definition 184 should be corrected to note that the decommissioning obligations are required by the Nuclear Regulatory Commission, not the Department of Energy.

### B.    The Court should reject the unreasonable Plan confirmation schedule.

51.     Finally, in addition to proposing a fatally flawed Plan, the Motion proposes a procedure and Plan confirmation schedule that is totally inadequate.  The Governments have also filed an Opposition to Debtors' motion for an order scheduling certain discovery and pre-trial deadlines.  In that brief, which we incorporate by reference here, the Governments explain that the discovery schedule proposed by the Debtors is incredibly aggressive and unreasonable, given the complex commercial and environmental issues involved and the lack of information that has been provided to the Governments so far.  For the same reasons, the Plan confirmation schedule proposed by the Debtors is unreasonable and arbitrary, and should be rejected.[8]

### CONCLUSION

52.     Although courts usually address issues with a reorganization plan at the confirmation stage, the Governments urge the Court to conserve judicial and party resources by denying the Debtors' Motion and rejecting the proposed Plan now.  Here, the Plan is patently unconfirmable because it depends on the unlawful FE Non-Debtor Releases, which exceed the Court's subject matter jurisdiction and authority under the Bankruptcy Code.  Additionally, the Disclosure

---

[8] The Court previously noted that if the Governments have been "put in a bad position because of actions of the Debtor and the other creditors, that's not [the Governments'] fault, that's their fault.  And . . .  if that is all true, then it would be their fault and they would suffer the consequences from it . . . maybe that's a failing on their part too, if they create that situation . . . [i]t may just take a little bit of time and maybe the deadlines need to be bumped out." *See* February 5, 2019 Transcript at 26, lines 12-15, 18-19, and 21-25.

Statement does not provide adequate information and proposes an unreasonable procedure and

Plan schedule. For the foregoing reasons, the Governments respectfully request that the Debtors'

Motion be denied.

Dated: March 12, 2019

**FOR THE UNITED STATES**

BRUCE S. GELBER
Deputy Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

/s Alan S. Tenenbaum
ALAN S. TENENBAUM
PATRICK M. CASEY
NICHOLAS A. MCDANIEL
Environmental Enforcement Section
Environment and Natural Resource Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 514-5409
Fax: (202) 514-0097
Email: alan.tenenbaum@usdoj.gov

**FOR THE OFFICE OF THE OHIO**
**ATTORNEY GENERAL**
**DAVE YOST**

/s Michael E. Idzkowski
MICHAEL E. IDZKOWSKI (Ohio Reg. No. 0062839)
TIMOTHY J. KERN (Ohio Reg. No. 0034629)
Assistant Attorneys General
Environmental Enforcement Section
30 East Broad Street, 25th Floor
Columbus, Ohio 43215
Phone: 614-466-2766
Fax: 614-644-1926
Email: Michael.Idzkowski@OhioAttorneyGeneral.gov
          Timothy.Kern@OhioAttorneyGeneral.gov

**FOR THE PENNSYLVANIA DEPARTMENT
OF ENVIRONMENTAL PROTECTION**

/s Barbara J. Grabowski
BARBARA J. GRABOWSKI
Assistant Counsel
PA ID No.61657
Office of Chief Counsel
400 Waterfront Drive
Pittsburgh, PA 15222-4745
Email: bgrabowski@pa.gov


VERA N. KANOVA
Assistant Counsel
PA I.D. No. 316676
Office of Chief Counsel
400 Market Street
Harrisburg, PA  17101-2063
Email: verkanova@pa.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2019, I caused the above OBJECTION OF THE UNITED STATES, STATE OF OHIO, AND PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION TO MOTION FOR AN ORDER APPROVING DISCLOSURE STATEMENT AND GRANTING OTHER RELIEF to be served via ECF.

/s Alan S. Tenenbaum
U.S. Department of Justice
