**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>FIRSTENERGY SOLUTIONS, CORP., *et al.,*[1]<br><br>Debtors | Chapter 11<br><br>Case No. 18-50757<br>(Jointly Administered)<br><br>Hon. Judge Alan M. Koschik |

**OHIO CONSUMERS' COUNSEL'S STATEMENT THAT FES'S PROPOSED THIRD-PARTY, NON-CONSENSUAL RELEASE IN ITS SECOND AMENDED PLAN FAILS TO SATISFY THE LEGAL STANDARDS FOR APPROVAL AND RISKS HARMING CONSUMERS [DKT. NOS 2119, 2120, 2121, 2310, AND 2313]**

**I.    Introduction**

Debtors FirstEnergy Solutions Corp., FirstEnergy Nuclear Operating Company, and their affiliated debtors and debtors in possession (collectively, "FES") are seeking approval of a disclosure statement for a second amended chapter 11 plan. The Second Amended Plan provides for an unduly and extraordinarily broad release that unfairly exposes the general public to financial risk. The release's design would shield FirstEnergy Corp. and its nondebtor affiliates (collectively, "FirstEnergy") from future liability. Under the release, FirstEnergy would be shielded from any claims or causes of action related in any way to the Debtors' businesses and property, including from any liability for the costly decommissioning of its power plants. Second Amended Plan § VIII.E (Document Number 2310) at 100, 102 (related injunction).

---

[1] The FirstEnergy Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: FE Aircraft Leasing Corp. (9245), case no. 18-50759; FirstEnergy Generation, LLC (0561), case no. 18-50762; FirstEnergy Generation Mansfield Unit 1 Corp. (5914), case no. 18-50763; FirstEnergy Nuclear Generation, LLC (6394), case no. 18-50760; FirstEnergy Nuclear Operating Company (1483), case no. 18-50761; FirstEnergy Solutions Corp. (0186); and Norton Energy Storage L.L.C. (6928), case no. 18-50764. The Debtors' address is: 341 White Pond Dr., Akron, OH 44320.

{757539-2}

At the hearing on March 19, 2019, the Court asked FirstEnergy's counsel if the release would protect it from claims related to its previous ownership of properties now owned and operated by FES. In response, FirstEnergy's counsel Thomas Wearsch stated "I can give everyone a very simple answer, which is in the example that was just given of a facility that was formerly owned by a FirstEnergy Corp., a non-Debtor FE Corp entity, that is now owned by the Debtors, that would be a released claim." March 19, 2019 Hearing Transcript at 258:4-9.

The Office of the Ohio Consumers' Counsel ("OCC")[2] is concerned for Ohio consumers that the non-consensual release in Section VIII.E of the Second Amended Plan, in combination with the Plan's other provisions, shields FirstEnergy from too much liability and leaves Ohioans with too little protection. In this regard, the release could shield FirstEnergy from future claims related to power plant decommissioning costs (on power plants it formerly owned) or from its contractual obligations to the Ohio Valley Electric Corporation ("OVEC").

In other words, the Plan allows FES's future equity holders (owners) to enjoy the upsides of any future improvement in FES's operations while they shed certain downside risks that could instead be ultimately imposed upon Ohioans. Were funds for decommissioning to be inadequate, for example, consumers or taxpayers might be (unfairly) called upon to fund FirstEnergy and FES's power plant decommissioning liabilities to federal and state governments. Under FES's own Plan these decommissioning events will stretch for at least 60 years into the future.[3] Even FES concedes that its projected decommissioning costs for power plants and related

---

[2] OCC is the statutorily designated representative for residential utility consumers in Ohio. These consumers include customers whose FES electric marketing contracts are to be assigned to the "Newco" as part of the proposed Second Amended Plan and who may be required to fund any future shortfall in FES's ability to pay for power plant decommissioning costs.
[3] Detail regarding these costs and that the decommissioning of the nuclear plants would stretch over sixty years was additional information first provided in the Second Amended Disclosure Statement (Docket No. 2313) first filed on March 17, 2019.

