UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 )  ) Case No. 18-50757 (AMK) |
| FIRSTENERGY SOLUTIONS CORP., *et al.*,[1] | ) (Jointly Administered) ) |
| Debtors. | ) ) Hon. Judge Alan M. Koschik ) |

**DEBTORS' SUPPLEMENTAL BRIEF IN SUPPORT OF DEBTORS' MOTION
FOR ORDER (I) APPROVING DISCLOSURE STATEMENT, (II) ESTABLISHING
PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT
OR REJECT THE DEBTORS' JOINT CHAPTER 11 PLAN, (III) APPROVING
THE FORM OF BALLOTS, (IV) SCHEDULING A HEARING ON CONFIRMATION
OF THE PLAN, (V) APPROVING PROCEDURES FOR NOTICE OF THE
CONFIRMATION HEARING AND FOR FILING OBJECTIONS TO
CONFIRMATION OF THE PLAN, AND (VI) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this supplemental brief (the "Supplemental Brief") in support of the *Debtors' Motion for Order (I) Approving Disclosure Statement, (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Debtors' Joint Chapter 11 Plan, (III) Approving the Form of Ballots, (IV) Scheduling a Hearing on Confirmation of the Plan, (V) Approving Procedures for Notice of the Confirmation Hearing and for Filing Objections to Confirmation of the Plan, and (VI) Granting Related Relief* [Docket No. 2121] (the "Disclosure Statement Motion") and to supplement the *Debtors' Omnibus Reply to Objections to (A) Debtors' Motion for Order (I) Approving Disclosure Statement (II) Establishing Procedures for Solicitation and Tabulation of*

---

[1] The Debtors in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, are: FE Aircraft Leasing Corp. (9245), case no. 18-50759; FirstEnergy Generation, LLC (0561), case no. 18-50762; FirstEnergy Generation Mansfield Unit 1 Corp. (5914), case no. 18-50763; FirstEnergy Nuclear Generation, LLC (6394), case no. 18-50760; FirstEnergy Nuclear Operating Company (1483), case no. 18-50761; FirstEnergy Solutions Corp. (0186); and Norton Energy Storage LLC (6928), case no. 18-50764. The Debtors' address is 341 White Pond Dr., Akron, OH 44320.

*Votes to Accept or Reject the Debtors' Joint Chapter 11 Plan, (III) Approving the Form of Ballots, (IV) Scheduling a Hearing on Confirmation of the Plan, (V) Approving Procedures for Notice of the Confirmation Hearing and for Filing Objections to Confirmation of the Plan, and (VI) Granting Related Relief; (B) Motion of the Debtors for Entry of an Order (I) Authorizing the Debtors to Enter Into and Perform Under the Restructuring Support Agreement and (II) Granting Related Relief; and (C) Motion of Debtors for Entry of an Order Scheduling Certain Discovery and Pre-Trial Deadlines in Connection with the Confirmation of the Debtors' Plan of Reorganization* [Docket No. 2307] (the "Reply").[2]

## PRELIMINARY STATEMENT

1. In its *Scheduling Order Regarding Briefing and Oral Argument on Motion to Approve Disclosure Statement* [Docket No. 2356] (the "Scheduling Order"), the Court asked parties to submit supplemental briefing on the issue of whether the Plan is patently unconfirmable under applicable law because of the FE Non-Debtor Parties' Third Party Releases.[3] For the Court to determine that the Plan is patently unconfirmable, the Release Objectors would have to persuade the Court that the FE Non-Debtor Parties' Third Party Releases are impermissible as a matter of law on their face. But the Sixth Circuit has already rejected such a categorical challenge and held in no uncertain terms that such releases are permissible in "unusual circumstances." As practice and precedent firmly establish, whether such circumstances exist is properly determined on an evidentiary record at confirmation.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Second Amended Joint Plan of Reorganization for FirstEnergy Solutions Corp. et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 2310] (the "Plan") or the Reply, as applicable.

[3] The following parties addressed the propriety of third party releases in their Disclosure Statement Objections: the Governments, FERC, SEC, the U.S. Trustee, the Citizens Organizations, OVEC and the Sierra Club. Such parties shall be collectively referred to herein as the "Release Objectors".

2.     The Release Objectors sidestep this inconvenient controlling precedent by diverting the Court's attention to potential (and yet unidentified) "direct" or "independent" claims that can be asserted against the FE Non-Debtor Released Parties which they allege cannot be released under applicable law in this Circuit. This contention—*i.e.*, that third party releases of non-derivative claims can ***never*** be approved—is incorrect and illogical. If that were the case, third party releases would be *per se* impermissible in all cases. That is because any derivative claims are within the debtor's power to release, and upon the release of such derivate claims by the debtor, there would be nothing left for the third party releases to address. Yet, the Sixth Circuit held in its seminal *Dow Corning*[4] decision that third party releases could be granted where certain facts and circumstances could be shown. Third party releases, to be necessary or meaningful, must include non-derivative claims that could not otherwise be brought or settled by the debtor. Adopting the Release Objectors' position would require the Court to ignore the Sixth Circuit's decision in *Dow Corning*. That cannot be the result here.

