IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| In re: § | |
| § | |
| FIRSTENERGY SOLUTIONS CORP., *et al.*[1] § | Case No.: 18-50757 |
| § | (Jointly Administered) |
| § | Hon. Judge Alan M. Koschik |
| Debtors. | |

**SUPPLEMENTAL BRIEF OF THE UNITED STATES ON BEHALF OF EPA AND NRC, STATE OF OHIO, AND PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION OBJECTING TO DEBTORS' MOTION FOR AN ORDER APPROVING DISCLOSURE STATEMENT**

1. On March 19, 2019, the Court held a hearing on the Debtors' motion to approve the proposed disclosure statement for their second amended proposed plan of reorganization.[2] The United States, on behalf of the U.S. Environmental Protection Agency and the U.S. Nuclear Regulatory Commission, the Office of the Ohio Attorney General, acting on behalf of the Ohio Environmental Protection Agency and the Ohio Department of Natural Resources, and the Pennsylvania Department of Environmental Protection (the "Governments"), along with other parties, objected to approval of the disclosure statement on the grounds that certain non-debtor releases render the Plan patently unconfirmable and further proceedings on the Plan futile. The Court did not rule on this issue and instead invited supplemental briefing as to whether there was

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: FE Aircraft Leasing Corp. (9245), case no. 18-50759; FirstEnergy Generation, LLC (0561), case no. 18-50762; FirstEnergy Generation Mansfield Unit 1 Corp. (5914), case no. 18-50763; FirstEnergy Nuclear Generation, LLC (6394), case no. 18-50760; FirstEnergy Nuclear Operating Company (1483), case no. 18-50761; FirstEnergy Solutions Corp. (0186), case no. 18-50757; and Norton Energy Storage L.L.C. (6928), case no. 18-50764.

[2] Debtors' motion is at Docket No. 2121, the most recently amended disclosure statement is at Docket No. 2313 ("Disclosure Statement"), and the second amended plan of reorganization is at Docket No. 2310 ("Plan").

1

any set of facts under which the non-debtor releases as proposed could be approved under Sixth Circuit law. If there were, then the Court would take the matter up again at the confirmation hearing. (Docket No. 2356, March 21, 2019 Scheduling Order).

2. As discussed at the hearing and in the Governments' previous filings, Article VIII.E of the proposed Plan contains unlawful and overbroad third party releases for FirstEnergy Non-Debtor Parties ("FE Non-Debtor Releases" or "Releases") including of independent, non-derivative liability. This issue – whether the FE Non-Debtor Releases exceed the Court's jurisdiction and authority – has been described as a "bo[u]lder rolling down the hill," or the "800-pound gorilla" in the room. *See* (Docket No. 2383, Hearing Tr. at 98, 201). We agree with the Court's potential concerns and contend that now is the time for the Court to address this issue, before extensive and time-consuming discovery and the solicitation of votes on a futile Plan that is facially unconfirmable. A ruling on the patent illegality of the FE Non-Debtor Releases at this stage would allow the parties to adjust, recognize the full extent of liabilities, and potentially develop a new, efficient path forward. Otherwise, the parties will have wasted valuable time and resources if we are forced to start at square one when this issue derails the Plan at the confirmation stage or later.

3. In our objection to the Debtors' disclosure statement motion ("Objection") (Docket No. 2276), the Governments explain why the FE Non-Debtor Releases exceed the Court's subject matter jurisdiction and authority under the Bankruptcy Code and Sixth Circuit caselaw. We refer the Court again to those arguments.[3] The Governments file this Supplemental Brief for two

---

[3] The Governments reserve their rights to raise any and all objections at confirmation, whether or not mentioned in their Objection or this Supplemental Brief.

As explained in our Objection, the Governments also believe that the Disclosure Statement should be rejected because it contains inadequate information about the scope of the FE Non-Debtor Releases. *See In re Lower Bucks Hosp.*, 471 B.R. 419, 462 (Bankr. E.D. Pa. 2012), aff'd,

2

purposes. First, to respond to points made by the Debtors in their reply to objections, filed with the Court on March 17, 2019 (Docket No. 2307). Second, to provide the Court with some clarity on how the requested FE Non-Debtor Releases are overbroad and why the types of claims and causes of action that would be extinguished render the Plan patently unconfirmable.

