# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FIRSTENERGY SOLUTIONS CORP., *et al.*,[1] | ) Case No. 18-50757 (AMK) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) Hon. Judge Alan M. Koschik |
| | ) |

**FE NON-DEBTOR PARTIES' SUPPLEMENTAL BRIEF IN SUPPORT OF THE DEBTORS' MOTION FOR AN ORDER (I) APPROVING DISCLOSURE STATEMENT, (II) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT THE DEBTORS' JOINT CHAPTER 11 PLAN, (III) APPROVING THE FORM OF BALLOTS, (IV) SCHEDULING A HEARING ON CONFIRMATION OF THE PLAN, (V) APPROVING PROCEDURES FOR NOTICE OF THE CONFIRMATION HEARING AND FOR FILING OBJECTIONS TO CONFIRMATION OF THE PLAN, AND (VI) GRANTING RELATED RELIEF**

FirstEnergy Corp. ("FE Corp.") and its non-Debtor subsidiaries (collectively, the "FE Non-Debtor Parties") hereby submit this supplemental brief (this "Brief") in support of the *Motion of the Debtors for an Order (I) Approving Disclosure Statement, (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Debtors' Joint Chapter 11 Plan, (III) Approving the Form of Ballots, (IV) Scheduling a Hearing on Confirmation of the Plan, (V) Approving Procedures for Notice of the Confirmation Hearing and for Filing Objections to Confirmation of the Plan, and (VI) Granting Related Relief*

---

[1] The Debtors in these chapter 11 cases are: FE Aircraft Leasing Corp., FirstEnergy Generation, LLC, FirstEnergy Generation Mansfield Unit 1 Corp., FirstEnergy Nuclear Generation, LLC, FirstEnergy Nuclear Operating Company, FirstEnergy Solutions Corp. and Norton Energy Storage L.L.C.

[Docket No. 2121] (the "Motion").[2]  In support of the Motion, the FE Non-Debtor Parties respectfully state as follows:

**PRELIMINARY STATEMENT**

1.      The FE Non-Debtor Parties strongly support the Debtors' effort to successfully reorganize their businesses and responsibly decommission their power facilities and have agreed to contribute approximately *$3 billion* of value towards those efforts pursuant to a settlement agreement approved by this Court.  In exchange for this substantial contribution, the FE Non-Debtor Parties require that their businesses and operations be separated completely from the Debtors, their businesses and liabilities related thereto.  The FE Non-Debtor Parties' Third Party Release is one of many aspects of this separation.

2.      During the March 19, 2019, hearing regarding the Disclosure Statement Motion (the "Disclosure Statement Hearing"), the Court asked for supplemental briefing on two questions:  "…I would like the Debtor or the Debtor and FE Corp. also to define in writing as best as possible what these releases are and why we should – and why they should be capable of being released."  See *Transcript of the March 19, 2019 Hearing*, at 260:25-261:3.  An abridged copy of the *Transcript of the March 19, 2019 Hearing* is attached hereto as Exhibit A.  With regard to the first question, the scope and effect of the FE Non Debtor Parties' Third Party Release – as well as the disastrous consequences of its removal from the Plan – are set forth in detail in the Disclosure Statement and are further described herein for the Court's benefit.

3.      The plain language of the FE Non-Debtor Parties' Third Party Release is clear on its face.  As described below, Holders of Claims or Interests shall release the FE Non-Debtor

---

[2]      Capitalized but undefined terms in this Brief have the meaning given to them in the *Second Amended Joint Plan of Reorganization of FirstEnergy Solutions Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 2310] (the "Plan").

- 2 -

Released Parties from a defined universe of claims and Causes of Action, all of which are directly related to the Debtors, the Debtors' property or their bankruptcy estates.[3]

4.   To aid the Court in its analysis of the FE Non-Debtor Parties' Third Party Release, this Brief conducts a granular analysis of Section VIII.E of the Plan, clause by clause, to make the provision's plain language as clear as possible.[4]  Attached hereto, as Exhibit B,[5] is an annotated version of Section VIII.E of the Plan, which breaks each clause of the section into one of a number of categories, including clauses that identify the parties who will be deemed to provide the FE Non-Debtor Parties' Third Party Release, clauses limiting the scope of the FE Non-Debtor Parties' Third Party Release and clauses articulating the categories of claims and Causes of Action that are being released pursuant to the FE Non-Debtor Parties' Third Party Release.

---

[3]   As the FE Non-Debtor Parties' Third Party Release includes claims and Causes of action only related to the Debtors' property, and not the property currently owned by any FE Non-Debtor Party, it is important to note that the types of claims and Causes of action that would be released are monetary in nature.  See Ohio v. Kovacs, 469 U.S. 274, 282 (1985) (holding that a non-owner's cleanup duty was a monetary obligation). Thus, concerns that a government agency might have regarding the FE Non-Debtor Parties' Third Party Releases having an effect on its enforcement powers against property owned by the Debtors are misplaced.

[4]   This Brief's discussion of the plain language of the FE Non-Debtor Parties' Third Party Release in no way limits or waives the FE Non-Debtor Released Parties rights to argue that any specific claim or Cause of Action is or is not included in FE Non-Debtor Parties' Third Party Release.

[5]   This Brief is designed so that the reader may use Exhibit B as a reference while reviewing the Brief's arguments.

5.     With regard to the Court's second question, notwithstanding certain blatant

mischaracterizations regarding the FE Non-Debtor Parties' Third Party Release,[6] the release is

precise, limited, consonant with Sixth Circuit precedent, squarely within this Court's jurisdiction

and an indispensable component of the Debtors' confirmable Plan.  On March 21, 2019,

the Court entered its Scheduling Order Regarding Briefing and Oral Argument on Motion to

Approve Disclosure Statement [Docket No. 2356] (the "Scheduling Order").  In the Scheduling

Order, the Court set deadlines for the parties to brief or supplement their briefs on the issue of

whether, "as a matter of law, the proposed Plan is patently unconfirmable under applicable law

because of the proposed Releases included therein…"  See Scheduling Order, at 3-4.

It is undisputed that, as a matter of law, non-consensual third party releases are permissible in the

Sixth Circuit in unusual circumstances.  The FE Non-Debtor Parties' Third Party Release mirrors

the structure and scope of non-consensual third party releases that have been approved

previously by the Sixth Circuit itself in Dow Corning.  As such, there is nothing patently

unconfirmable about a plan that includes the FE Non-Debtor Parties' Third Party Release.

Further, the Objecting Parties' (defined below) reliance on Papas v. Buchwald Capital Advisors,

---

[6]     At the Disclosure Statement Hearing, counsel for the United States on behalf of the Environmental
Protection Agency and the Nuclear Regulatory Commission made the following statement on the record:

> MR. TENENBAUM: I think Your Honor really hit the nail on the head about
> what we need here. The questions that Your Honor has just been asking are not
> addressed in the other side's briefs, and we've been asking them for months, and
> we haven't gotten an answer.  So we assume the answer is that they want
> everything, including all the independent liability, but we -- until they answer,
> we can't be a hundred percent sure, but that's our reading of the situation.

See Transcript of the March 19, 2019 Hearing, at 251:7-16.  This statement is incorrect.  On December 5,
2018, counsel for the FE Non-Debtor Parties sent an electronic correspondence to Mr. Tenenbaum
(the "December 5, 2018 Email").  In that email, and in the phone call that preceded it, counsel to the FE
Non-Debtor Parties explained to counsel for the United States on behalf of the Environmental Protection
Agency and the Nuclear Regulatory Commission their precise interpretation of the FE Non-Debtor Parties'
Third Party Releases and that it would include all claims that the Environmental Protection Agency and the
Nuclear Regulatory Commission may hold against the FE Non-Debtor Released Parties related to the
Debtors' property.  These conversations included specific, detailed discussions regarding the Debtors' sites
in Pennsylvania and Ohio and the intended nature and scope of liabilities presented.

