# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| In Re: | Chapter 11 |
| FIRSTENERGY SOLUTIONS CORP., *et al.*,[1] | Case No. 18-50757 (Jointly Administered) |
| Debtors. | Hon. Alan M. Koschik |
| | Hearing Date: April 2, 2019 |

## JOINDER, RESERVATION OF RIGHTS, AND RESPONSE OF THE ENVIRONMENTAL LAW & POLICY CENTER, OHIO CITIZEN ACTION, OHIO ENVIRONMENTAL COUNCIL AND ENVIRONMENTAL DEFENSE FUND TO DEBTORS' PROPOSED THIRD-PARTY RELEASES ARGUMENT

The Environmental Law & Policy Center ("ELPC"), Ohio Citizen Action ("OCA"), Ohio Environmental Council ("OEC") and Environmental Defense Fund ("EDF") (collectively, the "Citizen Organizations"), by their respective attorneys, join the supplemental briefs filed by the Governments [Dkt. 2398], Ohio Consumer Counsel [Dkt. 2395], and Sierra Club [Dkt. 2396] and respond to Debtors' supplemental brief [Dkt. 2397], which were all filed on March 26, 2019. The Debtors' Second Amended Disclosure Statement should not be approved because the virtually unlimited releases it contains render any plan unconfirmable on its face.

First, the third-party release of non-Debtors from public health and environmental obligations fails to meet the controlling *In re Dow Corning Corp.* test. Second, the releases

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: FE Aircraft Leasing Corp. (9245), case No. 18-50759; FirstEnergy Generation, LLC (0561), case no. 18-50762; FirstEnergy Generation Mansfield Unit 1 Corp. (5914), case no. 18-50763; FirstEnergy Nuclear Generation, LLC (6394), case no. 18-50760; FirstEnergy Nuclear Operating Co. (1483), case no. 18-50761; FirstEnergy Solutions Corp. (0186) case no. 18-80757; and Norton Energy Storage L.L.C. (6928), case no. 18-50764. The Debtors' address is: 341 White Pond Dr., Akron, OH 44320.

foreshadow FirstEnergy's plan to impermissibly escape its financial responsibility for its coal and nuclear power plant sites. Third, the proposed third-party releases cannot limit the Nuclear Regulatory Commission's police and regulatory powers under section 362(b)(4) of the Bankruptcy Code, nor the analogous jurisdiction of state regulatory agencies. Therefore, the Court should deny Debtors' Motion for an Order Approving the Second Amended Disclosure Statement.

The "properties" covered by the third-party releases include the Debtors' four nuclear power plants and coal power plants subject, respectively, to significant obligations under federal and state law to protect public health, safety and welfare and to ensure environmental compliance and remediation as those plants shut down. All of these properties were owned—directly or through subsidiaries—by non-Debtor parent FirstEnergy Corp., which now seeks complete release for the costs and liabilities of decommissioning and cleaning up the properties even from pre-petition harms. Moreover, FirstEnergy specifically has served as the "parental guarantor" to provide sufficient funds to decommission the four nuclear power plants: Beaver Valley 1 & 2, Davis-Besse and Perry. As a past and present guarantor of decommissioning and environmental remediation responsibilities, FirstEnergy should not be allowed to escape that burden. Citizen Organizations join the Government, Ohio Consumer Counsel and Sierra Club arguments that this Court does not have authority to approve the staggeringly broad third-party release of non-Debtors. On their face, these third-party releases fail to meet the controlling Sixth Circuit test in *In re Dow Corning Corp.*, 280 F.3d 648, 658 (6th Cir. 2002).

Moreover, if allowed, these releases, as explained by the Ohio Consumer Counsel in its brief, will have serial consequences that make any plan unconfirmable:

First, FirstEnergy will have escaped the financial responsibility to clean up and remediate the coal plant sites it transfers to Debtors, creating toxic exposure, public health, environmental health and safety risks. Any "New FES" is unlikely to have a sufficiently stable and predictable cash flow and financial resources to clean up and remediate the sites. The costs of that necessary remediation and clean up should not be borne by Ohio, Pennsylvania and West Virginia taxpayers and ratepayers.

Second, FirstEnergy will have avoided any financial responsibility as a "parental guarantor" to make whole the shortfall in the nuclear decommissioning trust funds for the Beaver Valley 1 & 2, Davis-Besse and Perry nuclear power plants. Debtors' Second Amended Plan strives to leave decommissioning costs as a general obligation of the reorganized Debtors. FES and FENOC presumably will cease power generation by 2023. *See* Second Amended Disclosure Statement, Ex. D at 4 [Dkt. 2313-4] ("None of the Debtors' generating units are assumed to clear megawatts in the 2022/2023 Planning year."). After that date, the "New FES's" sole source of revenue will be as a retail business that does not exist today. Moreover, no plan provision requires New FES to even maintain a retail business until at least 2023. There is no guarantee that there will be any additional funds to pay the massive decommissioning costs for FES's nuclear and coal power plants beyond the existing $1.8 billion in trusts and related funds.

Debtors propose to put the Davis-Besse, Perry and other nuclear plants in a "SAFSTOR" status where decommissioning could be deferred 60 years or more. *See* Second Amended Disclosure Statement [Dkt. 2313 at 46]. For all that time, the materials and equipment at the Davis-Besse, Perry and other nuclear plants would be fenced and guarded, likely precluding substantial economic redevelopment in the surrounding area and the job creation that would result from prompt and timely decommissioning of the nuclear plants. That, in effect, establishes

two toxic sites in Ohio near the shores of Lake Erie, creating serious environmental and public health risks.

