IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| In re: § | |
| § | |
| FIRSTENERGY SOLUTIONS CORP., *et al.*[1] § | Case No.: 18-50757 |
| § | (Jointly Administered) |
| § | Hon. Judge Alan M. Koschik |
| Debtors. | |

**SUPPLEMENTAL REPLY OF THE UNITED STATES ON BEHALF OF EPA AND NRC, STATE OF OHIO, AND PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION OBJECTING TO DEBTORS' MOTION FOR AN ORDER APPROVING DISCLOSURE STATEMENT**

1. At this point, the contours of the deal struck by the Debtors, FE Non-Debtor Parties, and favored creditors are clear: FirstEnergy Corp. would agree to contribute cash and other value to the reorganization, and in exchange the Debtors would seek to use the bankruptcy proceeding to release FirstEnergy Corp. and all other FE Non-Debtors from extensive independent, non-derivative liabilities (to the Governments and others) based on the FE Non-Debtors' own independent acts or omissions. This scheme is an abuse of the bankruptcy system that would impermissibly allow the FE Non-Debtors "to receive a major benefit of the bankruptcy process without having to be subject to any of its burdens and safeguards." *In re Nat'l Staffing Servs., LLC*, 338 B.R. 35, 37 (Bankr. N.D. Ohio 2005).

2. The Governments have explained why granting the FE Non-Debtor Parties' Third Party Release ("FE Non-Debtor Release" or "Release") would exceed this Court's jurisdiction and

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: FE Aircraft Leasing Corp. (9245), case no. 18-50759; FirstEnergy Generation, LLC (0561), case no. 18-50762; FirstEnergy Generation Mansfield Unit 1 Corp. (5914), case no. 18-50763; FirstEnergy Nuclear Generation, LLC (6394), case no. 18-50760; FirstEnergy Nuclear Operating Company (1483), case no. 18-50761; FirstEnergy Solutions Corp. (0186), case no. 18-50757; and Norton Energy Storage L.L.C. (6928), case no. 18-50764.

1

authority in our Objection to the disclosure statement, (Docket No. 2276), and in the supplemental brief invited by the Court, (Docket No. 2398). We do not repeat those arguments here, but instead address certain incorrect or misleading statements of law and fact in the Debtors' and FE Non-Debtors' supplemental briefs.

## I. The Scope of the FE Non-Debtor Release

3. The Debtors and FE Non-Debtors twist themselves in knots attempting to portray the FE Non-Debtor Releases as somehow narrowly tailored and limited. In fact, it is hard to imagine a broader non-debtor third party release than the one proposed in this case, which covers "any and all Causes of Action whatsoever, whether known or unknown, asserted or unasserted, **derivative or direct**, foreseen or unforeseen, existing or hereinafter arising . . . arising from or **related in any way to (i) the Debtors**." *See* (Docket No. 2310, Plan pp. 99-100 (emphasis added)).

4. The Debtors' and FE Non-Debtors' contentions that certain clauses of the Releases limit their scope in some meaningful way are disingenuous. For example, the FE Non-Debtors claim that the "Identity Clauses" (i.e. who will be providing the non-consensual releases) "serve as [a] significant gate" to the Releases. (Docket No. 2400 at 14). Rather than limiting the scope of the Release in any meaningful way, this clause demonstrates the staggering breadth of what has been proposed. The parties bound by the Release include any and all entities holding a claim against or interest in the Debtors. But once a party is determined to be a holder of ANY claim or interest, then the Release would extinguish <u>any and all</u> third party causes of action available to that party against the FE Non-Debtors, so long as those third party causes of action relate in any way to the Debtors or the Debtors' businesses or property. This is not a limiting provision in any meaningful sense.

