## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>FIRSTENERGY SOLUTIONS CORP., *et al.*,[1]<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 18-50757<br>) (Jointly Administered)<br>)<br>)<br>) Hon. Judge Alan M. Koschik<br>) |

## DEBTORS' FOURTH MOTION FOR ENTRY OF AN ORDER EXTENDING THE EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (the "Motion") for the entry of an order (the "Order"), substantially in the form attached hereto as Exhibit A, extending the periods during which the Debtors have the exclusive right to (a) file a chapter 11 plan by 91 days, through and including August 12, 2019 (the "Filing Exclusive Period"), and (b) solicit votes thereon by 90 days, through and including October 7, 2019 (the "Solicitation Exclusive Period," and together with the Filing Exclusive Period, the "Exclusive Periods"), without prejudice to the Debtors' right to seek further extensions to the Exclusive Periods. In support of this Motion, the Debtors submit the *Declaration of Charles M. Moore, Chief Restructuring Officer, in Support of the Debtors' Fourth Motion for Entry of an Order Extending the Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code* (the "Moore Declaration"). In further support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: FE Aircraft Leasing Corp. (9245), case no. 18-50759; FirstEnergy Generation, LLC (0561), case no. 18-50762; FirstEnergy Generation Mansfield Unit 1 Corp. (5914), case no. 18-50763; FirstEnergy Nuclear Generation, LLC (6394), case no. 18-50760; FirstEnergy Nuclear Operating Company (1483), case no. 18-50761; FirstEnergy Solutions Corp. (0186), and Norton Energy Storage L.L.C. (6928), case no. 18-50764. The Debtors' address is: 341 White Pond Dr., Akron, OH 44320.

1. On March 31, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition with the United States Bankruptcy Court for the Northern District of Ohio (the "Court"). The Debtors' chapter 11 cases (the "Chapter 11 Cases") constitute one of the largest and most complex operating company chapter 11 filings ever in the Northern District of Ohio.

2. As described in further detail below, the Debtors have made significant progress in the approximately two months following the entry of the *Order Granting a Third Extension of the Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code* [Docket No. 2084] (the "Third Extension Order"). During the two months since the entry of the Third Extension Order, the Debtors have been busy with multiple work streams, including (a) maintaining their operations; (b) continuing efforts to maximize liquidity and improve cash flow; and (c) working on developing and seeking approval of a disclosure statement and corresponding plan of reorganization. Most significantly, as outlined in further detail below, the Debtors negotiated, drafted and filed a plan and corresponding disclosure statement. At a hearing on April 4, 2019, the Court denied approval of the disclosure statement based on the Court's ruling that certain nonconsensual third-party releases contained in the proposed plan were impermissible. The Court entered the order denying approval of the disclosure statement motion on April 11, 2019 [Docket No. 2500]. Since the Court's April 4, 2019 ruling, the Debtors have been in active discussions with their non-Debtor affiliates and their creditor stakeholders to negotiate revisions to the plan and disclosure statement to address the Court's ruling. The Debtors intend to submit a revised plan and disclosure statement as soon as possible.

3.     ***Maintaining Operations.***  The Debtors focused significant efforts at the start of these Chapter 11 Cases on ensuring that the bankruptcy filing did not disrupt the Debtors' business operations, including service to their approximately 888,000 retail customers.  During the two months that followed entry of the Third Extension Order, the Debtors have maintained stable operations and engaged in continuing efforts to preserve customer and vendor relations and to address operational separation issues.   In furtherance of those separation issues, the Debtors have worked on the outsourcing of information technology services ("IT Services) and human resources services ("HR Services") necessary for the Debtors' operations (as described in further detail below) and towards the transfer of the Pleasants Power Station (as defined below) from non-Debtor Allegheny Energy Supply Company, LLC ("AE Supply") to the Debtors.

4.     ***Maximizing Liquidity and Improving Cash Flow.***  The Debtors have also focused their efforts since the entry of the Third Extension Order on continuing to maximize liquidity for the Debtors' estates and by extension, the Debtors' creditors.  Efforts to continue to increase the Debtors' liquidity have included: (a) the closing of the sale of FG's natural gas and fuel oil-powered plant in Lorain, Ohio (the "West Lorain Plant"); (b) filing omnibus objections to proofs of claim; and (c) seeking and obtaining approval to either reject or assume various executory contracts and leases.

