# <u>EXHIBIT F</u>

Liquidation Analysis

1

18-50757-amk    Doc 2661-6    FILED 05/17/19    ENTERED 05/17/19 16:18:10    Page 1 of 23

**LIQUIDATION ANALYSIS**
**FIRSTENERGY SOLUTIONS CORP.,et al.**

## I. INTRODUCTION

Section 1129(a)(7) of the Bankruptcy Code, often called the "best interests test," requires that a bankruptcy court find, as a condition of confirmation, that chapter 11 plan provides, with respect to each class, that each holder of an Allowed Claim either (i) has accepted the plan of reorganization, or (ii) will receive or retain under the plan property of a value, as of the plan's assumed effective date, that is not less than the value such non-accepting holders would receive or retain if the debtors were to be liquidated under chapter 7 of the Bankruptcy Code.

Accordingly, to demonstrate that the proposed Plan satisfies the "best interest" of creditors test, the Debtors, with assistance from their advisors, have prepared the following hypothetical liquidation analysis **("Liquidation Analysis"**), in connection with the Plan and the Disclosure Statement.[1] The Liquidation Analysis indicates the estimated recoveries that may be obtained by Classes of Claims or Interests assuming a hypothetical liquidation under chapter 7 of the Bankruptcy Code upon disposition of the Debtors' assets as an alternative to the Plan. Accordingly, the values discussed in the Liquidation Analysis may be different from amounts referred to in the Plan. The Liquidation Analysis is based on certain assumptions in the Disclosure Statement and in the accompanying notes to the Liquidation Analysis.

## II. STATEMENT OF LIMITATIONS

The determination of the costs of, and proceeds from, the hypothetical liquidation of the Debtors' assets in a chapter 7 case is an uncertain process involving the extensive use of significant estimates and assumptions that, although considered reasonable by the Debtors based upon their business judgment and input from their advisors, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Debtors, their management and their advisors. Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual chapter 7 liquidation, and unanticipated events and circumstances could materially affect the ultimate results in an actual chapter 7 liquidation. The Liquidation Analysis was prepared for the sole purpose of generating a reasonable good faith estimate of the proceeds that would be generated if the Debtors' assets were liquidated in accordance with chapter 7 of the Bankruptcy Code. The Liquidation Analysis is not intended and should not be used for any other purpose. The underlying financial information in the Liquidation Analysis was not compiled or examined by independent accountants in accordance with standards promulgated by the American Institute of Certified Public Accountants.

NEITHER THE DEBTORS NOR THEIR ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in *the Disclosure Statement for the Joint Plan of Reorganization of FirstEnergy Solutions Corp., et al.*

2

NOTHING CONTAINED IN THIS LIQUIDATION ANALYSIS IS INTENDED TO BE, OR CONSTITUTES, A CONCESSION, ADMISSION, OR ALLOWANCE OF ANY CLAIM BY THE DEBTORS. THE ACTUAL AMOUNT OR PRIORITY OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH AND USED IN THIS LIQUIDATION ANALYSIS. THE DEBTORS RESERVE ALL RIGHTS TO SUPPLEMENT, MODIFY, OR AMEND THE ANALYSIS SET FORTH HEREIN.

## III. OVERVIEW AND GENERAL ASSUMPTIONS

The Liquidation Analysis assumes that the Debtors would be liquidated in a jointly administered, but not substantively consolidated, proceeding. The total administrative costs of the Debtors' chapter 7 cases, including professional (attorneys, investment bankers, financial advisors, appraisers, experts) and trustee fees, commissions, wages and benefits, severance, retention payments, overhead and maintenance costs, likely would be substantially higher if one or more of the Debtors were liquidated in a separately administered chapter 7 case.

Accordingly, the Liquidation Analysis considers an entity-by-entity liquidation of the following Debtors:

- FirstEnergy Solutions Corp.,
- FirstEnergy Generation, LLC,
- FirstEnergy Nuclear Generation, LLC,
- FirstEnergy Aircraft Leasing Corp.,
- FirstEnergy Generation Mansfield Unit 1 Corp.,
- FirstEnergy Nuclear Operating Company, and
- Norton Energy Storage L.L.C.

The Liquidation Analysis has been prepared assuming the Debtors convert their cases from chapter 11 cases to chapter 7 cases on May 31, 2019 (the "**Conversion Date**"). On the Conversion Date, it is assumed that the Bankruptcy Court would appoint a chapter 7 trustee (the "**Trustee**") to oversee the liquidation[2] of the Debtors' estates. Under section 704 of the Bankruptcy Code, a trustee must, among other duties, collect and convert the property of the estate as expeditiously as is compatible with the best interests of parties in interest.

The Liquidation Analysis assumes that one Trustee is appointed to liquidate and wind down the Estates. The selection of a separate chapter 7 trustee for one or more of the Estates likely would result in substantially higher administrative expenses associated with the chapter 7 cases from a large duplication of effort by each trustee and his or her professionals. In addition, the selection of separate chapter 7 trustees likely would give rise to complicated, expensive, and time-consuming disputes regarding certain inter-Debtor issues.

The Trustee would retain professionals (attorneys, investment bankers, financial advisors, accountants, consultants, appraisers, experts, etc.) to assist in the liquidation and wind down of the Estates. Although the Trustee may retain certain of the Debtors' professionals for discrete projects, the Liquidation Analysis assumes that the Trustee's primary investment banking, legal,

---

[2] The Liquidation Analysis assumes that certain Debtor assets would be sold, in an expedited manner, as going concerns, as described more fully herein.

3

accounting, consulting, and forensic support would be provided by new professionals, because most (if not all) of the Debtors' current professionals likely would hold Claims in the chapter 7 cases and therefore could be incapable of satisfying applicable disinterestedness requirements for continued retention by the Trustee or the Estates.

## IV. GLOBAL ASSUMPTIONS

### A. Liquidation Balance

Unless otherwise stated, liquidation value (the "**Liquidation Balance**") reflected in the Liquidation Analysis is based on estimated net book value ("**NBV**") as of the Conversion Date. Certain asset Liquidation Balances were estimated using forward-looking projections (the "**Projections**") in the Debtors' business plan,[3] which were prepared by the Debtors with advice from the Debtors' advisors. The Projections necessarily incorporate estimates and assumptions that are inherently subject to significant business, economic, and competitive risks, uncertainties and contingencies. Inevitably, some assumptions in the Projections will not materialize in an actual chapter 7 liquidation and could materially affect the ultimate results of the Projections in an actual chapter 7 liquidation.

### B. Allowed Claims

In preparing the Liquidation Analysis, the Debtors estimated Allowed Claims based upon a review of (i) claims listed on the Debtors' Schedules of Assets and Liabilities, (ii) claims filed with the Bankruptcy Court and (iii) the Debtors' financial statements to account for other known liabilities, as necessary. The Liquidation Analysis was prepared before the Debtors fully evaluated claims filed against the Debtors or adjudicated such claims before the Bankruptcy Court. Accordingly, the amount of the final Allowed Claims against the Debtors' estates may differ from the claim amounts used in this Liquidation Analysis. In addition, the Liquidation Analysis includes estimates for claims not currently asserted in the chapter 11 cases, but which could be asserted and allowed in a chapter 7 liquidation, including unpaid chapter 11 administrative claims, and chapter 7 administrative claims such as wind-down costs and Trustee fees. To date, the Bankruptcy Court has not estimated or otherwise fixed the total amount of Allowed Claims used for purposes of preparing this Liquidation Analysis. Therefore, the Debtors' estimate of Allowed Claims set forth in the Liquidation Analysis should not be relied on for any other purpose, including determining the value of any distribution to be made on account of Allowed Claims and Interests under the Plan.

### C. Liquidation Process

The Debtors' business liquidation would be conducted in a chapter 7 scenario with the Trustee managing the bankruptcy estates to maximize recovery to creditors as expeditiously as possible. The Trustee would attempt to sell or otherwise monetize the assets owned by the Debtors to one or multiple buyers, which may include (i) sales of logical asset groups, (ii) sales of major generation facilities with associated assets, (iii) sales on a going-concern basis, or (iv) other sales of assets on a piecemeal basis. It is assumed the chapter 7 cases would be closed at the Deactivation Date (defined below).

---

[3] The Projections differ substantially from the Financial Projections referenced in Exhibit D which assume a chapter 11 reorganization instead of a chapter 7 conversion contemplated in the Liquidation Analysis.

