UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>FIRSTENERGY SOLUTIONS CORP., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-50757<br>(Jointly Administered)<br><br>Hon. Judge Alan M. Koschik |

**DEBTORS' FIFTH MOTION FOR ENTRY OF AN ORDER EXTENDING THE EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (the "Motion") for the entry of an order (the "Order"), substantially in the form attached hereto as Exhibit A, extending the periods during which the Debtors have the exclusive right to (a) file a chapter 11 plan by 49 days, through and including September 30, 2019 (the "Filing Exclusive Period"), and (b) solicit votes thereon by 54 days, through and including November 30, 2019 (the "Solicitation Exclusive Period," and together with the Filing Exclusive Period, the "Exclusive Periods"). In support of this Motion, the Debtors submit the *Declaration of Charles M. Moore, Chief Restructuring Officer, in Support of the Debtors' Fifth Motion for Entry of an Order Extending the Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code* (the "Moore Declaration"). In further support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: FE Aircraft Leasing Corp. (9245), case no. 18-50759; FirstEnergy Generation, LLC (0561), case no. 18-50762; FirstEnergy Generation Mansfield Unit 1 Corp. (5914), case no. 18-50763; FirstEnergy Nuclear Generation, LLC (6394), case no. 18-50760; FirstEnergy Nuclear Operating Company (1483), case no. 18-50761; FirstEnergy Solutions Corp. (0186), and Norton Energy Storage L.L.C. (6928), case no. 18-50764. The Debtors' address is: 341 White Pond Dr., Akron, OH 44320.

**PRELIMINARY STATEMENT**

1. On March 31, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition with the United States Bankruptcy Court for the Northern District of Ohio (the "Court"). The Debtors' chapter 11 cases (the "Chapter 11 Cases") constitute one of the largest and most complex operating company chapter 11 filings ever in the Northern District of Ohio.

2. In the approximately two months following the entry of the *Order Granting a Fourth Extension of the Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code* [Docket No. 2591] (the "Fourth Extension Order"), the Debtors have continued their efforts on multiple work streams, including (a) maintaining their operations; (b) continuing efforts to maximize liquidity and improve cash flow; and (c) working toward confirmation of a plan of reorganization.

3. Most significantly, as outlined in further detail below, the Debtors negotiated, drafted and filed an amended plan and corresponding disclosure statement. The Court entered the *Order (I) Approving Disclosure Statement, (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Debtors' Joint Chapter 11 Plan, III Approving the Form of Ballots, (IV) Scheduling a Hearing on Confirmation of the Plan, (V) Approving Procedures for Notice of the Confirmation Hearing and For Filing Objections to Confirmation of the Plan and (VI) Granting Related Relief* [Docket No. 2714] (the "Disclosure Statement Order") approving the *Disclosure Statement for the Fifth Amended Joint Plan of Reorganization of FirstEnergy Solutions Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 2661] (the "Disclosure Statement") on May 29, 2019. The Debtors are in the midst of soliciting votes on the Fifth Amended Joint Plan of Reorganization [Docket No. 2658] (the "Plan") pursuant to the solicitation procedures outlined in the Disclosure Statement Order, and a

hearing on confirmation of the Plan (the "Confirmation Hearing") is scheduled for August 20, 2019.

4. In short, the Debtors are at the cusp of their ultimate goal, confirmation of a plan of reorganization. The Debtors' continued work on maintaining stable operations and maximizing liquidity have facilitated this progress. The Debtors are seeking a further extension of the Exclusive Periods because additional amendments to the Plan may be necessary prior to confirmation in order to resolve formal and informal objections to confirmation of the Plan, and/or to resolve any concerns raised by the Court in connection with confirmation of the Plan. Currently, the exclusive period for filing a plan of reorganization expires on August 12, eight days before the Confirmation Hearing. Therefore, the Debtors believe a further extension of the Exclusive Periods is warranted and should be granted.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

6. Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The bases for the relief requested herein are section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## RELIEF REQUESTED

8. The Debtors seek entry of an Order extending (a) the Filing Exclusive Period by 49 days through and including September 30, 2019 and (b) the Solicitation Exclusive Period by 54 days through and including November 30, 2019.

