# Exhibit K

Transition Working Group Management Agreement

# TRANSITION WORKING GROUP MANAGEMENT AGREEMENT

TRANSITION WORKING GROUP MANAGEMENT AGREEMENT (this "Agreement") entered into and effective as of the Agreement Effective Date (defined below), among (i) [_____][1] (the "TWG Member"), and (ii) FirstEnergy Solutions Corp. ("FES"), FirstEnergy Generation, LLC, FirstEnergy Generation Mansfield Unit 1 Corp., FirstEnergy Nuclear Generation, LLC, FirstEnergy Nuclear Operating Company, FE Aircraft Leasing Corp. and Norton Energy Storage L.L.C. (collectively, the "Debtors").

WHEREAS, on March 31, 2018, the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code, 11 U.S.C. § § 101 et seq. (the "Bankruptcy Code"), which are being jointly administered under the caption *In re FirstEnergy Solutions Corp., et al.* Case No. 18-50757 9AMK) (the "Chapter 11 Cases") in the United States Bankruptcy Court for the Northern District of Ohio (the "Bankruptcy Court");

WHEREAS, on January 23, 2019, the Debtors, the Ad Hoc Noteholder Group, the Mansfield Certificateholders Group, the FES Creditor Group, and the Committee entered into that certain Restructuring Support Agreement (as amended from time to time, the "RSA"). Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the RSA;

WHEREAS, on May 29, 2019, the Bankruptcy Court approved the Disclosure Statement (the "Disclosure Statement") for the Fifth Amended Joint Plan of Reorganization of FirstEnergy Solutions Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code (as may be amended or supplemented, the "Plan");

WHEREAS, section 5.02(a)(xii)(A) of the RSA provides for the establishment of a committee comprised of (i) John Kiani, (ii) the president of FES, (iii) a member of management of the Debtors designated by the Debtors, and (iv) an individual designated by the Ad Hoc Noteholder Group and reasonably acceptable to the Debtors (the "Transition Working Group") and that the Debtors shall consult in good faith with the Transition Working Group regarding, among other things, all material business plans and strategic initiatives relating to the operation of the Debtors' generating assets and management of the Debtors' retail business;

WHEREAS, the Ad Hoc Noteholder Group designated John W. Pitesa as their designee to serve on the Transition Working Group;

WHEREAS, the Debtors designated [__] as their management designee to serve on the Transition Working Group;

NOW THEREFORE, in order to effect the foregoing, the Debtors and the TWG Member wish to enter into a consulting agreement upon the terms and subject to the conditions set forth below. Accordingly, the parties agree as follows:

1. **Engagement; Term.** The Debtors engage the TWG Member, and the TWG Member accepts such engagement and agrees to serve as consultant to the Debtors, upon the terms and conditions hereinafter set forth, for a term commencing on date the Bankruptcy Court enters an order confirming the Plan (the "Agreement Effective Date") and expiring as of the earliest of (a) the effective date of the Plan, (b) the date the RSA is terminated by either the Requisite Supporting Parties or the Debtors, and (c) the date the TWG Member is no longer a member of the Transition

---

[1] NTD: Debtors to sign separate agreements with John Kiani and with John W. Pitesa, as nominee for the Ad Hoc Noteholder Group.

Working Group (the "Termination Date").  Notwithstanding the foregoing, the TWG Member may terminate this Agreement at any time for any reason or no reason upon fourteen (14) days' written notice to the other parties hereto.  The Debtors may also terminate this Agreement at any time for Cause.  "Cause" shall mean (i) the TWG Member's willful failure to perform their material duties hereunder, (ii) the TWG Member's commission of an act of fraud, theft or embezzlement during the performance of their duties hereunder; (iii) the TWG Member's conviction of a felony with all appeals having been exhausted or appeal periods lapsed; or (iv) the TWG Member's gross negligence, bad faith, willful misconduct or knowing violation of law in the performance of their duties hereunder.

2. **Services to be Provided.**  The TWG Member will assist the Transition Working Group in consulting with the Debtors with respect to all material business plans and strategic initiatives relating to the operation of the Debtors' generating assets and management of the Debtors' retail business (the "Consulting Services").  The TWG Member shall be available to act as a member of the Transition Working Group from time to time on an as-needed basis.  The TWG Member shall be permitted to engage in other business activities, provided that such activities do not (a) otherwise violate the terms of this Agreement, (b) conflict with the interests of the Debtors or any of their affiliates, or (c) materially impair the TWG Member's ability to perform the TWG Member's duties hereunder.