{757539-2} 2

environmental liabilities exceeds $2 billion. *See* Second Amended Disclosure Statement (Docket No. 2313) at 53. FES's Plan provides no trust, reserve, or other protection to ensure payment of of its power plant decommissioning costs and environmental liabilities. Without such a mechanism, the Plan's proposed release makes the funding of these costs more uncertain than they otherwise should be. It does this by protecting FirstEnergy from claims related to its operation of the power plants that it owned and operated for many, many years prior to transferring them to FES.

As described in the OCC's prior objection to the First Amended Disclosure Statement, Ohio consumers have a strong interest in the adequate funding of the decommissioning costs. Ohio consumers (or (possibly taxpayers) could very likely bear much of the burden of any underfunding. That concern is based on the history of the Public Utilities Commission of Ohio ("PUCO") requiring customers to pay environmental remediation costs. In one case, it imposed at least $55 million in costs on customers for the clean-up of manufactured gas power plants that had been out of service for over fifty years.[4]

OVEC also referenced in its statement on the proposed FES disclosure statement that the Plan's nonconsensual third-party release could release its claims under the power purchase agreement between it and FirstEnergy Corporation's nondebtor affiliates Allegheny Energy Supply Company, LLC ("AES") and Monongahela Power Company ("Monongahela"). *See* Statement (Docket Number 2271) at 3. If the Plan releases allow AES and Monongahela to walk away from their funding obligations for OVEC, Ohio distribution customers of AEP Ohio, Duke

---

[4] *In the Matter of the Application of Duke Energy Ohio, Inc. for an Increase in Gas Rates,* PUCO Case No. 12-1685-GA-AIR, et al. Opinion and Order at 77 (November 13, 2013). A Link to the PUCO's Order is: http://dis.puc.state.oh.us/DocumentRecord.aspx?DocID=14678951-de5e-4483-a2d0-e478e71aa277

{757539-2} 3

Energy Ohio and DP&L could be forced to pay for the shortfall. They would pay this shortfall through retail charges imposed by PUCO that customers could not avoid of any OVEC-related costs not covered by revenues from selling OVEC generated electricity into the PJM market.[5]

OVEC also referenced in its statement a release of a guaranty by FirstEnergy of OVEC-related obligations for its affiliates. *See* Statement (Docket Number 2271) at 3 fn. 4. To the degree that OVEC, under the guarantee, could recover against FirstEnergy for obligations related to FES's rejection of its power purchase agreement with OVEC, any release of the guarantee could harm Ohio consumers. The harm to consumers results from increasing the amounts they are required to pay to fund OVEC's losses under PUCO-approved charges.

But FES's shifting of liabilities through nonconsensual, third-party releases fails as a matter of law to meet the narrow instances where they can be approved in this Circuit. The Sixth Circuit has held that "enjoining a noncreditor's claim is only appropriate in 'unusual circumstances.'" *See In re Dow Corning Corp.*, 280 F.3d. 648, 658 (6th Cir. 2002). FES claims that the release of FirstEnergy in the Second Amended Plan satisfies the stringent "unusual circumstances" test in *Dow Corning*. FES is wrong. The Second Amended Plan actually fails to satisfy at least two prongs of the test articulated in *Dow Corning* and is therefore unconfirmable. As such, the OCC considers approval of this Disclosure Statement, and the subsequent proceedings through a confirmation hearing, as wasteful and unproductive when parties in interest should be focusing their undivided attention on negotiating a confirmable plan.

**II.     Argument**

    **A.     As a Matter of Law and Consumer Protection, the Second Amended Plan Fails to Meet the Seven Factors of the *Dow Corning* Test Required to Release**

---

[5] PJM Interconnection, LLC is a regional transmission organization authorized by FERC to administer wholesale energy, capacity, and ancillary services markets through all or parts of Delaware, Illinois, Indiana, Kentucky, Maryland, Michigan, New Jersey, North Carolina, Ohio, Pennsylvania, Tennessee, Virginia, West Virginia, and the District of Columbia.