3.     Further, the Court's subject matter jurisdiction to permit third party releases in connection with confirmation of a plan is without question. This Court has "core" jurisdiction when reviewing and granting third party releases of the type at issue here. The FE Non-Debtor Parties' Third Party Releases are central to the plan confirmation proceedings, and the Court's power to adjudicate them is thus subject only to the requirements of Bankruptcy Code sections 1123 and 1129 and *Dow Corning*'s standard for approving such releases. The Release Objectors rely on *Papas v. Buchwald Capital Advisors, LLC (In re Greektown Holdings, LLC)*, 728 F.3d 567 (6th Cir. 2013), a case involving a post-confirmation claims bar order. *Greektown*, which analyzes only "related to" jurisdiction, is inapposite to the confirmation-related matter before this

---

[4] *Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648 (6th Cir. 2002).

Court: a release to be approved pursuant to a confirmed chapter 11 plan. Indeed, the Sixth Circuit expressly distinguished *Greektown* from *Dow Corning* on the ground that it involved "a bar order entered in connection with a settlement agreement long after the plan of reorganization was confirmed." *Id.* at 576; *see also id.* at 577. Here, the Court need not rely on "related to" jurisdiction at all, and can rely solely on its core jurisdiction.

4. Alternatively, the Court clearly has "related to" jurisdiction over claims that are subject to the FE Non-Debtor Parties' Third Party Releases. At the confirmation hearing, the Debtors intend to establish an evidentiary record demonstrating that the claims falling within the FE Non-Debtor Parties' Third Party Releases will have a "conceivable" effect on the Debtors' estates. Like other bankruptcy courts, the Court will be aided in this process through the development of an evidentiary record at confirmation. That would allow the Release Objectors to articulate precisely what sort of claims they are concerned about, and would allow the Debtors to respond more concretely about any potential impact. That is precisely why courts defer the adjudication of the permissibility of third party releases to confirmation.

5. Finally, the Debtors will be able to satisfy the *Dow Corning* standard for approval of third party releases at confirmation. The FE Non-Debtor Parties' Third Party Releases present the "unusual circumstances" that the Sixth Circuit envisioned in finding nonconsensual third party releases permissible. Without these releases, and the related consideration and claims waivers being provided under the FE Settlement Agreement, not only would this Plan not be possible, but it is unlikely that the Debtors would be able to reorganize at all. Instead, the Debtors would likely expend all of their resources litigating against their parent company and non-Debtor affiliates, leaving the Debtors unable to confirm a plan over the rejection and objection of the FE Non-Debtor Parties—who hold over $2 billion in asserted claims (including

4

$700 million in secured claims) against the Debtors. The evidentiary record at confirmation will substantiate these "unusual circumstances" and provide the Court with ample factual support to satisfy the *Dow Corning* standard.

**REPLY TO DISCLOSURE STATEMENT OBJECTIONS**

**I.    The Scope of the FE Non-Debtor Parties' Third Party Releases[5]**

6.    While the language in Article VIII.E is admittedly dense, the scope of the FE Non-Debtor Parties' Third Party Releases is properly bounded by relation to the Debtors' businesses, assets and reorganization. Specifically, the FE Non-Debtor Parties' Third Party Releases provide that each holder of a Claim against or Interest in the Debtors will be deemed to release any claim or Cause of Action[6] based on or relating to or are arising from in whole or in part:[7]

- the Debtors, their businesses, their property and their capital structure;
- the assertion or enforcement of rights and remedies against the Debtors;
- the Debtors' in- or out-of-court restructuring discussions;
- the intercompany transactions between or among the Debtors and/or their Affiliates (including the FE Non-Debtor Parties);
- the purchase, sale or recession of the purchase or sale of any Security of the Debtors or the Reorganized Debtors;

---

[5]    *See also FE Non-Debtor Parties' Supplemental Brief in Support of the Debtors' Motion for an Order (I) Approving Disclosure Statement, (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Debtors' Joint Chapter 11 Plan, (III) Approving the Form of Ballots, (IV) Scheduling a Hearing on Confirmation of the Plan, (V) Approving Procedures for Notice of the Confirmation Hearing and for Filing Objections to Confirmation of the Plan, and (VI) Granting Related Relief*, filed contemporaneously herewith.

[6]    The Plan provisions setting forth the FE Non-Debtor Parties' Third Party Releases and the Debtor Released Parties' and Other Released Parties' Third Party Releases previously contained certain references that the release would be granted with respect to certain "Claims and Causes of Action" that could be brought by the parties deemed to grant such releases. As "Claims" is defined in the Plan as being limited to claims against the Debtors, the Debtors will be revising such references to "claims" (lowercase) rather than "Claims" when referencing claims that could be brought against non-Debtor Parties including the FE Non-Debtor Released Parties, the Debtor Released Parties and the Other Released Parties.

[7]    The releases provided to the FE Non-Debtor Released Parties are substantially similar to the releases provided to the Debtor Released Parties and the Other Released Parties in Section VIII.F of the Plan, aside from the absence of an opt-out with respect to the releases provided to the FE Non-Debtor Parties.