## BACKGROUND

### I. The Scope of the FE Non-Debtor Releases

4. The Governments provide a longer description of the FE Non-Debtor Releases on pp. 3-5 of our Objection (Docket No. 2276).

5. The Governments have been informed that the parties receiving the release include over fifty FirstEnergy Non-Debtor Parties, including the parent FirstEnergy Corp. The FE Non-Debtor Releases grant a "full and complete release to the FE Non-Debtor Released Parties and their respective property of and from any and all Causes of Action whatsoever, whether known or unknown, asserted or unasserted, **derivative or direct**, foreseen or unforeseen, existing or hereinafter arising . . . arising from or **related in any way to (i) the Debtors, Reorganized Debtors, their businesses, or their property.**" *See* (Docket No. 2310, Plan pp. 99-100 (emphasis added)).

6. By its own explicit terms, the FE Non-Debtor release applies to both *direct* and *derivative* causes of action against the FE Non-Debtor Parties, whether known or unknown. At the Disclosure Statement hearing, counsel for the FE Non-Debtors confirmed that the FE Non-

---

488 B.R. 303 (E.D. Pa. 2013), aff'd, 571 F. App'x 139 (3d Cir. 2014) ("The DS is also defective in that it failed to provide the Bondholders with any information regarding the merits or value of the potential claims against BNYM that would be released by the Plan."). Even if the Court believes that additional discovery is needed before ruling on the FE Non-Debtor Releases, the Debtors' motion to approve the Disclosure Statement should be denied absent additional information about the claims and causes of action that would be released under the Plan.

3

Debtor Release applies to independent, non-derivative liability of the FE Non-Debtors. (Docket No. 2383, Hearing Tr. at 258). Here, the FE Non-Debtors owned and/or operated many of the Sites for years before the Debtors became owners or operators and therefore have significant independent liabilities based on their own acts or omissions during the time of their ownership and operation that have nothing to do with the Debtors.[4] Even as to derivative liability, the Plan has no mechanism or trust to address the liabilities being released.

7. In an effort to paraphrase and simplify the release language (which spans multiple pages of the proposed Plan), below is a non-exhaustive list of the types of claims and causes of action that would be extinguished by the FE Non-Debtor Release:

- Any and all causes of action related in any way to the Debtors

- Any and all causes of action related in any way to the Debtors' businesses

- Any and all causes of action related in any way to the Debtors' property, including past ownership of the properties prior to the Debtors' involvement or even existence

- Any and all causes of action related in any way to "intercompany transactions"

- Any and all causes of action related in any way to business or contractual arrangements between any Debtor and FE Non-Debtor

- Any and all causes of action related in any way to the subject matter of any Claim or Interest treated in the Plan

8. The breadth of the proposed FE Non-Debtor Release is staggering. As the Governments have consistently argued, the Court should reject this overbroad Release now, before the parties go any further down the path toward the Plan confirmation stage.

---

[4] Under some environmental laws, there can be an important distinction between direct/independent liability and derivative liability (i.e. through corporate veil piercing). See *United States v. Bestfoods*, 524 U.S. 51, 63-65 (1998) (discussing derivative liability and direct liability as an owner or operator under CERCLA).

## II. General Description of Environmental Liabilities

9. Because the FE Non-Debtor Release includes *independent*, not just derivative, causes of action, and because the Release clearly on its face does not meet the factors required by *Dow Corning*, the FE Non-Debtor Release is facially invalid. But the Governments believe it would still be beneficial to provide the Court with a better understanding of what is at stake when it comes to this Release.