- 4 -

LLC (In re Greektown Holdings, LLC), 728 F.3d 567 (6th Cir. 2013), and other similar cases is wholly inapposite.  In Greektown, the Sixth Circuit was **not** examining non-consensual third party releases in the context of a plan of reorganization but was rather examining such releases "in connection with a settlement agreement **long after** the plan of reorganization was confirmed."  Id., at 576 (emphasis added).  As explained further below, this Court's jurisdiction is broader when it is acting in the context of confirming a plan of reorganization than when resolving a dispute between discrete parties "**long after**" a plan has been confirmed.

**THE FE NON-DEBTOR PARTIES' THIRD PARTY RELEASE
DOES NOT MAKE THE PLAN PATENTLY UNCONFIRMABLE**

6. Approving the FE Non-Debtor Parties' Third Party Release, which the FE Non-Debtor Released Parties are being provided in return for the $3 billion of value that is the bedrock of the Plan, is well within this Court's jurisdiction because the claims and Causes of Action that are being released are directly related to the Debtors, their businesses, their property or these chapter 11 cases.

 *A.  The Court's Jurisdiction*

7. Courts have recognized that, to approve a disclosure statement, debtors need only show that that "the proposed plan is not patently unconfirmable and is moving meaningfully toward reorganization."  In re Creekstone Apartments Assocs., L.P., 168 B.R. 639, 643 (Bankr. M.D. Tenn. 1994).  Moreover, "[s]uch action is discretionary and must be used carefully so as not to convert the disclosure statement hearing into a confirmation hearing, and to insure that due process concerns are protected."  In re Commonwealth Grp.-Mocksville Partners, LP, No. 12-34319, 2013 WL 1728056, at *3 (Bankr. E.D. Tenn. Apr. 22, 2013) (citing In re Cardinal Congregate I, 121 B.R. 760, 762 (Bankr. S.D. Ohio 1990)).  If a bankruptcy court exercises its discretion to consider threshold confirmation issues, such issues should not impede approval of

- 5 -

the disclosure statement unless it is established that the plan of reorganization is "so fatally flawed that confirmation is impossible." <u>Cardinal I</u>, 121 B.R. at 764. Additionally, the "Court should view all inferences drawn from the underlying facts and matters contained in the Plan and the Disclosure Statement in a light most favorable to the Debtor." <u>In re Spanish Lake Assocs.</u>, 92 B.R. 875, 877 (Bankr. E.D. Mo. 1988).

8. Certainly, the Debtors' Plan is not patently unconfirmable solely on account of the mere inclusion of non-consensual third party releases. The overwhelming majority of circuit courts, including the Sixth Circuit, have found that, taken together, sections 105(a) and 1123(b)(6) of the Bankruptcy Code provide bankruptcy courts the requisite statutory authority to approve non-consensual third party releases as part of a plan of reorganization, where appropriate.[7] <u>See</u>, <u>e.g.</u>, <u>Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)</u>, 280 F.3d 648, 656 (6th Cir. 2002) (holding that courts may approve non-consensual third party releases as part of a plan of reorganization; stating that, although "[t]he Bankruptcy Code does not explicitly prohibit or authorize a bankruptcy court to enjoin a non-consenting creditor's claims against a non-debtor to facilitate a reorganization plan, … bankruptcy courts, 'as courts of equity, have broad authority to modify creditor-debtor relationships;'" citing section 105(a) of the Bankruptcy Code, which "grants the bankruptcy court the power to take appropriate equitable measures needed to implement other sections of the Code" and section 1123(b)(6) of the Bankruptcy Code, which gives the bankruptcy court "substantial power to reorder creditor-debtor relations needed to achieve a successful

---

[7]      Section 105(a) of the Bankruptcy Code provides, in relevant part, that bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 1123(b) of the Bankruptcy Code enumerates various types of discretionary provisions a plan of reorganization may include and, in subsection (b)(6), provides that a plan "may … include any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1123(b)(6).

reorganization") (quoting <u>United States v. Energy Res. Co.</u>, 495 U.S. 545, 549 (1990)) (other internal citations omitted); <u>see</u> <u>also</u> <u>Airadigm Commc'ns, Inc. v. FCC (In re Airadigm Commc'ns, Inc.)</u>, 519 F.3d 640, 657 (7th Cir. 2008) ("In light of [sections 105(a) and 1123(b)(6) of the Bankruptcy Code], we hold that this 'residual authority' permits the bankruptcy court to release third parties from liability to participating creditors if the release is 'appropriate' and not inconsistent with any provision of the bankruptcy code.").

9.      Neither is the Plan "patently unconfirmable" on account of any alleged limitation on the Court's jurisdiction over a third party's claims.  Put simply, a bankruptcy court "acts pursuant to its core jurisdiction when it considers the involuntary release of claims against a third party non-debtor in connection with the confirmation of a proposed plan of reorganization, which is a statutorily defined core proceeding."  <u>Lynch v. Lapidem Ltd. (In re Kirwan Officers S.a.r.l.)</u>, 592 B.R. 489, 504 (S.D.N.Y. 2018).[8]  Plan confirmation "arises under title 11 [of] the Bankruptcy Code" and is "the quintessential bankruptcy matter," <u>i.e.</u>, the Court's core jurisdiction is plainly implicated when confirming a plan of reorganization.  <u>In re Charles St. African Methodist Episcopal Church of Boston</u>, 499 B.R. 66, 99 (Bankr. D. Mass. 2013).  This core jurisdiction embraces all claims that are addressed by the plan; a plan of reorganization "is not the mere adjudication of a single claim by a creditor against a third-party…but a unitary omnibus

---

[8]      <u>See also</u> <u>In re AOV Industries, Inc.</u>, 792 F.2d 1140, 1145-46 (D.C. Cir. 1986) (finding that bankruptcy court had subject matter jurisdiction to approve a plan of reorganization even though it contained third party releases); <u>Matter of Fansteel Foundry Corp.</u>, No. 16-01825, 2018 WL 5472928 at *10 (Bankr. S.D. Iowa October 26, 2018) ("A bankruptcy court has the authority to consider and order the implementation of third party releases as part of its core jurisdiction" in the plan confirmation context) (citation omitted); <u>In re Millennium Lab Holdings II, LLC</u>, 575 B.R. 252, 263–71 (Bankr. D. Del. 2017), <u>aff'd</u> <u>sub</u> <u>nom.</u>, 591 B.R. 559 (D. Del. Sept. 21, 2018) (finding that the court had statutory authority to consider a plan that included third party releases as a core proceeding); <u>In re MPM Silicones, LLC</u>, No. 14-25503 (RDD), 2014 WL 4436335, at *34 (Bankr. S.D.N.Y. Sept. 9, 2014) ("I can issue a final order on [the third party releases] within the confines of <u>Stern v. Marshall</u>, given that [they are] in the context of confirmation of the plan, and pertain[] ultimately to the debtors' rights under the Bankruptcy Code.") <u>aff'd</u>, 531 B.R. 321 (S.D.N.Y. 2015), <u>aff'd</u> <u>in</u> <u>part</u>, <u>rev'd in part on other grounds and remanded sub nom</u>. <u>Matter of MPM Silicones, L.L.C.</u>, 874 F.3d 787 (2d Cir. 2017).

- 7 -

civil proceeding for the reorganization or adjustment of all obligations of the debtor and disposition of all the debtor's assets." Id. Section 1123(b)(6) of the Bankruptcy Code is only implicated during the plan confirmation process, thereby differentiating non-consensual third party releases sought in conjunction with a plan of reorganization from non-consensual third party releases sought in any other context. See 11 U.S.C. 1123(b)(6) ("Subject to [1123(a)], a **plan** may include any other appropriate provision not inconsistent with the applicable provisions of this title.") (emphasis added). Accordingly, because approval of non-consensual third party releases pursuant to a plan of reorganization is squarely within the Court's core jurisdiction, no jurisdictional infirmity exists that could render the Plan "patently unconfirmable".