In short, Citizen Organizations respond to the Debtors' supplemental briefing to emphasize that Debtors' proposed releases cannot affect non-Debtor FirstEnergy Corp.'s parental guarantees—past, present, and future—for operating and decommissioning nuclear power plants. Nor can proposed third-party releases limit either the Nuclear Regulatory Commission's police and regulatory powers under section 362(b)(4) or the analogous jurisdiction of state regulatory agencies.

Debtors' Second Amended Disclosure Statement recognizes Citizen Organizations' assertion that non-Debtor FirstEnergy Corp. remains legally and financially responsible for its $400 million legacy "parental guarantee" support agreement for two of the nuclear units—Davis-Besse Power Station and Beaver Valley Power Station Unit 1. [Dkt. 2315-2 at 48]. This "parental guarantee" arose from the NRC's regulatory power to require "financial assurance" as a necessary condition for a license to operate a nuclear power plant.

Thirty years ago, the U.S. Court of Appeals for the Sixth Circuit definitively applied the "police or regulatory powers" exception to the automatic stay to a state environmental enforcement action, saying Congress "clearly intended" the exception "to allow governmental agencies to remain unfettered by the bankruptcy code in the exercise of their regulatory powers." *In re Commerce Oil Co.*, 847 F.2d 291, 295 (6th Cir. 1988). The Debtors cannot rely on any non-Debtor third-party release to argue—here or before the NRC—that any non-Debtor can no longer be held liable under legacy nuclear support agreements.

Nor can Debtors' third-party releases impact the NRC's prospective determination of whether to approve Debtors' unavoidable request for a license transfer. That decision

4

necessarily will include a determination of whether the license transferee is financially qualified—that is, that it can provide "financial assurance" of a sound balance sheet and sufficient financial resources—to safely operate and decommission a nuclear power plant.

Debtors appear to concede that the non-Debtor third-party releases cannot impact license transfer, conceding that the requested releases would not permit anyone to evade "any police or regulatory power that would fall outside the definition of claims." [Dkt. 2397 at 7]. And at the March 19, 2019 hearing, Debtors recognized that "we're at risk of having to get license transfer approval. That is the case. [The NRC] is going to determine whether we meet those obligations." Tr. of March 19, 2019 Hr'g at 114:7-10. The proposed third-party releases, however, themselves provide no such clarity that they are not intended to alter or diminish the NRC's regulatory authority over Debtors and non-Debtors alike. Any plan of reorganization that purports to do otherwise is not confirmable.

The third-party releases described in the Disclosure Statement collide with the legal precedent outlined in the briefs of other parties that the Citizen Organizations have joined. The proposed releases also suffer from ambiguity, and, as this Court noted, are "a little on the vague side." Tr. of March 19, 2019 Hr'g at 234:1-2. This invites overbroad interpretations and complicated future litigation that this Court seeks to avoid. *Id*. at 237. The releases also suffer from the Debtors' persistent refusal to engage with the Governments, Citizen Organizations and other interested parties on these environmental and consumer issues, notwithstanding both repeated requests and the Court's suggestions.

If, notwithstanding the Disclosure Statement objections by a host of interested parties, the Court does permit this process to go forward, the question of financial responsibility for coal plant clean ups and environmental remediation and nuclear power plant decommissioning will

continue to cast a large shadow over these proceedings. The Citizen Organizations will present expert testimony on these issues if there is a confirmation hearing.

Confirmation is not feasible unless and until those nuclear power plant obligations have been addressed—not with hopes or promises, but with the additional financial assets and guarantees required by federal law. The NRC process initiated by the Citizen Organizations and the license transfer process by the Debtors, now just beginning, are essential to protecting the public. Indeed, the Court may be asked to defer the plan confirmation process until the NRC has reached its own conclusions. Whether or not the Court or the NRC has primary jurisdiction, the Debtors need the approval of *both* to emerge from chapter 11.

## CONCLUSION

If the proposed third-party releases do not attempt to limit the past, present, and future liabilities of FirstEnergy for nuclear power plant and coal plant remediation, the Debtors should say so, clearly and unequivocally. This is not just an issue for the Governments, which speak for themselves, but for the public and the Citizen Organizations that have a statutory and administrative law right to petition those Governments, as the Citizen Organizations continue to do, to enforce federal and state law to protect public health and safety.

## RELIEF REQUESTED

**WHEREFORE**, the Citizen Organizations request that this Court:

1) Deny Debtors' Motion for an Order Approving the Second Amended Disclosure Statement; and

2) Grant any other such additional relief as deemed just and appropriate.

Dated: March 29, 2019  
Madison, Wisconsin

Respectfully submitted,

*/s/ Brady C. Williamson*
Brady C. Williamson
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719
Telephone: (608) 284-2654
Facsimile: (608) 257-0609
E-mail: bwilliam@gklaw.com
*Attorneys for Environmental Law & Policy Center*

*/s/ Margrethe Kearney*
Howard A. Learner
Margrethe Kearney
Andrene Dabaghi
Environmental Law & Policy Center
35 East Wacker Drive, Suite 1600
Chicago, IL 60601
Telephone: (312) 673-6500
E-mails: HLearner@elpc.org
 MKearney@elpc.org
 ADabaghi@elpc.org
*Attorneys for Environmental Law & Policy Center, Ohio Citizen Action, Ohio Environmental Council and Environmental Defense Fund*

20395985.2