5. In particular, the Court should reject out-of-hand the Debtors' attempts to insert

ambiguity about who may or may not be a holder of a claim or interest against the Debtors. *See* (Docket No. 2397 at 7) ("To the extent parties do not hold Claims against the Debtors (including any Governmental Units to which the Debtors solely owe ongoing performance obligations rather than monetary obligations), such parties are not bound by the release."). If the Debtors and FE Non-Debtors would like to clarify that the Governments are not bound by the FE Non-Debtor Release, that clarification may solve many of the most difficult issues in this case; otherwise, the Court should reject this disingenuous explanation implying that the Governments may or may not be bound.

6. The Debtors and Non-Debtors are similarly misleading when they claim that "the FE Non-Debtor Parties' Third Party Releases are limited by the nature of those actions that are subject to the release." (Docket No. 2397 at 7; Docket No. 2400 at 15-16). The FE Non-Debtor Release would extinguish <u>all</u> claims and "Causes of Action" related in any way to the Debtors that could be brought against the FE Non-Debtors. "Causes of Action" is a defined term in the Plan, meaning, "any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, in contract, tort, law, equity, or otherwise." (Docket No. 2310 at 3).

7. A simpler way to understand the effect of the FE Non-Debtor Release in this context is that it would release the FE Non-Debtors from <u>any and all liabilities</u> – whether independent or derivative – held against the FE Non-Debtors, so long as those liabilities relate in some way to

the Debtors or the Debtors' businesses or property.[2] When properly understood as extinguishing all FE Non-Debtor liability, including independent liabilities, it is clear that the scope of the FE Non-Debtor Release is incredibly broad.[3]

## II. The FE Non-Debtor Releases are Facially Invalid because the Court does not have Subject Matter Jurisdiction

8. Despite the breadth of the FE Non-Debtor Release, and despite the fact that it would erase the FE Non-Debtors' independent liabilities, the Debtors and Non-Debtors claim that granting the Release would be within this Court's jurisdiction. Their jurisdictional analysis is fundamentally flawed in three ways. First, they incorrectly suggest that bankruptcy courts have limitless subject matter jurisdiction when exercising "core" jurisdiction in the context of confirming plans. Second, they incorrectly dismiss the distinction between derivative and independent causes of action against the FE Non-Debtors. And third, they fail to acknowledge that the Court's jurisdictional question is not whether the Court potentially has jurisdiction over

---

[2] While the Debtors and FE Non-Debtors both claim (or at least imply) that the Government's police or regulatory power would not be affected by the FE Non-Debtor Release, (Docket No. 2397 at 7; Docket No. 2400 at 15-16), the FE Non-Debtors are quick to point out their view that any relevant Governmental action against the FE Non-Debtors would be a claim or Cause of Action – and thus extinguished – rather than an exercise of police or regulatory power. Again, this demonstrates that the FE Non-Debtor Release is designed to extinguish all liabilities for the FE Non-Debtors and is not limited in any meaningful way. Counsel for the FE Non-Debtors already confirmed this fact to the Court. (Docket No. 2383, Hearing Tr. at 258) ("I can give everyone a very simple answer, which is in the example that was just given of a facility that was formerly owned by a FirstEnergy Corp, a non-Debtor FE Corp entity, that is now owned by the Debtors, that would be a released claim."); (Docket No. 2400 at 19) (FE Non-Debtor Release would extinguish "[a]ny claims related to any of the Debtors' properties, including any claims by . . . any governmental agency related to any environmental liabilities at the Debtors' properties.").

[3] The Debtors and FE Non-Debtors also claim that the FE Non-Debtor Releases "are limited in temporal scope" and only cover claims or causes of action arising before the Effective Date. (Docket No. 2397 at 7). If this is true, it would seem to conflict with the second paragraph of the Release provision, which states that the Release includes all "existing or hereinafter arising" causes of action against the FE Non-Debtors.

4

some of the causes of action to be released. The question the Court has asked is whether the Release is facially invalid because it includes a critically important (to the FE Non-Debtors) fundamental category of liabilities that are clearly beyond the Court's jurisdiction, i.e., independent liabilities for the FE Non-Debtors' acts.