5.     ***Filing and Seeking Approval of a Disclosure Statement and a Plan of Reorganization.***  In the Debtors' *Third Motion for Entry of an Order Extending the Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Pursuant to Section 1121 of the Bankruptcy Code* [Docket No. 1967] (the "Third Extension Motion"), the Debtors outlined in further detail how they, with the support and input of the Independent Directors and Independent

3

Managers (as defined below)[2] were in the process of negotiating a term sheet (the "Term Sheet") and a restructuring support agreement (the "RSA") with the Debtors' parties in interest.[3] Shortly after filing the Third Extension Motion, on January 23, 2019, the Creditor Groups, the Committee and the Debtors reached an agreement in principle on the material terms of a plan of reorganization, as set forth in the Term Sheet attached to the RSA. As outlined in further detail below, the Debtors then worked diligently to prepare and file a plan and disclosure statement, effectuating the terms of the RSA and Term Sheet. The Debtors filed the *Motion of Debtors for Entry of Order (I) Authorizing the Debtors to Enter Into and Perform Under the Restructuring Support Agreement and (II) Granting Related Relief* [Docket No. 2151] on February 19, 2019. The Court orally granted the motion on March 19, 2019.[4]

6. On February 11, 2019, the Debtors filed a proposed chapter 11 plan of reorganization (as amended from time to time, the "Plan") and related disclosure statement (as amended from time to time, the "Disclosure Statement"). The Plan incorporates a global, integrated resolution of numerous complex inter-Debtor and inter-creditor issues, as well as the settlement agreement with the Debtors' non-Debtor affiliates approved by the Court in September 2018. As noted above, in its oral ruling on April 4, 2019, and its subsequent order dated April 11, 2019, the Court denied approval of the Disclosure Statement based on the

---

[2] Specifically, in November 2016, two independent directors were appointed to the boards of FES and FENOC, and on April 9, 2018 a third independent director of FES was appointed (the "Independent Directors"). In August 2018, independent managers of FirstEnergy Nuclear Generation, LLC ("NG") and FirstEnergy Generation, LLC ("FG"), respectively, were appointed (the "Independent Managers" and, together with the Independent Directors the "Independent Directors and Managers").

[3] These parties included: (a) the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases (the "Committee"), (b) an ad hoc group of holders of secured and unsecured notes and pollution control notes issued by the Debtors (the "Ad Hoc Noteholder Group; (c) an ad hoc group of holders of certificates issued in connection with the Bruce Mansfield sale-leaseback transaction (the "Mansfield Certificateholders Group"); and (d) an ad hoc group of creditors holding claims against FirstEnergy Solutions Corp. ("FES") and FirstEnergy Nuclear Operating Company ("FENOC", the "FES Creditor Group" and, together with the Ad Hoc Noteholder Group and the Mansfield Certificateholders Group, the "Creditor Groups")

[4] The Debtors anticipate submitting a revised form of order approving the Debtors' entry into the RSA in the near term.

4

Court's determination that certain nonconsensual third-party releases in favor of the Debtors' non-Debtor affiliates were impermissible. The Debtors are working with the other parties to amend the Disclosure Statement and Plan in an expeditious fashion and will be seeking approval of such amended Disclosure Statement from this Court.

7.      In short, the Debtors continue to work toward their ultimate goal, a consensual plan of reorganization. The Debtors' continued work on maintaining stable operations and maximizing liquidity have facilitated this progress. If granted a further extension, the Debtors will be able to use the time to work with the various parties in interest and prepare and file an amended disclosure statement and an amended plan of reorganization and seek confirmation of the same. Therefore, the Debtors believe a further extension of the Exclusive Periods should be granted.

<h3 style="text-align:center">JURISDICTION AND VENUE</h3>

8.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

9.      Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

10.     The bases for the relief requested herein are section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

<h3 style="text-align:center">RELIEF REQUESTED</h3>

11.     The Debtors seek entry of an Order extending (a) the Filing Exclusive Period by 91 days through and including August 12, 2019 and (b) the Solicitation Exclusive Period by 90

5

days through and including October 7, 2019, without prejudice to the Debtors' right to seek further extensions to the Exclusive Periods.

## BACKGROUND

12.     The Debtors continue to operate their businesses and manage their property as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee or examiner has been appointed in these cases.  On April 11, 2018, the United States Trustee for the Northern District of Ohio (the "U.S. Trustee") appointed the Committee pursuant to Bankruptcy Code section 1102.  In addition to the Third Extension Motion, the Debtors filed two other motions to extend its exclusive period for filing a chapter 11 plan and disclosure statement on June 27, 2018 [Docket No. 850] (the "First Extension Motion") and October 23, 2018 [Docket No. 1571] (the "Second Extension Motion").  The Order [Docket No. 988] (the "First Extension Order") granting the First Extension Motion was entered July 18, 2018 and extended the Filing Exclusive Period to November 26, 2018 and the Soliciting Exclusive Period to January 25, 2019.  The Order [Docket No. 1726] (the "Second Extension Order") was entered on November 20, 2018  and extended the Filing Exclusive Period to February 25, 2019 and the Soliciting Exclusive Period to April 25, 2019.

13.     The Third Extension Motion was filed on January 15, 2019.  The Third Extension Order was entered on February 7, 2019, under which the Filing Exclusive Period was extended to May 13, 2019 and the Soliciting Exclusive Period to July 9, 2019, without prejudice to the Debtors' right to seek further extensions.

14.     A more detailed discussion of the Debtors' background, including their business operations and capital structure, is set forth in the *Declaration of Donald R. Schneider, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 55].