4

Due to the unique nature of the Debtors' assets, the Liquidation Analysis assumes the Trustee would pursue multiple paths in liquidating each of the Debtors' major asset types. As described more fully in the notes to this Liquidation Analysis, the Debtors assume that the Trustee will oversee the following processes to monetize the Debtors' primary assets.

- Wholesale and Retail Sales Book (the "**Retail Book**"): The Liquidation Analysis assumes the Trustee would pursue an expedited, going concern, sales process to monetize the value of the Retail Book as quickly as possible. The Liquidation Analysis assumes the Trustee sells the Retail Book four months (the "**Asset Sale Period**") after the Conversion Date (the "**Asset Sale Date**").

- Fossil Plants (W.H. Sammis and Bruce Mansfield)[4]: The Liquidation Analysis assumes the Trustee would pursue an expedited sales process to monetize the value of the Fossil Plants during the Asset Sale Period. The Liquidation Analysis assumes the Trustee sells the Fossil Plants on the Asset Sale Date and that the buyer or buyers assume all environmental liabilities and capacity obligations associated with the Fossil Plants.

- Nuclear Plants (Beaver Valley, Davis-Besse and Perry): The Liquidation Analysis assumes the Trustee would proceed to deactivate the Nuclear Plants in accordance with the deactivation notice schedule filed by the Debtors with the Nuclear Regulatory Commission on March 28, 2018.[5] The Liquidation Analysis assumes the Trustee deactivates the nuclear plants over a 29 month period[6] (the "**Deactivation Period**") from the Conversion Date (the "**Deactivation Date**") while simultaneously running a "sales" process for each plant that would be effectuated at or around each plant's planned Deactivation Date. The Liquidation Analysis assumes the currently estimated shortfall in the Nuclear Decommissioning Trust ("**NDT**") for Beaver Valley Unit 1 of approximately $67 million would be funded on the Deactivation Date (assuming there are no changes in the NRC's decommissioning regulatory framework that materially increases NRC required decommissioning costs estimates leading up to each nuclear plant's Deactivation Date), and that the Trustee would sell each nuclear plant at or around such applicable dates for approximately $0.[7]

### D. FE Settlement and Plan Settlement Considerations

The Liquidation Analysis assumes that, upon conversion of the chapter 11 Cases to chapter 7

---

[4] FG owns multiple properties (East Lake, Lake Shore, Ashtabula, etc.) that were once operating / generation facilities, but are now non-operating. Each of these properties have had different levels of remediation work performed since being retired, though none have been fully converted to Brownfield status. The Debtors believe that these properties have little to no value. For the purposes of the Liquidation Analysis, the Debtors are assuming these properties have no recoverable value.

[5] Scheduled nuclear deactivations dates - Davis-Besse: May 2020, Beaver Valley (Unit 1): May 2021, Perry: May 2021, Beaver Valley (Unit 2): October 2021.

[6] In the event the Trustee chose to deactivate the nuclear units on or around the Conversion Date, the recoveries (if any) to creditors would be materially less than the recoveries noted in the Liquidation Analysis. The approximately $290 million of net operating cash flow estimated by the Projections during the Deactivation Period (and included in the Liquidation Analysis) would not be available for creditor distribution. Furthermore, the Debtors estimate the Trustee would be required to pay approximately $289 million in capacity performance penalties associated with the nuclear units no longer operating.

[7] Several firms with expertise in nuclear plant decommissioning have previously agreed to "purchase" deactivated nuclear plants for little to no consideration (other than the NDT trusts pledged for decommissioning costs) given the significant liabilities and time required to decommission these asset types.

18-50757-amk    Doc 2661-6    FILED 05/17/19    ENTERED 05/17/19 16:18:10    Page 5 of 23

cases, the FE Non-Debtor Parties would exercise their termination rights under the FE Settlement, and the mutual releases granted between and among the parties to the FE Settlement Agreement would be automatically revoked. Accordingly, the Debtors' estates would no longer be entitled to the direct consideration and waiver of claims provided by the FE Non-Debtor Parties under the FE Settlement. In this scenario, the Trustee would be entitled to pursue Estate-owned claims and causes of action against the FE Non-Debtor Parties, and the FE Non-Debtor Parties would be entitled to assert certain claims against the Debtors.

Taking into account the strengths and weaknesses of the potential claims and causes of action against the FE Non-Debtor Parties and the claims asserted by such parties against the Debtors, as well as the substantial risks, costs and time delays associated with litigating these matters, the Liquidation Analysis assumes that the Trustee will be able to: (a) recover between 25% and 50% of the aggregate direct consideration received by the Debtors under the FE Settlement; and (b) obtain orders of the bankruptcy court disallowing between 25% and 50% of the claims asserted by the FE Non-Debtor Parties against the Debtors.

Additionally, the Liquidation Analysis assumes that the Trustee will reach a settlement and compromise of the various inter-Debtor issues on terms substantially similar to the Plan Settlement. Accordingly, for purposes of the Liquidation Analysis, the terms of the Plan Settlement have been incorporated, including, without limitation, the allocation of the proceeds of any claims and causes of action against the FE Non-Debtor Parties, and the treatment of inter-Debtor claims.

Finally, the Liquidation Analysis assumes that the Trustee will reach settlements and compromises of: (a) the Mansfield Certificate Claims on terms and conditions substantially similar to those set forth in the Mansfield Settlement incorporated into the Plan; and (b) the Mansfield TIA Claim based on an estimated range of allowed claims to be asserted at FES, FG and FGMUC.

### E. Additional Global Notes and Assumptions

The Liquidation Analysis should be read in conjunction with the following global notes and assumptions:

1. *Additional unsecured claims.* The cessation of business in a liquidation is likely to trigger certain claims that otherwise would not exist under a plan absent a liquidation. Examples of these kinds of claims include various potential employee claims (for such items as severance and potential WARN Act claims), tax liabilities, claims related to the rejection of unexpired leases (*i.e.*, real and personal property) and executory contracts, and other potential Allowed Claims. These additional claims could be significant and some will be entitled to priority in payment over General Unsecured Claims. Those priority claims likely would need to be paid, in full, from the liquidation proceeds before any balance would be made available to pay General Unsecured Claims or to make any distribution in respect of equity interests. No adjustment has been made for these potential claims.

2. *Chapter 7 liquidation costs.* Pursuant to section 726 of the Bankruptcy Code, the allowed administrative claims incurred by the Trustee, including expenses affiliated with selling the Debtors' assets, will be entitled to payment in full prior to any distribution to chapter

18-50757-amk    Doc 2661-6    FILED 05/17/19    ENTERED 05/17/19 16:18:10    Page 6 of 23

11 Administrative Claims and Other Priority Claims. The estimate used in the Liquidation Analysis for these expenses include estimates for operational expenses and certain legal, accounting, and other professionals, as well as an assumed 3% fee based upon liquidated assets payable to the Trustee.

It is assumed that chapter 7 administrative and other priority claims, post-conversion operational expenses and professional fees, and chapter 7 trustee fees are entitled to payment, in full, prior to any distribution to holders of chapter 11 superpriority administrative claims, chapter 11 administrative / priority claims and secured claims. Parties, however, may dispute that assumption.

3. *Distribution of net proceeds.* Chapter 11 Administrative Claim amounts and Priority Claim amounts, professional fees, trustee fees, and other such claims that may arise in a liquidation scenario would be paid, in full, from the liquidation proceeds before the balance of any proceeds will be made available to pay any other Allowed Claim[8]. Under the absolute priority rule, no junior creditor at a given entity would receive any distribution until all senior creditors are paid in full at such entity, and no equity holder at such entity would receive any distribution until all creditors at such entity are paid in full. The assumed distributions to creditors as reflected in the Liquidation Analysis are estimated in accordance with the absolute priority rule.

4. *Certain exclusions and assumptions.* This Liquidation Analysis does not include estimates for the tax consequences that may be triggered upon the liquidation and sale events included in the analysis. Such tax consequences may be material. Additionally, the Liquidation Analysis does not consider the discounting over time of asset values and creditor recoveries, which would likely result in significantly lower recoveries to Holders of Claims and Interests than those estimated recoveries presented in the Liquidation Analysis.