## BACKGROUND

9. The Debtors continue to operate their businesses and manage their property as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee or examiner has been appointed in these cases. On April 11, 2018, the United States Trustee for the Northern District of Ohio (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to Bankruptcy Code section 1102. The Debtors filed motions to extend the exclusive period for filing a chapter 11 plan and disclosure statement on June 27, 2018 [Docket No. 850] (the "First Extension Motion"), on October 23, 2018 [Docket No. 1571] (the "Second Extension Motion"), on January 15, 2019 (the "Third Extension Motion") [Docket No. 1967], and on April 15, 2019 (the "Fourth Extension Motion" and together with the First Extension Motion, Second Extension Motion and Third Extension Motion, the "Prior Extension Motions") [Docket No. 2512]. The Order [Docket No. 988] (the "First Extension Order") granting the First Extension Motion was entered July 18, 2018 and extended the Filing Exclusive Period to November 26, 2018 and the Soliciting Exclusive Period to January 25, 2019. The Order [Docket No. 1726] (the "Second Extension Order") was entered on November 20, 2018 granting the Second Extension Motion and extended the Filing Exclusive Period to February 25, 2019 and the Soliciting Exclusive Period to April 25, 2019. The Order [Docket No. 2084] (the "Third Extension Order") was entered on February 7, 2019, under which the Filing Exclusive Period was extended to May 13, 2019 and the Soliciting Exclusive Period to July 9, 2019, without prejudice to the Debtors' right to seek further extensions. The Fourth Extension Order was entered May 5, 2019, under which the Filing Exclusive Period was extended to August 12, 2019 and the Solicitation Exclusive Period to October 7, 2019.

10. A more detailed discussion of the Debtors' background, including their business operations and capital structure, is set forth in the *Declaration of Donald R. Schneider, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 55].

### A. Maintaining Stable Operations

11. Since entry of the Fourth Extension Order, the Debtors have continued to work to maintain stable operations. These efforts have included:

12. ***Customer Relations.*** Since the Petition Date, the Debtors have worked to preserve customer relations and to ensure stability for their customers ("Customers"). As of March of this year, FES served approximately 887,950 Customers in 22 utility services territories across Illinois, Maryland, Michigan, Ohio, Pennsylvania and New Jersey. The Debtors have continued to spend time addressing Customers' concerns and calls since entry of the Fourth Extension Order.

13. ***Vendor Relations.*** Maintaining relations with vendors is crucial to the Debtors' ability to obtain essential goods and services necessary to continue operating their businesses, including: (a) vendors that provide goods and services during planned maintenance outages; (b) vendors that provide services and related goods that are highly specialized and/or closely integrated with the Debtors' business operations and customer relationships; (c) sole source or geographically limited providers of critical goods; (d) vendors that provide goods and services related to regulatory compliance obligations; and (e) vendors that provide goods and services related to the Debtors' nuclear power plants (each a "Critical Vendor"). This also allows the Debtors to ensure continued compliance with all applicable state and federal laws and regulations. The Debtors have continued to work with Critical Vendors since the entry of the Fourth Extension Order.

14. Since the Petition Date, the Debtors have maintained a matrix summarizing: (a) the name of each Critical Vendor that receives a payment (or payments) under the Critical Vendors Order (as defined below); (b) the total amount paid to each Critical Vendor; and (c) the nature of the goods and/or services provided by each Critical Vendor to whom a payment is made (the "<u>Critical Vendor Summary</u>"). The Debtors have provided the Critical Vendor Summary to the U.S. Trustee, counsel to the Committee and counsel to the Debtors' creditor groups. The Debtors have also provided the U.S. Trustee, counsel to the creditor groups and counsel to the Committee with a summary each calendar month of all payments made on account of the *Final Order Authorizing the Debtors to (A) Grant Administrative Expense Priority to all Undisputed Obligations for Goods and Services Ordered Prepetition and Delivered Postpetition and Satisfy Such Obligations in the Ordinary Course of Business and (B) Pay Prepetition Claims of Shippers, Warehousemen, and Materialmen* [Docket No. 486].