3. **Fees Payable to the TWG Member.**  In consideration of the TWG Member's services hereunder, the Debtors shall pay the TWG Member a periodic consulting fee in the amount of [___][2](the "Consulting Fee") for services rendered during the term of this Agreement.  The Consulting Fee will be paid within fifteen (15) days following the end of each month.  All Consulting Fees accrued but unpaid as of the Termination Date shall remain payable notwithstanding the occurrence of the Termination Date.

4. **Reimbursement of Expenses.**  The Debtors shall reimburse the TWG Member for all reasonable and documented out of pocket expenses incurred in connection with providing the Consulting Services hereunder, provided, that any single expense to be incurred in excess of $3,0000 shall require prior approval of the Debtors.  [The Debtors acknowledge that Mr. Kiani has incurred expenses prior to the effectiveness of this Agreement.  To the extent such out of pocket expenses have not been otherwise reimbursed by the Debtors, the Debtors shall reimburse Mr. Kiani for such expenses hereunder.][3]  Such reimbursement shall be paid within 60 days of submission by the TWG Member to the Debtors of a specific invoice setting out expenses incurred; provided, however, that no reimbursement shall be made later than the earlier of (i) the end of the calendar year following the calendar year in which the expenses were incurred and (ii) 60 days following the Termination Date.  All reimbursable expenses accrued but unpaid as of the Termination Date shall remain payable notwithstanding the occurrence of the Termination Date.  If the Debtors shall have any questions with respect to any request for reimbursement, the Debtors shall discuss and attempt to resolve the question within ten (10) days after the request.  In the event that such payment dispute is not resolved within such 10 day period, the Debtors may withhold from payment any amounts disputed in good faith.

5. **Independent Contractor Status.**

    (a)     In performing the consulting services hereunder, the TWG Member shall be an independent contractor.  Nothing herein contained shall be construed to constitute the parties hereto as partners or joint venturers, or either as an agent of the other.  The TWG Member shall not be considered as having employee status during his consulting engagement and shall not be entitled

---

[2] NTD: For Mr. Kiani, insert "$75,000 per month" and for Mr. Pitesa insert "$125,000 per annum, payable monthly and on a *pro rata* basis based on the number of months worked in such calendar year".

[3] NTD: Remove bracketed language for Pitesa agreement.

to participate in any employee plans, arrangements or distributions by the Debtors or any of their affiliates during such period or to receive any other benefits provided to employees of the Debtors or their affiliates. The TWG Member shall not provide any services under the name of the Debtors or any of their affiliates or act as an agent of the Debtors of any of their affiliates and shall not hold himself out as an employee of the Debtors or any of their affiliates. Under no circumstances shall the TWG Member (i) enter into any agreements on behalf of the Debtors or their affiliates, (ii) incur any obligations on behalf of the Debtors or their affiliates, (iii) act for or to bind the Debtors or any of their affiliates in any way, (iv) sign the name of the Debtors or any of their affiliates, or (v) represent that the Debtors or any of their affiliates is in any way responsible for the acts or omissions of the TWG Member.

(b) Except as otherwise required by law, the Debtors shall not withhold any sums from the Consulting Fees for Social Security or other federal, state or local tax liabilities or contributions, and all such withholdings, liabilities, and contributions shall be solely the responsibility of the TWG Member.

(c) All of the TWG Member's activities during the consulting engagement will be at the TWG Member's own risk, and the TWG Member shall have sole responsibility for arrangements to guard against physical, financial, and other risks, as appropriate.

(d) Notwithstanding the parties' intention and agreement that the TWG Member be an independent contractor and not be an employee of the Debtors during his consulting engagements, the parties recognize that the applicable law and proper application thereof is not always clear. The TWG Member understands and agrees that if he should be classified as an employee under any such law, he shall remain ineligible to participate in any bonus, pension, profit-sharing (including 401(k)), health, life, or other employee benefit plans of the Debtors or any of their affiliates, and he expressly waives any right to any such benefits. The Consulting Fees to be paid to the TWG Member under this Agreement take into account the fact that the TWG Member is ineligible in all events to participate in such plans, and constitute part of the consideration for this waiver.