{757539-2}                                            4

**FirstEnergy from its Obligation to Pay Decommissioning Costs or OVEC Related Costs – and Thus the Current Proposed Plan is Unconfirmable**

The Sixth Circuit's opinion in *Dow* is clear and unambiguous:

> We hold that **when the following seven factors are present**, the bankruptcy court may enjoin a non-consenting creditor's claims against a non-debtor: (1) There is an identity of interests between the debtor and the third-party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate; (2) The non-debtor has contributed substantial assets to the reorganization; (3) The injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor; (4) The impacted class, or classes, has overwhelmingly voted to accept the plan; (5) The plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction; (6) The plan provides an opportunity for those claimants who choose not to settle to recover in full and; (7) The bankruptcy court made a record of specific factual findings that support its conclusions.

*Dow Corning*, 280 F.3d at 658 (emphasis added, citations omitted). The Sixth Circuit does not talk about a "majority," a "predominance," or a "weighing" of the factors. Rather, it requires that "the following seven factors are present." *Id.* Thus, to satisfy the unusual circumstances test, "at least in the Sixth Circuit, all of the factors must be present and all the factors are important." *In re SL Liquidating, Inc.*, 428 B.R. 799, 802 (S.D. Ohio 2010). On remand, the District Court in *Dow Corning* agreed that all seven factors must be satisfied, and approved Dow Corning's plan only after making detailed factual findings on how each factor was satisfied. *See Dow Corning*, 287 B.R. at 402-16

As articulated by the Court at the hearing on March 19, 2019, the application of many of the *Dow Corning* factors is factually intensive and not within the proper scope of the hearing on April 2, 2019. A review of just the Plan itself, however, reveals that the fifth factor (a mechanism for payment of all or substantially all of the claims covered by the injunction) and

sixth factor (a mechanism for creditors who do not settle to recover in full) are not satisfied without the need for the Court to consider additional evidence.[6] The Plan's treatment of power plant decommissioning costs shows how the Plan fails on these issues as a matter of law.

The Plan provides no special mechanism to fund decommissioning costs. The sole security for these decommissioning obligations are the nuclear decommissioning trusts and the surety bonds securing certain coal related obligations. This Plan, for example, lacks the special trust set up to pay the claims subject to the injunction that was present in Dow Corning's confirmed plan. *See Dow Corning*, 287 B.R. at 414-15.

Instead, the Second Amended Plan leaves any additional decommissioning costs as a general obligation of the reorganized debtors or "New FES." These entities are supposed to exit the power generation business by 2023. *See* 2nd Amended Disclosure Statement Ex. D at 4 (Docket No. 2313-4) ("None of the Debtors' generating units are assumed to clear megawatts in the 2022/2023 Planning year."). After that date, New FES's sole source of revenue will be as a retail business. *See id.*[7] No plan provision requires New FES to continue the retail business even until 2023. Thus, there is no guarantee that there will be any additional funds available to

---

[6] Arguably, the fourth factor requiring "overwhelming acceptance" of the plan cannot be satisfied where the governmental environmental agencies, which are objecting based on the New FES's (and other related parties') future compliance with legal obligations, are an impacted class, but are not entitled to vote on the Plan.

[7] While not properly subject of the April 2nd hearing, the OCC would note that the Financial Projections for the Retail business attached to the disclosure statement make the implausible assumption that FES's retail electric business will increase sales from 27 terawatt hours in 2019 to 48 terawatt hours in 2023. This represents an increase of sales of over 75% in five years. *See* 2nd Amended Disclosure Statement Ex. D Financial Projections at 4. This results in projected EBITDA for the retail business of $69 million in 2023. *See id.* at 9. This projection is either the classical hockey-stick fantasy or a cover for real projections based on FES's current requests for subsidies for its nuclear plants in Ohio and Pennsylvania being approved. If the prospects for the retail business were actually this rosy without subsidies, one would have expected Exelon to offer more than the $140 million for the business or the sale auction would have attracted alternative bids.