5

- the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan;

- the business or contractual arrangements between any Debtor and any FE Non-Debtor Released Party;

- the PCNs, the FES Notes, and any interest in the Mansfield Facility Documents;

- the Chapter 11 Cases and any related adversary proceedings;

- the Restructuring Support Agreement, the Process Support Agreement, the Standstill Agreement, the FE Settlement Agreement, the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with these documents, including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any FE Non-Debtor Released Party on the Plan or the Confirmation Order in lieu of such legal opinion;

- the issuance or distribution of securities pursuant to the Plan; or

- the distribution of property under the Plan or any other related agreement or any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

7. As evidenced by the above list, each of the releases provided to the FE Non-Debtor Released Parties relates directly to the Debtors, the Debtors' assets, or the events relating to these Chapter 11 Cases. To ensure sufficient disclosure and clarity, and to comport with the language negotiated in the FE Settlement Agreement, the Plan further provides that the FE Non-Debtor Parties' Third Party Releases are structured such that on the Effective Date the Holders of Claims and Interests will provide a full and complete release to the FE Non-Debtor Released Parties of and from any and all Causes of Action arising from or related in any way to: (a) the Debtors, Reorganized Debtors, their businesses, or their property; (b) any Causes of Action against the FE Non-Debtor Released Parties or their property arising in connection with any intercompany transactions and other matters arising in the conduct of the Debtors' businesses; (c) the Chapter 11 Cases; (d) the formulation, preparation, negotiation, dissemination, implementation, administration, Confirmation, or Consummation of the Plan, the Plan Supplement, any contract, employee pension or benefit plan, instrument, release, or other

agreement or document related to any Debtor, the Chapter 11 Cases or the Plan, as it may be modified, amended, terminated, or entered into in connection with either the Plan, or any agreement between the Debtors and any FE Non-Debtor Released Party, including the FE Settlement Agreement; or (e) any other act taken or omitted to be taken in connection with the Chapter 11 Cases, including, without limitation, acts or omissions occurring after the Effective Date in connection with distributions made consistent with the terms of the Plan.

8. While the scope of the FE Non-Debtor Parties' Third Party Releases can be interpreted broadly, it is not limitless, and is tailored to comply with applicable law. Indeed, the FE Non-Debtor Parties' Third Party Releases are limited in a number of important ways.

9. First, the releases are limited by the parties deemed to grant such release under the Plan. Only Holders of Claims against or Interests in the Debtors are deemed to release the FE Non-Debtor Released Parties. To the extent parties do not hold Claims against the Debtors (including any Governmental Units to which the Debtors solely owe ongoing performance obligations rather than monetary obligations), such parties are not bound by the release.

10. Second, the releases are limited in temporal scope. To the extent events that give rise to a claim or Cause of Action against the FE Non-Debtor Released Parties occur after the Effective Date, such claims or Causes of Action are not barred by the release.

11. Third, the FE Non-Debtor Parties' Third Party Releases are limited by the nature of those actions that are subject to the release. The releases relate to any "claims or Causes of Action" that could be brought against FE Non-Debtor Released Parties. Notably, this does not include any police or regulatory power that would fall outside the definition of claims (as defined under the Bankruptcy Code) or "Causes of Action".

12. Fourth, the FE Non-Debtor Parties' Third Party Releases are limited in their subject matter. As described above, each of the categories of claims and Causes of Action covered by these third party releases are related to the Debtors, their businesses and property, and their restructuring (including these Chapter 11 Cases).

13. Finally, the FE Non-Debtor Parties' Third Party Releases contain certain important exceptions which limit the scope of the releases in ways that are critical to the implementation of the Debtors' restructuring. Specifically, any obligations of the FE Non-Debtor Released Parties arising (a) after the Effective Date or (b) under the Plan, the Confirmation Order, any Restructuring Transaction, the FE Settlement Agreement and any related obligations under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, are not released.

14. The Debtors carefully assessed the scope of the FE Non-Debtor Parties' Third Party Releases when negotiating the FE Settlement Agreement and drafting the Plan.

**II. The Plan is Not Patently Unconfirmable**

15. The FE Non-Debtor Parties' Third Party Releases do not render the Plan patently unconfirmable. Rather, as numerous courts have recognized (including in the cases relied upon by the Release Objectors), the permissibility of third party releases is a matter to be addressed at confirmation.

16. Courts have recognized that solicitation should be delayed only in the exceptionally rare case where the proposed plan is "facially" or "patently" unconfirmable and where, as a matter of law, the plan "is so fatally flawed that confirmation is impossible." *See In re Cardinal Congregate I*, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990) (citation omitted). Moreover, "[s]uch action is discretionary and must be used carefully so as not to convert the disclosure statement hearing into a confirmation hearing, and to insure that due process concerns

are protected." *Id.* (citations omitted). Accordingly, a "disclosure statement should be disapproved at the threshold only where the plan it describes displays fatal facial deficiencies or the stark absence of good faith." *In re Phx. Petroleum Co.*, 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001) (quoting *In re E. Maine Electric Coop., Inc.*, 125 B.R. 329, 333 (Bankr. D. Me. 1991)) (citation omitted).