10. The Governments oversee the protection of public health and the environment under various statutes, including the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601-9675, the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. §§ 6901 *et seq.*, Clean Water Act (CWA), 33 U.S.C. §§ 1251 *et seq.*, Oil Pollution Act (OPA), 33 U.S.C. §§ 2701 *et seq.*, Clean Air Act (CAA), 42 U.S.C. §§ 7401 *et seq.*, Toxic Substances Control Act (TSCA), 15 U.S.C. §§ 2601 *et seq.*, and the Atomic Energy Act (AEA), 42 U.S.C. §§ 2011 *et seq.*, and parallel statutes enacted under Ohio and Pennsylvania public health and safety and environmental law.

11. The FE Non-Debtor Release seeks to extinguish any and all causes of action the Governments may have against the FE Non-Debtor Parties related to all Debtors' "properties" or "businesses." Those Debtor properties fall generally into three categories: (1) Pleasants Power Station, which was owned and operated solely by FE Non-Debtors prior to the approval of the Asset Purchase Agreement by Debtors as part of this bankruptcy, (Docket No. 2217); (2) the Hatfield's Ferry power plant and landfill, which were owned and operated by FE-Non-Debtors before the power plant closed and the landfill was transferred to Debtors in 2015 (although the landfill was never utilized by Debtors) (Docket No. 2383, Hearing Tr. at 104-05); and (3) numerous other fossil fuel power plants, landfills, and coal ash impoundments – such as the

Little Blue Run Impoundment – which were owned and operated solely by FE Non-Debtors prior to 2005, before being acquired at various times by Debtors (Docket No. 2383, Hearing Tr. at 271).[5]

12. The FE Non-Debtors have significant independent environmental liabilities to the Governments under the state and federal environmental statutes mentioned above, based on the FE Non-Debtors' past ownership and operation of those power plants and residual waste landfills. The liabilities could pertain to contamination of soil and groundwater at the formerly owned properties, or potentially include air and water pollution violations associated with the operation of the facilities.

13. It is no secret that the FE Non-Debtor Release from liability was a key component in the overall deal reached in this case by the FE Non-Debtors and favored creditors. (Docket No. 2383, Hearing Tr. at 257) ("FirstEnergy Corp. absolutely, you know, positively believes that it is necessary to receive these releases in order to provide that substantial value to these estates."). In exchange for the Release, FE Corp. agreed to provide cash and other value for the benefit of the favored creditors who will receive cash and equity. The Governments were rebuffed in their repeated requests to be part of those negotiations. *See* (Docket No. 2035 at 3). Yet the Release would seek to extinguish the Governments' causes of action against any FE Non-Debtor Party, including for independent liability for acts and omissions unrelated to the Debtors (and sometimes based on conduct that predates Debtors' existence), and without any mechanism or trust under the Plan to address released causes of action.

---

[5] Debtors' properties also include nuclear power plants, which were owned and operated by some FE Non-Debtors prior to 2005.

# ARGUMENT

## I. The FE Non-Debtor Releases are Facially Invalid because the Court Lacks Subject Matter Jurisdiction

14. The Court's jurisdiction over bankruptcy cases and proceedings comes from 28 U.S.C. § 1334(b), which provides for "jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." "Where a bankruptcy court is asked to adjudicate matters between non-debtor parties, the court's 'related-to' jurisdiction must necessarily be invoked." *In re Arter & Hadden, LLP*, 373 B.R. 31, 35 (Bankr. N.D. Ohio 2007) (citing *Feld v. Zale Corp.*, 62 F.3d 746 (5th Cir. 1995)).[6] "[T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered." *In re Dow Corning Corp.*, 86 F.3d 482, 489 (6th Cir. 1996). In the context of non-debtor releases and injunctions, the Court must determine "whether the outcome of the actions covered by the [injunction] would affect the bankruptcy estate." *In re CS DIP, LLC*, No. 12-01573, 2015 WL 5920892, at *8 (M.D. Tenn. 2015).

15. In evaluating whether the FE Non-Debtor Releases are facially unlawful, the jurisdictional question for the Court is: Do the Releases include causes of action against the Non-Debtors that would not have an effect on the bankruptcy estate? If so, jurisdiction is lacking and the Release fails as a matter of law.