10. Alternatively, even if the Court weren't acting in accordance with its core jurisdiction in approving the FE Non-Debtor Parties' Third Party Release (which it would be), "related to" jurisdiction exists with respect to the claims proposed to be enjoined. The Sixth Circuit has stated that "the 'related to' inquiry asks not whether the assertion of the claims would [a]ffect the bankruptcy estate but whether the outcome of the claims would [a]ffect the estate." In re Dow Corning Corp., 86 F.3d 482, 489 (6th Cir. 1996), as amended on denial of reh'g and reh'g en banc (June 3, 1996). Absent the releases and the waivers granted by the FE Non-Debtor Parties pursuant to the FE Settlement, the FE Non-Debtor Parties may assert claims against the Debtors for contribution, subrogation, indemnification or otherwise, based on direct and derivative claims asserted against the FE Non-Debtor Parties by the third parties, resulting in an adverse impact on the Debtors and their estates.[9] If the Court determines to act within only its "related to" jurisdiction, it will be the Debtors' burden at the confirmation hearing to demonstrate

---

[9] Additionally, without the FE Settlement Agreement, the Debtors' estates would be burdened with approximately $2 billion of additional claims, at least $700 million of which would be secured. These additional claims would make confirming a plan very difficult, let alone a plan that provides meaningful recoveries to unsecured creditors.

that the claims and Causes of Action subject to the FE Non-Debtor Parties' Third Party Release meet the standard for "related to" jurisdiction. If necessary, the Debtors should be provided the opportunity to do so with the benefit of a full factual record.

### B. *The Objecting Parties Rely on Unrelated Case Law.*

11.    Despite the Court possessing both core and "related to" jurisdiction over the FE Non-Debtor Parties' Third Party Release, certain of the parties objecting to the Disclosure Statement Motion (the "Objecting Parties") have argued that the release of independent, rather than solely derivative, liability renders the Plan patently unconfirmable because that the Court does not have jurisdiction over such claims.[10]  First, neither Dow Corning, Detroit, nor any case in the Sixth Circuit cited by the Objecting Parties that examined non-consensual third party releases in the plan confirmation context have ever articulated a distinction between "direct" and "derivative" claims.  Second, the Objecting Parties' argument is premised on authority that either is non-binding on this Court or is fatally distinguishable.  A number of the authorities that the Objecting Parties rely on address non-consensual third party releases sought **outside** of a plan confirmation process and, therefore, did not implicate the core jurisdiction possessed by the Court here pursuant to section 1123(b)(6).  The Objecting Parties' authority that is distinguishable on these grounds includes:

---

[10]     See *Federal Energy Regulatory Commission's Objection to Approval of the Disclosure Statement for the First Amended Joint Plan of Reorganization of FirstEnergy Solutions Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 2266] (the "FERC's Disclosure Statement Objection"), at ¶ 17 ("Bankruptcy Courts lack jurisdiction to enter orders approving third-pary releases of claims that are not derivative of a debtor's liability); *Objection of Sierra Club to Disclosure Statement for the Joint Plan of Reorganization Dated February 11, 2019* [Docket No. 2269] (the "Sierra Club's Disclosure Statement Objection"), at ¶ 46 ("While non-debtor releases for derivative liabilities can thus sometimes be authorized in "unusual circumstances" non-consensual releases for independent liabilities…are never proper"); *Objection of the United States on Behalf of the EPA and NRC, State of Ohio, and Pennsylvania Department of Environmental Protection to Debtors' Motion for an Order Approving Disclosure Statement and Granting Related Relief* [Docket No. 2276] (the "Governments' Disclosure Statement Objection"), ¶ 19 ("The scope of the proposed FE Non-Debtor [Parties' Third Party] Releases in this case, explicitly covering direct/independent causes of action against the FE Non-Debtor[ Released Parties], leads to the inevitable conclusion that the non-consensual release exceeds the Court's subject matter jurisdiction.").

a. <u>Greektown</u>, 728 F.3d at 576. In <u>Greektown</u>, the trustee for both a litigation trust and an unsecured creditors distribution trust created by a confirmed plan of reorganization sought non-consensual third party releases as part of a bar order entered in connection with a settlement agreement **long after** the plan of reorganization was confirmed.

b. <u>In re Dreier LLP</u>, 429 B.R. 112, 133 (Bankr. S.D.N.Y. 2010). In <u>Dreier</u>, a chapter 11 trustee sought non-consensual third party releases in a bar order entered in connection with a settlement agreement outside the plan confirmation process.

c. <u>In re Madoff</u>, 848 F. Supp. 2d 469, 488 (S.D.N.Y. 2012). <u>Madoff</u> does not involve non-consensual third party releases sought in connection with a plan of reorganization, but rather analyzes a proposed permanent injunction of creditor suits against a third party to be issued in connection with a settlement agreement between the third party and the Madoff trustee outside the plan confirmation process.

d. <u>In re CS DIP, LLC</u>, No. 12-01573, 2015 WL 5920892, at *12 (Bankr. M.D. Tenn. Oct. 9, 2015). In <u>CS DIP</u>, the non-consensual third party releases at issue were sought as part of a bar date ordered entered in connection with a settlement agreement outside the plan confirmation process.

e. <u>In re Arter & Hadden, LLP</u>, 373 B.R. 31, 34 (Bankr. N.D. Ohio 2007). In <u>Arter & Hadden</u>, a *chapter 7* trustee sought entry of a bar order in connection with a settlement agreement which would enjoin non-debtor third parties from bringing causes of action against certain settling banks, who were also non-debtor third parties. As this was a chapter 7 case, a plan of reorganization could not possibly have existed.[11]

---

[11] At the Disclosure Statement Hearing, counsel for the United States on behalf of the Environmental Protection Agency and the Nuclear Regulatory Commission made the following statement on the record:

> MR. MCDANIEL: Just on one point that on what Mr. Alberino said, it's not all the time that these releases are evaluated in the context of a plan confirmation. I think we cite in our -- in our objection In re Arter and Hadden, which is a case from this district, where it was evaluated in the context of a pre-confirmation settlement agreement, that had the releases and contemplated the releases ultimately being included in the plan. It's almost exactly like what we have here.

<u>See</u> *Transcript of the March 19, 2019 Hearing*, at 252:16-24. This statement of the law is incorrect. As Arter & Hadden was a case under chapter 7 of the Bankruptcy Code, a plan of reorganization could not have possibly existed. Further, the scope of the bar order at issue in <u>Arter & Hadden</u> was far broader than the FE Non-Debtor Parties' Third Party Releases as the proposed bar order would bar claims of "any person" against the enumerated third parties, not just holders of claims and interests against the debtor. <u>See</u> <u>Arter & Hadden</u>, 373 B.R. at 38. <u>Arter & Hadden</u> shares almost no similarities to the case at bar.

12.     Second, the authority that the Objecting Parties rely on that is actually within the context of a plan of reorganization is easily distinguishable from the facts at bar. For instance, the Governments' Disclosure Statement Objection cites In re Combustion Eng'g, Inc., 391 F.3d 190, 225, 236-37 (3d Cir. 2004). See Governments' Disclosure Statement Objection, at ¶ 25. The non-consensual third party release at issue in Combustion Eng'g, however, was far broader than anything contained in the FE Non-Debtor Parties' Third Party Release. See Combustion Eng'g, Inc., 391 F.3d at 231 (claims against non-debtor affiliates could not be included in non-consensual third party release where the claims against the non-debtor affiliates to be released arose "from different products, involved different asbestos-containing materials, and were sold to different markets."). In other words, the Third Circuit in Combustion Eng'g prevented a non-debtor from receiving a non-consensual third party release for claims that would have arisen even if the applicable debtors *never had existed*. Id. As demonstrated below, the categories of claims that are being released pursuant to the FE Non-Debtor Parties' Third Party Release, subject to the Identity and Limitation Clauses (as such terms are defined below), each has a factual nexus to the Debtors, their businesses or their estates. See ¶¶ 24-26, *infra*.[12]

13.     Thus, if the Sixth Circuit permits the inclusion of non-consensual third party releases in plans of reorganization (which it has) and the Court has the jurisdiction to enjoin third