### A. *The Debtors Must Demonstrate "Related-To" Jurisdiction*

9. The Debtors rely on two bankruptcy court decisions suggesting that the Court exercises its "core" jurisdiction when considering the confirmation of plans, and that therefore the Court's subject matter jurisdiction extends to anything and everything that may be included in a plan. (Docket No. 2397 at 11-14). This is simply wrong. "Where a bankruptcy court is asked to adjudicate matters between non-debtor parties, the court's 'related-to' jurisdiction must necessarily be invoked." *In re Arter & Hadden, LLP*, 373 B.R. 31, 35 (Bankr. N.D. Ohio 2007) (citing *Feld v. Zale Corp.*, 62 F.3d 746 (5th Cir. 1995)). "Related-to" jurisdiction must be invoked regardless of whether the non-debtor matters arise in the context of a settlement agreement, plan confirmation, post-confirmation bar order, or any other action being considered by the Court. *See In re Midway Gold,* 575 B.R. 475, 519-20 (Bankr. D. Colo. 2017) ("[T]he Court cannot find it has 'arising in' jurisdiction over the proceedings simply because the releases are included within a proposed Chapter 11 plan. . . . There must be some independent statutory basis for the Court to exercise jurisdiction over the third-parties' disputes before the Court may adjudicate them."). Otherwise, a bankruptcy court's jurisdiction would be limitless so long as some third party dispute or issue was included in a plan.

10. Both the Third and Second Circuits recognize the self-evident fact that a bankruptcy court's jurisdiction is not limitless when confirming plans. In *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225 (3d Cir. 2004), discussed by both the Debtors and FE Non-Debtors, the Third Circuit vacated the district court's order confirming a Chapter 11 reorganization plan based in

5

part on the fact that jurisdiction over third party claims was lacking. The court explained that "'[r]elated-to' jurisdiction must . . . exist independently of any plan provision purporting to involve or enjoin claims against non-debtors." *Id.* at 225.

11. *In re Johns-Manville Corp.*, a Second Circuit case with a complicated procedural history, also clearly stands for the proposition that "related-to" jurisdiction is implicated by the inclusion of non-debtor releases in plans. 517 F.3d 52, 60-65 (2d Cir. 2008). In *Manville*, the Second Circuit was addressing challenges to a non-debtor release and injunction issued many years before the appeal being heard by the court. The original release and injunction barred claims and causes of action against a non-debtor insurer of the debtor, and were "issued as part of Manville's reorganization plan." *Id.* at 55. The "bedrock jurisdictional issue" for the court in *Manville* was whether the bankruptcy court had "related-to" jurisdiction over the claims and causes of action that were purportedly extinguished by the plan. *Id.* at 61, 64-65. Obviously, the detailed related-to analysis undertaken by the court would be unnecessary if the bankruptcy court had limitless "core" jurisdiction in approving the reorganization plan.[4]

### B. *The Court's Jurisdiction does not extend to Independent Causes of Action against the FE Non-Debtors*

12. The Debtor and FE Non-Debtor briefs fail to acknowledge the consistent distinction drawn by courts between releases covering *derivative* causes of action and releases covering

---

[4] The Debtors principally rely on *Lynch v. Lapidem Ltd. (In re Kirwan Officers S.a.r.l.)*, 592 B.R. 489, 504 (S.D.N.Y. 2018) to support their argument that core subject matter jurisdiction extends over anything and everything included in a plan. But *In re Kirwan* never even cites the controlling Second Circuit precedent of *Manville*, which applies related-to jurisdiction in the context of non-debtor releases and injunctions in a plan. And even in *In re Kirwan*, the bankruptcy court found that a "third-party release must be sufficiently related to the issues before the bankruptcy court in order for core jurisdiction to cover an order extinguishing that claim." *In re Kirwan Officers S.a.r.l.)*, 592 B.R. at 505-06 ("It surely would be improper for a bankruptcy court to confirm a plan releasing third-party, non-debtor claims that were unrelated (or even only tangentially related) to the debtor or the bankruptcy case.").