## A. Maintaining Stable Operations

15. ***Customer Relations***. Since entry of the Third Extension Order, the Debtors have continued to work to preserve customer relations and to ensure stability for their customers ("Customers"). As of March of this year, FES served approximately 887,950 Customers in 22 utility services territories across Illinois, Maryland, Michigan, Ohio, Pennsylvania and New Jersey. FES is a party to approximately 1,911 agreements with Customers, representing approximately 27 TWh of estimated delivery power and approximately $1.3 billion in estimated revenue for the 2019 calendar year. The Debtors have continued to spend time addressing Customer concerns and calls since entry of the Third Extension Order.

16. ***IT Services.*** As part of their ongoing efforts to separate the Debtors' businesses and operations from parent company FirstEnergy Corp. ("FE Corp.") and other non-Debtor affiliates (together with FE Corp., the "FE Non-Debtor Parties"), the Debtors have been working on the process of creating an independent IT system and infrastructure separate and apart from the IT system maintained by the FE Non-Debtor Parties. As outlined in the Third Extension Motion, on November 20, 2018, the Debtors filed a motion seeking authority to enter into and perform under a separation agreement (the "IT Separation Agreement") [Docket No. 1740]. Specifically, the IT Separation Agreement provides for the terms and conditions of an information technology separation and set up the Debtors to enter into an IT managed services contract between FES and DXC Technology Services LLC ("DXC" and the "DXC Contract"). The Bankruptcy Court entered an order approving the IT Separation Agreement on December 11, 2018 (the "IT Separation Order") [Docket No. 1817].

17. After entry of the IT Separation Order, the Debtors continued negotiations with DXC, along with participation from the Committee and the Ad Hoc Noteholders Group. These negotiations took place over a span of two months and resulted in significant alterations to the

7

DXC Contract.[5]  The Debtors filed the *Motion of the Debtors for Entry of an Order Authorizing FirstEnergy Solutions Corp. to Enter Into and Perform Under an IT Managed Services Contract* on January 15, 2019 [Docket No. 1971] and the Court entered a corresponding order approving the DXC Contract on March 6, 2019 [Docket No. 2208].

18.    **HR Services.**  Historically, the Debtors have also received certain necessary corporate and administrative services (the "HR Services") from non-Debtor FirstEnergy Service Corporation pursuant to a services agreement.  As further efforts to separate the Debtors' businesses from the FE Non-Debtor Parties, the Debtors entered into a master services agreement with ADP, LLC ("ADP"), under which ADP will provide HR Services necessary to enable the Debtors to separate from the FE Non-Debtor Parties and operate on an independent basis.  On March 18, 2019, the Debtors filed the *Motion of the Debtors for Entry of an Order Authorizing FirstEnergy Solutions Corp. to Enter Into and Perform Under a Human Resources Management Services Contract* [Docket No. 2327] and on April 10, 2019, the Court entered an order granting the motion [Docket No. 2494].

19.    **Pleasants Power Station.**  As outlined in further detail in the Second Extension Motion and the Third Extension Motion, the transfer of the plant located in Willow Island, West Virginia (the "Pleasants Power Station") from AE Supply to the Debtors was a key term of the Debtors' settlement with the FE Non-Debtor Parties and certain other parties (the "Settlement Agreement").  Since entry of the Second Extension Order and the Third Extension Order, the Debtors have worked to effectuate this term of the Settlement Agreement.  Specifically, the Debtors' professionals worked with professionals representing FE Corp., the Ad Hoc Groups and

---

[5] The Debtors provide further details on the negotiations and changes in the *Supplemental Declaration of Brian Smith in Support of the Motion of the Debtors for Entry of an Order Authorizing FirstEnergy Solutions Corp. to Enter Into and Perform Under an IT Managed Services Contract* [Docket No. 2177].

the Committee to negotiate an asset purchase agreement (the "Pleasants APA") that was acceptable to all parties in interest. The Pleasants APA was signed on December 31, 2018.

20. In order to effectuate the terms of the Pleasants APA, the Debtors prepared and filed the *Debtors' Motion in Furtherance of Settlement Agreement for Entry of an Order (I) Authorizing, Nunc Pro Tunc to December 31, 2018, FirstEnergy Generation, LLC's Entry Into and Assumption of the Pleasants Power Station Agreement; (II) Authorizing FirstEnergy Generation, LLC's Entry Into the Disposal Agreement on the Closing Date; (III) Authorizing the Debtors' Performance Under Such Agreements; (IV) Authorizing the Transfer of the Pleasants Power Station to the Debtors and (V) Granting Related Relief* (the "Pleasants Motion") [Docket No. 2052] on February 1, 2019. Following a hearing on the Pleasants Motion, the Court enter an order granting the relief sought in the Pleasants Motion on March 7, 2019 [Docket No. 2217].