## V. CONCLUSIONS

**THE DEBTORS HAVE DETERMINED, AS SUMMARIZED IN THE FOLLOWING ANALYSIS, THAT CONFIRMATION OF THE PLAN WILL PROVIDE CREDITORS WITH A RECOVERY THAT IS NOT LESS THAN WHAT THEY WOULD OTHERWISE RECEIVE IN CONNECTION WITH A LIQUIDATION OF THE DEBTORS UNDER CHAPTER 7 OF THE BANKRUPTCY CODE.**

---

[8] Liquidation proceeds generated from the sale and/or operation of an any asset secured by funded debt are assumed to receive payment from those proceeds prior to those proceeds becoming available to pay any chapter 11 claim.

## SUMMARY OF ESTIMATED RECOVERIES FOR CLAIMS AND INTEREST

| Class | Name of Class Under Plan | Status | Estimated Percentage Recovery Under the Plan | Recovery Under Hypothetical Liquidation (Low) | Recovery Under Hypothetical Liquidation (High) |
|---|---|---|---|---|---|
| **FES** | | | | | |
| A1 | Other Secured Claims against FES | Unimpaired | n/a | n/a | n/a |
| A2 | Other Priority Claims against FES | Unimpaired | n/a | n/a | n/a |
| A3 | Unsecured PCN / FES Note Claims Against FES | Impaired | 23% | 11% | 15% |
| A4 | Mansfield Certificate Claims Against FES | Impaired | 23% | 11% | 15% |
| A5 | FES/FENOC Unsecured Claims | Impaired | 25% | 11% | 15% |
| A6 | FES Single-Box Unsecured Claims | Impaired | 31% | 11% | 15% |
| A7 | Mansfield TIA Claim | Impaired | [TBD] | 11% | 15% |
| A8 | Convenience Claims | Impaired | 36% | 11% | 15% |
| A9 | Inter-Debtor Claims | Impaired | 23% | 11% | 15% |
| A10 | Interests in FES | Impaired | 0% | 0% | 0% |
| **FG** | | | | | |
| B1 | Other Secured Claims Against FG | Unimpaired | n/a | 54% | 64% |
| B2 | Other Priority Claims Against FG | Unimpaired | n/a | n/a | n/a |
| B3 | Secured FG PCN Designated Claims | Unimpaired | 100% | 54% | 64% |
| B4 | Secured FG PCN Reinstated Claims | Unimpaired | 100% | 54% | 64% |
| B5 | Unsecured PCN/FES Note Claims Against FG | Impaired | 14% | 3% | 6% |
| B6 | Mansfield Certificate Claims Against FG | Impaired | 12% | 3% | 6% |
| B7 | FG Single-Box Unsecured Claims | Impaired | 17% | 3% | 6% |
| B8 | Mansfield TIA Claim | Impaired | [TBD] | 3% | 6% |
| B9 | Convenience Claims | Impaired | 22% | 3% | 6% |
| B10 | Inter-Debtor Claims | Impaired | 13% | 3% | 6% |
| B11 | Interests in FG | Impaired | 0% | 0% | 0% |
| **NG** | | | | | |
| C1 | Other Secured Claims Against NG | Unimpaired | n/a | 10% | 13% |
| C2 | Other Priority Claims Against NG | Unimpaired | n/a | n/a | n/a |
| C3 | Secured NG PCN Claims | Unimpaired | 100% | 10% | 13% |
| C4 | Unsecured PCN/FES Notes Claims Against NG | Impaired | 30% | 3% | 7% |
| C5 | Mansfield Certificate Claims Against NG | Impaired | 30% | 3% | 7% |
| C6 | NG Single-Box Unsecured Claims | Impaired | n/a | 3% | 7% |
| C7 | NG-FENOC Unsecured Claims against NG | Impaired | 31% | 3% | 7% |
| C8 | Convenience Claims | Impaired | 36% | 3% | 7% |
| C9 | Inter-Debtor Claims | Impaired | n/a | n/a | n/a |
| C10 | Interests in NG | Impaired | 0% | 0% | 0% |

18-50757-amk    Doc 2661-6    FILED 05/17/19    ENTERED 05/17/19 16:18:10    Page 8 of 23

# SUMMARY OF ESTIMATED RECOVERIES FOR CLAIMS AND INTEREST
## (Continued)

| Class | Name of Class Under Plan | Status | Estimated Percentage Recovery Under the Plan | Recovery Under Hypothetical Liquidation (Low) | Recovery Under Hypothetical Liquidation (High) |
|---|---|---|---|---|---|
| **FENOC** | | | | | |
| D1 | Other Secured Claims Against FENOC | Unimpaired | n/a | n/a | n/a |
| D2 | Other Priority Claims Against FENOC | Unimpaired | n/a | n/a | n/a |
| D3 | FES-FENOC Unsecured Claims against FENOC | Impaired | 16% | 0% | 5% |
| D4 | FENOC Single-Box Unsecured Claims | Impaired | 19% | 0% | 5% |
| D5 | NG-FENOC Unsecured Claims against FENOC | Impaired | 16% | 0% | 5% |
| D6 | Convenience Claims | Impaired | 24% | 0% | 5% |
| D7 | Inter-Debtor Claims | Impaired | 16% | 0% | 5% |
| D8 | Interests in FENOC | Impaired | 0% | 0% | 0% |
| **FGMUC** | | | | | |
| E1 | Other Secured Claims Against FGMUC | Unimpaired | n/a | n/a | n/a |
| E2 | Other Priority Claims Against FGMUC | Unimpaired | n/a | n/a | n/a |
| E3 | Mansfield Certificate Claims Against FGMUC | Impaired | 9% | 1% | 4% |
| E4 | FGMUC Single-Box Unsecured Claims | Impaired | 13% | 1% | 4% |
| E5 | Mansfield TIA Claim | Impaired | [TBD] | 1% | 4% |
| E6 | Convenience Claims | Impaired | 18% | 1% | 4% |
| E7 | Inter-Debtor Claims | Impaired | 9% | 1% | 4% |
| E8 | Interests in FGMUC | Impaired | 0% | 0% | 0% |
| **FE Aircraft** | | | | | |
| F1 | Other Secured Claims Against FE Aircraft | Unimpaired | n/a | n/a | n/a |
| F2 | Other Priority Claims Against FE Aircraft | Unimpaired | n/a | n/a | n/a |
| F3 | General Unsecured Claims Against FE Aircraft | Impaired | n/a | n/a | n/a |
| F4 | Inter-Debtor Claims | Impaired | n/a | n/a | n/a |
| F5 | Interests in FE Aircraft | Impaired | n/a | n/a | n/a |
| **Norton** | | | | | |
| G1 | Other Secured Claims Against Norton | Unimpaired | n/a | n/a | n/a |
| G2 | Other Priority Claims Against Norton | Unimpaired | n/a | n/a | n/a |
| G3 | General Unsecured Claims Against Norton | Impaired | n/a | n/a | n/a |
| G4 | Inter-Debtor Claims | Impaired | n/a | n/a | n/a |
| G5 | Interests in Norton | Impaired | n/a | n/a | n/a |

18-50757-amk   Doc 2661-6   FILED 05/17/19   ENTERED 05/17/19 16:18:10   Page 9 of 23

## VI. LIQUIDATION ANALYSIS RESULTS

The following pages present the results for the hypothetical liquidation of the Debtors.[9]

---

[9] The estimated claims on the following pages may differ from the estimated claims included in the Disclosure Statement because of differing assumptions between a chapter 11 reorganization and a hypothetical chapter 7 liquidation.