15. ***Separation from Parent Company.*** As outlined in further detail in the Fourth Extension Motion, the Debtors have undertaken multiple work streams to effectuate the separation of the Debtors from parent company, FirstEnergy Corp. ("<u>FE Corp.</u>") and other non-Debtor affiliates (together with FE Corp., the "<u>FE Non-Debtor Parties</u>"). These separation efforts have included, among other things: (a) ongoing efforts to create an independent IT system and infrastructure; (b) ongoing efforts to set up necessary corporate and administrative services (the "<u>HR Services</u>") independent of the FE Non-Debtor Parties, including separate employee benefit plans for the Debtors; and (c) efforts to obtain the necessary regulatory approvals for separation of the Debtors from the FE Non-Debtor Parties. Specifically, in order to receive regulatory approval for this separation, the Debtors submitted a license transfer application to the

6

Nuclear Regulatory Commission (the "NRC" and the "NRC LTA") in April and submitted a supplement to the NRC LTA in June.

16. ***Pleasants Power Station.*** As outlined in further detail in certain of the Prior Extension Motions, the transfer of the plant located in Willow Island, West Virginia (the "Pleasants Power Station") from AE Supply to the Debtors was a key term of the Debtors' settlement with the FE Non-Debtor Parties and certain other parties. The transfer of the Pleasants Power Station is being conducted under the terms of the Pleasants Asset Purchase Agreement (the "Pleasants APA"), and the Court entered an order providing for the Debtors to effectuate these terms on March 7, 2019 [Docket No. 2217] (the "Pleasants Order"). Since entry of the Pleasants Order and the Fourth Extension Order, the Debtors have continued to work towards the successful transfer of the Pleasants Power Station, including completing diligence necessary for the transfer of certain licensing and real estate.

### B. Maximizing Liquidity and Improving Cash Flow

17. Since entry of the Fourth Extension Order, the Debtors have continued to take steps to maximize their liquidity and improve cash flow for the benefit of the Debtors' estates and, by extension, the Debtors' creditors. Efforts to do this have included: (a) filing omnibus objections to proofs of claim; and (b) seeking and obtaining approval to either reject or assume various executory contracts and unexpired leases.

18. ***Omnibus Objections to Proofs of Claim.*** As outlined in further detail in the Second Extension Motion, on August 22, 2018, the Court entered an order establishing October 15, 2018 as the bar date for filing proofs of claim for nongovernmental units, as well as for filing proofs of claim for governmental units and further establishing deadlines for filing proofs of claim by claimants affected by any amendments to the Debtors' schedules and for damages resulting from the rejection of any executory contract or unexpired lease of the Debtors. More

than 1000 proofs of claim have been filed against the Debtors. Since entry of the Fourth Extension Order, the Debtors have continued to address proofs of claim that have been filed, including by objecting to certain proofs of claim. Specifically, since entry of the Fourth Extension Order, the Debtors have filed additional omnibus objections to certain proofs of claim (the "Objections to Proofs of Claim")[2] and the Court has entered corresponding orders to several of the Objections to Proofs of Claim.[3] The Debtors have also filed, and the Court has entered orders, approving stipulations outlining settlements the Debtors have reached with regards to certain proofs of claim.[4]

19. ***Seeking and Obtaining Approval to Either Reject or Assume Various Executory Contracts.*** Since the entry of the Fourth Extension Order, the Debtors have continued to analyze executory contracts and leases and determine whether these contracts are beneficial or burdensome to the Debtors' estates. As outlined above, in the months since the Fourth Extension Order, the Debtors also negotiated and entered into settlement stipulations addressing proofs of claim, several of which covered the rejection of various executory contracts or leases.

20. Additionally, as outlined in further detail in the Prior Extension Motions, from the outset of these Chapter 11 Cases the Debtors have worked to increase liquidity by seeking to reject various power purchase agreements ("PPAs") to which they are parties.[5] After a hearing