**6. Confidentiality; Return of Materials; Inventions.**

(a) The TWG Member acknowledges that during the course of his consulting engagement with the Debtors, he necessarily will have access to and make use of proprietary information and confidential records of the Debtors and their affiliates. The TWG Member agrees that he shall not during the consulting engagement hereunder or at any time thereafter, directly or indirectly, use for his own purpose or for the benefit of any person or entity other than the Debtors, nor otherwise disclose to any individual or entity, any proprietary information, unless such use or disclosure has been authorized by the Debtors or is otherwise required by law. The TWG Member understands that the term "proprietary information" includes, but is not limited to: (a) the software products, programs, applications, and processes utilized by the Debtors or any of their affiliates; (b) the name and/or address of any client or vendor of the Debtors or any of their affiliates or any information concerning the transactions or relations of any client or vendor of the Debtors or any of their affiliates with the Debtors or such affiliate or any of its or their employees, partners, members, managers, principals, directors, officers or agents; (c) any information concerning any product, technology, or procedure employed by the Debtors or any of their affiliates but not generally known to its or their clients, vendors or competitors, or under development by or being tested by the Debtors or any of their affiliates but not at the time offered generally to clients or vendors (d) any information relating to the computer software, computer systems, pricing or marketing methods, sales margins, cost of goods, cost of material, capital structure, operating results, borrowing arrangements or business plans of the Debtors or any of their affiliates; (e) any information which is generally regarded as confidential or proprietary in any line of business engaged in by the Debtors or any of their affiliates; (f) any business plans, acquisition or divestiture plan, budgets, advertising

or marketing plans or materials; (g) any information belonging to clients or vendors of the Debtors or any of their affiliates or any other person or entity which the Debtors or any of their affiliates has agreed to hold in confidence; (h) any information contained in any of the written or oral policies and procedures of the Debtors or any of their affiliates; and (i) all written, graphic and other material relating to any of the foregoing. The TWG Member understands that information that is not novel or copyrighted or patented may nonetheless be proprietary information. The term "proprietary information" shall not include information (i) generally available to and known by the public, or (ii) that is or becomes available to the TWG Member on a non-confidential basis from a source other than the Debtors, any of their affiliates or the directors, officers, employees, partners, principals, advisors or agents of the Debtors or any of their affiliates (other than as a result of a breach of any obligation of confidentiality).

(b) The TWG Member shall not during the consulting engagement hereunder or at any time thereafter, except as required by law, directly or indirectly publish, make known or in any fashion disclose any confidential records to, or permit any inspection or copying of confidential records by, any individual or entity other than in the course of such individual's retention by the Debtors. For purposes hereof, "confidential records" means all correspondence, memoranda, files, manuals, books, lists, financial, operating or marketing records, magnetic, optical, or electronic or other media or equipment of any kind which may be in the TWG Member's possession or under the TWG Member's control or accessible to the TWG Member which contain any proprietary information. The TWG Member agrees that all property and records of the Debtors or any of their affiliates (including, without limitation, all confidential records) shall be and remain the sole property of the Debtors or such affiliate during his engagement by the Debtors and thereafter.

(c) Upon the termination of the TWG Member consulting engagement, or at any earlier time as may be requested by the Debtors, the TWG Member agrees to return to the Debtors all documents and other materials (whether or not such documents and other materials constitute confidential records) obtained in the course of the consulting engagement (including all copies of such documents and other materials). For purposes hereof, "documents and other materials" mean all correspondence, memoranda, files, manuals, books, lists, financial, operating or marketing records, magnetic, optical, or electronic or other media or equipment of any kind which may be in the TWG Member's possession or under the TWG Member's control or accessible to the TWG Member.

(d) All inventions, innovations or improvements (including policies, procedures, products, improvements, software, ideas and discoveries, whether patent, copyright, trademark, service mark, or otherwise) conceived or made by the TWG Member, either alone or jointly with others, in the course of his consulting engagement with the Debtors, belong to the Debtors or one or more of their affiliates, as applicable. The TWG Member will promptly disclose in writing such inventions, innovations or improvements to the Debtors and perform all actions reasonably requested by the Debtors to establish and confirm such ownership by the Debtors or one or more of their affiliates, as applicable, including, but not limited to, cooperating with and assisting the Debtors in obtaining patents, copyrights, trademarks, or service marks for the Debtors or one or more of their affiliates, as applicable, in the United States and in foreign countries.