pay the decommissioning costs for FES's nuclear and coal plants beyond the existing trusts and surety bonds. This funding gap is particularly acute for FES's nuclear plants which it proposes to place in a "SAFSTOR" status where decommissioning could take place over 60 years or more. *See* 2nd Amended Disclosure Statement (Document No. 2313) at 46. Similarly, the Plan fails to provide a mechanism for recovery of OVEC's asserted claims against FirstEnergy related to the power purchase agreement between it and AES and Monongahela or on the guarantee by FirstEnergy of OVEC-related obligations.

FES's claim on pages 25 and 26 of its omnibus reply that the "all or substantially all" factor is satisfied because "recoveries would be substantially diminished" if FirstEnergy terminated its settlement with FES misinterprets that factor. In *Dow Corning*, the Sixth Circuit found that this factor was not met where the plan failed to provide "an opportunity for those claimants who choose not to settle to recover in full" as the plan risked not paying the United States government claims after those of unsecured creditors. *Dow Corning*, 280 F.3d at 659. This was so even though Dow Corning and its insurers provided a $2.35 billion settlement fund for claims in that case which is akin to the consideration provided by FirstEnergy's settlement in this case. *Id.* at 654-55. The Court in *SL Liquidating* overruled a similar argument by pointing out that "[t]he Debtors have merely restated the best interest of the creditors test of 11 U.S.C. § 1129(a)(7), which is a prerequisite to confirmation which must be satisfied in every chapter 11 case." *SL Liquidating,* 424 B.R. at 804. Nothing in *Dow Corning* suggests that "all or substantially all" is synonymous with the best interest of creditors test. That the FirstEnergy settlement improves the recovery of unsecured creditors or even provides a better balance sheet for the reorganized debtor going forward does not satisfy the "all or substantially all" fifth factor.

The Plan also fails the sixth factor requiring that a plan provide for creditors who choose to litigate their claims rather than to settle the opportunity to recover in full. Currently, federal

{757539-2} 7

and state governments face no impediment in pursuing either FES or FirstEnergy for decommissioning or environmental costs related to their power plants. Under the Plan, however, they lose their opportunity to recover against FirstEnergy's billions of dollars in assets. The Plan does not address the governments' future claims and FES could foreseeably distribute the proceeds and all of its assets to other creditors and equity holders years in advance of when the governments' decommissioning claims come due. The Plan also lacks the procedural mechanisms prescribed in *Dow Corning* to protect the government claims from this risk.

Although FirstEnergy, FES, and the plan proponents would like the decommissioning liabilities to disappear through the third-party release and injunction, the liabilities do not magically disappear in reality. By erecting a robust release and injunction wall to defeat any recovery on underfunded future decommissioning claims, the Plan undermines and arguably disregards the sixth factor.

The Sixth Circuit in Dow Corning recognized the risk of abusive third-party releases when it required satisfaction of all seven factors to ensure that such releases were reserved for truly unusual circumstances. Those circumstances are necessarily rare. They are also not present here. Without any mechanism to provide for recovery in full if the governments litigate their future claims, now existing or in the future, the Plan is unconfirmable. FES must provide a mechanism for recovery that ensures payment of these claims beyond the existing decommissioning trusts and surety bonds.

> **B.** **FES is Incorrect that Decommissioning and OVEC-related Claims against FirstEnergy Can Be Released Without Satisfying All Seven Dow Corning Factors**

In its Omnibus Reply, FES makes the contrary claim that not all of the *Dow Corning* factors must be satisfied for the "unusual circumstances" to exist that make it possible for a bankruptcy court to approve a nonconsensual, third-party release. *See Omnibus Reply*, at 26-27.