17. As the Court recognized in its Scheduling Order, for the Release Objectors to demonstrate that the Plan is patently unconfirmable, they would have to demonstrate that "the Debtors could prove no set of facts at a future confirmation hearing that would allow the Court to confirm a Plan containing such Releases." Precedent imposes this high burden, and for good reason. The legal inquiry into the Court's "related to" subject matter jurisdiction (to the extent the Court disagrees it has "core" jurisdiction over third party releases incorporated into a Plan) and into the permissibility of the releases under *Dow Corning* demand a factual record.[8]

18. Numerous courts have found that objections to plan release provisions are properly addressed in the context of confirmation after an evidentiary hearing so that courts can assess such provisions with the benefit of a sufficient factual and legal record. *See, e.g., In re New York City O.T.B.,* No. 09-17121 (MG) (Bankr. S.D.N.Y. Dec. 1, 2010) [Docket No. 234]

---

[8] The Release Objectors cite to *In re Mahoney Hawkes, LLP* as an example of a case where a court denied approval of a disclosure statement based on the impermissibility of third party releases under a plan. *See* 289 B.R. 285, 296-303 (Bankr. D. Mass 2002). That case is inapposite to the Court's consideration here, and seemingly contradicts the standard for demonstrating that a plan is patently unconfirmable. *Mahoney Hawkes* involved a liquidating chapter 11 plan for defunct law firm, which plan included releases for the debtor's malpractice insurer and partners in the debtor firm. *See id.* at 287. In concluding that the releases and injunction provisions of the plan were impermissible, the court seemingly relied on the parties' briefing and determined that "there is ***insufficient evidence*** to warrant such an exercise of discretion" to approve the releases. *Id.* at 302-303 (emphasis added). Here, the Court has correctly recognized that to the extent evidence is required to demonstrate the permissibility of the FE Non-Debtor Parties' Third Party Releases, such matter must be left for confirmation and the Disclosure Statement must be approved. *See* Scheduling Order, at 3.

9

(noting that the court lacked "sufficient factual or legal record" to resolve objections to release and exculpation provisions at the disclosure statement stage).[9]

19. Assessing whether the Court possesses "related to" jurisdiction with respect to the claims covered by the FE Non-Debtor Released Parties—which, as discussed in the Reply and further below, is not required in the present context of confirmations proceedings where core jurisdiction exists—necessitates a fact-driven, context-specific analysis regarding the impact of such potential claims on the Debtors' estates and the administration of the Chapter 11 Cases. Likewise, analysis of the propriety of the FE Non-Debtor Parties' Third Party Releases under *Dow Corning* will require a comprehensive, record-based examination of the multiple factual considerations that the Sixth Circuit has set forth in *Dow Corning* to determine whether the requisite "unusual circumstances" exist.

20. Even the cases invoked by the Release Objectors depend on an evidentiary record. For example, when assessing "related to" subject matter jurisdiction, the courts in *Combustion Engineering*,[10] *CS DIP*,[11] and *Midway Gold*[12] all relied on the record developed by the relevant

---

[9] *See also* Transcript of Hearing at 19:8–9, *In re Arcapita Bankr. B.S.C.*, No. 12-11076 (Bankr. S.D.N.Y. Apr. 26, 2013) [Docket No. 1057] ("There was a lot about third party releases, obviously. And that's a plan issue."); *In re Innkeepers USA Trust*, 448 B.R. 131, 148 (Bankr. S.D.N.Y. 2011) (holding that objections asserting that "release provisions [were] overly broad and should not be approved absent the consent of each releasing party" were "best categorized as confirmation objections"); Transcript of Hearing at 126:14–19, *In re Chemtura Corp.*, No. 09-11233 (Bankr. S.D.N.Y. July 21, 2010) [Docket No. 3358] ("The propriety of a third party release . . . is a confirmation issue."); *In re Drexel Burnham Lambert Grp.*, No. 90-10421, 1992 WL 62758, at *1 (Bankr. S.D.N.Y. Mar. 5, 1992) (referencing court's earlier ruling that objections to plan's non-debtor release and injunction provisions were in the nature of objections to confirmation); *Nielsen v. Specialty Equp. Cos. (In re Specialty Equp. Cos., Inc.)*, No. 92-20142, 1992 WL 279262 at *3 (N.D. Ill. Sept. 25, 1992) (noting that the bankruptcy court below held that "the validity of releases [is] a plan confirmation issue" and overruled objections to the disclosure statement regarding the appropriateness of third party releases).