---

[6] The Debtors in their March 17 brief raise the possibility that the Court can exercise its "core" jurisdiction in approving the Releases as part of plan confirmation. *See* (Docket No. 2307 at 14-17). While the "core" vs. "non-core" distinction matters in other contexts, here it just confuses the issue. Regardless of the stage of the bankruptcy proceeding, the Court's related-to jurisdiction is implicated if the Court is being asked to decide matters between third parties. *See In re Combustion Engineering, Inc.*, 391 F.3d 190, 225, 236-37 (3d Cir. 2004) (holding that jurisdiction cannot be created by a plan). If jurisdiction could be created simply by including a provision in a plan, the Court's jurisdiction would be limitless, and Debtors could bootstrap any and all third party disputes into the Court's jurisdiction simply by including them in a plan.

16. The answer to this question is clearly yes. As conceded by the FE Non-Debtors,[7] the FE Non-Debtor Release covers causes of action against the Non-Debtors for their own independent liability based on their own actions while owning or operating the properties. Jurisdiction does not extend to all causes of action relating in any way to the properties simply because those properties are now owned by the Debtors. "The mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section 1334(b)." *In re Greektown Holdings, LLC*, 728 F.3d 567, 577 (6th Cir. 2013) (internal quotation marks and alterations omitted).

17. As the Governments explained in their Objection, there is an important jurisdictional distinction between *derivative* causes of action versus *independent* or *direct* causes of action. The FE Non-Debtor Release fails on its face because it plainly extends to non-derivative direct causes of action against FE Non-Debtors that would not have an effect on the estate. *See In re Greektown*, 728 F.3d at 579 ("[N]o court has authorized barring claims with independent damages."); *Steinberg v. Buczynski*, 40 F.3d 890, 893 (7th Cir. 1994) ("[T]here is a difference between a creditor's interest in the claims of the corporation against a third party, which are enforced by the trustee, and the creditor's own direct-not-derivative-claim against the third party, which only the creditor himself can enforce."); *In re Tronox Inc.,* 855 F.3d 84, 100, 106 (2d Cir. 2017) (evaluating derivative and independent claims and making a distinction between claims belonging to the estate and "particularized" claims based on a non-debtors' "own conduct"); *In*

---

[7] Counsel for FirstEnergy Corp. explained at the March 19 hearing that the release would extend to claims and causes of action against FE Non-Debtors based on the Non-Debtors' historical ownership and operation of the properties. (Docket No. 2383, Hearing Tr. at 258) ("I can give everyone a very simple answer, which is in the example that was just given of a facility that was formerly owned by a FirstEnergy Corp, a non-Debtor FE Corp entity, that is now owned by the Debtors, that would be a released claim.").

*re Dreier LLP*, 429 B.R. 112, 133 (Bankr. S.D.N.Y. 2010) ("The Bar Order, however, goes well beyond derivative claims, and ultimately exceeds the Court's subject matter jurisdiction.").

18. Importantly, the Release fails even if the Court's jurisdiction might extend over <u>some</u> of the third party causes of action to be released; the question of the lawfulness of the Release is whether jurisdiction extends to <u>all</u> of the causes of action to be released. Because some causes of action covered by the Release (for example, for independent environmental liabilities based on the Non-Debtors' own conduct) are outside the Court's jurisdiction, the FE Non-Debtor Release is invalid and the parties should not waste any more time on a futile and patently unconfirmable Plan.

### II. <u>The FE Non-Debtor Releases are Facially Invalid under *Dow Corning*</u>

19. As explained in the Governments' Objection, even if the Court determines that it has jurisdiction, the FE Non-Debtor Releases still fail under the Sixth Circuit's test in *In re Dow Corning*, 280 F.3d 648, 658 (6th Cir. 2002). No record is necessary to determine that this Release is unlawful; the plain language of the Release and the Plan itself demonstrate that the *Dow Corning* factors have not been met, and cannot be met, no matter what facts are developed leading up to a potential plan confirmation.