---

[12]     The Objecting Parties reliance on *post-confirmation* cases like Greektown is flawed for an additional reason, as courts generally agree that a bankruptcy court's jurisdiction may shrink after the entry of an order confirming a plan of reorganization. See e.g., In re Ener1, Inc., 558 B.R. 91, 95 (Bankr. S.D.N.Y. 2016) ("most courts agree that once confirmation occurs, the bankruptcy court's jurisdiction shrinks") (citing General Media v. Guccione (In re General Media, Inc.), 335 B.R. 66, 73 (Bankr.S.D.N.Y.2005)); see also In re Equip. Finders, Inc. of Tennessee, 473 B.R. 720, 731 (Bankr. M.D. Tenn. 2012) ("If a common theme can be extracted from [Sixth Circuit precedent], it is that 'related to' jurisdiction in the post confirmation period expands or contracts depending on the relationship between the post confirmation debtor and the defendant, the language of the confirmed plan and the impact the matter will have on performance of the confirmed plan.") (citing Michigan Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.), 930 F.2d 1132, 1141 (6th Cir.1991); Linsenmeyer v. United States (In re Linsenmeyer), 92 Fed.Appx. 101, 102 (6th Cir. 2003); Gordon Sel–Way, Inc. v. United States, 270 F.3d 280, 288-89 (6th Cir.2001).

party claims pursuant to such a plan (which it does), the question presented by the Court could be rephrased as whether the terms of the FE Non-Debtor Parties' Third Party Release contain some *unique* characteristic that renders the Plan patently unconfirmable. Given that the terms of the FE Non-Debtor Parties' Third Party Release are substantively similar to the terms of non-consensual third party releases previously approved in this Circuit, the answer is clearly no. Nothing about the terms of the FE Non-Debtor Parties' Third Party Release is unique or would put these releases outside the applicable Sixth Circuit precedent. The only unusual aspect is the massive amount of consideration the FE Non-Debtor Parties are providing to receive the FE Non-Debtor Parties' Third Party Release, which only bolsters the argument that this release is valid and consistent with Dow Corning.

14.     The FE Non-Debtor Parties' Third Party Release is similar to other non-consensual third party releases recently approved in this Circuit in the context of a plan of reorganization. See e.g., In re City of Detroit, 524 B.R. 147, 171-76 (Bankr. E.D. Mich. 2014) (approving non-consensual third party releases where each holder of a pension claim against the City was deemed to release the State of Michigan and its related entities from all liabilities arising from or related to the City and its chapter 9 case, including certain alleged statutory and constitutional obligations of the State to satisfy such pensions). As demonstrated below, the FE Non-Debtor Parties' Third Party Release is substantively similar in structure and scope to the non-consensual third party releases in Detroit that released a related non-debtor (the State of Michigan) from all liabilities arising from or related to a set of claims related to the debtor. Accordingly, plans of reorganization containing releases similar to the FE Non-Debtor Parties' Third Party Release in both scope and substance not only are not "patently unconfirmable", they have been *confirmed*.

- 12 -

## THE PLAIN LANGUAGE OF THE RELEASE

15.     The plain language of the FE Non-Debtor Parties' Third Party Release is clear on its face.  Exhibit B to this Brief is an annotated version of Section VIII.E of the Plan, which breaks each clause of the section into one of six categories:  (a) clauses articulating the identity of the parties who are to be deemed to provide the FE Non-Debtor Parties' Third Party Release (the "Identity Clauses"); (b) clauses limiting the scope of the FE Non-Debtor Parties' Third Party Release (the "Limitation Clauses"); (c) clauses articulating the subject matter of claims and Causes of Action that are being released pursuant to the FE Non-Debtor Parties' Third Party Release (the "Subject Matter Clauses"); (d) clauses that clarify the Subject Matter Clauses (the "Clarifying Clauses"); (e) clauses articulating the actions that the parties providing the FE Non-Debtor Parties' Third Party Release will be deemed to have taken (the "Action Clauses"); and (f) clauses articulating the consideration provided by the FE Non-Debtor Parties in return for the FE Non-Debtor Parties' Third Party Release (the "Consideration Clauses").  While the Subject Matter Clauses create the universe of potentially released claims and Clauses of Action, the actual scope of the FE Non-Debtor Parties' Third Party Release can only be understood when restricting that universe via the Identity Clauses and the Limitation Clauses.[13]

---

[13]     The FE Non-Debtor Parties' Third Party Release and the entirety of the FE Settlement Agreement were the result of intense, arm's-length negotiations amongst the Debtors, the FE Non-Debtor Parties, the Debtor Released Parties and the Other Released Parties.  As a result, Sections VIII.C through VIII.F all contain a substantially similar opening paragraph that ensures that each of the relevant parties not only receives the releases it felt were needed, but the same releases as were received by the other parties.  Further, out of an abundance of caution, Sections VIII.E and VIII.G contain an additional second paragraph that: (a) includes a Clarification Clause ensuring that certain of the FE Non-Debtor Parties' obligations under the FE Settlement Agreement are not subject to the FE Non-Debtor Parties' Third Party Release and (b) more closely tracks Section 6.3 of the Settlement Agreement.  As a result, there is a certain amount of overlap between the first and the second paragraphs of FE Non-Debtor Parties' Third-Party Release.  This duplication should not be misconstrued as ambiguity, as the releases provided in each paragraph are clear, even if they are provided more than once.

- 13 -

*A. The Identity Clauses.*

16.     The Identity Clauses serve as the first significant gate to the FE Non-Debtor Parties' Third Party Release.  The FE Non-Debtor Parties' Third Party Release contains two substantively identical Identity Clauses.  See Ex. B, at Clauses 3 & 28.  These clauses make clear that the only parties who will be deemed to provide the FE Non-Debtor Released Parties with the FE Non-Debtor Parties' Third Party Release are Holders of Claims and Interests.

17.     Each of the terms "Holder," "Claim" and "Interest" is a defined term in the Plan. The Plan defines the term "Holder" as "an Entity[14] holding a Claim or an Interest, as applicable." See Plan, at §  I.A.134.  The Plan defines "Claim" as "any claim, as defined in section 101(5) of the Bankruptcy Code,[15] against any of the Debtors."  See id., at § I.A.21.  The Plan defines "Interest" as "any equity security (as defined in section 101(16) of the Bankruptcy Code)[16] issued with respect of any Debtor, any membership interests issued with respect to any Debtor, and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Entity."  See id., at § I.A.145.

---

[14]     Section I.A.66 of the Plan provides the term "Entity" with the meaning set forth in Section 101(15) of the Bankruptcy Code.  Section 101(15) states that the term "entity" "includes person, estate, trust, governmental unit, and United States trustee."

[15]     Section 101(5) of the Bankruptcy Code defines the term "claim" as:  "(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."

[16]     Section 101(16) of the Bankruptcy Code defines the term "equity security" as a:  " (A) share in a corporation, whether or not transferable or denominated "stock", or similar security; (B) interest of a limited partner in a limited partnership; or (C) warrant or right, other than a right to convert, to purchase, sell, or subscribe to a share, security, or interest of a kind specified in subparagraph (A) or (B) of [Section 101(16) of The Bankruptcy Code]."

- 14 -

18.     As a result of this first gate, not every holder of a claim or Cause of Action against the FE Non-Debtor Parties will be subject to the FE Non-Debtor Parties' Third Party Release. Rather, only those Entities that are Holders of a Claim or Interest against any of the Debtors may be subject to the FE Non-Debtor Parties' Third Party Release, subject further to the Limitation Clauses and the Subject Matter Clauses.

B.  *The Limitation Clauses.*

19.     The Limitation Clauses serve as the second significant gate to the FE Non-Debtor Parties' Third Party Release. The FE Non-Debtor Parties' Third Party Release contains seven separate Limitation Clauses that modify each of the Subject Matter Clauses. See Ex. B, at Clauses 5, 7, 25-27, 30, 32. If a Holder of a Claim or Interest holds a claim or Cause of Action against an FE Non-Debtor Released Party that fits within a Limitation Clause, such claim or Cause of Action cannot be released pursuant to the FE Non-Debtor Parties' Third Party Release.