*independent* or *direct* causes of action. *Manville*, discussed above, is also relevant to this analysis, and many of the facts are analogous to our case as well. In *Manville*, the Second Circuit examined whether the bankruptcy court's jurisdiction extended to third party suits against Manville's insurer, Travelers. Manville's reorganization plan contained a release and injunction barring claims against Travelers that are "based upon, arising out of or related to" Manville's insurance policies with Travelers. *Id.* at 56, 66. Travelers claimed that the third party suits against it were barred by the original release and injunction, and that the original release was jurisdictionally sound. *Id.* at 55-60. The third parties argued that they were bringing *direct* suits against Travelers for its own *independent* wrongdoing, and that therefore the original release and injunction exceeded the bankruptcy court's jurisdiction (if the release did in fact cover these direct, non-derivative suits). The Second Circuit agreed:

> Moreover, the claims at issue here do not seek to collect on the basis of Manville's conduct. Instead, the Plaintiffs seek to recover directly from Travelers, a non-debtor insurer, for its own alleged misconduct. Plaintiffs neither seek to recover insurance proceeds nor rely on the insurance policies for recovery.

*Id.* at 63 (citations omitted). The court went on to reject a similar contention to the one being made by the Debtors in this case: that "related-to" jurisdiction exists simply because there is a factual nexus between the released liabilities and some aspect of the Debtors or Debtor properties. *See* (Docket No. 2397 at 15).

> There is no doubt that these findings by the bankruptcy court document the *factual* origins of Travelers' alleged malfeasance. The factual findings are, however, only part of the liability equation. What remained was a legal determination: did Travelers owe a duty to the [Plaintiffs] independent of its contractual obligations to indemnify those injured by the tortious conduct of Manville? If such a duty exists, then the fact that it arises from a common nucleus of operative facts involving Travelers and Manville (e.g., the Manville / Travelers insurance relationship) is of little significance from a jurisdictional standpoint.

*Manville*, 517 F.3d at 67 (emphasis in original).[5]

13.  *Manville*, along with the many other cases cited in the Governments' briefs, demonstrates that the Court's jurisdiction does not extend to non-debtor releases for <u>independent</u> liabilities to third parties. Here, as in *Manville*, the FE Non-Debtor Release impermissibly seeks to extinguish causes of action that "are not derivative of [Debtors'] liability, but rather [would] seek to recover directly from [FE Non-Debtors] for [their] own alleged misconduct." *Id.* at 68.[6]

14.  Finally, the FE Non-Debtors – presumably accidentally – highlight the overbreadth of the FE Non-Debtor Release in their supplemental brief. The FE Non-Debtors attempt to distinguish *In re Combustion Eng'g* on the grounds that "the Third Circuit in *Combustion Eng'g* prevented a non-debtor from receiving a non-consensual third party release for claims that would have arisen even if the applicable debtors *never had existed*." (Docket No. 2400 at 11) (emphasis in original). Of course, that is exactly what the FE Non-Debtor Release would do in this case. It would provide a release for the FE Non-Debtor Parties for claims and causes of action based on the independent liabilities of the FE Non-Debtors. If the Debtors never existed, the FE Non-Debtors would *obviously* still have independent liabilities from their own ownership

---

[5] In yet another parallel to this case, the Second Circuit also held that "[i]t was inappropriate for the bankruptcy court to enjoin claims brought against a third-party non-debtor solely on the basis of that third-party's financial contribution to a debtor's estate." *Id.* at 66 (explaining that a "court's ability to provide finality to a third-party is defined by its jurisdiction, not its good intentions").