21. ***Vendor Relations.*** Maintaining relations with vendors is crucial to the Debtors' ability to obtain essential goods and services necessary to continue operating their businesses, including: (a) vendors that provide goods and services during planned maintenance outages; (b) vendors that provide services and related goods that are highly specialized and/or closely integrated with the Debtors' business operations and customer relationships; (c) sole source or geographically limited providers of critical goods; (d) vendors that provide goods and services related to regulatory compliance obligations; and (e) vendors that provide goods and services related to the Debtors' nuclear power plants (each a "Critical Vendor"). This also allows the Debtors to ensure continued compliance with all applicable state and federal laws and regulations. The Debtors have continued to work with Critical Vendors since the entry of the Third Extension Order, including through the execution of new vendor agreements.

22.     Since the Petition Date, the Debtors have maintained a matrix summarizing: (a) the name of each Critical Vendor that receives a payment (or payments) under the Critical Vendors Order (as defined below); (b) the total amount paid to each Critical Vendor; and (c) the nature of the goods and/or services provided by each Critical Vendor to whom a payment is made (the "Critical Vendor Summary").   The Debtors have provided the Critical Vendor Summary to the U.S. Trustee, counsel to the Committee and counsel to the Ad Hoc Groups.   The Debtors have also provided the U.S. Trustee, counsel to the Ad Hoc Groups and counsel to the Committee with a summary each calendar month of all payments made on account of the *Final Order Authorizing the Debtors to (A) Grant Administrative Expense Priority to all Undisputed Obligations for Goods and Services Ordered Prepetition and Delivered Postpetition and Satisfy Such Obligations in the Ordinary Course of Business and (B) Pay Prepetition Claims of Shippers, Warehousemen, and Materialmen* [Docket No. 486] (the "Critical Vendors Order").

### B.     Maximizing Liquidity and Improving Cash Flow

23.     Since entry of the Third Extension Order, the Debtors have continued to take steps to maximize their liquidity and improve cash flow for the benefit of the Debtors' estates and, by extension, the Debtors' creditors.   Efforts to do this have included: (a) the closing of the sale of the West Lorain Plant; (b) filing omnibus objections to proofs of claim; and (c) seeking and obtaining approval to either reject or assume various executory contracts and leases.

24.     ***Sale of the West Lorain Plant.***   As outlined in further detail in the Second Extension Motion and the Third Extension Motion, the Debtors have worked diligently for months towards the sale of the West Lorain Plant.   Specifically, on November 20, 2018, the Debtors filed the *Motion of FirstEnergy Generation, LLC Pursuant to 11 U.S.C. §§ 105, 363 and 503 and Fed. R. Bankr. P. 2002, 6004 and 6006 for Entry of (I) Order Approving (A) Bid Procedures, (B) Procedures for Assumption and Assignment of Certain Executory Contracts and*

10

*Related Notices, (C) Notice of Auction and Sale Hearing, and (D) Related Relief and (II) Order (A) Approving the Sale of the FirstEnergy Generation LLC's West Lorain Assets Free and Clear of Liens, Assumption and Assignment of Certain Executory Contracts and Related Cure Amounts and (C) Granting Related Relief* [Docket No. 1730] (the "West Lorain Sale Motion"). On January 25, 2019, the Court entered an order approving the sale of the West Lorain Plant [Docket No. 2018] to Vermillion Power, LLC, which had served as the stalking horse purchaser under the procedures in the West Lorain Sale Motion. The sale of the West Lorain Plant closed on March 29, 2019.

25. ***Omnibus Objections to Proofs of Claim.*** As outlined in further detail in the Second Extension Motion, on August 22, 2018, the Court entered an order establishing October 15, 2018 as the bar date for filing proofs of claim for nongovernmental units, as well as for filing proofs of claim for governmental units and further establishing deadlines for filing proofs of claim by claimants affected by any amendments to the Debtors' schedules and for damages resulting from the rejection of any executory contract or unexpired lease of the Debtors. More than 1000 proofs of claim have been filed against the Debtors. Since entry of the Third Extension Order, the Debtors have continued to address proofs of claim that have been filed, including protecting the Debtors' liquidity by objecting to certain proofs of claim. Specifically, since entry of the Third Extension Order, the Debtors have filed additional omnibus objections to certain proofs of claim (the "Objections to Proofs of Claim")[6] and the Court has entered corresponding orders to several of the Objections to Proofs of Claim.[7] The Debtors have also

---

[6] *See Debtors' Ninth Omnibus Objection to Certain Proofs of Claim* [Docket No. 2096]; *Debtors' Tenth Omnibus Objection to Certain Proofs of Claim* [Docket No. 2099]; *Debtors' Eleventh Omnibus Objection to Certain Proofs of Claim* [Docket No. 2102]; *Debtors' Twelfth Omnibus Objection to Certain Proofs of Claim* [Docket No. 2235]; *Debtors' Thirteenth Omnibus Objection to Certain Proofs of Claim* [Docket No. 2238]; and *Debtors' Fourteenth Omnibus Objection to Certain Proofs of Claim* [Docket No. 2241].