**Estimated Proceeds Generated From Asset Liquidation at FirstEnergy Solutions, Corp.**

*In $US Millions*

| Assets | Notes | Liquidation Balance | Recovery Estimate (%) Low | Recovery Estimate (%) High | Recovery Estimate ($) Low | Recovery Estimate ($) High |
|---|---|---|---|---|---|---|
| | | | **Potential Recovery** | | | |
| ***Gross Liquidation Proceeds:*** | | | | | | |
| Cash | [1] | $ 952 | 100% | 100% | $ 952 | $ 952 |
| Accounts Receivable | [2] | 64 | 84% | 92% | 54 | 59 |
| Property, Plant, & Equipment | [3] | - | - | - | - | - |
| Collateral | [4] | 58 | 90% | 100% | 52 | 58 |
| Retail Book | [5] | 55 | 80% | 90% | 44 | 50 |
| Inter-Debtor Claims Recovery | [6] | 557 | 27% | 35% | 152 | 195 |
| FE Non-Debtor Litigation Recovery | [7] | 602 | 25% | 50% | 150 | 301 |
| **Total Assets** | | **2,288** | **61%** | **71%** | **1,405** | **1,614** |

| *Less: Chapter 7 Costs* | | Amount | Recovery / Rates Low | Recovery / Rates High | | |
|---|---|---|---|---|---|---|
| Inter-Debtor Superpriority Admin Claim | [8] | 3 | 100% | 100% | (3) | (3) |
| Estate Wind-Down Costs | [9] | 3 | 100% | 100% | (3) | (3) |
| Trustee Fees | [10] | n/a | 3% | 3% | (10) | (15) |
| **Total Chapter 7 Costs** | | | | | **(16)** | **(21)** |
| Net Proceeds Available to Secured Creditors | | | | | - | - |
| Net Proceeds Available to Other Creditors | | | | | 1,389 | 1,593 |
| **Net Distributable Proceeds** | | | | | **1,389** | **1,593** |

**Distribution of Net Liquidation Proceeds to Creditors**

| Ch. 11 Claims | | Claims Low | Claims High | Recovery % Low | Recovery % High | Recovery Estimate $ Low | Recovery Estimate $ High |
|---|---|---|---|---|---|---|---|
| Inter-Debtor Superpriority Admin. | [11] | 325 | 397 | 100% | 100% | 397 | 325 |
| **Proceeds Available for Next Priority of Creditors** | | | | | | **992** | **1,269** |
| | | | | | | | |
| ***Less: Secured Claims*** | | | | | | | |
| Secured Claims (A1) | [12] | - | - | - | - | - | - |
| **Proceeds Available for Next Priority of Creditors** | | | | | | **992** | **1,269** |
| | | | | | | | |
| ***Less: Admin / Priority Claims*** | | | | | | | |
| Administrative Claims | | 41 | 50 | 100% | 100% | 50 | 41 |
| Priority Tax Claims | | - | - | - | - | - | - |
| **Total Admin / Priority Claims** | [13] | **41** | **50** | **100%** | **100%** | **50** | **41** |
| **Proceeds Available for Next Priority of Creditors** | | | | | | **941** | **1,227** |
| | | | | | | | |
| ***Less: General Unsecured Claims*** | | | | | | | |
| Unsecured PCN / FES Note Claims (A3) | [14] | 2,238 | 2,238 | 11% | 15% | 241 | 342 |
| Mansfield Certificate Claims (A4) | [15] | 787 | 787 | 11% | 15% | 85 | 120 |
| FE Revolver Claim | [16] | 350 | 525 | 11% | 15% | 57 | 54 |
| Secured PCN Deficiency Claims | [17] | 689 | 689 | 11% | 15% | 74 | 105 |
| FES/FENOC Unsecured Claims (A5) | [18] | 139 | 139 | 11% | 15% | 15 | 21 |
| FES Single-Box Unsecured Claims (A6) | [18] | 524 | 641 | 11% | 15% | 69 | 80 |
| Non-Debtor Affiliate Claims | [19] | 56 | 85 | 11% | 15% | 9 | 9 |
| Mansfield TIA Claim (A7) | [20] | 55 | 444 | 11% | 15% | 48 | 8 |
| Inter-Debtor Prepetition Claims (A9) | [21] | 3,189 | 3,189 | 11% | 15% | 344 | 488 |
| **Total General Unsecured Claims** | | **8,027** | **8,736** | **11%** | **15%** | **941** | **1,227** |
| **Proceeds Available for Next Priority of Creditors** | | | | | | **$ -** | **$ -** |

18-50757-amk   Doc 2661-6   FILED 05/17/19   ENTERED 05/17/19 16:18:10   Page 11 of 23

# VI. LIQUIDATION ANALYSIS RESULTS (continued)

**Estimated Proceeds Generated From Asset Liquidation at FirstEnergy Generation, LLC**

*In $US Millions*

| Assets | Notes | Liquidation Balance | Recovery Estimate % Low | Recovery Estimate % High | Recovery Estimate $ Low | Recovery Estimate $ High |
|---|---|---|---|---|---|---|
| **Gross Liquidation Proceeds:** | | | | | | |
| Cash | [1] | $ 8 | 100% | 100% | 8 | 8 |
| Accounts Receivable | [2] | - | - | - | - | - |
| Property, Plant, & Equipment | [3] | 356 | 85% | 89% | 301 | 317 |
| Collateral | [4] | - | - | - | - | - |
| Retail Book | [5] | - | - | - | - | - |
| Inter-Debtor Claims Recovery | [6] | 1,608 | 17% | 22% | 281 | 348 |
| FE Non-Debtor Litigation Recovery | [7] | 245 | 25% | 50% | 61 | 122 |
| **Total Assets** | | **2,217** | **29%** | **36%** | **651** | **795** |

| Less: Chapter 7 Costs | | Amount | Recovery / Rates Low | Recovery / Rates High | | |
|---|---|---|---|---|---|---|
| Inter-Debtor Superpriority Admin Claim | [8] | 18 | 100% | 100% | (18) | (18) |
| Estate Wind-Down Costs | [9] | n/a | n/a | n/a | - | - |
| Trustee Fees | [10] | n/a | 3% | 3% | (11) | (13) |
| **Total Chapter 7 Costs** | | | | | **(28)** | **(31)** |
| Net Proceeds Available to Secured Creditors | | | | | 292 | 307 |
| Net Proceeds Available to Other Creditors | | | | | 330 | 457 |
| **Net Distributable Proceeds** | | | | | **622** | **764** |

**Distribution of Net Liquidation Proceeds to Creditors**

| Ch. 11 Claim Types | | Claims Low | Claims High | Recovery % Low | Recovery % High | Recovery Estimate $ Low | Recovery Estimate $ High |
|---|---|---|---|---|---|---|---|
| Inter-Debtor Superpriority Admin. | [11] | 58 | 71 | 100% | 100% | 71 | 58 |
| **Proceeds Available for Next Priority of Creditors** | | | | | | **552** | **706** |
| **Less: Secured Claims** | | | | | | | |
| FE Revolver Claims (B1) | | 125 | 188 | 54% | 64% | 101 | 80 |
| Secured FG PCN Designated Claims (B3) | | 199 | 199 | 54% | 64% | 107 | 127 |
| Secured FG PCN Reinsated Claims (B4) | | 157 | 157 | 54% | 64% | 84 | 100 |
| **Total Secured Claims** | [12] | **481** | **543** | **54%** | **64%** | **292** | **307** |
| **Proceeds Available for Next Priority of Creditors** | | | | | | **260** | **399** |
| **Less: Admin / Priority Claims** | | | | | | | |
| Administrative Claims | | 58 | 71 | 100% | 100% | 71 | 58 |
| Priority Tax Claims | | 14 | 14 | 100% | 100% | 14 | 14 |
| **Total Admin / Priority Claims** | [13] | **72** | **85** | **100%** | **100%** | **85** | **72** |
| **Proceeds Available for Next Priority of Creditors** | | | | | | **175** | **327** |
| **Less: General Unsecured Claims** | | | | | | | |
| Unsecured PCN/FES Note Claims (B5) | [14] | 2,238 | 2,238 | 3% | 6% | 65 | 143 |
| Mansfield Certificate Claims (B6) | [15] | 787 | 787 | 3% | 6% | 23 | 50 |
| FE Revolver Claim | [16] | 277 | 415 | 3% | 6% | 12 | 18 |
| Secured PCN Deficiency Claims | [17] | 462 | 498 | 3% | 6% | 15 | 30 |
| FG Single-Box Unsecured Claims (B7) | [18] | 331 | 634 | 3% | 6% | 18 | 21 |
| Non-Debtor Affiliate Claims | [19] | 51 | 77 | 3% | 6% | 2 | 3 |
| Mansfield TIA Claims (B8) | [20] | 55 | 444 | 3% | 6% | 13 | 4 |
| Inter-Debtor Prepetition Claims (B10) | [21] | 902 | 902 | 3% | 6% | 26 | 58 |
| **Total Unsecured Claims** | | **5,103** | **5,995** | **3%** | **6%** | **175** | **327** |
| **Proceeds Available for Next Priority of Creditors** | | | | | | **-** | **-** |

18-50757-amk    Doc 2661-6    FILED 05/17/19    ENTERED 05/17/19 16:18:10    Page 12 of 23