---

[2] *See Debtors' Seventeenth Omnibus Objection to Certain Proofs of Claim* [Docket No. 2704]; and *Debtors' Eighteenth Omnibus Objection to Certain Proofs of Claim* [Docket No. 2707].
[3] *See Order Sustaining Debtors' Fifteenth Omnibus Objection to Certain Proofs of Claim* [Docket No. 2692]; *Order Sustaining Debtors' Sixteenth Omnibus Objection to Certain Proofs of Claim* [Docket No. 2695]; *Supplemental Order Sustaining Debtors' Sixteenth Omnibus Objection to Certain Proofs of Claim* [Docket No. 2788]; *Order Sustaining Debtors' Seventeenth Omnibus Objection to Certain Proofs of Claim* [Docket No. 2817]; and *Order Sustaining Debtors' Eighteenth Omnibus Objection to Certain Proofs of Claim* [Docket No. 2818].
[4] *See Order Granting Motion of Debtors to Approve Stipulation Among FirstEnergy Nuclear Operating Company and Traxys North America, LLC Regarding Claims Associated With That Certain Uranium Concentrates Sales Agreement* [Docket No. 2693]; *Proposed Stipulation and Order Between the Debtors and Pension Benefit Guaranty Corporation* [Docket No. 2728]; *Proposed Stipulated Order* [Docket No. 2784].
[5] *See e.g. Motion to Reject Lease or Executory Contract/Motion for Entry of an Order Authorizing FirstEnergy Solutions Corp. and FirstEnergy Generation, LLC to Reject a Certain Multi-Party Intercompany Power Purchase Agreement with the Ohio Valley Electric Corporation as of the Petition Date* [Docket No. 44] (the "OVEC

on the merits of the PPA Rejection Motions on July 31, 2018, the Court entered orders granting the rejections requested in the motions (the "Rejection Orders"). On August 31, 2018, the Bankruptcy Court certified the Rejection Orders for direct appeal to the Sixth Circuit. Since entry of the Fourth Extension Order, briefing concluded in connection with the pending appeals and the Debtors prepared for oral argument in front of the Sixth Circuit. Oral argument took place on June 26, 2019, and the Debtors await a decision from the Sixth Circuit. Going forward, the Debtors will also need to address reconciliation of the remaining damages claims arising from the PPAs which have not already been settled.

### C. Developing, Filing and Seeking Approval of an Amended Plan and Disclosure Statement

21. Both prior to and throughout these Chapter 11 Cases, the Debtors have worked extensively with parties in interest on a path towards a successful reorganization. As outlined in the First Extension Motion, the Second Extension Motion, the Third Extension Motion and the Fourth Extension Motion, this work has led to the Debtors' entry into various agreements with these parties that paved the way towards a plan of reorganization supported by the Debtors' major creditor groups. This continuous effort on the part of the Debtors and their advisors has led the Debtors to where they are today – on the verge of confirming a plan of reorganization.

22. ***The Plan and Disclosure Statement.*** The Debtors worked diligently to prepare the amended Plan and Disclosure Statement following the Court's ruling at a hearing on April 4, 2019 that certain non-consensual third-party releases contained in the proposed plan were impermissible.[6] As outlined in further detail in the Third Extension Motion, following the

---

Rejection Motion"); *Motion to Reject Lease or Executory Contract/Motion for Entry of an Order Authorizing FirstEnergy Solutions Corp. and FirstEnergy Generation, LLC to Reject Certain Energy Contracts as of the Petition Date* [Docket No. 45 (the "Energy Contracts Rejection Motion" and, collectively with the OVEC Motion, the "PPA Rejection Motions").

[6] The Court entered the order denying approval of the previous disclosure statement motion on April 11, 2019 [Docket No. 2500].

Court's April 4, 2019 ruling, the Debtors participated in active discussions with their non-Debtor affiliates and their creditor stakeholders to negotiate revisions to the plan and disclosure statement to address the Court's ruling. The Debtors filed the Disclosure Statement and Plan on May 17, 2019 and the Court entered the Disclosure Statement Order on May 29, 2019.

23. Following entry of the Disclosure Statement Order, the Debtors have focused their efforts on confirmation of the Plan, including, but not limited to, (a) preparation of documents necessary for the plan supplement (the "Plan Supplement"); (b) insuring that the solicitation of votes on the Plan occurs in accordance with the terms of the Disclosure Statement Order; and (c) preparation for the Confirmation Hearing. Specifically, as outlined in the Disclosure Statement, the Debtors will file certain documents providing details about implementation of the Plan no later than ten days prior to the deadline to vote to accept or reject the Plan as set forth in the Disclosure Statement Order. The Debtors are preparing the documents that make up the Plan Supplement, which include, but are not limited to: (a) New Organizational Documents; (b) the list of Assumed Executory Contracts and Unexpired Leases; (c) the list of Assigned Contracts and Unexpired Leases; (d) the list of Rejected Executory Contracts and Unexpired Leases; (e) a list of retained Causes of Action; (f) the Plan Administrator Agreement; (g) the Management Incentive Plan and identity of the members of the new board; (h) the Transition Working Group Management Agreement; (i) the Reorganized Debtor Stockholders' Agreement; (j) the New Management Employment Contracts; and (k) the form of Mansfield Unit 1 Transfer Agreement (each as defined in the Plan).