(e) Notwithstanding anything to the contrary contained herein, nothing in this Agreement or in any other agreement or the Debtors' policies prohibits or restricts the TWG Member from reporting possible violations of federal, state, or local law or regulation to, or discussing any such possible violations with, any governmental agency or entity or self-regulatory organization, including, without limitation, by initiating communications directly with, responding to any inquiry from, or providing testimony before any federal, state, or local regulatory authority or agency or self-regulatory organization, including, without limitation, the Securities and Exchange Commission, FINRA, the Nuclear Regulatory Commission, and the Occupational Safety

18-50757-amk    Doc 2936-11    FILED 07/23/19    ENTERED 07/23/19 23:11:29    Page 5 of 10

and Health Administration, or making any other disclosures, in each case, that are protected by the whistleblower provisions of any federal, state, or local law or regulation.

(f) Misappropriation by the TWG Member of a trade secret of the Debtors in breach of this Agreement may subject the TWG Member to liability under the Defend Trade Secrets Act of 2016 (the "DTSA"), entitle the Debtors to injunctive relief, and require the TWG Member to pay compensatory damages, double damages, and attorneys' fees. Notwithstanding any other provision of this Agreement, the TWG Member is notified in accordance with the DTSA that he will not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made (a) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney, in each case solely for the purpose of reporting or investigating a suspected violation of law; or (b) in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. The TWG Member is further notified that if he files a lawsuit for retaliation by the Debtors for reporting a suspected violation of law, the TWG Member may disclose the Debtors' trade secrets to his attorney and use the trade secret information in the court proceeding if he files any document containing the trade secret under seal and does not disclose the trade secret except pursuant to court order.

7. **Non-Solicitation Obligations.** The TWG Member acknowledges and recognizes the highly competitive nature of the Debtors' businesses and that access to the Debtors' confidential records and proprietary information renders him special and unique within the Debtors' industries. In consideration of the TWG Member consulting engagement with the Debtors, the TWG Member agrees that during (i) the term of this Agreement and (ii) the period beginning on the date of termination of this Agreement for any reason and ending twelve (12) months after the date of such termination, the TWG Member shall not, directly or indirectly, (a) solicit, encourage or attempt to solicit or encourage any of the customers, employees, agents, consultants or representatives of the Debtors or any of their affiliates to terminate his, her, or its relationship with the Debtors or such affiliate or (b) solicit, encourage or attempt to solicit or encourage any of the customers, employees, agents, consultants or representatives of the Debtors or any of their affiliates to become customers, employees, agents, consultants or representatives of any other person or entity.

8. **Enforcement.** The TWG Member acknowledges and agrees that, by virtue of his services and access to and use of confidential records and proprietary information, any violation by the TWG Member of any of the undertakings contained in paragraphs 6 or 7 of this Agreement would cause the Debtors and/or their affiliates immediate, substantial and irreparable injury for which they have no adequate remedy at law. Accordingly, the TWG Member agrees and consents to the entry of an injunction or other equitable relief by a court of competent jurisdiction restraining any violation or threatened violation of any undertaking contained in paragraphs 6 or 7 of this Agreement. The TWG Member waives posting of any bond otherwise necessary to secure such injunction or other equitable relief. Rights and remedies provided for in this Agreement are cumulative and shall be in addition to rights and remedies otherwise available to the Debtors under any other agreement or applicable law.

9. **Severability.** If any provision of this Agreement, or any part thereof, is held to be invalid or unenforceable because of the scope or duration of such provision, the TWG Member and the Debtors agree that the court making such determination shall reduce the scope or duration of such provision (and shall substitute appropriate provisions for any such invalid or unenforceable provisions) in order to make such provision enforceable to the fullest extent permitted by law and/or shall delete specific words and phrases, and such modified provision shall then be enforceable and shall be enforced. In the event that any court determines that the time period is unreasonable and that any of the covenants is to that extent invalid or unenforceable, the parties hereto agree that such covenants will remain in full force and effect for the greatest time period that would not render them unenforceable. If any provision of this Agreement is held to be invalid or

unenforceable, the remaining provisions of this Agreement shall nonetheless survive and be enforced to the fullest extent permitted by law.