{757539-2} 8

In doing so, FES ignores the plain language in *Dow Corning* discussed earlier mandating that all seven factors must be present, and mostly relies on authority outside of the Sixth Circuit. The two readily distinguishable, in-circuit cases cited by FES are *In re City of Detroit,* 524 B.R. 147 (E.D. Mich. 2014) and an unpublished decision from another judge in this District in *Akron Thermal, Limited Partnership*, Case No. 07-51884 (January 26, 2009). *See* Omnibus Reply at 27. Neither of those opinions are persuasive. Neither opinion, for instance, explains how *Dow Corning*'s "when the following seven factors are present" language could mean anything other than all seven factors to be present. Moreover, both opinions rely on the fact that the debtors were not traditional corporations in a chapter 11 case when they modified the *Dow Corning* test.

In *Detroit*, the Court focused on the fact that the case was proceeding under chapter 9 of the Bankruptcy Code and relied on an out-of-circuit bankruptcy court decision in *In re Connector Ass'n, Inc.*, 447 B.R. 752, 767 (Bankr. D.S.C. 2011) (where *Dow Corning* is not binding precedent) to hold that the *Dow Corning* factors could be applied differently in a chapter 9 case. *See Detroit*, 524 B.R. at 173-74. The *Detroit* opinion does not provide authority for extending its weighing of the factors analysis outside of the unique world of chapter 9 cases. Any argument that the *Detroit* weighing analysis extends to chapter 11 cases would directly contradict *Dow Corning*, binding circuit precedent decided in the chapter 11 context involving a corporation like this case.

FES also points to the unpublished decision in *Akron Thermal*. But that decision relies on non-Sixth Circuit law to hold that not all of the *Dow Corning* factors must be satisfied in a case involving a partnership where the proposed injunction covered *completely unknown* claims against *partners*. *See Akron Thermal.* at 61-62. That is far different from this case. FES is not a partnership and the proposed nonconsensual, third-party release and injunction defeats *known and anticipated* future decommissioning obligations. Seriously, FES omits any mention of the

{757539-2} 9

EPA's agreed order and carveout from the third-party release provision in *Akron Thermal* such that the third-party release did not cover ***any*** environmental obligations to the EPA and thus posed none of the serious harms to the public by the proposed injunction in this case. *See In re Akron Thermal, Ltd. P'ship* Case No. 07-51884 (Docket No. 536) (Bankr. N.D. Ohio E.D. Oct. 09, 2018) at 2 (copy attached as Exhibit A).

FES's invitation to deviate from *Dow Corning*'s seven-factor test fails. Both the *Detroit* and *Akron Thermal* cases are highly distinguishable, and in the case of *Akron Thermal*, the third-party release did not release the EPA's environmental claims.

### III. Conclusion

The Sixth Circuit's *Dow Corning* test of "unusual circumstances" requires satisfaction of all seven factors for approval of any third-party release and injunction, such as what FES proposes. As a matter of law, the Second Amended Plan fails to meet the fifth and sixth factors of that test and risks imposing significant harm on Ohio consumers through failing to guarantee decommissioning funds and possibly allowing FirstEnergy to shed its OVEC-related liabilities. Accordingly, this Court should deny approval of the Second Amended Disclosure Statement and parties in interest should focus their efforts on negotiating a revised plan that satisfies the standards for confirmation and does not risk harm to the public in this manner.

Dated: March 26, 2019
      Columbus, Ohio

Respectfully submitted,

/s/ David A. Beck
David A. Beck (0072868)
Candice L. Kline (admitted to the bar of the Northern District of Ohio, IL # 6296954)
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Telephone: (614) 365-4100
Facsimile: (614) 365-9145
E-mail: beck@carpenterlipps.com
kline@carpenterlipps.com

*ATTORNEYS FOR OFFICE OF THE OHIO CONSUMERS' COUNSEL IN THEIR POSITION AS SPECIAL COUNSEL FOR THE OHIO ATTORNEY GENERAL*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was electronically filed on March 26, 2019 and served through the Court's electronic filing system and on the General Service List via email based on the listing posted on Prime Clerk's website as of the filing of this notice.

/s/ David A. Beck
One of the Attorneys for the Special Outside Counsel for the Office of the Ohio Consumers' Counsel