[10] *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 227, 230–234 (3d Cir. 2004) ("*The record demonstrates* that Combustion Engineering, Basic and Lummus are independent corporate entities, with separate and distinct management operations.") (emphasis added) ("*There are no record findings of fact demonstrating* that [in] the independent, non-derivative claims against Basic and Lummus involve assets of the bankruptcy estates.") (emphasis added) ("We believe *this factual record* does not support 'related to' jurisdiction") (emphasis added) ("*The record demonstrates* that asbestos-related claims against Combustion Engineering arise from exposure to asbestos insulation…manufactured by Combustion Engineering") (emphasis added) ("*The record includes testimony* that Combustion Engineering, Basic and Lummus share certain insurance coverage.") (emphasis added) ("Courts finding 'related to' jurisdiction over claims against non-debtors based in part on shared

fact-finding body. The same was true for the courts in *Dow Corning*,[13] *City of Detroit*,[14] *SL Liquidating*,[15] *National Staffing Services*,[16] *Seaside Engineering*,[17] and *Nation Heritage Foundation*[18] when analyzing the propriety of non-consensual third party releases. The Debtors inarguably will have to establish a record to support the approval of the FE Non-Debtor Parties' Third Party Releases, but that is a matter for confirmation and not for approval of the Disclosure Statement.

### A. The FE Non-Debtor Parties' Third Party Releases Fall Within the Court's Core Subject Matter Jurisdiction

21. Consideration of the FE Non-Debtor Parties' Third Party Releases falls squarely within the Court's core subject matter jurisdiction. As such, the Release Objectors' argument as to the purported lack of "related to" jurisdiction—based on a smattering of cases largely outside of the plan confirmation context—is beside the point.

---

       insurance policies *have relied not only on extensive record findings* regarding the terms and operation of the subject policies, but also on *additional evidence* of automatic liability against the debtor.") (emphasis added).

[11] *In re CS DIP, LLC*, 2015 WL 5920892 at *3 (Bankr. M.D. Tenn. Oct. 9, 2015) (noting that a hearing on the approval of a settlement agreement and an injunction contemplated therein involved the introduction of 21 exhibits and live testimony).

[12] *In re Midway Gold US, Inc.*, 575 B.R. 475, 520–521 (D. Colo. 2017) (finding that the bankruptcy court lacked subject matter jurisdiction to approve the non-consensual third party releases at issue after holding a confirmation hearing).

[13] *In re Dow Corning Corp.*, 280 F.3d at 658 ("For several reasons, *the record produced by the bankruptcy court* in this case does not support a finding of 'unusual circumstances'") (emphasis added).

[14] *In re City of Detroit*, 524 B.R. 147 (Bankr. E.D. Mich. 2014) (analyzing *Dow Corning* and approving the non-consensual third party releases in the debtor's plan of reorganization following a confirmation hearing).

[15] *In re SL Liquidating, Inc.*, 428 B.R. 799, 805 (S.D. Ohio 2010) (finding that the proposed releases did not satisfy Dow Corning Factors following a confirmation hearing).

[16] *In re Nat'l Staffing Servs.*, 338 B.R. 35, 38 (Bankr. N.D. Ohio 2005) (finding that no "unusual circumstances" existed to support an injunction after considering "evidence, exhibits and arguments of counsel").

[17] *SE. Prop. Holdings, LLC v. Seaside Eng'g & Surveying (In re Seaside Eng'g & Surveying, Inc.),* 780 F.3d 1070, 1081 (11th Cir. 2015) (approving non-consensual third party release in light of bankruptcy court's findings at the confirmation hearing) ("The bankruptcy court made *thorough* factual findings in reaching its decision. Its findings are amply supported by the evidence.") (emphasis in original).

[18] *Nat'l Heritage Found., Inc., v. Highbourne Found.*, 760 F.3d 344, 347 (4th Cir. 2014) (finding that circumstances did not warrant non-consensual third party release based on the factual record developed by the bankruptcy court).

22. As discussed in the Reply, a bankruptcy court "acts pursuant to its core jurisdiction when it considers the involuntary release of claims against a third party, non-debtor in connection with the confirmation of a proposed plan of reorganization, which is a statutorily-defined core proceeding." *Lynch v. Lapidem Ltd. (In re Kirwan Officers S.a.r.l.)*, 592 B.R. 489, 504 (S.D.N.Y. 2018). A plan of reorganization "is not the mere adjudication of a single claim by a creditor against a third-party . . . but a unitary omnibus civil proceeding for the reorganization or adjustment of all obligations of the debtor and disposition of all the debtor's assets." *In re Charles St. African Methodist Episcopal Church of Bos.*, 499 B.R. 66, 99 (Bankr. D. Mass 2013). When confirming a plan that contains third party releases, a court "does not address the merits of the claims being released." *In re Kirwan Officers S.a.r.l.*, 592 B.R. at 504. Rather, by confirming such a plan, a court "effectively cancels those claims so as to permit a total reorganization of the debtor's affairs in a manner available only in bankruptcy." *Id.* While such a plan "may have the effect of [a] ruling on the merits, it is not a ruling on the merits—and thus operates on entirely different jurisdictional footing." *Id.* at 505. Indeed, it "may or may not be appropriate for a court . . . to confirm a plan containing a third-party release—and, if it is appropriate, the manner and degree of relation of the released claim to the case are certainly factors . . . but [a bankruptcy] court undoubtedly has jurisdiction to adjudicate the plan, even without recourse to its related-to jurisdiction." *In re Charles St. African Methodist Episcopal Church of Bos.*, 499 B.R. at 99.