#### A. *All Dow Corning Factors Must be Present*

20. The Debtors have argued that not all of the seven *Dow Corning* factors must be met for a Release to be lawful. *See* (Docket No. 2307 at 26-28). This contention is impossible to square with the plain language used by the Sixth Circuit in *Dow Corning*. After explaining that a non-debtor release is a "dramatic measure to be used cautiously," the Sixth Circuit stated: "We hold that *when the following seven factors are present,* the bankruptcy court may enjoin a non-consenting creditor's claims against a non-debtor: [listing seven factors]." *Id.* at 658 (emphasis

9

added). According to the Sixth Circuit, each of the factors must be present before the Court has authority to approve the FE Non-Debtor Release. *See In re SL Liquidating, Inc.*, 428 B.R. 799, 802 (Bankr. S.D. Ohio 2010) (holding that in order for a court to approve a non-debtor release, "all of the factors must be present and all the factors are important").

21. The Sixth Circuit carefully uses language to describe a test or standard to be applied by lower courts, and it would have used different language if courts were merely expected to consider certain factors rather than require them as prerequisites. For example, compare the language used by the Sixth Circuit in *Dow Corning* to that used in another case, describing a different test:

> For discrimination cases, the Sixth Circuit uses a ***balancing test*** to determine whether a settlement agreement was entered into knowingly and voluntarily. ***We consider the following factors***: (1) Nicklin's experience, background, and education; (2) the amount of time Nicklin had to consider the release, including whether he had the opportunity to consult with a lawyer; (3) the clarity of the release; (4) the consideration for the release; and (5) the totality of the circumstances.

*Nicklin v. Henderson*, 352 F.3d 1077, 1080 (6th Cir. 2003) (emphasis added). *Dow Corning* did not direct bankruptcy courts to engage in a balancing test and "consider" seven factors in evaluating a non-debtor release. Instead, the court held that a bankruptcy court may enjoin claims and causes of action against a non-debtor only when all seven factors are present.

22. The cases cited by the Debtors do not support their contention that not all of the *Dow Corning* factors must be met in this case. The first category of cases cited by the Debtors are cases from other circuits applying *Dow Corning*. *See Nat'l Heritage Found. V. Highbourne Found.*, 760 F.3d 344, 351-52 (4th Cir. 2014); *In re Seaside Eng'g & Surveying, Inc.*, 780 F.3d 1070, 1079 (11th Cir. 2015). While it is true that courts in other circuits have held that not all *Dow Corning* factors must be satisfied, those courts are obviously not bound by *Dow Corning*

10

and are free to craft their own tests and standards. When evaluating non-debtor releases, other courts have looked to *Dow Corning* for guidance, as well as to other relevant cases, picking and choosing the factors they find most persuasive or relevant. *See Behrmann v. Nat'l Heritage Found.*, 663 F.3d 704, 710-12 (4th Cir. 2011) (examining cases from other circuits, as well as *Dow Corning*, before instructing lower courts on the standards to be applied to non-debtor releases); *In re Seaside Eng'g & Surveying, Inc.*, 780 F.3d at 1079. The standards used in these cases are no more relevant here than the cases in circuits that do not allow any third party nondebtor releases whatsoever.[8] The Sixth Circuit applies its own test in *Dow Corning* and that is the standard that is binding here.

23. The Debtors also cite to two bankruptcy court cases from this Circuit, but those cases are easily distinguishable, as the cases themselves recognized. *In re City of Detroit* involved a chapter 9 municipal debtor, and the court at the outset recognized the complications in applying *Dow Corning* in that context:

> It must be recognized that the *Dow Corning* holding is in the context of a chapter 11 business reorganization of a debtor beset by mass tort claims. Its direct application in a chapter 9 municipal debt adjustment case is therefore awkward and uncertain. Much debate could be had regarding which of the *Dow Corning* factors should apply in a chapter 9 case and whether any other factors should apply.

*In re City of Detroit*, 524 B.R. 147, 174 (Bankr. E.D. Mich. 2014). The court ultimately upheld a release for the State of Michigan, but only after finding that six of the seven factors had been met, including a mechanism to pay for a substantial portion of the claims being released. Here, the FE Non-Debtor Release does not even meet the factors applied in the Chapter 9 context in *In re City of Detroit*.