20.     Two of the Limitation Clauses, Clauses 25 and 27, are temporal in nature. Each of Clauses 25 and 27 tie the FE Non-Debtor Parties' Third Party Release to the Effective Date of the Plan. Therefore, if the facts that give rise to a claim or Cause of Action against the FE Non-Debtor Parties occurred after the Effective Date, such claim or Cause of Action could not be subject to the FE Non-Debtor Parties' Third Party Release, subject to Clause 23.[17]

21.     Clauses 5 and 30 limit the FE Non-Debtor Parties' Third Party Release to "claims and Causes of Action."[18] This is an important distinction, especially for governmental units that

---

[17]     As explained below, Clause 23 releases the FE Non-Debtor Released Parties from a very small set of claims related to distributions made after the Effective Date in accordance with the Plan.

[18]     The Plan's definition of the term "Claim," as discussed above, is limited to any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors. See ¶ 8, *supra*. In order to make clear that what is being released under the Plan are claims against the FE Non-Debtor Parties, the Debtors intend to file an amended plan which, among other revisions, will no longer capitalize the term "claim" when

- 15 -

are both Holders of Claims or Interests against the Debtors, but also have regulatory authority

over the FE Non-Debtor Released Parties.[19]  When combined with the Identity Clauses (Clauses

3 & 28), Clauses 5 and 30 limit the Entities who will be deemed to provide the FE Non-Debtor

Parties with the FE Non-Debtor Parties' Third Party Release to Holders of Claims and Causes of

Action against the Debtors who also hold claims and Causes of Action against the FE Non-

Debtor Released Parties.

      22.      Clause 26 articulates a set of claims that, notwithstanding anything to the contrary

in the FE Non-Debtor Parties' Third Party Release, are specifically excluded from the FE Non-

Debtor Parties' Third Party Release.  Those excluded claims include any obligations of any

Entity (including the FE Non-Debtor Parties) arising (i) after the Effective Date or (ii) under

(a) the Plan, (b) the Confirmation Order, (c) any Restructuring Transaction, (d) the FE

Settlement Agreement and (e) any related obligations under the Plan, or any document,

instrument, or agreement (including those set forth in the Plan Supplement) executed to

implement the Plan.  Clause 26 is a common sense provision to ensure that the FE Non-Debtor

---

referring to claims against the FE Non-Debtor Parties.  See *Debtors' Supplemental Brief in Support of Debtors' Motion for Order(I) Approving Disclosure Statement, (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Debtors' Joint Chapter 11 Plan, (III) Approving the Form of Ballots, (IV) Scheduling a Hearing on Confirmation of the Plan, (V) Approving Procedures for Notice of the Confirmation Hearing and for Filing Objections to Confirmation of the Plan, and (VI) Granting Related Relief* [Docket No. 2397], at ¶ 6, n. 6.  The Plan defines the term "Cause of Action" as "any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, in contract, tort, law, equity, or otherwise. Causes of Action also include: (i) all rights of setoff, counterclaims, or recoupment and claims under contracts or for breaches of duties imposed by law; (ii) the right to object to or otherwise contest Claims or Interests; (iii) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (iv) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code."  See Plan at § A.I.19.

[19]     While most of the Debtors' property was once owned by one or more of the FE Non-Debtor Parties, the Debtors have owned or controlled the large majority of their property since 2005.  If the FE Non-Debtor Parties have any remaining obligations related to the Debtors' Property – no such obligation is currently being prosecuted and no party has alleged that any specific obligation even exists – such obligation is almost certainly a monetary claim or Cause of Action, and not an exercise of any governmental agency's police or regulatory power.

Parties' Third Party Release could not be misread to either include claims and Causes of Action against the FE Non-Debtor Parties for post Effective-Date conduct or release the FE Non-Debtor Parties from their obligations to provide the consideration that the FE Non-Debtor Parties have promised in return for the FE Non-Debtor Third Parties' Release.

23.     The final Limitation Clauses to be discussed, Clauses 7 and 32, are perhaps the most significant gate to the FE Non-Debtor Parties' Third Party Release.  Just prior to Clauses 8 through 24 and Clauses 33 through 40, respectively, where all of the Subject Matter Clauses are located, Clauses 7 and 32 require that any claim or Cause of Action released pursuant to the FE Non-Debtor Parties' Third Party Release be "based on or relating to, or in any manner arising from in whole or in part" or "arising from or related in any way to" the specifically articulated list of claims in the following Clauses.  This limitation means that unless a claim or Cause of Action against the FE Non-Debtor Parties is connected to one of the categories of claims discussed in the Subject Matter Clauses, such claim or Cause of Action cannot be released pursuant to the FE Non-Debtor Parties' Third Party Release.

C.     *The Subject Matter Clauses*.

24.     If the Plan is confirmed, Holders of Claims and Interests will be deemed to have released the FE Non-Debtor Released Parties, subject to the Limitation Clauses, from claims and Causes of Action related to twenty[20] subject matters, carefully crafted to encompass the form of claims faced by the FE Non-Debtor Released Parties related to the Debtors' businesses:

        a.   The Debtors (Clauses 8 & 33);

        b.   The Debtors' businesses (Clauses 9 & 35);

        c.   The Debtors' property (Clauses 10 & 36);

---

[20]     There are technically 25 Subject Matter Clauses in the FE Non-Debtor Parties' Third Party Release. However, there are five pairs of substantive duplicates found in both paragraphs 1 and 2 of Section VIII.E of the Plan: Clauses 8 & 33, Clauses 9 & 35, Clauses 10 & 36, Clauses 14 & 37 and Clauses 21 & 38.

d.  The Debtors' capital structure (Clause 11);

e.  The assertion or enforcement of rights and remedies against the Debtors (Clause 12);

f.  The Debtors' in- or out-of-court restructuring discussions (Clause 13);

g.  Intercompany transactions between or among the Debtors and/or their Affiliates (including the FE Non-Debtor Parties) (Clauses 14 & 37);

h.  The purchase, sale, or recession of the purchase or sale of any Security of the Debtors or the Reorganized Debtors (Clauses 15);

i.  The subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan (Clause 16);

j.  The business or contractual arrangements between any Debtor and any FE Non-Debtor Released Party (Clause 17);

k.  The PCNs (Clause 18);

l.  The FES Notes (Clause 19);

m.  Any interest in the Mansfield Facility Documents (Clause 20);

n.  The Chapter 11 Cases, and related adversary proceedings (Clauses 21 & 38);

o.  The formulation, preparation, dissemination, negotiation, filing, or consummation of the Restructuring Support Agreement, the Process Support Agreement, the Standstill Agreement, the FE Settlement Agreement, the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing, including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any FE Non-Debtor Released Party on the Plan or the Confirmation Order in lieu of such legal opinion (Clause 22);

p.  The issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement (Clause 23);

q.  Any other related act or omission, transaction, agreement, event, or other occurrence (Clause 24);

r.  The Reorganized Debtors (Clause 34);

- 18 -

s. The formulation, preparation, negotiation, dissemination, implementation, administration, Confirmation, or Consummation of the Plan, the Plan Supplement, any contract, employee pension or benefit plan, instrument, release, or other agreement or document related to any Debtor, the Chapter 11 Cases or the Plan, modified, amended, terminated, or entered into in connection with either the Plan or any agreement between the Debtors and any FE Non-Debtor Released Party, including the FE Settlement Agreement any agreement between the Debtors and any FE Non-Debtor Released Party, including the FE Settlement Agreement (Clause 38); and

t. Any other act taken or omitted to be taken in connection with the Chapter 11 Cases, including, without limitation, acts or omissions occurring after the Effective Date in connection with distributions made consistent with the terms of the Plan (Clause 40).