[6] Although *Manville* was ultimately reversed on procedural grounds, the Supreme Court did not rule on or alter *Manville*'s jurisdictional analysis. *See Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 151-55 (2009); *see In re Dreier LLP*, 429 B.R. 112, 132 (Bankr. S.D.N.Y. 2010) ("[*Manville*] remains the law of the Second Circuit."). In fact, the dissent, which disagreed with the procedural aspect of the Supreme Court's ruling, would have agreed with the Second Circuit that a bankruptcy court has no authority to enjoin "independent actions . . . in which the plaintiff is asserting that [the non-debtor] is liable for its own misconduct." *Travelers*, 557 U.S. at 157 (Stevens, J., dissenting).

and operation of the power plants, landfills, impoundments, and other properties at issue in this case, many of which were owned and operated by the FE Non-Debtors for many years prior to any involvement of the Debtors. The Court does not have subject matter jurisdiction to grant a release that would extinguish these independent liabilities.

### C. The Question for the Court is Whether Jurisdiction Extends to the Claims and Causes of Action for Independent Liability Included in the Release

15. In evaluating whether the FE Non-Debtor Releases are facially unlawful, the jurisdictional question for the Court is: Do the Releases include causes of action against the Non-Debtors that would not have an effect on the bankruptcy estate? If so, jurisdiction is lacking and the Release fails as a matter of law. *See In re CS DIP, LLC*, No. 12-01573, 2015 WL 5920892, at *8 (M.D. Tenn. 2015) (explaining that the Court must determine "whether the outcome of the actions covered by the [injunction] would affect the bankruptcy estate.").

16. The Debtors and FE Non-Debtors seem to argue that if <u>some</u> of the causes of action being released could conceivably have an effect on the estate, then subject matter jurisdiction exists. But this is not the test. In order for the Court to have jurisdiction to grant the Release, the Release must not include claims and causes of action that are not within "related-to" jurisdiction. *See In re Dreier*, 429 B.R. at 133. In *Dreier*, the court found a lack of jurisdiction after identifying certain potential independent claims that would be covered by a non-debtor bar order. The court explained:

> This is not intended to be an exhaustive list, and it is up to the parties to craft an injunction that passes muster. Rather, the examples simply illustrate several types of potential claims that could arise from [the non-debtor's] own wrongful conduct relating to the debtors or the Notes. Such claims do not affect property of the estate or the administration of the estate beyond [non-debtor's] insistence that the [Settlement Agreement] must include the Bar Order, and the Court lacks subject matter jurisdiction to enjoin their prosecution.

*Id.* at 133 (footnote omitted). Similarly here, the FE Non-Debtor Release is facially invalid

9

because it encompasses claims and causes of action against the FE Non-Debtors based on their own independent acts and omissions.[7] Proceeding further with a Plan that is fundamentally premised on such a Release would be futile and a waste of the parties' and the Court's resources.

### III. The Debtors Cannot Demonstrate that the FE Non-Debtor Release Meets the *Dow Corning* Requirements

17. The Debtors and FE Non-Debtors correctly – but inconsequentially – point out that oftentimes the validity of a non-debtor release is decided at the plan confirmation stage. But the Court's framing of its inquiry is correct: the question is whether "the Debtors could prove [any] set of facts at a future confirmation hearing that would allow the Court to confirm a Plan containing such Releases." (Docket No. 2356 at 3). If not, then the parties should not waste any more time and resources on a patently unconfirmable Plan.

18. As explained above and in the Governments' previous filings, the Debtors cannot prove any set of facts supporting the Court's subject matter jurisdiction over a release of the FE Non-Debtors' independent liabilities to the Governments and other parties. Similarly, there is no possible set of facts that would demonstrate that the FE Non-Debtor Release meets the requirements of the Sixth Circuit in *Dow Corning*. Because the FE Non-Debtor Release covers independent liabilities of the FE Non-Debtors, no set of facts can demonstrate an identity of