[7] *See Order Sustaining Debtors' Ninth Omnibus Objection to Certain Proofs of Claim* [Docket No. 2285]; *Order Sustaining Debtors' Tenth Omnibus Objection to Certain Proofs of Claim* [Docket No. 2286]; *Order Sustaining*

filed, and the Court has entered orders, approving stipulations outlining settlements the Debtors have reached with regards to certain Proofs of Claim.[8]

26.      ***Seeking and Obtaining Approval to Either Reject or Assume Various Executory Contracts.***  Since the entry of the Third Extension Order, the Debtors have continued to analyze executory contracts and leases and determine whether these contracts are beneficial or burdensome to the Debtors' estates.  As outlined above, in the months since the Third Extension Order, the Debtors negotiated and entered into settlement stipulations addressing Proofs of Claim, several of which covered the rejection of various executory contracts or leases.  The Debtors also filed a motion to assume a lease,[9] motions extending the time to assume or assign a lease[10] and a motion to reject an unexpired lease.[11]

---

*Debtors' Eleventh Omnibus Objection to Certain Proofs of Claim* [Docket No. 2287]; *Order Sustaining Debtors' Twelfth Omnibus Objection to Certain Proofs of Claim* [Docket No. 2501]; *Order Sustaining Debtors' Thirteenth Omnibus Objection to Certain Proofs of Claim* [Docket No. 2502]; *Order Sustaining Debtors' Fourteenth Omnibus Objection to Certain Proofs of Claim* [Docket No. 2490].

[8] *See Stipulated Order* [Docket No. 2187]; *Order Granting Motion of Debtors to Approve Stipulation Among the Debtors, Commerzbank AG and HSBC Bank plc Regarding Claims Associated with Certain Nuclear Fuel Supply Agreements* [Docket No. 2209]; *Motion of Debtors to Approve Stipulation Among the Debtors, URENCO Enrichment Company, Ltd. and Certain of its Affiliates Regarding Claims Associated with (I) Certain Nuclear Enrichment Agreements and (II) Certain Sale Purchase Agreements* [Docket No. 2291]; *Order Granting Motion of Debtors to Approve Stipulation Among the Debtors, URENCO Enrichment Company, Ltd. and Certain of Its Affiliates Regarding Claims Associated With (I) Certain Nuclear Uranium Enrichment Agreements and (II) Certain Sale Purchase Agreements* [Docket No. 2492]; *Motion of Debtors to Approve Stipulation Among the Debtors and ITOCHU International Inc. Regarding Claims Associated With That Certain Uranium Concentrates Sales Agreement* [Docket No. 2293]; *Order Granting Motion of Debtors to Approve Stipulation Among the Debtors and ITOCHU International Inc. Regarding Claims Associated With That Certain Uranium Concentrates Sales Agreement* [Docket No. 2493]; and *Motion of Debtors to Approve Stipulation Among FirstEnergy Nuclear Operating Company and Traxys North America, LLC Regarding Claims Associated With That Certain Uranium Concentrates Sales Agreement* [Docket No. 2441].

[9] *See Motion of the Debtors for Entry of an Order Authorizing FirstEnergy Generation, LLC to Assume a Submerged Land Lease* [Docket No. 2336]; and *Order Authorizing FirstEnergy Generation, LLC to Assume a Submerged Land Lease* [Docket No. 2495].

[10] *See Motion of Debtors to Approve Second Stipulation by and Between Norton Energy Storage L.L.C. and the City of Norton Extending the Time to Assume or Reject Lease* [Docket No. 2277]; *Order Granting Motion of Debtors to Approve Second Stipulation By and Between Norton Energy Storage LLC and the City of Norton Extending the Time to Assume or Reject Lease* [Docket No. 2491]; *Second Motion of Debtors for Entry of an Order Approving Stipulations Extending the Time for the Debtors to Assume or Reject Leases of Non-Residential Real Property* [Docket No. 2339]; and *Order Granting Second Motion of Debtors for Entry of an Order Approving Stipulations Extending the Time for the Debtors to Assume or Reject Leases of Non-Residential Real Property* [Docket No. 2496].

[11] *See Motion to Reject Lease or Executory Contract* [Docket No. 2145] and *Order Authorizing the Debtors to Reject an Unexpired Lease* [Docket No. 2288].

### C. Developing and Filing a Disclosure Statement and Plan of Reorganization

27. Both prior to and throughout these Chapter 11 Cases, the Debtors have worked extensively with the Ad Hoc Groups, the Committee and the U.S. Trustee in order to put the Debtors on a path towards a successful reorganization. As outlined in the First Extension Motion, the Second Extension Motion and the Third Extension Motion, this work has led to the Debtors' entry into various agreements with parties in interest that pave the way towards a plan of reorganization supported by the Debtors' major creditor groups.

28. As noted in the First Extension Motion, prior to entry of the First Extension Motion, the Debtors worked with the Ad Hoc Groups and with FE Corp. to enter into certain Pre-Filing Agreements (the "Pre-Filing Agreements"). The Pre-Filing Agreements provided a framework for the Debtors, the Ad Hoc Groups and other parties (including the Committee)[12] to analyze claims the Debtors and their creditors could have against the FE Non-Debtor Parties and a framework to expeditiously determine the value-maximizing path forward for the Debtors' businesses.