## VI. LIQUIDATION ANALYSIS RESULTS (continued)

### Estimated Proceeds Generated From Asset Liquidation at FirstEnergy Nuclear Generation, LLC

*In $US Millions*

| Assets | Notes | Liquidation Balance | Potential Recovery | | | |
|---|---|---|---|---|---|---|
| | | | Recovery Estimate % | | Recovery Estimate $ | |
| | | | Low | High | Low | High |
| **Gross Liquidation Proceeds:** | | | | | | |
| Cash | [1] | - | - | - | - | - |
| Accounts Receivable | [2] | - | - | - | - | - |
| Property, Plant, & Equipment | [3] | 138 | 75% | 82% | 103 | 113 |
| Collateral | [4] | - | - | - | - | - |
| Retail Book | [5] | - | - | - | - | - |
| Inter-Debtor Claims Recovery | [6] | 1,918 | 22% | 26% | 421 | 497 |
| FE Non-Debtor Litigation Recovery | [7] | 158 | 25% | 50% | 40 | 79 |
| **Total Assets** | | **2,214** | **25%** | **31%** | **563** | **688** |

| Less: Chapter 7 Costs | | Amount | Recovery / Rates | | | |
|---|---|---|---|---|---|---|
| | | | Low | High | | |
| Inter-Debtor Superpriority Admin Claim | [8] | 193 | 100% | 100% | (193) | (193) |
| Estate Wind-Down Costs | [9] | n/a | n/a | n/a | - | - |
| Trustee Fees | [10] | n/a | 3% | 3% | (4) | (6) |
| **Total Chapter 7 Costs** | | | | | **(197)** | **(198)** |
| Net Proceeds Available to Secured Creditors | | | | | 65 | 75 |
| Net Proceeds Available to Other Creditors | | | | | 301 | 415 |
| **Net Liquidation Proceeds Available for Distribution to Creditors** | | | | | **366** | **490** |

### Distribution of Net Liquidation Proceeds to Creditors

| Ch. 11 Claim Types | | Claims | | Recovery % | | Recovery Estimate $ | |
|---|---|---|---|---|---|---|---|
| | | Low | High | Low | High | Low | High |
| Inter-Debtor Superpriority Admin. | [11] | 113 | 138 | 100% | 100% | 138 | 113 |
| **Proceeds Available for Next Priority of Creditors** | | | | | | **229** | **377** |
| **Less: Secured Claims** | | | | | | | |
| FE Revolver Claims (C1) | | 225 | 338 | 10% | 13% | 33 | 30 |
| Secured NG PCN Claims (C3) | | 333 | 333 | 10% | 13% | 33 | 45 |
| **Total Secured Claims** | [12] | **558** | **671** | **10%** | **13%** | **65** | **75** |
| **Proceeds Available for Next Priority of Creditors** | | | | | | **163** | **302** |
| **Less: Admin / Priority Claims** | | | | | | | |
| Administrative Claims | | - | - | - | - | - | - |
| Priority Tax Claims | | 21 | 21 | 100% | 100% | 21 | 21 |
| **Total Admin / Priority Claims** | [13] | **21** | **21** | **100%** | **100%** | **21** | **21** |
| **Proceeds Available for Next Priority of Creditors** | | | | | | **142** | **281** |
| **Less: General Unsecured Claims** | | | | | | | |
| Unsecured PCN/FES Notes Claims (C4) | [14] | 2,238 | 2,238 | 3% | 7% | 75 | 155 |
| Mansfield Certificate Claims (C5) | [15] | 787 | 787 | 3% | 7% | 26 | 55 |
| FE Revolver Claim | [16] | 311 | 466 | 3% | 7% | 16 | 22 |
| Secured PCN Deficiency Claims | [17] | 644 | 657 | 3% | 7% | 22 | 45 |
| Non-Debtor Affiliate Claims | [19] | 1 | 2 | 3% | 7% | 0 | 0 |
| NG-FENOC Unsecured Claims (C7) | [18] | 74 | 116 | 3% | 7% | 4 | 5 |
| Inter-Debtor Prepetition Claims (C9) | [21] | - | - | - | - | - | - |
| **Total Unsecured Claims** | | **4,056** | **4,265** | **3%** | **7%** | **142** | **281** |
| **Proceeds Available for Next Priority of Creditors** | | | | | | **$ -** | **$ -** |

18-50757-amk    Doc 2661-6    FILED 05/17/19    ENTERED 05/17/19 16:18:10    Page 13 of 23

# VI. LIQUIDATION ANALYSIS RESULTS (continued)

**Estimated Proceeds Generated From Asset Liquidation at FirstEnergy Nuclear Operating Company**

*In $US Millions*

| Assets | Notes | Liquidation Balance | Potential Recovery | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | Recovery Estimate % | | Recovery Estimate $ | |
| | | | Low | High | Low | High |
| ***Gross Liquidation Proceeds:*** | | | | | | |
| Cash | [1] | - | - | - | - | - |
| Accounts Receivable | [2] | - | - | - | - | - |
| Property, Plant, & Equipment | [3] | - | - | - | - | - |
| Collateral | [4] | - | - | - | - | - |
| Retail Book | [5] | - | - | - | - | - |
| Inter-Debtor Claims Recovery | [6] | 292 | 91% | 92% | 267 | 269 |
| FE Non-Debtor Litigation Recovery | [7] | 28 | 25% | 50% | 7 | 14 |
| **Total Assets** | | **321** | **86%** | **88%** | **275** | **283** |

| *Less: Chapter 7 Costs* | | Amount | Recovery / Rates | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | Low | High | | |
| Inter-Debtor Superpriority Admin Claim | [8] | n/a | n/a | n/a | - | - |
| Estate Wind-Down Costs | [9] | 193 | 100% | 100% | (193) | (193) |
| Trustee Fees | [10] | n/a | 3% | 3% | (0) | (0) |
| **Total Chapter 7 Costs** | | | | | **(193)** | **(193)** |
| Net Proceeds Available to Secured Creditors | | | | | - | - |
| Net Proceeds Available to Other Creditors | | | | | 82 | 90 |
| **Net Liquidation Proceeds Available for Distribution to Creditors** | | | | | **82** | **90** |

**Distribution of Net Liquidation Proceeds to Creditors**

| Ch. 11 Claim Types | | Claims Range | | Recovery % | | Recovery Estimate $ | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | Low | High | Low | High | Low | High |
| Inter-Debtor Superpriority Admin. | [11] | 6 | 7 | 100% | 100% | 7 | 6 |
| **Proceeds Available for Next Priority of Creditors** | | | | | | **75** | **84** |
| ***Less: Secured Claims*** | | | | | | | |
| Secured Claims (D1) | [12] | - | - | - | - | - | - |
| **Proceeds Available for Next Priority of Creditors** | | | | | | **75** | **84** |
| ***Less: Admin / Priority Claims*** | | | | | | | |
| Administrative Claims | | 62 | 76 | 98% | 100% | 75 | 62 |
| Priority Tax Claims | | - | - | - | - | - | - |
| **Total Admin / Priority Claims** | [13] | **62** | **76** | **98%** | **100%** | **75** | **62** |
| **Proceeds Available for Next Priority of Creditors** | | | | | | **-** | **22** |
| ***Less: General Unsecured Claims*** | | | | | | | |
| FES-FENOC Unsecured Claims (D3) | [18] | 252 | 252 | 0% | 5% | - | 13 |
| FENOC Single-Box Unsecured Claims (D4) | [18] | 32 | 39 | 0% | 5% | - | 2 |
| Non-Debtor Affiliate Claims | [19] | 23 | 35 | 0% | 5% | - | 1 |
| NG-FENOC Unsecured Claims (D5) | [18] | 74 | 116 | 0% | 5% | - | 4 |
| Inter-Debtor Prepetition Claims (D7) | [21] | 33 | 33 | 0% | 5% | - | 2 |
| **Total Unsecured Claims** | | **415** | **475** | **0%** | **5%** | **-** | **22** |
| **Proceeds Available for Next Priority of Creditors** | | | | | | **$ -** | **$ -** |