24. The Debtors have also negotiated and entered into multiple stipulations for voting purposes pursuant to Bankruptcy Code Rule 3018(a).[7] In preparation for the Confirmation

---

[7] *See Stipulation and Order Between the Debtors and BNSF Railway Company and Norfolk Southern Railway Company for Voting Purposes Pursuant to Bankruptcy Code Rule 2018(a)* [Docket No. 2782]; *Proposed Stipulation*

Hearing, the Debtors have participated in confirmation discovery, including by producing documents, participating in depositions, and providing diligence information.

25. The Debtors are now in the final, crucial stages of these Chapter 11 Cases. If granted an extension of the Exclusive Periods, the Debtors will continue to work diligently on the solicitation of votes, in preparation for the Confirmation Hearing, and towards confirmation of a revised plan and the successful resolution of these Chapter 11 Cases.

## BASIS FOR RELIEF

26. The Bankruptcy Code vests debtors with the exclusive right to propose a chapter 11 plan for the first 120 days of a chapter 11 case pursuant to section 1121(b). Section 1121(c)(3) further extends the period of exclusivity for an additional 60 days, to an initial maximum of 180 days, where the debtor has filed a chapter 11 plan and is soliciting votes on such plan. "[T]he point of exclusivity is 'to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated.'" *In re Burns & Roe Enters., Inc.*, No. 00-41610 (RG), 2005 WL 6289213, *4 (D.N.J. Nov. 2, 2005) (quoting H.R. Rep. No. 103-835, at 36 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3344). Section 1121(d) of the Bankruptcy Code permits a court to extend a debtor's exclusivity for cause. Specifically, Bankruptcy Code section 1121(d) provides that, upon the debtor's request made within 120 days after the petition date and "after notice and a hearing, the court may for cause…increase the 120-day period or the 180-day period referred to in [Bankruptcy Code section 1121]." 11 U.S.C. § 1121(d). However, section 1121(d)(2) provides that extensions may not be granted beyond a

---

and Order Between the Debtors and Westchester Fire Insurance Company for Voting Purposes Pursuant to Bankruptcy Code Rule 3018(a) [Docket No. 2760]; *Proposed Stipulation and Order Between the Debtors and Ohio Bureau of Workers' Compensation for Voting Purposes Pursuant to Bankruptcy Rule 3018(a)* [Docket No. 2754]; *Proposed Stipulation and Order Between the Debtors and Schwebel Baking Co. for Voting Purposes Pursuant to Bankruptcy Code Rule 3018(a)* [Docket No. 2749]; and *Proposed Stipulation and Order Between the Debtors and the Pension Benefit Guaranty Corporation* [Docket No. 2728].

11

date which is 18 months after the petition date for the filing exclusive period and a date which is 20 months after the petition date for the solicitation exclusive period.

27. Although section 1121(d) does not define "cause," courts have construed the term by examining the underlying legislative history of Bankruptcy Code section 1121(d). *See, e.g., Official Comm. of Unsecured Creditors v. Elder-Beerman Stores, Corp. (In re Elder-Beerman Stores Corp.)*, No. C-3-97-175, 1997 U.S. Dist. Lexis 23785, at *22 & n.11 (S.D. Ohio June 23, 1997); *In re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996); *Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297-98 (W.D. Tenn. 1987). Legislative history indicates that, although the term "cause" is not defined by the Bankruptcy Code, such term should be viewed flexibly "in order to allow the debtor to reach an agreement." H.R. Rep. 95-595, at 232 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6191.