**10. Nondisclosure of Confidential Information of Others.** The TWG Member will not disclose to the Debtors or their affiliates, use, or induce the Debtors or their affiliates to use, any proprietary information, trade secrets or confidential business information of others. The TWG Member represents and warrants that neither his consulting engagement with the Debtors nor his performance of his obligations for the Debtors will violate any other obligations, legal or otherwise, which the TWG Member may have.

**11. Entire Agreement; Modifications; Waiver.** This Agreement constitutes the entire agreement between the parties hereto with regard to the subject matter hereof and supersedes all prior understandings and agreements, whether written or oral. This Agreement may not be amended or revised except by a writing signed by the parties. No waiver of any provision of this Agreement or the performance thereof shall be effective unless in writing signed by the party making such wavier or shall be deemed to be a waiver of any other provision or the performance thereof or of any future performance.

**12. Notices**. Any and all notices, requests and other communications provided for by this Agreement shall be in writing and shall be deemed given (a) upon actual receipt by the party to which such notice shall be directed if delivered by hand or electronic mail; (b) three (3) business days after the date of deposit in the U.S. mail, postage prepaid, registered or certified; (c) on the next business day, if sent by prepaid reputable national overnight courier service, in each case to the respective addresses as set forth below, or to such other address as either party may have furnished to the other in writing in accordance herewith

    To the TWG Member:

    [Address]
    [email address]

    with a copy to:

    Kramer Levin Naftalis & Frankel, LLP
    1177 Avenue of the Americas
    New York, NY 10036
    Attention: Amy Caton, Esq. and Joseph A. Shifer, Esq.

    To the Debtors:

    FirstEnergy Solutions Corp.
    341 White Pond Dr.
    Akron, Ohio 44320
    [email address]
    Attention: [•]

    with a copy to:

    Akin Gump Strauss Hauer & Feld,LLP
    One Bryant Park
    New York, NY 10036
    Attention: Ira Dizengoff, Esq. and Brad M. Kahn, Esq.

    -and-

Akin Gump Strauss Hauer & Feld LLP
2001 K Street NW
Washington, DC 20006
Attention: Scott L. Alberino, Esq.

**13. Successors and Assigns.** This Agreement is a personal contract calling for the provision of unique services by the TWG Member, and the TWG Member's rights and obligations hereunder may not be sold, transferred, assigned, pledged or hypothecated by him. The rights and obligations of the Debtors hereunder will be binding upon and run in favor of the successors and assigns of the Debtors.

**14. Governing Law and Forum.** This Agreement shall be construed under and governed by (both as to validity and performance) and enforced in accordance with the internal laws of the State of Ohio applicable to agreements made and to be performed wholly within such jurisdiction, without regard to the principles of conflicts of law or where the parties are located at the time a dispute arises. The Debtors and the TWG Member consent and submit themselves to the jurisdiction of the United States Bankruptcy Court for the Northern District of Ohio over any dispute arising out of or related to this Agreement.

*[Signature page follows]*

IN WITNESS WHEREOF, the parties have executed this Agreement on the dates indicated below.

**FIRSTENERGY SOLUTIONS CORP.**

By: _____ Date:_____
    Name: _____
    Title: _____

**FIRSTENERGY GENERATION, LLC**

By: _____ Date:_____
    Name: _____
    Title: _____

**FIRSTENERGY GENERATION MANSFIELD UNIT 1 CORP.**

By: _____ Date:_____
    Name: _____
    Title: _____

**FIRSTENERGY NUCLEAR GENERATION, LLC**

By: _____ Date:_____
    Name: _____
    Title: _____

**FIRSTENERGY NUCLEAR OPERATING COMPANY**

By: _____ Date:_____
    Name: _____
    Title: _____

**FE AIRCRAFT LEASING CORP.**

By: _____ Date:_____
    Name: _____
    Title: _____

**NORTON ENERGY STORAGE L.L.C.**

By: _____ Date:_____
    Name: _____
    Title: _____

**[TWG Member]**

_____  Date:_____