23. Recognizing core jurisdiction in the plan context does not provide bankruptcy courts a "blank check" or "[permit] parties to boot-strap related claims to a chapter 11 plan so as to give the court 'infinite jurisdiction,'" *In re Kirwan Officers S.a.r.l.*, 592 B.R. at 505 (citing *Midway Gold*, 575 B.R. at 519 (citation omitted)). Approval of third party releases is still

12

constrained by relevant authority regarding the propriety of granting such releases—in this case, the "unusual circumstances" standard set forth in *Dow Corning*. Moreover, and importantly, any plan incorporating such third party releases will be otherwise subject to the stringent standards required for confirmation of a chapter 11 plan.

24. The Release Objectors cite several cases in which courts found that releases of independent claims against non-debtor third parties were not "related to" the chapter 11 cases and that courts therefore lacked subject matter jurisdiction to approve such releases. But virtually all[19] of those cases involved jurisdictional inquiries with respect to non-debtor third party releases, bar orders, or injunctions in the context of pre- or post-confirmation settlement agreements, often in the context of adversary proceedings, rather than plan confirmation.[20] That fundamental distinction explains why those courts never even addressed "core" jurisdiction.

25. The Release Objectors rely principally on the Sixth Circuit's decision in *Greektown*. *Greektown* involved a post-confirmation bar order sought in connection with the settlement of a fraudulent conveyance action prosecuted by a litigation trustee over two years *after* confirmation of the chapter 11 plan. *See* 728 F.3d at 570. In its decision, the Sixth Circuit recognized that releases in the context of plan confirmation are distinct from those sought in

---

[19] The *Midway Gold* case cited by the Governments in support of their arguments that the Court lacks subject matter jurisdiction should not sway the Court. In that case, the bankruptcy court found that it lacked core jurisdiction to approve third party release incorporated into a plan, arguing that such an interpretation of core jurisdiction would give the bankruptcy court "infinite jurisdiction." *See* 575 B.R. 475, 519 (internal citations omitted). The Colorado bankruptcy court ignores the fact that any chapter 11 plan remains subject to the confirmation requirements of the Bankruptcy Code, and that in the Sixth Circuit, such releases must still satisfy the *Dow Corning* standard. Moreover, the *Midway Gold* case reached its conclusions regarding subject matter jurisdiction following an evidentiary hearing at confirmation. *See id.*, at 521-22.

[20] *See, e.g., In re CIS DIP, LLC*, No. 12-01573, 2015 WL 5920892, at *13 (Bankr. M.D. Tenn. Oct. 9, 2015) (finding lack of subject matter jurisdiction over third party releases contemplated in post-confirmation settlement agreement because claims covered by releases were not sufficiently "related to" the post-confirmation estate) (citation omitted); *Fox v. Picard* (*In re Madoff*), 848 F. Supp. 2d. 469, 488 (S.D.N.Y. 2012) ("With regard to a permanent injunction of creditor suits against a third party *issued in connection with a settlement agreement* . . . a bankruptcy court generally may not enjoin" independent claims) (emphasis added); *In re Mrs. Weinberg's Kosher Foods, Inc.*, 278 B.R. 358, 366 (Bankr. S.D.N.Y. 2002) ("[T]he bankruptcy court would lack the power to enjoin [the prosecution of a non-derivative claim] through a channeling injunction *imposed as part of a settlement*.") (emphasis added).

18-50757-amk    Doc 2397    FILED 03/26/19    ENTERED 03/26/19 21:27:38    Page 13 of 20

other contexts. *See id.* at 576 (finding that *Dow Corning* "provides little help in determining whether the bar order [there] was proper" because that *Dow Corning* involved a third party injunction incorporated into a plan). The court in *In re CIS DIP, LLC* similarly interpreted *Greektown* to recognize a distinction between third party injunctions incorporated into a plan and those sought outside of the confirmation context. *See* 2015 WL 5920892 at *7 (noting that *Greektown* rejected application of the *Dow Corning* standard to an injunction sought post-confirmation).

26. The Court is being asked to consider the propriety of the FE Non-Debtor Parties' Third Party Releases in the context of confirmation of the Debtors' Plan. Confirmation comes with its attendant protections and rights for creditors and other parties in interest, and the Debtors remain subject to the standard articulated in *Dow Corning*. But in the context of confirmation, in assessing the propriety of the FE Non-Debtor Parties' Third Party Releases under *Dow Corning*, the Court will be on sound footing within its core jurisdictional powers.

### B. Alternatively, the FE Non-Debtor Parties' Third Party Releases Fall Within the Court's "Related To" Subject Matter Jurisdiction

27. Even if the Court were to consider broader "related to" jurisdiction, the Debtors will be able to demonstrate at confirmation that claims subject to the FE Non-Debtor Parties' Third Party Releases meet that standard, *i.e.*, the released claims "could conceivably have any effect on the estate being administered in bankruptcy." *In re Greektown Holdings, LLC*, 728 F.3d at 577 (citation omitted).

28. As the Debtors noted in the Reply, "related to" jurisdiction is to be viewed broadly. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995) ("Congress did not delineate the scope of 'related to' jurisdiction, but its choice of words suggests a grant of some breadth."). Absent the FE Non-Debtor Parties' Third Party Releases and the waivers granted by

14

the FE Non-Debtor Parties as consideration under the FE Settlement Agreement, claims against the FE Non-Debtor Parties may have an impact on the Debtors' estates. For example, if found liable, the FE Non-Debtor Parties could seek contribution, subrogation, indemnity, or other claims from the Debtors for any amounts they are required to pay.