---

[8] *See In re Lowenschuss*, 67 F.3d 1394, 1401 (9th Cir. 1995) (holding that all involuntary non-debtor releases are unlawful); *In re Western Real Estate Fund, Inc.*, 922 F.2d 592, 600 (10th Cir. 1990) (same).

11

24. *In re Akron Thermal*, also cited by the Debtors, supports the Governments' position. In that case, the bankruptcy court approved a narrow non-debtor release for the partners of the debtor in order to "ensure the financial stability of the Debtor" based on the unique characteristics of partnership bankruptcy. *In re Akron Thermal*, Case No. 07-51884, at *61 (Bankr. N.D. Ohio 2009). Rather than hold that certain *Dow Corning* factors could be disregarded, the court came to the conclusion that some factors would not apply because, in the court's view, they were meaningless under the facts of the case. In that case, the Debtor was not "seeking to discharge or enjoin any presently known claims against the released parties." *Id.* Because the release only covered unknown potential claims and not known claims, the court concluded that "certain factors, such as four (4) [the votes of the impacted class], five (5) [payment mechanism], and six (6) [opportunity for claimants to be paid in full]," did not make sense and therefore were not applicable.[9] *Id.* Here, all *Dow Corning* factors are relevant and applicable.

### B. Debtors cannot demonstrate that all Dow Corning Factors are Present

25. For the reasons stated in the Governments' Objection, the Debtors are unable to show, either now or at the plan confirmation stage, that the FE Non-Debtor Release meets each of the *Dow Corning* factors.

1. Identity of Interests

26. The focus of the "identity of interests" factor is whether the potential suits against the

---

[9] The Governments do not agree with the court's conclusion that factors 4, 5, and 6 are inapplicable if the release only covers unknown claims. For example, a plan could still include a mechanism to pay for claims that are unknown at the time of release. Regardless, the court's conclusion was not based on its determination that certain *Dow Corning* factors are unimportant or not prerequisites, but instead based on the court's view that certain factors had no applicability to the facts. That is not the case here.

12

Non-Debtor would be, "in essence, a suit against the debtor or will deplete the assets of the estate." *Dow Corning*, 280 F.3d at 658. On its face, the FE Non-Debtor release covers causes of action for the independent, non-derivative liability of the FE Non-Debtors based on their own acts or omissions. These causes of action, which would be barred by the Release, would not "deplete the assets of the estate." *Id.*

        2.   <u>Essential to Reorganization</u>

27. In their briefs and at the Disclosure Statement hearing, the Debtors and the creditor parties focus on this factor in defending the appropriateness of the FE Non-Debtor Release. They seem to be arguing that without the broad FE Non-Debtor Releases, FirstEnergy Corp. would not agree to provide cash and other value, and that therefore the Release is "essential" to the reorganization. This is not the test. Under *Dow Corning*, a release is essential if "the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor." *Id.* In other words, the question for the Court is not whether the *cash* provided by FE Corp. is essential, but whether the release itself (and the estate's freedom from indirect suits) is essential.

28. *Dow Corning* itself is instructive on this factor. That case dealt with tens of thousands of tort claims against the debtor's insurers and shareholders. It was these "indirect suits" against the debtor (Dow) that were enjoined by the plan's non-debtor release. Although the Sixth Circuit ultimately remanded on this issue, the release was at least potentially "essential" because these indirect suits could have a catastrophic effect on Dow's reorganization. In this case, the FE Non-Debtor Release covers suits for the FE Non-Debtors' independent, non-derivative liability. The FE Non-Debtors would not have any claims against the Debtors for the Non-Debtors' own independent acts. Because the suits covered by the FE Non-Debtor Release would not threaten

13

the reorganized Debtors' viability, the Debtors are unable to show that the release is essential. *See In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 143 (2d Cir. 2005) (rejecting a nondebtor release because there had been "no finding (or evidence presented) that the [release] was *itself* important to the Plan," as opposed to the contributions to the estate being important).