25. Each Subject Matter Clause is directly linked to the Debtors, their property, their estates or these Chapter 11 Cases. There are no Subject Matter Clauses that would allow the release of a claim or Cause of Action unrelated to the Debtors, their estates or these chapter 11 cases. As explained above, this structure mirrors non-consensual third party releases approved in this Circuit. Therefore, the Plan is not patently unconfirmable due to its inclusion of the FE Non-Debtor Parties' Third Party Release.

26. The above Subject Matter Clauses contain claims and causes of action directly related to the Debtors, their estates, their property and these chapter 11 cases, including, but in no way limited to:

a. Any breach of contract claim or Cause of Action related to any contract where an FE Non-Debtor Released Party and a Debtor were both parties to a contract;

b. Any claim or Cause of Action related to an FE Non-Debtor Released Party's guarantee of any liability of a Debtor (except such guarantees explicitly carved out in the Plan);

c. Any claim or Cause of Action related to any intercompany claims between any FE Non-Debtor Released Party and any Debtor;

d. Any claims related to any of the Debtors' properties, including any claims by the Debtors, any third-party or any governmental agency related to any environmental liabilities at the Debtors' properties;

- 19 -

e.   Any claims against any FE Non-Debtor Released Party for breach of their fiduciary duties to any Debtor;

f.   Any liability of any FE Non-Debtor Released Party related to any Claim or Interest;

g.   Any claim or Cause of Action seeking to pierce the corporate veil of any FE Non-Debtor Party or substantively consolidate any FE Non-Debtor Released Party with any Debtor; and

h.   Any claims against any FE Non-Debtor Released Party pursuant to Sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code.

D. *The Clarifier Clauses.*

27.     The FE Non-Debtor Parties' Third Party Release contains two Clarifier Clauses that do not allow additional claims or Causes of Action to be released pursuant thereto. See Ex. B, at Clauses 6, 31.  Instead, each of the Clarifier Clauses contains typical release language to ensure that regardless of the type of claim or Cause of Action, or the type of standing a potential plaintiff may have, if a Holder of a Claim or Interest has a claim or Cause of Action against the FE Non-Debtor Parties that fits within the Subject Matter Clauses, subject to the Limitation Clauses, such claim or Cause of Action shall be released pursuant to the FE Non-Debtor Parties' Third Party Release.

E. *The Action & Consideration Clauses*

28.     The FE Non-Debtor Parties' Third Party Release contains three Action Clauses, two of which are substantively identical.  See Ex. B, at Clauses 1, 4, 29.  The Action Clauses are the "verb" of the FE Non-Debtor Parties' Third Party Release, articulating the action that the Holders of Claims and Interests will be deemed to have taken in the event the Plan is confirmed. Specifically, to provide the FE Non-Debtor Released Parties with the FE Non-Debtor Parties' Third Party Release.  Clause 1, when read with Clause 4, makes it clear that this release will be effective on the Effective Date.  The Action Clauses do not expand or restrict the claims and

- 20 -

Causes of Action that will be released pursuant to the FE Non-Debtor Parties' Third Party Release.

29.     The FE Non-Debtor Parties' Third Party Release contains one Consideration Clause.  See id., at Clause 2.  While the Consideration Clause is vital to demonstrate the massive value that the FE Non-Debtor Parties have provided in return for the FE Non-Debtor Parties' Third Party Release, it does not expand or restrict the claims and Causes of Action that will be released pursuant to the FE Non-Debtor Parties' Third Party Release.

[*The remainder of the page is intentionally blank*]

## CONCLUSION

Courts in this Circuit have confirmed plans of reorganization with non-consensual third party releases similar in structure and scope to the FE Non-Debtor Parties' Third Party Release. There is nothing unique about the terms FE Non-Debtor Parties' Third Party Release. The only unusual aspect of the FE Non-Debtor Parties' Third Party release is the massive amount of consideration the FE Non-Debtor Parties are providing under the FE Settlement Agreement. Thus, the Disclosure Statement is not patently unconfirmable. Objections to the FE Non-Debtor Parties' Third Party Release should be addressed at the Confirmation Hearing. The Motion should be approved.

Dated: March 26, 2019

Respectfully Submitted,

*/s/ Heather Lennox*
Heather Lennox (0059649)
Thomas M. Wearsch (0078403)
Thomas A. Wilson (0077047)
T. Daniel Reynolds (0089712)
hlennox@jonesday.com
twearsch@jonesday.com
twilson@jonesday.com
tdreynolds@jonesday.com
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44114-1190
Telephone: (216) 586-3939
Facsimile: (216) 579-0212

*Attorneys for FirstEnergy Corp.*
*and its non-Debtor affiliates.*

- 22 -

**Exhibit A**
(March 19, 2019 Transcript)

DocuSign Envelope ID: 601CDC02-A4DE-4899-93DE-0249416B97BF

                    UNITED STATES BANKRUPTCY COURT
                      NORTHERN DISTRICT OF OHIO
                       EASTERN DIVISION (AKRON)

                                  *
     IN RE:                       *     Case No. 18-50757
                                  *
                                  *
     FIRSTENERGY SOLUTIONS CORP.  *     March 19, 2019
                                  *
  *  *  *  *  *  *  *  *  *  *  *  *  *  *

                      TRANSCRIPT OF HEARING
              BEFORE THE HONORABLE ALAN M. KOSCHIK
                  UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

SCOTT ALBERINO, ESQ.
BRADLEY KAHN, ESQ.
ABID QURESHI, ESQ.
KATE BRADLEY, ESQ.
BRIDGET FRANKILN, ESQ.
For the Debtors

TIIARA PATTON, ESQ.
For the U.S. Trustee

ALAN TENENBAUM, ESQ.
NICHOLAS McDANIEL, ESQ.
PATRICK CASEY, ESQ.
For the U.S. Environmental Protection Agency and
Nuclear Regulatory Commission

DANIELLE PHAM, ESQ.
For Federal Energy Regulatory Commission

EVAN FLECK, ESQ.
PARKER MILENDER, ESQ.
ROCCO DEBITETTO, ESQ.
DANIEL DEMARCO, ESQ.
For the Official Committee of Unsecured Creditors

JOYCE GOLDSTEIN, ESQ.
RICHARD STOPER, ESQ.
For the Unions

MICHAEL IDZKOWSKI, ESQ.
For the Ohio Environmental Protection Agency and the
Ohio Department of Natural Resources

          LEGAL ELECTRONIC RECORDING, INC.   216-881-8000

DocuSign Envelope ID: 601CDC02-A4DE-4899-93DE-0249416B97BF

```
 1   SONIA CHAE, ESQ.
     For the U.S. Securities and Exchange Commission
 2
     DARREN KLEIN, ESQ.
 3   For the FES Creditor Group

 4   ANDREW SORKIN, ESQ.
     For the Ad Hoc Group of Mansfield Certificate Holders
 5
     MATTHEW McCLINTOCK, ESQ.
 6   For the Sierra Club

 7   THOMAS WEARSCH, ESQ.
     DANIEL REYNOLDS, ESQ.
 8   For FirstEnergy Corp.

 9   STEPHEN LERNER, ESQ.
     For the Board of Directors of FirstEnergy Corp.
10
     JOSEPH SHIFER, ESQ.
11   For the Ad Hoc Noteholder Group

12   MARGRETHE KEARNEY, ESQ.
     ANDRENE DABAGHI, ESQ.
13   For ELPC, OCA, EDF and the OEC

14   KURT GWYNNE, ESQ.
     For the Bank of New York Mellon Trust Company
15
     TODD MEYERS, ESQ.
16   For Wilmington Savings Fund Society

17   DAVID BECK, ESQ.
     For the Office of the Ohio Consumers' Counsel
18
     GARY KAPLAN, ESQ.
19   For Maryland Solar

20   BARBARA GRABOWSKI, ESQ.
     VERA KANOVA, ESQ.
21   For Pennsylvania Department of Environmental Protection

22   MICHAEL BURKE, ESQ.
     For MetLife Capital Limited Partnership
23
     MATTHEW FAGEN, ESQ.
24   For Ohio Valley Electric Corporation

25
```