---

[7] The Debtors and FE Non-Debtors raise the specter of "contribution, subrogation, [and] indemnification" claims that could be asserted by the FE Non-Debtors against the Debtors. (Docket No. 2400 at 8). This contention ignores the fact that a party found liable for its own independent wrongdoing will not have a contribution claim against another party to the extent of that independent liability. The speciousness of Debtors and FE Non-Debtors' position is particularly highlighted by the facts surrounding the Pleasants and Hatfield's Ferry plants, which, as noted in the Governments' prior brief, were never operated by the Debtors prior to this proceeding. Of course, to the extent that the FE Non-Debtors were somehow found to be derivatively liable for the Debtors' liability, such as through an alter ego theory, then the Court may have related-to jurisdiction. But the proposed Release here is not so limited to derivative liability.

interests such that potential suits against the Non-Debtors would be, "in essence, a suit against the debtor or will deplete the assets of the estate." *In re Dow Corning Corp.*, 280 F.3d 648, 658 (6th Cir. 2002). Under no set of facts could the Debtors prove that the FE Non-Debtor Release (*as opposed to the cash/value provided by FE Corp.*) is essential to the plan, such that "the reorganization hinges on the debtor being free from indirect suits." The Debtors contend that the reorganization is doomed without the contributions from FE Corp., but they do not even attempt to argue that the reorganization could fail *due to third party suits* for independent liability that would be extinguished by the FE Non-Debtor Release. *See Nat'l Heritage Found. v. Highbourne Found.*, 760 F.3d 344, 348-49 (4th Cir. 2014) (examining the "essential" factor in terms of the number, nature, and merit of potential indirect suits against non-debtors, and whether the reorganization would be "doomed" without the release at issue). Finally, as the Governments and other parties have consistently pointed out, the FE Non-Debtor Release fails on its face, regardless of any set of facts that could be proved by Debtors, because it does not provide a mechanism to address the liabilities covered by the Release, and it does not provide an opportunity for the Governments to recover in full.[8]

## CONCLUSION

19. For the reasons discussed in the Governments' Objection and supplemental briefs, the Governments respectfully request that the Debtors' motion for approval of the disclosure statement be denied because the Debtors' Plan is facially unconfirmable.

---

[8] The Committee of Unsecured Creditors even seems to concede that factor six is not (and cannot be) met under the terms of the Plan, instead arguing that it is somehow not "relevant." *See* (Docket No. 2399 at 8 n.7).

Dated: March 29, 2019

**FOR THE UNITED STATES**

BRUCE S. GELBER
Deputy Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

s/ Nicholas A. McDaniel
ALAN S. TENENBAUM
PATRICK M. CASEY
NICHOLAS A. MCDANIEL
Environmental Enforcement Section
Environment and Natural Resource Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 514-5409
Fax: (202) 514-0097
Email: alan.tenenbaum@usdoj.gov

**FOR THE STATE OF OHIO**

**OFFICE OF THE OHIO**
**ATTORNEY GENERAL DAVE YOST**

/s Michael E. Idzkowski
MICHAEL E. IDZKOWSKI (Ohio Reg. No. 0062839)
TIMOTHY J. KERN (Ohio Reg. No. 0034629)
Assistant Attorneys General
Environmental Enforcement Section
30 East Broad Street, 25th Floor
Columbus, Ohio 43215
Phone: 614-466-2766
Fax: 614-644-1926
Email: Michael.Idzkowski@OhioAttorneyGeneral.gov
　　　　Timothy.Kern@OhioAttorneyGeneral.gov

**FOR THE PENNSYLVANIA DEPARTMENT
OF ENVIRONMENTAL PROTECTION**

/s Barbara J. Grabowski
BARBARA J. GRABOWSKI
Assistant Counsel
PA ID No.61657
Office of Chief Counsel
400 Waterfront Drive
Pittsburgh, PA 15222-4745
Email: bgrabowski@pa.gov


VERA N. KANOVA
Assistant Counsel
PA I.D. No. 316676
Office of Chief Counsel
400 Market Street
Harrisburg, PA 17101-2063
Email: verkanova@pa.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2019, I caused the above SUPPLEMENTAL REPLY OF THE UNITED STATES, STATE OF OHIO, AND PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION to be served via ECF.

/s Nicholas A. McDaniel
U.S. Department of Justice