29. As noted in the Second Extension Motion, prior to entry of the Second Extension Order, the Debtors were able to successfully negotiate and obtain approval of the Settlement Agreement. The Settlement Agreement resolves a material aspect of the Debtors' restructuring – the investigation and potential prosecution of claims and causes of action against the FE Non-Debtor Parties. Further, the Settlement Agreement maximizes value for the Debtors' estates and

---

[12] The Committee and Wilmington Savings Fund Society, FSB, solely in its capacity as the indenture trustee for the lessor notes issued under six indentures with Mansfield 2007 Trusts A-F and its capacity as pass through trustee under the pass through trust agreement with FG and FES for the pass through certificate issued in connection with the sale-leaseback transaction for Unit 1 of the Bruce Mansfield Plant ("WSFS"), are each a party to the PSA solely for the purposes of the stipulation and protocol for issues relating to the Bruce Mansfield Plant (the "Bruce Mansfield Plant" and the "Mansfield Issues Protocol").

13

establishes the cornerstone on which the Debtors and their stakeholders were able to begin plan negotiations and move towards the Debtors' exit from chapter 11.

30.     As outlined in the Third Extension Motion, these agreements paved the way for the Debtors to negotiate and enter into the Term Sheet and RSA.  The Term Sheet and the RSA provide a framework of material terms of the Plan in these Chapter 11 Cases.  The Debtors' boards of directors, upon the advice and recommendation of the Debtors' advisors, as well as the Independent Directors and Managers, upon the advice and recommendation of their respective advisors, concluded that the Plan represents the best path forward for the Debtors, their estates and all parties in interest.

31.     ***The Plan and Disclosure Statement.***     After the Debtors' entry into the Term Sheet and RSA, the Debtors worked diligently to draft the Plan and the corresponding Disclosure Statement to reflect the material terms agreed to thereunder.  This work included frequent communications on the part of the Debtors with parties in interest, including the Committee and the Creditor Groups.  As part of these efforts, the Debtors have filed four iterations of the Plan[13] and Disclosure Statement[14] with the Court.

32.     During the most recent Exclusive Period, the Debtors have also sought approval of the Disclosure Statement.  On February 11, 2019, the Debtors filed the motion for approval of the Disclosure Statement (the "Disclosure Statement Motion") [Docket No. 2121].  In response to objections received, the Debtors also filed an omnibus reply on March 7, 2019 [Docket No. 2307].  The Court held an initial hearing on the Disclosure Statement, and approval of the RSA, on March 19, 2019.  At the end of that hearing, the Court ordered supplemental briefing on the

---

[13] *See* Docket Nos. 2120, 2250, 2310 and 2430.
[14] *See* Docket Nos. 2119, 2251, 2313 and 2431.

14

question of whether the inclusion of the FE Non-Debtor Parties' third-party releases rendered the Plan "patently unconfirmable" such that the Disclosure Statement should not be approved.

33. The Debtors participated in the supplemental briefing and filed multiple supplemental reply briefs in support of the Disclosure Statement Motion [Docket Nos. 2397, 2422]. The Debtors then prepared for and participated in a hearing on the non-consensual third-party releases contained in the Plan on April 2, 2019 and a hearing regarding the Court's decision on April 4, 2019. As stated above, the Court denied approval of the Disclosure Statement.

34. As set forth above, the Debtors are in the process of negotiating and revising the Plan and Disclosure Statement in accordance with the Court's ruling on April 4, 2019, with the goal of filing a revised Plan and a revised Disclosure Statement which address the Court's concerns with respect to the third-party release provisions in the near term. The Debtors simply require additional time to accomplish this goal, given the Court's recent ruling, which is why they are requesting a further extension of the Exclusive Periods. If granted an extension of the Exclusive Periods, the Debtors will continue to work diligently towards confirmation of a revised Plan and Disclosure Statement and the successful resolution of these Chapter 11 Cases.

## BASIS FOR RELIEF

35. The Bankruptcy Code vests debtors with the exclusive right to propose a chapter 11 plan for the first 120 days of a chapter 11 case pursuant to section 1121(b). Section 1121(c)(3) further extends the period of exclusivity for an additional 60 days, to an initial maximum of 180 days, where the debtor has filed a chapter 11 plan and is soliciting votes on such plan. "[T]he point of exclusivity is 'to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated.'" *In re Burns & Roe*

15

*Enters., Inc.*, No. 00-41610 (RG), 2005 WL 6289213, *4 (D.N.J. Nov. 2, 2005) (quoting H.R. Rep. No. 103-835, at 36 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3344).