14

## VI. LIQUIDATION ANALYSIS RESULTS (continued)

**Estimated Proceeds Generated From Asset Liquidation at FirstEnergy Aircraft Leasing Corp.**

*In $US Millions*

| Assets | Notes | Liquidation Balance | Recovery Estimate % Low | Recovery Estimate % High | Recovery Estimate $ Low | Recovery Estimate $ High |
|---|---|---|---|---|---|---|
| *Gross Liquidation Proceeds:* | | | | | | |
| Cash | [1] | 20 | 100% | 100% | 20 | 20 |
| Accounts Receivable | [2] | - | - | - | - | - |
| Property, Plant, & Equipment | [3] | - | - | - | - | - |
| Collateral | [4] | - | - | - | - | - |
| Retail Book | [5] | - | - | - | - | - |
| Inter-Debtor Claims Recovery | [6] | 2 | 10% | 15% | 0 | 0 |
| FE Non-Debtor Litigation Recovery | [7] | - | - | - | - | - |
| **Total Assets** | | **22** | **90%** | **91%** | **20** | **20** |

| *Less: Chapter 7 Costs* | Notes | | Recovery / Rates Low | Recovery / Rates High | | |
|---|---|---|---|---|---|---|
| Inter-Debtor Superpriority Admin Claim | [8] | | n/a | n/a | - | - |
| Estate Wind-Down Costs | [9] | | n/a | n/a | - | - |
| Trustee Fees | [10] | | 3% | 3% | - | - |
| **Total Chapter 7 Costs** | | | | | **-** | **-** |
| Net Proceeds Available to Secured Creditors | | | | | - | - |
| Net Proceeds Available to Other Creditors | | | | | 20 | 20 |
| **Net Liquidation Proceeds Available for Distribution to Creditors** | | | | | **20** | **20** |

**Distribution of Net Liquidation Proceeds to Creditors**

| Ch. 11 Claim Types | Notes | Claims Low | Claims High | Recovery % Low | Recovery % High | Recovery Estimate $ Low | Recovery Estimate $ High |
|---|---|---|---|---|---|---|---|
| Inter-Debtor Superpriority Admin. | [11] | - | - | - | - | - | - |
| **Proceeds Available for Next Priority of Creditors** | | | | | | **20** | **20** |
| | | | | | | | |
| *Less: Secured Claims* | | | | | | | |
| Secured Claims (F1) | [12] | - | - | - | - | - | - |
| **Proceeds Available for Next Priority of Creditors** | | | | | | **20** | **20** |
| | | | | | | | |
| *Less: Admin / Priority Claims* | | | | | | | |
| Administrative Claims | | - | - | - | - | - | - |
| Priority Tax Claims | | - | - | - | - | - | - |
| **Total Admin / Priority Claims** | [13] | **-** | **-** | **-** | **-** | **-** | **-** |
| **Proceeds Available for Next Priority of Creditors** | | | | | | **20** | **20** |
| | | | | | | | |
| *Less: General Unsecured Claims* | | | | | | | |
| General Unsecured Claims (F3) | [18] | - | - | - | - | - | - |
| Inter-Debtor Prepetition Claims (F5) | [21] | - | - | - | - | - | - |
| **Total Unsecured Claims** | | **-** | **-** | **-** | **-** | **-** | **-** |
| **Proceeds Available for Next Priority of Creditors** | | | | | | **$ 20** | **$ 20** |

18-50757-amk   Doc 2661-6   FILED 05/17/19   ENTERED 05/17/19 16:18:10   Page 15 of 23

# VI. LIQUIDATION ANALYSIS RESULTS (continued)

**Estimated Proceeds Generated From Asset Liquidation at FirstEnergy Generation Mansfield Unit 1 Corp.**

*In $US Millions*

| Assets | Notes | Liquidation Balance | Potential Recovery Recovery Estimate % Low | High | Recovery Estimate $ Low | High |
|---|---|---|---|---|---|---|
| **_Gross Liquidation Proceeds:_** | | | | | | |
| Cash | [1] | - | - | - | - | - |
| Accounts Receivable | [2] | - | - | - | - | - |
| Property, Plant, & Equipment | [3] | - | - | - | - | - |
| Collateral | [4] | - | - | - | - | - |
| Retail Book | [5] | - | - | - | - | - |
| Inter-Debtor Claims Recovery | [6] | 902 | 3% | 6% | 26 | 58 |
| FE Non-Debtor Litigation Recovery | [7] | 14 | 25% | 50% | 3 | 7 |
| **Total Assets** | | **915** | **3%** | **7%** | **30** | **65** |

| _Less: Chapter 7 Costs_ | | | Recovery / Rates Low | High | | |
|---|---|---|---|---|---|---|
| Inter-Debtor Superpriority Admin Claim | [8] | | n/a | n/a | - | - |
| Estate Wind-Down Costs | [9] | | n/a | n/a | - | - |
| Trustee Fees | [10] | | 3% | 3% | (0) | (0) |
| **Total Chapter 7 Costs** | | | | | **(0)** | **(0)** |
| Net Proceeds Available to Secured Creditors | | | | | - | - |
| Net Proceeds Available to Other Creditors | | | | | 30 | 64 |
| **Net Liquidation Proceeds Available for Distribution to Creditors** | | | | | **30** | **64** |

**Distribution of Net Liquidation Proceeds to Creditors**

| Ch. 11 Claim Types | Notes | Claims Low | High | Recovery % Low | High | Recovery Estimate $ Low | High |
|---|---|---|---|---|---|---|---|
| Inter-Debtor Superpriority Admin. | [11] | 17 | 20 | 100% | 100% | 20 | 17 |
| **Proceeds Available for Next Priority of Creditors** | | | | | | **9** | **48** |
| **_Less: Secured Claims_** | | | | | | | |
| Secured Claims (E1) | [12] | - | - | - | - | - | - |
| **Proceeds Available for Next Priority of Creditors** | | | | | | **9** | **48** |
| **_Less: Admin / Priority Claims_** | | | | | | | |
| Administrative Claims | | - | - | - | - | - | - |
| Priority Tax Claims | | - | - | - | - | - | - |
| **Total Admin / Priority Claims** | [13] | **-** | **-** | **-** | **-** | **-** | **-** |
| **Proceeds Available for Next Priority of Creditors** | | | | | | **9** | **48** |
| **_Less: General Unsecured Claims_** | | | | | | | |
| Mansfield Certificate Claims (E3) | [15] | 787 | 787 | 1% | 4% | 5 | 31 |
| FGMUC Single-Box Unsecured Claims (E4) | [18] | 14 | 17 | 1% | 4% | 0 | 1 |
| Non-Debtor Affiliate Claims | [19] | 0 | 0 | 1% | 4% | 0 | 0 |
| Mansfield TIA Claim (E5) | [20] | 55 | 444 | 1% | 4% | 3 | 2 |
| Inter-Debtor Prepetition Claims (E7) | [21] | 368 | 368 | 1% | 4% | 2 | 14 |
| **Total Unsecured Claims** | | **1,223** | **1,615** | **1%** | **4%** | **9** | **48** |
| **Proceeds Available for Next Priority of Creditors** | | | | | | **$ -** | **$ -** |

18-50757-amk   Doc 2661-6   FILED 05/17/19   ENTERED 05/17/19 16:18:10   Page 16 of 23

## VI. LIQUIDATION ANALYSIS RESULTS (continued)

**Estimated Proceeds Generated From Asset Liquidation at Norton Energy Storage L.L.C.**

*In $US Millions*

| Assets | Notes | Liquidation Balance | Potential Recovery | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | Recovery Estimate % | | Recovery Estimate $ | |
| | | | Low | High | Low | High |
| **Gross Liquidation Proceeds:** | | | | | | |
| Cash | [1] | - | - | - | - | - |
| Accounts Receivable | [2] | - | - | - | - | - |
| Property, Plant, & Equipment | [3] | TBD | TBD | TBD | TBD | TBD |
| Collateral | [4] | - | - | - | - | - |
| Retail Book | [5] | - | - | - | - | - |
| Inter-Debtor Claims Recovery | [6] | - | - | - | - | - |
| FE Non-Debtor Litigation Recovery | [7] | - | - | - | - | - |
| **Total Assets** | | | - | - | - | - |

| Less: Chapter 7 Costs | Notes | Recovery / Rates | | Low | High |
| --- | --- | --- | --- | --- | --- |
| | | Low | High | | |
| Inter-Debtor Superpriority Admin Claim | [8] | n/a | n/a | - | - |
| Estate Wind-Down Costs | [9] | n/a | n/a | - | - |
| Trustee Fees | [10] | 3% | 3% | - | - |
| **Total Chapter 7 Costs** | | | | - | - |
| Net Proceeds Available to Secured Creditors | | | | - | - |
| Net Proceeds Available to Other Creditors | | | | - | - |
| **Net Liquidation Proceeds Available for Distribution to Creditors** | | | | - | - |