28. In determining whether cause exists, courts look to the totality of circumstances in each case. *See, e.g., First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986); *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997); *In re Express One Int'l Inc.*, 194 B.R. 98, 100-01 (Bankr. E.D. Tex. 1996); *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987); *In re Nicolet, Inc.*, 80 B.R. 733, 741-42 (Bankr. E.D. Pa. 1987). Specifically, the factors that courts look to in determining whether or not cause exists to extend the exclusive periods prescribed in Bankruptcy Code section 1121 include: (a) the size and complexity of the case; (b) the existence of good-faith progress; (c) the necessity of sufficient time to negotiate and prepare adequate information; (d) whether creditors are prejudiced by the extension; (e) whether the debtor is paying its debts as they become due; (f) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (g) whether the debtor has made progress negotiating with creditors; (h) the length of time a case has been

pending; (i) whether the debtor is seeking an extension to pressure creditors; and (j) whether or not unresolved contingencies exist. *See, e.g., In re Crescent Mfg. Co.*, 122 B.R. 979, 982-83 (Bankr. N.D. Ohio 1990); *In re Serv. Merchandise Co.*, 256 B.R. 744, 751-54 (Bankr. M.D. Tenn. 2000); *In re Elder-Beerman Stores Corp*, 1997 U.S. Dist. Lexis 23785 at *14, *18, *26; *In re Grand Traverse Dev, Co. Ltd. P'ship*, 147 B.R. 418, 420 (Bankr. W.D. Mich. 1992).

29. The Debtors respectfully submit that sufficient cause exists pursuant to section 1121(d) to extend the Exclusive Periods as provided herein. Based on the application of these factors to the present case, the Exclusive Periods should be extended as requested by the Debtors.

### A. The Debtors' Chapter 11 Cases Are Large and Complex

30. These Chapter 11 Cases involve multiple Debtor entities that engage in complex operations in a number of heavily-regulated businesses. Further, these Chapter 11 Cases are among the largest chapter 11 cases ever filed in the Northern District of Ohio. As outlined above and in the Prior Extension Motions, the Debtors made great strides during the fifteen months of these Chapter 11 Cases. The Debtors are on the cusp of confirming a plan of reorganization.

31. In addition, this Court and other courts in this Circuit routinely grant lengthy extensions of exclusivity in reorganization cases facing complex issues. *See, e.g., In re Phar-Mor, Inc.*, No. 92-41599 (Bankr. N.D. Ohio) (exclusivity ultimately extended for approximately three years); *In re Revco D.S., Inc.*, Case Nos. 88-51308-1321, 1305, 1761-1812 and 1820 (Bankr. N.D. Ohio) (exclusivity ultimately extended for over two years); *In re The Elder-Beerman Stores Corp.*, No. 95-33643 (S.D. Ohio) (exclusivity ultimately extended for approximately 22 months); *see also In re Energy Future Holdings Corp.*, No. 14-10979 (CSS) (Bankr. D. Del. June 1, 2015) [Docket No. 4634] (granting a third extension for an additional 60 days, following the first two extensions of a total of 300 days); *In re Exide Technologies*, No. 13-

13

11482 (KJC) (Bankr. D. Del. July 1, 2014) [Docket No. 1959] (granting a second extension of 60 days, following an initial extension of approximately 235 days).

### B. The Debtors Have Made Good Faith Progress Toward a Chapter 11 Plan of Reorganization

32. An extension of a debtor's exclusive periods is justified by progress in the resolution of issues facing the debtor's estate. *See*, *e.g.*, *In re Serv. Merchandise Co., Inc.*, 256 B.R. at 753-54; *In re Amko Plastics*, 197 B.R. at 76; *In re McLean Indus., Inc.*, 87 B.R. at 834-35; and *In re Texaco*, *Inc.*, 76 B.R 322, 327 (Bankr. S.D.N.Y. 1987). In the time since the Fourth Extension Order, the Debtors have continued to maintain operations and maximize liquidity and have simultaneously made significant progress towards a plan of reorganization.

33. As described above, the Debtors are working towards a value-maximizing restructuring that incorporates a global resolution of numerous, complex issues and need this further extension in order to achieve confirmation of the Plan. Since the Fourth Extension Order, a hearing on the adequacy of the Disclosure Statement occurred and the Court entered the Disclosure Statement Order approving the Disclosure Statement. Solicitation materials have been distributed in accordance with the Disclosure Statement Order. In accordance with the Court's order approving a discovery schedule for confirmation, discovery in connection with confirmation of the Plan has commenced, documents have been produced and depositions have begun. The Debtors have also begun the preparation of documents for the Plan Supplement. Accordingly, the Debtors are seeking a further extension of the Exclusive Periods to enable them to attain confirmation of the Plan.