29. The Release Objectors misguidedly rely on *Combustion Engineering*—in which approval of the non-debtor release was not adjudicated until plan confirmation (per the normal course)—to support their argument that releases covering independent claims are not authorized by the Bankruptcy Code. In *Combustion Engineering*, the Third Circuit held that the bankruptcy court did not have "related to" jurisdiction over independent asbestos-related claims against non-debtor affiliates where the potential asbestos-related liability for which the non-debtors sought a release arose from different products sold into different markets than those which gave rise to the debtor's liabilities. *In re Combustion Eng'g, Inc.* 391 F.3d at 227–33. But *Combustion Engineering* does not support the proposition that independent claims against non-debtors can *never* fall within the scope of a bankruptcy court's "related to" jurisdiction.

30. The materially different facts and circumstances in *Combustion Engineering* illuminate why it is inapt here. The FE Non-Debtor Released Parties' Third Party Releases, unlike the releases at issue in *Combustion Engineering*, are limited to claims and causes of action related to the *Debtors' property* and the *Debtors' businesses*. Further, with respect to potential claims involving the FE Non-Debtor Released Parties' prior ownership of the Debtors' property, such claims are directly related to the Debtors' generating assets, properties and ongoing businesses—not some entirely independent set of assets, properties or transactions as in *Combustion Engineering*.[21]

---

[21] *Combustion Engineering* is also distinguishable because the Third Circuit, rejecting Sixth Circuit precedent, held that the debtor must demonstrate that claims had actually been asserted against the released party and such

15

31. Although *Combustion Engineering* does not serve as a useful guide in assessing whether the Court has subject matter jurisdiction over the claims covered by the FE Non-Debtor Parties' Third Party Releases, it does confirm that an evidentiary record is essential for a court to adequately assess subject matter jurisdiction with respect to claims covered by third party releases. Throughout its jurisdictional analysis, the Third Circuit pointed to the record established by the bankruptcy court at the time of plan confirmation.[22] The development of a full, robust evidentiary record is critical for all parties to adequately assess the existence of "related to" jurisdiction. Any doubt about claims covered by the FE Non-Debtor Parties' Third Party Releases that might fall at the outer margins of the Court's "related to" jurisdiction must be adjudicated on a developed evidentiary record, which would allow the Release Objectors to articulate precisely what claims they believe fall outside of the Court's jurisdiction and would allow the Debtors to respond more concretely about the potential impact of such claims on their estates and the administration of the Chapter 11 Cases. The Debtors respectfully request that the Court grant the Debtors the opportunity to develop such a record.

C. **Approval of the FE Non-Debtor Parties' Third Party Releases Is Appropriate and Consistent with Sixth Circuit Authority**

32. The Release Objectors also contend that the FE Non-Debtor Parties' Third Party Releases are inappropriate and inconsistent with the Sixth Circuit standard for approval of non-consensual third party releases. The Debtors disagree and, with the benefit of a full evidentiary record at confirmation, will establish that this case satisfies the Sixth Circuit standard.

---

party had sought some resulting claim against the debtor. *See id.*, at 227, 232. In contrast, the Sixth Circuit held in *Lindsey v. O'Brien (In re Dow Corning Corp.)*, 86 F.3d 482, 494 (6th Cir. 1996), that it is not necessary for claimants to first prevail on their claims against non-debtors, and for liability to be established on the debtor's part for such claims to be related to the debtor's chapter 11 case. *Lindsey*, like most of the cases cited by the Release Objectors, was decided outside of the plan confirmation context. That decision addressed the court's "related to" jurisdiction to remove thousands of pending cases against breast implant manufacturers pending in various courts to the district court in which the debtor's bankruptcy case was pending. *See id.* at 485-86.

[22] *See supra* note 10.

33. The Sixth Circuit, in line with the majority of circuits, has held that non-consensual third party releases are permissible, albeit only in "unusual circumstances." *Dow Corning*, 280 F.3d at 658. The FE Non-Debtor Parties' Third Party Releases present such "unusual circumstances." Without the approval of these releases, the FE Settlement Agreement and the consideration and claims waivers provided thereunder would evaporate. This would undoubtedly result in the failure of the Plan and would almost certainly prevent the Debtors from reorganizing successfully in the future. Instead, the Debtors would be forced to engage in lengthy, complex, and exorbitantly expensive litigation with the FE Non-Debtor Parties over massive inter-company claims. This would result in an immense drain on the Debtors' resources and lead to significantly diminished recoveries for their creditors. Additionally, to the extent that the Debtors could not successfully assert defenses to claims asserted by the FE Non-Debtor Parties,[23] it is unclear that the Debtors could ever confirm a plan of reorganization over the FE Non-Debtor Parties' objection or rejection.