29. The Debtors cannot argue that the FE Non-Debtor Release is essential simply because FirstEnergy Corp. is requiring the Release before contributing value to the reorganization. A third party release "permits the nondebtor party to receive a major benefit of the bankruptcy process without having to be subject to any of its burdens and safeguards." *See In re Nat'l Staffing Servs., LLC*, 338 B.R. 35 (Bankr. N.D. Ohio 2005); *In re Metromedia Fiber Network, Inc.*, 416 F.3d at 142 ("[A] nondebtor release is a device that lends itself to abuse."). The FE Non-Debtors cannot manufacture the essentialness of these Releases by conditioning their Plan contributions on the Releases being included in the Plan. *See In re Midway Gold,* 575 B.R. 475, 519-20 (Bankr. D. Colo. 2017) (rejecting attempt to "bootstrap" third-party disputes into a bankruptcy action and holding that "non-debtors [cannot] purchase immunity from unrelated torts through their contribution to a debtor's reorganization.").

### 3. Mechanism to Pay for Affected Classes and Opportunity for Claimants to Recover in Full

30. To be sure, the development of a factual record could be relevant for some of the *Dow Corning* factors – for example, whether certain impacted class or classes overwhelmingly vote to accept the Plan.[10] But as to other factors, the Release fails on its face. The Plan does not provide a mechanism to pay for all or substantially all of the classes affected by the Release, and

---

[10] Although the Debtors are seeking to extinguish the Governments' causes of action against the FE Non-Debtors, we note that the Governments are not included in any class under the Plan. It is therefore unlikely that this factor will be met, no matter the outcome of voting by non-governmental creditors on the Plan.

14

it does not provide an opportunity for claimants (like the Governments) to recover in full. Because these factors are not met, the Court does not have authority to grant the Release, and the Plan is patently unconfirmable.

## CONCLUSION

31. The Debtors have proposed a futile Plan that is patently unconfirmable because it depends on the unlawful FE Non-Debtor Releases, which exceed the Court's subject matter jurisdiction and authority under the Bankruptcy Code. For the reasons discussed in the Governments' Objection and in this Supplemental Brief, the Governments respectfully request that the Debtors' motion for approval of the disclosure statement be denied.

Dated: March 26, 2019

**FOR THE UNITED STATES**

BRUCE S. GELBER
Deputy Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

s/ Nicholas A. McDaniel
ALAN S. TENENBAUM
PATRICK M. CASEY
NICHOLAS A. MCDANIEL
Environmental Enforcement Section
Environment and Natural Resource Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 514-5409
Fax: (202) 514-0097
Email: alan.tenenbaum@usdoj.gov

15

**FOR THE STATE OF OHIO**

**OFFICE OF THE OHIO
ATTORNEY GENERAL DAVE YOST**

/s Michael E. Idzkowski
MICHAEL E. IDZKOWSKI (Ohio Reg. No. 0062839)
TIMOTHY J. KERN (Ohio Reg. No. 0034629)
Assistant Attorneys General
Environmental Enforcement Section
30 East Broad Street, 25th Floor
Columbus, Ohio 43215
Phone: 614-466-2766
Fax: 614-644-1926
Email: Michael.Idzkowski@OhioAttorneyGeneral.gov
         Timothy.Kern@OhioAttorneyGeneral.gov

**FOR THE PENNSYLVANIA DEPARTMENT
OF ENVIRONMENTAL PROTECTION**

/s Barbara J. Grabowski
BARBARA J. GRABOWSKI
Assistant Counsel
PA ID No.61657
Office of Chief Counsel
400 Waterfront Drive
Pittsburgh, PA 15222-4745
Email: bgrabowski@pa.gov


VERA N. KANOVA
Assistant Counsel
PA I.D. No. 316676
Office of Chief Counsel
400 Market Street
Harrisburg, PA 17101-2063
Email: verkanova@pa.gov

16

**CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2019, I caused the above SUPPLEMENTAL BRIEF OF THE UNITED STATES, STATE OF OHIO, AND PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION to be served via ECF.

/s Nicholas A. McDaniel
U.S. Department of Justice