DocuSign Envelope ID: 601CDC02-A4DE-4899-93DE-0249416B97BF

3

```
 1                    Transcribed by:
                - - - - - - - - - - - - - -
 2          Legal Electronic Recording, Inc.
               5230 St. Clair Avenue
 3             Cleveland, Ohio  44103
          (216) 881-8000  Fax 881-DEPO (3376)
 4
    Proceeding recorded by electronic sound recording,
 5  transcript produced by transcription service.
    Job #19C6031
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

DocuSign Envelope ID: 601CDC02-A4DE-4899-93DE-0249416B97BF

1    weeks would be easier for me and I can give you the

2    2nd.  I'd have to move something but I would gladly do

3    that.

4              MR. ALBERINO:  Okay.

5              THE COURT:  If you -- next week is tough.

6    That's all I'm going to say.

7              MR. ALBERINO:  Okay.  We can only work with

8    your schedule.  We just want to move at a pace -- we

9    don't want this dragging out.

10             THE COURT:  I do want to move forward and I

11   don't want to take this under advisement for a long

12   time.  I get -- I mean, there's a lot that's riding on

13   this.  I want to sort this issue out.  If the answer is

14   no, I just want to make it clear that that's possible,

15   I want you to know as soon as possible.  If the answer

16   is yes or yes, maybe, you know, then let's get going.

17   Let's approve the disclosure statement, let's set a

18   schedule, let's figure out where discovery might be

19   necessary and other things, and let's get going.

20             MR. ALBERINO:  Listen, Your Honor, we -- the

21   other point I'm going to make here is that while you're

22   asking us to address this, you know, on the papers,

23   every opinion out there that considers these issues

24   does so with the benefit of a confirmation record.

25             The issues we're talking about in terms of

DocuSign Envelope ID: 601CDC02-A4DE-4899-93DE-0249416B97BF

1    what type of claims fit within here, if we're going to

2    go down, you know, if we're going to go down a pathway

3    of evaluating related to jurisdiction, how do we just

4    do that on the papers -- on the papers at this stage?

5              MR. TENENBAUM:  Can I interject?

6              THE COURT:  Okay.

7              MR. TENENBAUM:  I think Your Honor really hit

8    the nail on the head about what we need here.  The

9    questions that Your Honor has just been asking are not

10   addressed in the other side's briefs, and we've been

11   asking them for months, and we haven't gotten an

12   answer.

13             So we assume the answer is that they want

14   everything, including all the independent liability,

15   but we -- until they answer, we can't be a hundred

16   percent sure, but that's our reading of the situation.

17   And so we are happy to submit more briefs.  We're happy

18   if you want to decide it on the existing briefs.  Two

19   to three weeks is fine with us.  I think Your Honor may

20   recall we scheduled the disclosure statement hearing

21   for today because I'm not in next week, but we wouldn't

22   want it next week either, but -- and then we do want to

23   respond very briefly to some of the points Mr. Alberino

24   makes.  Mr. McDaniel would be responding to that, but

25   before he very briefly does that, I don't know if you

1    want to hear -- you want to hear from him now or --

2              THE COURT:  I'll hear from everybody in

3    whatever order you want to take it up.

4              MR. TENENBAUM:  Okay.

5              THE COURT:  Why don't we -- are you done, Mr.

6    Tenenbaum?

7              MR. TENENBAUM:  Well, Mr. McDaniel is with my

8    office and he's --

9              THE COURT:  Okay, let's -- fine.  I didn't --

10             MR. TENENBAUM:  Thank you, Your Honor.

11             THE COURT:  -- understand who was sitting

12   over there.

13             MR. MCDANIEL:  Thank you, Your Honor.  Nick

14   McDaniel for the United States and NRC.  I don't know

15   that there's anything to add to what Mr. Tenenbaum just

16   said.  Just on one point that on what Mr. Alberino

17   said, it's not all the time that these releases are

18   evaluated in the context of a plan confirmation.  I

19   think we cite in our -- in our objection In re Arter

20   and Hadden, which is a case from this district, where

21   it was evaluated in the context of a pre-confirmation

22   settlement agreement, that had the releases and

23   contemplated the releases ultimately being included in

24   the plan.  It's almost exactly like what we have here.

25             So just to that question of whether we have

DocuSign Envelope ID: 601CDC02-A4DE-4899-93DE-0249416B97BF

1  to wait for some reason until confirmation, you know,

2  we think that the legality of the releases is something

3  we can address now.

4          THE COURT:  Okay.  And again, in response to

5  Mr. Alberino's point, this early process, this next two

6  weeks, is not to confirm the plan or finally approve

7  the release language.  I haven't read the record.  I

8  need it to be at confirmation -- before I send this out

9  for solicitation, I want to make sure that what is

10  being asked here can possibly be confirmed.  That's

11  what I'm getting at.  Before we take the time to send

12  out a plan that might come back and not be confirmable.

13  That's all.  I want -- I'm risk adverse about that,

14  about sending the big pile of paper to all my friends

15  and neighbors, you know, twice.  Once I'm good with,

16  but twice I'd rather avoid.  Yes, sir.

17          MR. FAGEN:  Your Honor, Matt Fagen from

18  Kirkland Ellis, on behalf of Ohio Valley Electric

19  Corporation.

20          THE COURT:  Right.

21          MR. FAGEN:  Your Honor, I missed roll call at

22  the beginning.  I apologize.

23          THE COURT:  That's fine.  I knew --

24  somewhere.

25          MR. FAGEN:  I also wrote in my notes, good

DocuSign Envelope ID: 601CDC02-A4DE-4899-93DE-0249416B97BF

1    agencies, to try to, you know, come to a list of

2    potential claims, so that we could understand the scope

3    of, you know, what FirstEnergy Corp might be looking at

4    from a claims standpoint, and to this date we -- it's

5    still unclear to us what type of claims are out there,

6    or could potentially be out there.

7          It's very much so potential theories, you

8    know, things that are not yet articulated and

9    speculative, and I'm not sure how that's going to

10   change between now and two weeks from now.

11         THE COURT:  Well, that's not going to change,

12   but what you're describing are things that are unknown

13   to people that are alive today.  Right?  I mean, we

14   don't know what will happen with something that was

15   built or maintained or owned or operated five years

16   ago, ten years ago, 15 years ago, 20 years ago.  Right?

17   I mean, that's always the problem.  We don't know what

18   boiler is going to break up, you know, blow up, that

19   was built in the past.  Right?  So I'm -- I appreciate

20   that you're trying to get your arms around that.  I

21   appreciate you're trying to get a nice list from Mr.

22   Tenenbaum but I can also appreciate that he doesn't

23   know a full answer.

24         And I have no doubt, and I completely

25   understand that whatever releases that you've

1   negotiated, and it sounds like I'm getting a little

2   more clarity as to what releases have been negotiated,

3   but I hope to get that in writing soon, was heavily

4   negotiated with the Debtor, and maybe with their

5   Creditor Group.  And that $2 billion of consideration

6   is a lot of stuff.  Right?  And I also understand that

7   it's one-stop shopping, that's your deal.  I appreciate

8   that.

9         It wasn't negotiated with Mr. Tenenbaum's

10  clients.  It wasn't negotiated with unknown Creditors.

11  They didn't sign off on that.  So that's the issue,

12  okay, and I also understand that whether I approve or

13  don't approve or whether they go forward or don't go

14  forward, it's going to have a big impact.  I understand

15  it's important.  I really do.  I'm not saying no.  I'm

16  just saying I need to understand better, and I need to

17  look at this more carefully.

18        And I don't think the schedule is going to

19  fit any other way than on the two-week horizon that

20  we've discussed.  So I want to see where this goes and

21  to the extent you and your client would like to file a

22  written statement on this, you're welcome to.  You're

23  not required to.  Maybe you don't want to, that's fine.

24  It's up to you.  We can talk about what the schedule

25  should be, but I would like the Debtor or the Debtor

DocuSign Envelope ID: 601CDC02-A4DE-4899-93DE-0249416B97BF

1  and FE Corp also to define in writing as best as