36.     Section 1121(d) of the Bankruptcy Code permits a court to extend a debtor's exclusivity for cause.  Specifically, Bankruptcy Code section 1121(d) provides that, upon the debtor's request made within 120 days after the petition date and "after notice and a hearing, the court may for cause…increase the 120-day period or the 180-day period referred to in [Bankruptcy Code section 1121]."  11 U.S.C. § 1121(d).  Although section 1121(d) does not define "cause," courts have construed the term by examining the underlying legislative history of Bankruptcy Code section 1121(d).  *See, e.g.*, *Official Comm. of Unsecured Creditors v. Elder-Beerman Stores, Corp. (In re Elder-Beerman Stores Corp.)*, No. C-3-97-175, 1997 U.S. Dist. Lexis 23785, at *22 & n.11 (S.D. Ohio June 23, 1997); *In re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996); *Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297-98 (W.D. Tenn. 1987).  Legislative history indicates that, although the term "cause" is not defined by the Bankruptcy Code, such term should be viewed flexibly "in order to allow the debtor to reach an agreement."  H.R. Rep. 95-595, at 232 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6191.

37.     In determining whether cause exists, courts look to the totality of circumstances in each case.  *See, e.g.*, *First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986); *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997); *In re Express One Int'l Inc.*, 194 B.R. 98, 100-01 (Bankr. E.D. Tex. 1996); *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987); *In re Nicolet, Inc.*, 80 B.R. 733, 741-42 (Bankr. E.D. Pa. 1987).  Specifically, the factors that courts look to in determining whether or not cause exists to extend the Exclusive Periods prescribed in Bankruptcy Code section 1121 include: (a) the size and complexity of the case; (b) the existence of good-faith progress; (c) the necessity of

sufficient time to negotiate and prepare adequate information; (d) whether creditors are prejudiced by the extension; (e) whether the debtor is paying its debts as they become due; (f) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (g) whether the debtor has made progress negotiating with creditors; (h) the length of time a case has been pending; (i) whether the debtor is seeking an extension to pressure creditors; and (j) whether or not unresolved contingencies exist. *See, e.g.*, *In re Crescent Mfg. Co.*, 122 B.R. 979, 982-83 (Bankr. N.D. Ohio 1990); *In re Serv. Merchandise Co.*, 256 B.R. 744, 751-54 (Bankr. M.D. Tenn. 2000); *In re Elder-Beerman Stores Corp*, 1997 U.S. Dist. Lexis 23785 at *14, *18, *26; *In re Grand Traverse Dev, Co. Ltd. P'ship*, 147 B.R. 418, 420 (Bankr. W.D. Mich. 1992).

38.     The Debtors respectfully submit that sufficient cause exists pursuant to section 1121(d) to extend the Exclusive Periods as provided herein.  As discussed below, the Exclusive Periods should be extended under these factors.

### A.  The Debtors' Chapter 11 Cases Are Large and Complex

39.     These Chapter 11 Cases involve multiple Debtor entities that engage in complex operations in a number of heavily-regulated businesses.  Further, these Chapter 11 Cases are among the largest chapter 11 cases ever filed in the Northern District of Ohio.  As outlined above and in the First Extension Motion, the Second Extension Motion and the Third Extension Motion, the Debtors made great strides during the first year of these Chapter 11 Cases.  In the time since the entry of the Third Extension Order, the Debtors are on the cusp of confirming a plan of reorganization.

40.     In addition, this Court and other courts in this Circuit routinely grant lengthy extensions of exclusivity in reorganization cases facing complex issues.  *See*, *e.g.*, *In re Phar-Mor, Inc.*, No. 92-41599 (Bankr. N.D. Ohio) (exclusivity ultimately extended for approximately three years); *In re Revco D.S., Inc.*, Case Nos. 88-51308-1321, 1305, 1761-1812 and 1820

(Bankr. N.D. Ohio) (exclusivity ultimately extended for over two years); *In re The Elder-Beerman Stores Corp.*, No. 95-33643 (S.D. Ohio) (exclusivity ultimately extended for approximately 22 months); *see also In re Energy Future Holdings Corp.*, No. 14-10979 (CSS) (Bankr. D. Del. June 1, 2015) [Docket No. 4634] (granting a third extension for an additional 60 days, following the first two extensions of a total of 300 days); *In re Exide Technologies*, No. 13-11482 (KJC) (Bankr. D. Del. July 1, 2014) [Docket No. 1959] (granting a second extension of 60 days, following an initial extension of approximately 235 days).

**B. The Debtors Have Made Good Faith Progress Toward a Chapter 11 Plan of Reorganization**

41.     An extension of a debtor's exclusive periods is justified by progress in the resolution of issues facing the debtor's estate.  *See*, *e.g.*, *In re Serv. Merchandise Co., Inc.*, 256 B.R. at 753-54; *In re Amko Plastics*, 197 B.R. at 76; *In re McLean Indus., Inc.*, 87 B.R. at 834-35; and *In re Texaco*, *Inc.*, 76 B.R 322, 327 (Bankr. S.D.N.Y. 1987).  In the time since the Third Extension Order, the Debtors have continued to maintain operations and maximize liquidity and have simultaneously made significant progress towards a plan of reorganization.