**Distribution of Net Liquidation Proceeds to Creditors**

| Ch. 11 Claim Types | Notes | Claims | | Recovery % | | Recovery Estimate $ | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | Low | High | Low | High | Low | High |
| Inter-Debtor Superpriority Admin. | [11] | - | - | - | - | - | - |
| **Proceeds Available for Next Priority of Creditors** | | | | | | - | - |
| **Less: Secured Claims** | | | | | | | |
| Secured Claims (G1) | [12] | - | - | - | - | - | - |
| **Proceeds Available for Next Priority of Creditors** | | | | | | - | - |
| **Less: Admin / Priority Claims** | | | | | | | |
| Administrative Claims | | - | - | - | - | - | - |
| Priority Tax Claims | | - | - | - | - | - | - |
| **Total Admin / Priority Claims** | [13] | - | - | - | - | - | - |
| **Proceeds Available for Next Priority of Creditors** | | | | | | - | - |
| **Less: General Unsecured Claims** | | | | | | | |
| General Unsecured Claims (G3) | [18] | - | - | - | - | - | - |
| Inter-Debtor Prepetition Claims (G5) | [21] | - | - | - | - | - | - |
| **Total Unsecured Claims** | | - | - | - | - | - | - |
| **Proceeds Available for Next Priority of Creditors** | | | | | | $ - | $ - |

## VII. NOTES FOR PROCEEDS AVAILABLE FOR DISTRIBUTION

### Note [1] – Cash and Cash Equivalents

Cash and cash equivalents at each Debtor entity were estimated using the Projections as of the Deactivation Date. All estimated cash balances are assumed to be 100% recoverable in both the "High" and "Low" liquidation recovery scenarios. The FENOC cash balance as of the Deactivation Date is forecast to be $0 given the fact that FENOC is a "net neutral" cash operator (e.g., all cash is expected to be utilized to satisfy liabilities arising in chapter 7 as of the Deactivation Date). The cash balance at FirstEnergy Aircraft Leasing Corp. ("FEALC") is related to the previous sale of an aircraft asset to FE Corp. The ending proceeds available for creditors at FEALC are assumed to be distributed to FES creditors as there are no estimated allowed claims at FEALC.

### Note [2] – Accounts Receivable, Net

Accounts receivable balances (exclusive of intercompany balances) primarily consist of (i) Retail Book customer receivables at FES[10] and (ii) PJM receivables at FES[11]. Both were estimated using the Projections. Retail Book customer receivables are assumed to recover 80% and 90% in the "Low" and "High" recovery scenarios, respectively. These assumed recovery rates are based on the Debtors' ability to collect on accounts receivable, taking into consideration the potential effect a hypothetical chapter 7 case may have on customers' willingness to pay amounts owed[12]. PJM receivables are assumed to recover 100% in both the "High" and "Low" recovery scenarios.

### Note [3] – Property, Plant, & Equipment ("PP&E")

PP&E of the Debtors consists primarily of generation plant assets of FG and NG. The Liquidation Analysis assumes that the Trustee would attempt to sell or otherwise monetize the assets owned by the Debtors to one or multiple buyers, which may include (i) sales of logical asset groups, (ii) sales of major generation facilities with associated assets, (iii) sales on a going-concern basis, or (iv) other sales of assets on a piecemeal basis.

After review of the assets, the Debtors and their advisors concluded that the forced sale of the Debtors' PP&E in a compressed timeframe that would likely occur during a chapter 7 liquidation would result in a valuation discount relative to "fair value." Specifically, the Liquidation Analysis provides for the Liquidation Balance of the Debtors' assets as follows:

- FG: The PP&E Liquidation Balance at FG consists of:

  - The estimated fair value of the Fossil Plants (Mansfield and Sammis) assume they are deactivated in accordance with the deactivation notice schedule filed by the Debtors on August 29, 2018. The Liquidation Analysis assumes the Trustee would run an expedited sales process that would return distressed recoveries of 65% and 75% in the "Low" and "High" recovery scenarios, respectively, as compared to the value in the Plan, with the buyer or buyers assuming all environmental liabilities associated with the Fossil Plants.;
  - Cash realized from previously (or soon to be) executed FG asset sales; and[13]

---

[10] As of the Asset Sale Date.

[11] As of the Deactivation Date.

[12] The Retail Book serves over 900,000 individual customers making effective collection efforts difficult.

[13] Including Bayshore (~$5 million), Burger (~$12 million) and West Lorain (~$144 million).

18

- Estimated insurance proceeds of approximately $38 million relating to the Mansfield Unit 1 & 2 fire event, in accordance with the Plan Settlement.

- NG: The PP&E liquidation balance at NG consists of:

  - That certain replacement steam generator at Beaver Valley with an estimated liquidation value of approximately $100 million; and

  - Estimated insurance proceeds of approximately $38 million relating to the Mansfield Unit 1 & 2 fire event, in accordance with the Plan Settlement.

- FENOC: PP&E (e.g., uranium, enriched uranium, etc.) as of the Deactivation Date is assumed to be $0 as all uranium feed is forecast to be utilized during the Deactivation Period.

- Norton: The Debtors are in the process of obtaining a third party appraisal for the Norton property. The Debtors do not believe the results of the appraisal will have any material impact on the conclusions reached in the Liquidation Analysis.

**Note [4] – Collateral**

Collateral liquidation balance consists of cash collateral held by third parties as adequate assurance FES will continue to perform under various retail, hedging, and supplier obligations. The collateral balance was forecast using the Projections as of the Asset Sale Date. Collateral is assumed to recover 90% and 100% in the "Low" and "High" recovery scenarios, respectively.

**Note [5] – Retail Book**

The Liquidation Analysis assumes the Trustee pursues an expedited sales process to monetize the value of the Retail Book. The Liquidation Balance represents the estimated, non-discounted, future cash flows of the Retail Book based on committed load as of September 2018 and energy pricing as of December 2018. Due to the assumed expedited nature of the sales process, the Retail Book is assumed to recover 80% and 90% of the mark-to-market value in the "Low" and "High" recovery scenarios, respectively.

**Note [6] – Inter-Debtor Claims Recovery**

Inter-Debtor Claims Recovery primarily consist of:

- Recoveries on chapter 11 prepetition claims by and among various Debtors. The Liquidation Analysis assumes all chapter 11 Inter-Debtor prepetition claims are allowed in the amounts set forth in the Plan, in accordance with the Plan Settlement;

- Recoveries on estimated chapter 11 postpetition claims by and among various Debtors. The Liquidation Analysis assumes all estimated chapter 11 Inter-Debtor postpetition claims are allowed in the amounts set forth in the Plan, in accordance with the Plan Settlement; and

- The Liquidation Analysis assumes that the Trustee amends those certain Power Purchase Agreements (the "Inter-Debtor PPA's") by and among FES/FG and FES/NG as of the Conversion Date, such that FG and NG become responsible for any profit and/or loss each entity would receive assuming they were selling their energy output to PJM directly (and paying their own costs), instead of to FES. The FES/FG balance following the Conversion Date was forecast using the Projections as of the Asset Sale Date. The

19

18-50757-amk    Doc 2661-6    FILED 05/17/19    ENTERED 05/17/19 16:18:10    Page 19 of 23

FES/NG balance following the Conversion Date was forecast using the Projections as of the Deactivation Date.

**Note [7] – FE Non-Debtor Litigation Recovery**

The Liquidation Analysis assumes that, upon conversion of the chapter 11 Cases to chapter 7 cases, the FE Non-Debtor Parties would exercise their termination rights under the FE Settlement, and the mutual releases granted between and among the parties to the FE Settlement Agreement would be automatically revoked. Accordingly, the Debtors' estates would no longer be entitled to the direct consideration and waiver of claims provided by the FE Non-Debtor Parties under the FE Settlement. In this scenario, the Trustee would be entitled to pursue Estate-owned claims and causes of action against the FE Non-Debtor Parties, and the FE Non-Debtor Parties would be entitled to assert certain claims against the Debtors.

Taking into account the strengths and weaknesses of the potential claims and causes of action against the FE Non-Debtor Parties and the claims asserted by such parties against the Debtors, as well as the substantial risks, costs and time delays associated with litigating these matters, the Litigation Analysis assumes that the Trustee will be able to: (a) recover between 25% and 50% of the aggregate direct consideration received by the Debtors under the FE Settlement; and (b) obtain orders of the bankruptcy court disallowing between 25% and 50% of the claims asserted by the FE Non-Debtor Parties against the Debtors. The Liquidation Analysis assumes litigation would occur over an eighteen month period at a cost of approximately $55 million.