### C. An Extension of the Exclusive Periods Is Necessary

34. As outlined in further detail above and in the Third Extension Motion, the Debtors worked diligently to prepare the amended Plan and Disclosure Statement following the Court's

14

ruling at the April 4, 2019 hearing. The remaining work towards seeking confirmation of the amended Plan is crucial to the success of these Chapter 11 Cases, and the Debtors respectfully submit that a further extension of the Exclusive Periods should be granted in order to provide the Debtors with additional time to negotiate and file any necessary amendments to the Plan and to solicit votes with respect to the Plan, including as such Plan may be amended.

### D. An Extension of the Exclusive Periods Will Not Prejudice Creditors

35. The Debtors are requesting an extension of the Exclusive Periods so that they can continue their efforts towards a value-maximizing plan of reorganization. Further, throughout these Chapter 11 Cases, the Debtors have shown a consistent ability to work with their parties in interest, including in the negotiation of the Restructuring Support Agreement, the amended Plan and the amended Disclosure Statement. This extension is not intended to pressure the Debtors' creditors but instead is necessary to protect and consider the respective interests of the varying creditor and stakeholder constituencies. To the extent feasible and necessary, the Debtors will continue to hold and foster productive discussions with these parties in interest as they have done to date. These discussions have included, and will continue to include, efforts to provide diligence information to and work with certain governmental agencies and non-governmental entities, in an effort to lay the groundwork for settlement discussions in advance of confirmation. In addition, the Debtors continue to maintain significant cash balances during the extension, so the requested extension will not result in a deterioration of value available to their creditors. Accordingly, the relief requested in this Motion is without prejudice to the Debtors' creditors but will instead benefit the Debtors' estates, their creditors and all other key stakeholders.

### E. The Debtors Are Paying Their Bills as They Come Due

36. Since the Petition Date, the Debtors have paid all their debts as they have come due postpetition in the ordinary course of business.

### F. This is The Debtors' Final Extension Request

37. While the Chapter 11 Cases are not in their infancy, the Debtors' request for an additional extension of the Exclusive Periods is only for an additional 49 and 54 days – the time necessary for the Debtors to achieve confirmation of a plan of reorganization. As outlined above, the Debtors have demonstrated significant progress and continue to work diligently towards a plan of reorganization. The Debtors are doing everything that they should be doing as chapter 11 debtors in possession to facilitate a successful conclusion to these Chapter 11 Cases and should be granted an extension.

### G. The Debtors Are Continuing to Address Open Contingencies

38. The Debtors have worked diligently towards a successful reorganization by simultaneously engaging in productive negotiations with various parties in interest, maintaining operations and working to increase liquidity. Through these efforts, the Debtors have successfully positioned themselves to engage in productive negotiations with such parties in interest on creating a value-maximizing plan of reorganization. Accordingly, the Exclusive Periods should be extended. The requested extension will not prejudice the legitimate interests of the Debtors' creditors and will afford the Debtors a meaningful opportunity to pursue a plan of reorganization.

### NOTICE

39. Notice of this Motion has been served on each party or entity on the General Service List (as defined in the *Amended Order, Pursuant to Sections 102 and 105(a) of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6007, 7016, 9013 and 9014 and Local Bankruptcy Rules Establishing: (I) Omnibus Hearing Dates; and (II) Certain Case Management Procedures* [Docket No. 280]). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court (a) enter the Order substantially in the form attached hereto as <u>Exhibit A</u> and (b) grant such other and further relief as the Court may deem proper.

[*Remainder of page intentionally left blank.*]

Dated: July 2, 2019            Respectfully submitted,

*/s/ Kate M. Bradley*
**BROUSE MCDOWELL LPA**
Marc B. Merklin (0018195)
Kate M. Bradley (0074206)
Bridget A. Franklin (0083987)
388 South Main Street, Suite 500
Akron, OH 44311-4407
Telephone: (330) 535-5711
Facsimile: (330) 253-8601
mmerklin@brouse.com
kbradley@brouse.com
bfranklin@brouse.com

- and -

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira Dizengoff (admitted *pro hac vice*)
Lisa Beckerman (admitted *pro hac vice*)
Brad Kahn (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
lbeckerman@akingump.com
bkahn@akingump.com

- and -

Scott Alberino (admitted *pro hac vice*)
Kate Doorley (admitted *pro hac vice*)
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
salberino@akingump.com
kdoorley@akingump.com

*Counsel for Debtors and Debtors in Possession*