34. *Dow Corning*'s "unusual circumstances" inquiry demands an adequate factual record. By definition, assessing whether the circumstances at issue in this case are "unusual" requires evidence of those circumstances. As set forth in greater detail in the Reply, the Debtors submit that they will be able to establish that the *Dow Corning* standard can be satisfied with the benefit of a full evidentiary record at confirmation.

35. Even if the Court were to find that certain of the factors enumerated in *Dow Corning* were not satisfied at that future time, the Court could and should approve the FE Non-Debtor Parties' Third Party Releases. Other courts that have adopted the *Dow Corning* standard, including the court in *City of Detroit*, have held that not all *Dow Corning* factors must be

---

[23] The FE Non-Debtor Parties asserted over $2 billion in claims against the Debtors, including $700 million in secured claims.

17

satisfied in order for a court to approve third party releases.[24] In *City of Detroit*, the court approved the releases contained in the City of Detroit's plan of reorganization despite finding that the Opportunity to Recover in Full Factor was not satisfied, recognizing that a chapter 11 case involving a debtor "beset by mass tort claims" is distinguishable from other cases in which third party releases may otherwise be appropriate. *See* 524 B.R. at 174. The FE Non-Debtor Parties' Third Party Releases are similar in scope and nature to those approved in *City of Detroit*. When the time comes, the Debtors respectfully submit that the Court should, consistent with *City of Detroit*, review the FE Non-Debtor Parties' Third Party Releases with an appropriate amount of flexibility based on the nature of the Debtors' restructuring.

### D. Reservation of Rights

36. The Debtors addressed certain other objections to the releases incorporated into the Plan, including the Other Third Party Releases, in the Reply. The Debtors will not further address such objections here, except to note that the Other Third Party Releases do not render the Plan patently unconfirmable for the reasons set forth in the Reply, the responses filed by certain Consenting Creditors and the Committee,[25] and for the reasons set forth herein. However, the Debtors reserve the right to address any additional issues related to the Plan's release provisions,

---

[24] *See, e.g.*, *In re Akron Thermal, Ltd. P'ship*, Opinion Re: Confirmation of Modified Second Amended Plan of Reorganization, No. 07-51884-mss at 61 (January 26, 2009) [Docket No. 567] (holding that depending on the circumstances, certain of the *Dow Corning* factors are not applicable) (citing *In re Airadigm Commc'ns, Inc.*, 519 F.3d 640, 657 (7th Cir. 2008)); *In re Seaside Eng'g & Surveying, Inc.*, 780 F.3d at 1079 ("Bankruptcy courts should have discretion to determine which of the [Dow Corning Factors] will be relevant in each case. The factors should be considered a nonexclusive list of considerations and should be applied flexibly."); *In re Nat'l Heritage Found.*, 760 F.3d at 351–52 (a "debtor need not demonstrate that every [Dow Corning Factor] weighs in his favor" in order for a court to grant third party releases); *In re Connector 2000 Ass'n, Inc.*, 447 B.R. 752, 768 (Bankr. D.S.C. 2011) (approving third party releases contained in the debtor's plan of reorganization despite finding that the Opportunity to Recover in Full Factor was not satisfied).

[25] *See Joint Omnibus (A) Reply of Consenting Creditors in Support of (I) Motion of Debtors for Entry of an Order Authorizing the Debtors to Enter into and Perform under the Restructuring Support Agreement and Granting Related Relief and (II) Debtors' Motion for Order Approving Disclosure Statement and Granting Related Relief and (B) Joinder to Debtors' Reply in Support of Such Motions* [Docket No. 2309]; *Statement of Official Committee of Unsecured Creditors in Support of (I) Debtors' Motion for Order Approving Disclosure Statement and Solicitation Procedures, and (II) Debtors' Motion for Order Authorizing Entry into Restructuring Support Agreement* [Docket No. 2311].

18-50757-amk    Doc 2397    FILED 03/26/19    ENTERED 03/26/19 21:27:38    Page 18 of 20

including without limitation, any issues raised by the Release Objectors in their supplemental briefs, in later supplemental briefing or at oral argument.

## CONCLUSION

37. For the foregoing reasons, the Debtors respectfully request that the Court overrule each of the Disclosure Statement Objections, grant the Disclosure Statement Motion and order further relief as the Court may deem just and proper.

| Dated: March 26, 2019 | Respectfully submitted, |
|---|---|
| | /s/ Kate M. Bradley |

**BROUSE MCDOWELL LPA**
Marc B. Merklin (0018195)
Kate M. Bradley (0074206)
Bridget A. Franklin (0083987)
388 South Main Street, Suite 500
Akron, OH 44311-4407
Telephone: (330) 535-5711
Facsimile: (330) 253-8601
mmerklin@brouse.com
kbradley@brouse.com
bfranklin@brouse.com

- and -

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira Dizengoff (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
Joseph L. Sorkin (admitted *pro hac vice*)
Brad Kahn (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
aqureshi@akingump.com
jsorkin@akingump.com
bkahn@akingump.com

- and -

Scott Alberino (admitted *pro hac vice*)
Kate Doorley (admitted *pro hac vice*)
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
salberino@akingump.com
kdoorley@akingump.com

*Counsel for Debtors and Debtors in Possession*