2  possible what these releases are and why we should --

3  and why they should be capable of being released.  And

4  maybe the legal argument has already been stated, and

5  it doesn't need to be repeated, so that Mr. Tenenbaum

6  and anybody else that's been objecting, can comment on

7  that and clarify their briefing, if necessary, and then

8  we can have a hearing with an oral argument to discuss

9  it in two weeks or so.  That's what I would like to do.

10       MR. WEARSCH:  Thank you, Your Honor.

11       MR. ALBERINO:  Your Honor, I was just going

12  to say, I feel like this issue has already been

13  briefed.  The operating assumption of all the objecting

14  party releases is that the -- was that FE was seeking a

15  non-Debtor release for -- unrelated to historical

16  ownership of the sites.

17       THE COURT:  It was.  Is that what you said?

18  That's what I thought I heard.  I just --

19       MR. ALBERINO:  I said the release applied to

20  properties that we own, where you were historical

21  owners of those properties.  And I think that's the

22  underlying issue.  This is the whole issue here in this

23  case right now, is the issue of whether the release can

24  be approved with respect to any claims, State or

25  Federal Agencies may have against FE related to their -

1  - related to their historical ownership of our

2  properties.

3          THE COURT:  Okay.

4          MR. ALBERINO:  That's the issue.  I feel like

5  that's been briefed and I feel like we've covered that

6  off already.

7          THE COURT:  That's a lot clearer.

8          MR. ALBERINO:  Right.

9          THE COURT:  Than --

10          MR. ALBERINO:  That's what they're asking

11  for.

12          THE COURT:  -- a few minutes ago.

13          MR. TENENBAUM:  That has never really been

14  clearly stated anywhere.  But two questions about that

15  is does that also include the half-built facility which

16  the Debtor has never operated?  And does it include the

17  Pleasants facility, which the Debtors don't even yet

18  own?

19          THE COURT:  Well, okay.  I'm not -- in these

20  next two weeks we're not going to litigate this plant

21  or that half of a plant.  That can be done in

22  confirmation, if that's material or that's relevant.

23  Right?  That gets into a factual record that we're not

24  doing that in two weeks.

25          I think I now understand the scope of the

**Exhibit B**
(Annotated Version of Section VIII.E of the Plan)

## Annotated Version Section VIII.E of the Plan

| Notation | Meaning | Section of Brief in Support |
|---|---|---|
| Identity | The identity of the Entities releasing the FE Non-Debtor Released Parties. | See ¶¶ 16-18 |
| Limitation | Provision limiting the scope of the FE Non-Debtor Parties' Third Party Release. | See ¶¶ 19-23 |
| Subject Matter | Enumerating the subject matters of claims and Causes of Action that are being released. | See ¶¶ 24-26 |
| Clarifier | Clarifying what is being released. | See ¶ 27 |
| Action | The act that the Holders of Claims and Interests shall be deemed to have taken. | See ¶ 28 |
| Consideration | A provision articulating the consideration for the Release of the FE Non-Debtor Parties by Third Parties and Holders of Claims or Interests. | See ¶ 29 |

*Paragraph 1*:

1.     On and as of the Effective Date, [**Action**]

2.     in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan, the consideration provided by the FE Non-Debtor Parties under the Settlement Agreement and the contributions of the FE Non-Debtor Released Parties to facilitate and implement the Plan, [**Consideration**]

3.     each Holder of a Claim or Interest [**Identity**]

4.     is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each FE Non-Debtor Released Party [**Action**]

5.     from any and all claims and Causes of Action, [**Limitation**]

6. including derivative claims asserted or assertable by or on behalf of any of the Debtors, the Reorganized Debtors, or their Estates or Affiliates (including any FE Non-Debtor Parties) as applicable, that such Entity would have been legally entitled to assert in any of their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, [**Clarifier**]

7. based on or relating to, or in any manner arising from in whole or in part, [**Limitation**]

8. the Debtors, [**Subject Matter**]

9. the Debtors' businesses, [**Subject Matter**]

10. the Debtors' property, [**Subject Matter**]

11. the Debtors' capital structure, [**Subject Matter**]

12. the assertion or enforcement of rights and remedies against the Debtors, [**Subject Matter**]

13. the Debtors' in- or out-of-court restructuring discussions, [**Subject Matter**]

14. intercompany transactions between or among the Debtors and/or their Affiliates (including the FE Non-Debtor Parties), [**Subject Matter**]

15. the purchase, sale, or recession of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, [**Subject Matter**]

16. the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, [**Subject Matter**]

17. the business or contractual arrangements between any Debtor and any FE Non-Debtor Released Party, [**Subject Matter**]

18. the PCNs, [**Subject Matter**]

- 2 -

19.     the FES Notes, [**Subject Matter**]

20.     any interest in the Mansfield Facility Documents, [**Subject Matter**]

21.     the Chapter 11 Cases, and related adversary proceedings, [**Subject Matter**]

22.     the formulation, preparation, dissemination, negotiation, filing, or consummation of the Restructuring Support Agreement, the Process Support Agreement, the Standstill Agreement, the FE Settlement Agreement, the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing, including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any FE Non-Debtor Released Party on the Plan or the Confirmation Order in lieu of such legal opinion, [**Subject Matter**]

23.     the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, [**Subject Matter**]

24.     or upon any other related act or omission, transaction, agreement, event, or other occurrence  [**Subject Matter**]

25.     taking place on or before the Effective Date.  [**Limitation**]

*Paragraph 2*:

26.     Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any obligations of any Entity arising after the Effective Date under the Plan, the Confirmation Order, any Restructuring Transaction, the FE Settlement Agreement and any related obligations under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.  [**Limitation**]

27.     For the avoidance of doubt, on and as of the Effective Date of the

Plan, [**Limitation**]

28.     the Holders of Claims and Interests [**Identity**]

29.     shall be deemed to provide a full and complete release to the FE Non-Debtor

Released Parties and their respective property [**Action**]

30.     of and from any and all Causes of Action whatsoever, [**Limitation**]

31.     whether known or unknown, asserted or unasserted, derivative or direct, foreseen

or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for or

sounding in tort, fraud, contract, violations of federal or state securities laws, veil piercing,

substantive consolidation or alter-ego theories of liability, contribution, indemnification, joint or

several liability, or otherwise, [**Clarifier**]

32.     arising from or related in any way to [**Limitation**]

33.     (i) the Debtors, [**Subject Matter**]

34.     Reorganized Debtors, [**Subject Matter**]

35.     their businesses, [**Subject Matter**]

36.     or their property; [**Subject Matter**]

37.     (ii) any Causes of Action against the FE Non-Debtor Released Parties or their

property arising in connection with any intercompany transactions and other matters arising in

the conduct of the Debtors' businesses; [**Subject Matter**]

38.     (iii) the Chapter 11 Cases; [**Subject Matter**]

39.     the formulation, preparation, negotiation, dissemination, implementation,

administration, Confirmation, or Consummation of the Plan, the Plan Supplement, any contract,

employee pension or benefit plan, instrument, release, or other agreement or document related to

18-50757-amk     Doc 2400     FILED 03/26/19     ENTERED 03/26/19 21:48:06     Page 39 of 40

any Debtor, the Chapter 11 Cases or the Plan, modified, amended, terminated, or entered into in connection with either the Plan or (iv) any agreement between the Debtors and any FE Non-Debtor Released Party, including the FE Settlement Agreement; [**Subject Matter**]

40.     or (v) any other act taken or omitted to be taken in connection with the Chapter 11 Cases, including, without limitation, acts or omissions occurring after the Effective Date in connection with distributions made consistent with the terms of the Plan.  [**Subject Matter**]

41.     Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, of the FE Non-Debtor Parties' Third Party Release, which includes by reference each of the related provisions and definitions contained in this Plan.