42.     As described above, the Debtors are working towards a value-maximizing restructuring that incorporates a global resolution of numerous, complex issues, and need this further extension in order to achieve confirmation of a plan of reorganization.  In order to reach this goal and the successful resolution of these Chapter 11 Cases, the Debtors require a further extension of the Exclusive Periods.  The Debtors will be able to use this extension to continue to work with parties in interest to prepare an amended plan and disclosure statement and seek confirmation with the Court of the same.

**C. An Extension of the Exclusive Periods Is Necessary to Provide Sufficient Time to Negotiate and Prepare An Amended Plan and Disclosure Statement**

43.     The Debtors have demonstrated an ability to work productively with parties in interest, including the Creditor Groups and the Committee, by executing the Settlement Agreement, the Term Sheet and the RSA.  The Debtors then worked diligently to implement the negotiated terms of the Settlement Agreement, the Term Sheet and the RSA into a plan of reorganization.  In light of the Court's recent ruling, the Debtors require additional time to address the Court's concerns and will use the extension of the Exclusive Periods to prepare and file an amended plan and disclosure statement.

**D. An Extension of the Exclusive Periods Will Not Prejudice Creditors**

44.     The Debtors are requesting an extension of the Exclusive Periods so that they can maintain their focus on working with the Creditor Groups, the Committee, the Debtors' Independent Directors and Independent Managers, the Debtors' non-Debtor affiliates, and other significant creditors towards a value-maximizing plan of reorganization.  This extension is not intended to pressure the Debtors' creditors but instead is necessary to protect and consider the respective interests of the varying creditor and stakeholder constituencies.  To the extent feasible and necessary, the Debtors will continue to hold and foster productive discussions with these parties in interest as they have done to date.  These discussions have included, and will continue to include, efforts to provide diligence information to certain governmental agencies and non-governmental entities who have objected to the Disclosure Statement and have indicated an intention to object to confirmation of the Plan, in an effort to lay the groundwork for settlement discussions in advance of confirmation.  In addition, the Debtors continue to maintain significant cash balances that are not expected to decline materially during the extension, so the requested extension will not result in a deterioration of value available to their creditors.  Accordingly, the

19

relief requested in this Motion is without prejudice to the Debtors' creditors but will instead benefit the Debtors' estates, their creditors and all other key stakeholders.

### E.  The Debtors Are Paying Their Bills as They Come Due

45.     Since the Petition Date, the Debtors have paid all their debts as they have come due postpetition in the ordinary course of business.

### F.  This is The Debtors' Fourth Extension Request

46.     While the Chapter 11 Cases are not in their infancy, the Debtors' request for an additional extension of the Exclusive Periods is only the Debtors' fourth request for such extension, and the Debtors request only an additional 91 and 90 days.  As outlined above, the Debtors have demonstrated significant progress and continue to work diligently towards a plan of reorganization.  The Debtors are doing everything that they should be doing as chapter 11 debtors in possession to facilitate a successful conclusion to these Chapter 11 Cases and should be granted an extension.

### G.  The Debtors Are Continuing to Address Open Contingencies

47.     The Debtors have worked diligently towards a successful reorganization by simultaneously engaging in productive negotiations with various parties in interest, maintaining operations and working to increase liquidity.  Through these efforts, the Debtors have successfully positioned themselves to engage in productive negotiations with such parties in interest on creating a value-maximizing plan of reorganization.  Accordingly, the Exclusive Periods should be extended.  The requested extension will not prejudice the legitimate interests of the Debtors' creditors and will afford the Debtors a meaningful opportunity to pursue a plan of reorganization.

48.     Notice of this Motion has been served on each party or entity on the General Service List (as defined in the *Amended Order, Pursuant to Sections 102 and 105(a) of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6007, 7016, 9013 and 9014 and Local Bankruptcy Rules Establishing: (I) Omnibus Hearing Dates; and (II) Certain Case Management Procedures* [Docket No. 280]).   The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**NO PRIOR REQUEST**

49.     No prior request for the relief sought in this Motion has been made to this or any court.

WHEREFORE, the Debtors respectfully request that the Court (a) enter the Order substantially in the form attached hereto as <u>Exhibit A</u> and (b) grant such other and further relief as the Court may deem proper.

*[Remainder of page intentionally left blank.]*

Dated:    April 15, 2019                  Respectfully submitted,

*/s/ Kate M. Bradley* _____
**BROUSE MCDOWELL LPA**
Marc B. Merklin (0018195)
Kate M. Bradley (0074206)
Bridget A. Franklin (0083987)
388 South Main Street, Suite 500
Akron, OH 44311-4407
Telephone: (330) 535-5711
Facsimile: (330) 253-8601
mmerklin@brouse.com
kbradley@brouse.com
bfranklin@brouse.com

- and -

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira Dizengoff (admitted *pro hac vice*)
Lisa Beckerman (admitted *pro hac vice*)
Brad Kahn (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
lbeckerman@akingump.com
bkahn@akingump.com

- and -

Scott Alberino (admitted *pro hac vice*)
Kate Doorley (admitted *pro hac vice*)
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
salberino@akingump.com
kdoorley@akingump.com

*Counsel for Debtors and Debtors in Possession*