Additionally, the Liquidation Analysis assumes that the Trustee will reach a settlement and compromise of the various inter-Debtor issues on terms substantially similar to the Plan Settlement. Accordingly, for purposes of the Liquidation Analysis, the terms of the Plan Settlement have been incorporated, including without limitation, the allocation of the proceeds of any claims and causes of action against the FE Non-Debtor Parties, and the treatment of inter-Debtor claims.

**VIII. CHAPTER 7 CLAIMS**

**Note [8] – Inter-Debtor Superpriority Administrative Claims**

See Note 6 above for explanation of this claim type.

**Note [9] – Estate Wind Down Costs**

Estate wind down costs primarily consist of estimated liabilities as of the Deactivation Date relating to: (i) NDT shortfall funding (~$67 million); (ii) spent fuel management true-up required to facilitate the sale of the Nuclear Plants (~$48 million);[14](iii) certain nuclear employee (KERP, severance, etc.) amounts forecast to be outstanding as of the Deactivation Date (~$78 million); and (iv) accrued but unpaid chapter 7 professional fees (~$3 million).

**Note [10] – Trustee Fees**

In a chapter 7 liquidation, the Bankruptcy Court may allow reasonable compensation for the Trustee's services not to exceed 3% of such proceeds greater than $1 million, upon all proceeds disbursed or turned over in the case by the trustee to parties in interest. Chapter 7 trustee fees were

---

[14]The Liquidation Analysis assumes that the Trustee will be required to pay a "purchaser" of the Nuclear Plants the difference between (i) the total forecast spent fuel costs after the Deactivation Date and (ii) the anticipated amount of reimbursement from the US Department of Energy ("DOE") for the same.

20

estimated at 3% of gross liquidation proceeds, excluding (i) recoveries related to cash and cash equivalents available to the Trustee as of the Conversion Date and (ii) recoveries on Inter-Debtor Claims.

## IX. CHAPTER 11 CLAIMS

### Note [11] – Inter-Debtor Superpriority Admin.

See Note 6 above for explanation of this claim type.

### Note [12] – Secured Claims

Secured claim amounts primarily consist of:

- $700[15] million revolving credit facility provided by FE Corp. to FES, as borrower, and NG and FG as secured guarantors;[16]
- Approximately $356 million in outstanding principal and unpaid interest of fixed-rate pollution control revenue notes supported by first mortgage bonds issued by FG; and
- Approximately $333 million in outstanding principal and unpaid interest of fixed-rate pollution control revenue notes supported by first mortgage bonds issued by NG.

FG and NG have entered upstream guarantees of certain of FES's indebtedness, and FES has entered downstream guarantees of certain indebtedness of each of FG and NG. These guarantees cover, among other things, the pollution control notes referenced above. The guarantees, however, are unsecured obligations of the applicable guarantor.

### Note [13] – Chapter 11 Administrative and Priority Claims

Chapter 11 Administrative and Priority claims primarily consist of:

- Approximately $155 million of post-petition trade payables, payroll, and related accruals were estimated to remain outstanding at the Conversion Date;
- Approximately $10 million of postpetition chapter 11 professional fees estimated to remain outstanding at the Conversion Date;
- Approximately $34 million of priority tax claims estimated to remain outstanding at the Conversion Date; and
- Approximately $15 million of prepetition 503(b)(9) claims were estimated to remain outstanding at the Conversion Date.

Estimated chapter 11 Administrative and Priority Claims were risk adjusted 10% (up and down) in the "Low" and "High" recovery scenarios to account for the potential that the Projections used to develop the estimates may be different than actual results.

---

[15] The Liquidation Analysis assumes certain of those claims by Non-Debtor Affiliates waived per the FE Settlement Agreement would ultimately be allowed in a hypothetical chapter 7 conversion. The claim amounts referenced in section VI represent the Debtors view of claims by the Non-Debtor Affiliates that would be allowed with a litigation risk haircut of 25% and 50% in the "Low" and "High" recovery scenarios, respectively.

[16] The secured revolving credit facility is $500 million for general purposes and $200 million for surety support. The secured revolving credit facility is secured by first mortgage bonds issued by FG and NG, which grant a first lien security interest in substantially all of the respective property, plant, and equipment of FG and NG, respectively, used and useful in the generation and production of electric energy. In support of the secured revolving credit facility, FG issued $250 million of first mortgage bonds and NG issued $450 million of first mortgage bonds.

## X. UNSECURED CLAIMS

### Note [14] – Unsecured PCN / FES Note Claims

Aggregate Unsecured PCN / FES Note Claims of approximately $2.238 billion consisting of

- Approximately $701 million in outstanding principal and interest for the FES senior unsecured notes;
- Approximately $685 million in outstanding principal and interest of unsecured fixed-rate pollution control revenue notes issued by FG that support additional tax-exempt pollution control revenue bonds; and
- Approximately $852 million in outstanding principal and interest of unsecured fixed-rate pollution control revenue notes issued by NG that support tax-exempt pollution control revenue bonds;

### Note [15] – Unsecured Mansfield Certificate Claims

Unsecured Mansfield Certificate Claims represent approximately $787 million in aggregate outstanding principal and interest of Claims evidenced by certain certificates issued in connection with the sale-leaseback transaction for Unit 1 of the Bruce Mansfield Plant;

### Note [16] – Unsecured FE Revolver Claims

Unsecured FE Revolver Claims represent deficiency and guarantee claims that may be asserted by FE Corp. relating to the $700 million secured revolving credit facility referenced in Note [12] above.

### Note [17] – Secured PCN Deficiency Claims

Secured PCN Deficiency Claims represent deficiency claims that may be asserted by Holders of Secured PCN Claims to the extent the value of the collateral securing their claims is insufficient to pay such Claims in full.

### Note [18] – General Unsecured Claims

General Unsecured Claims at each entity primarily consist of:

- FES
  - Contract rejection damage and guarantee claims range of approximately $612 million to $717 million;
  - Third party trade claims range of approximately $24 million to $30 million; and
  - Litigation claims range of approximately $27 million to $33 million.
- FG[17]
  - Contract rejection damage claims range of approximately $270 million to $559 million;
  - Third party trade claims range of approximately $21 million to $26 million; and
  - Litigation claims range of approximately $41 million to $50 million.
- NG

---

[17] The Liquidation Analysis assumes there will be sufficient cash from the posted cash collateral related to the Hollow Rock remediation site, in addition to the sureties drawing on the FE Corp. Credit Support facility for the Little Blue Run and Hatfield surety bonds to fund the remediation costs associated with such sites.

- • Total claims of approximately $74 million to $116 million
  - ▪ FENOC
    - • Contract rejection damage claims range of approximately range of $248 million to $303 million; and
    - • Third party trade claims range of approximately $86 million to $105 million.
  - ▪ FGMUC
    - • Litigation claims range of approximately $14 million to $17 million.

Certain of these General Unsecured Claims were risk adjusted (up and down) in the "High" and "Low" recovery scenarios based on the Debtors view of their potential variability.

### Note [19] – Non-Debtor Affiliate Claims

Non-Debtor Affiliate Claims primarily consist of the following undiscounted claim amounts:

- ▪ FES
  - • Note claim of approximately $102 million;
  - • Operating related claims of approximately $8 million; and
  - • Employee liabilities and other miscellaneous claims of approximately $3 million.
- ▪ FG
  - • Rail settlement guarantee claim of approximately $72 million;
  - • Operating related claims of approximately $12 million; and
  - • Employee liabilities and other miscellaneous claims of approximately $19 million.
- ▪ NG
  - • Operating related claims of approximately $3 million.
- ▪ FENOC
  - • Operating related claims of approximately $10 million; and
  - • Employee liabilities and other miscellaneous claims of approximately $37 million.
- ▪ FGMUC
  - • Miscellaneous claims less than $1 million.

### Note [20] – Mansfield TIA Claim

Mansfield TIA Claim amount represents an estimated range of allowed claims to be asserted at FES, FG and FGMUC.

### Note [21] – Inter-Debtor Prepetition Claims

See Note 6 above for explanation of this claim type.

18-50757-amk    Doc 2661-6    FILED 05/17/19    ENTERED 05/17/19 16:18:10    Page 23 of 23