# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FIRSTENERGY SOLUTIONS CORP., *et al.*, | ) Case No. 18-50757 (AMK) |
| | ) (Jointly Administered) |
| | ) |
| | ) Hon. Judge Alan M. Koschik |

**OBJECTION BY UTILITY WORKERS UNION OF AMERICA, LOCAL 270, AFL-CIO, AND INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 29, AFL-CIO, TO SIXTH AMENDED JOINT PLAN OF REORGANIZATION OF FIRSTENERGY SOLUTIONS CORP., ET AL., PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE, AND EXHIBITS (DKT. 2934, 2936)**

Now come creditors Utility Workers Union of America, Local 270, AFL-CIO, and International Brotherhood of Electrical Workers Locals 29, AFL-CIO ("Unions") and submit this Objection to *Sixth Amended Joint Plan of Reorganization of FirstEnergy Solutions Corp., et al., Pursuant To Chapter 11 Of The Bankruptcy Code* (Dkt. 2934), as modified and supplemented by the Plan Exhibits (Dkt. 2936).

Each Union has collective bargaining agreements with one or more of the Debtors that contain successorship clauses requiring that, in the event the Debtors transfer their business to another entity, Debtors are contractually required to make that transfer contingent upon the new entity 1) agreeing to recognize the Union and 2) assuming the terms and conditions of the CBA.

The Sixth Amended Joint Plan of Reorganization and Exhibits (collectively, "the Plan") do not reference the strong successorship clauses in the CBAs. Debtors claim that they cannot assume the CBAs, and state that they will either negotiate different terms and conditions of employment for these union-represented employees, or will file motions to reject the CBAs and employee benefits pursuant to 11 U.S.C. §§1113, 1114. However, no such motions have been

filed.

These Unions made similar objections to the Restructuring Support Agreement and Disclosure Statement. (Dkt. 2262). Since that time, the Unions have negotiated with the Debtors and their counsel, who also act as counsel for the Reorganized Debtors, regarding the terms of the successor CBAs that Debtors must require the Reorganized Debtors to assume pursuant to the successorship clauses. However, the Debtors/Reorganized Debtors have refused to commit to match the benefits provided in the existing CBAs.

Under applicable law, Debtors are required now to either assume or reject the CBAs. If the Plan is approved, the Court should hold that the CBAs have been assumed by operation of law. Without assumption of the CBAs, the Plan should not be approved by the Court.

### STATEMENT OF FACTS

On July 23, 2019, Debtors filed Sixth Amended Joint Plan of Reorganization of FirstEnergy Solutions Corp., et al., Pursuant To Chapter 11 Of The Bankruptcy Code (Dkt. 2934) which proposes a plan which would restructure Debtors' assets in the form of a new entity with new shareholders described in the Plan as the "Reorganized Debtors." The Reorganized Debtors propose to continue to operate the Debtor's fossil and nuclear generating plants. Debtors also filed Exhibits in support of the Plan. (Dkt. 2936).

<u>The Unions, the Collective Bargaining Agreements, and the Successorship Clauses</u>

The Unions which are parties to this Objection represent employees at the Debtors' Perry Nuclear Power Plant and Beaver Valley Nuclear Power Plant as follows:

- Utility Workers Union of America, Local 270, AFL-CIO, represents employees in two bargaining units at the Perry Nuclear Power Plant in Perry, Ohio.

- International Brotherhood of Electrical Workers Local 29, AFL-CIO, represents employees in two bargaining units at the Beaver Valley Nuclear Power Plant near Shippingport, Pennsylvania.

2

Each of these Unions has a collective bargaining agreement with one or more of the Debtors that is currently in full force and effect. Each of the collective bargaining agreements contains a strong successorship clause requiring that in the event the Debtors transfer their business operations to another entity the Debtors are contractually obligated to require that the successor recognize the Union and assume the CBA. For example, the successorship clause in the UWUA Local 270 CBAs applicable to employees at the Perry Nuclear Power Plant provides in pertinent part:

> *The Company agrees that if it sells, assigns or otherwise transfers any of its business operations* to any FirstEnergy Corp. or non-FirstEnergy Corp. related entity during the term of the agreement and that transaction involves the transfer of employees currently represented by Local 270, *such entity shall be considered a successor to this agreement, and the transaction shall be made contingent upon the agreement of the entity to recognize the Union, and be bound by the terms and conditions of employment set forth in this Agreement in the event the entity or its designee continues the business.* The Company will provide the Union with those documents necessary to demonstrate compliance with this Article as soon as practicable after the intent to transfer is made public.

(Emphasis added).

## The Sixth Amended Plan of Reorganization

The Plan makes no mention of the successorship clauses, nor does the Plan provide for assumption of the CBAs as required by the successorship clauses. Instead of complying with their obligation pursuant to the successorship clause of the CBAs, Debtors affirmatively assert that they will not assume the CBAs or require that the Reorganized Debtors assume the CBAs. This intent is confirmed by the Plan which explicitly states that the CBAs will not be assumed.

> The Debtors are unable to assume their collective bargaining agreements as currently constituted because, among other things, the collective bargaining agreements require the Debtors to provide benefits to their employees under health care, severance, welfare, incentive compensation, and retirement plans sponsored by FE Corp. As of the Effective Date, the Debtors will no longer be able to offer such benefits to their employees under these FE Corp. plans. Prior to the Effective Date and once decisions have been made as to the health care,

3

severance, welfare, incentive compensation and retirement plans that the
Reorganized Debtors will offer their employees as of the Effective Date, the
Debtors will negotiate with the unions that are parties to collective bargaining
agreements with the Debtors regarding modifications necessary for the Debtors'
post-Effective Date operations, including (i) to incorporate the changes to the
health care, severance, welfare, incentive compensation, and retirement plans that
the Reorganized Debtors will offer their employees as of the Effective Date, (ii)
financial, work rule and contract language changes consistent with the business
plan for the Reorganized Debtors and (iii) separation so that the Reorganized
Debtors, and not the Debtors and the FE Non-Debtor Parties, are party to and
responsible for the applicable collective bargaining agreements upon the Effective
Date, with the goal of reaching agreement on all such modifications prior to the
Effective Date and assuming the modified collective bargaining agreements as
of the Effective Date. In the event that the Debtors are unable to reach
agreement with any particular union that is a party to a collective bargaining
agreement on all such modifications to the collective bargaining agreement, the
Debtors reserve their right to seek relief prior to the Effective Date from the
Bankruptcy Court under sections 1113 and 1114, to the extent applicable, of the
Bankruptcy Code. Notwithstanding any provision of this Section V.F, nothing
contained herein shall create an obligation of the FE Non-Debtor Parties to
participate in, or contribute (either economically or otherwise) to, any
negotiations between the Debtors and the unions that are parties to collective
bargaining agreements.

(Sixth Amended Plan, Article V.F, Dkt. 2934 at 91-92).

Similarly, in connection with Debtors' Schedules of Assumed, Rejected, and Assigned

Contracts, Debtors make the following statement:

The Debtors are unable to assume their collective bargaining agreements as
currently constituted because, among other things, the collective bargaining
agreements require the Debtors to provide benefits to their employees under
health care, severance, welfare, incentive compensation, and retirement plans
sponsored by FE Corp. As of the Effective Date, the Debtors will no longer be
able to offer such benefits to their employees under these FE Corp. plans. As set
forth on the attached schedules of Assumed Executory Contracts and Unexpired
Leases, each of the Debtors' collective bargaining agreements are listed as an
Assumed Executory Contract contingent upon modification through collective
bargaining with the respective union, including, but not limited to, with respect to
non-replicable portions of such contract consistent with any such framework
agreement reached with the respective union regarding the post-emergence
collective bargaining agreement and, to the extent applicable, shall only be
assumed with respect to the Debtors' employees. In the event the Debtors are
unable to reach agreement with the respective union, the Debtors reserve their

4

right to seek relief pursuant to sections 1113 and/or 1114 of the Bankruptcy Code from the Bankruptcy Court prior to the Effective Date.

(Dkt. 2936-2 at 9; Dkt. 2936-3 at 8; Dkt. 2936-4 at 8).

On a spreadsheet attached to Debtors' Schedule of Assumed Executory Contracts, Debtors state the following with respect to the collective bargaining agreements of the Unions.

> Debtors' assumption of this contract, including all amendments, side letters, memorandum of understanding and related agreements, is subject to modification through collective bargaining with the respective union, including, ***but not limited to***, with respect to non-replicable portions of such contract and, to the extent applicable, shall only be assumed with respect to Debtors' employees. In the event Debtors are unable to reach agreement with the respective union, Debtors reserve their right to seek appropriate relief pursuant to sections 1113 and/or 1114 of the Bankruptcy Code from the Bankruptcy Court prior to the Effective Date.

(Dkt. 2936-2 at 30 (emphasis added)).

As this language admits, Debtors, rather than require the Reorganized Debtors to assume the CBAs, are proposing to turn their obligation on its head by allowing the Reorganized Debtors to unilaterally set the terms of employment for the unionized employees, and then to impose those terms on the Unions through a so-called "negotiation."

Factors the Court should consider in evaluating Debtors' Plan are 1) the Debtors, contrary to the Bankruptcy Code, have failed to either assume or reject the CBAs; 2) the Debtors are bound by the successorship clauses of the CBAs; 3) the Debtors plan to breach those successorship clauses by failing to require that the Reorganized Debtors assume the CBAs, an apparent violation of Section 1113(f)'s ban on unilateral rejection; and 4) that breach of the CBAs may give rise to a substantial post-petition administrative damage claim in favor of the Unions that could impair recovery for other creditors. This is all relevant information the Court should consider in determining whether to confirm the Plan.

While the Unions have met with Debtors/Reorganized Debtors and their counsel

regarding the CBAs, Debtors' contention that there are "non-replicable" benefits that the Reorganized Debtors cannot provide has prevented the parties from entering into new CBAs that would apply to the new entity. In particular, Debtors contend that pension benefits are not replicable.[1] This is not true. For example, if an employee who retired under the current pension plan would receive a pension of $2,000 per month, application of the successorship clause would necessarily require the new entity, the Reorganized Debtors, to provide that same pension. Or if an employee would be entitled to receive a lump sum pension of a certain amount upon attaining a prescribed age and years of service, this is a knowable amount that could be calculated and paid at the appropriate time. Indeed, this is exactly how transitions have occurred regarding these bargaining units and others acquired by the Debtors or their corporate parent.

As FirstEnergy Corp. acquired a host of other utility companies over the past couple of decades, FirstEnergy Corp. assumed the defined benefit plan obligations of those predecessor companies to provide the exact plans upon acquisition. These are reflected in the establishment of different parts of the FirstEnergy Corp. pension plan. They established Part D upon the acquisition of the Perry plant from CEI, Part E upon the acquisition of the Davis Besse plant from Toledo Edison, and Part F upon the acquisition of the Beaver Valley plant from Duquesne Power & Light. Similarly, FirstEnergy Corp. protected the pension benefits of bargaining unit employees from other acquisitions - Part G for the bargaining unit employees at the Seneca Plant, Part H for the bargaining unit employees in the Pennsylvania Electric Company, Part I for Metropolitan Edison Company, Part J for Jersey Central Power and Light Company, and Part K for Allegheny Energy.

Although the Unions have remained open to different pension plan formats, nothing

---

[1] Replacement retirement benefits have been the most challenging issue in the negotiations, but they are not the only subject in dispute.

offered by the Reorganized Debtors replicates the benefits required by the existing CBAs. What has made the negotiation most difficult is that the Reorganized Debtors have steadfastly refused to even consider establishing a defined benefit pension plan to replicate the benefits that will be lost.

When pushed for an explanation for why the Debtors are so adamantly opposed to establishing a defined benefit plan, Debtors' counsel said it was because of the anticipated deactivation of the nuclear plants. Now that HB 6 has passed in Ohio and the Debtors have withdrawn the deactivation notices, this reason no longer applies.[2] As it stands, the Reorganized Debtors will emerge with a lot of cash and a lot of subsidies from Ohio's rate payers. In fact, with the withdrawal of the deactivation notices, they will have even more cash since they will avoid approximately $100 million in payments otherwise required under the KERP.

There is no impediment to assuming the CBAs and providing benefits that mirror those currently provided, as has occurred eight times before (i.e., Parts D through K of the FirstEnergy Corp. pension plan). The Reorganized Debtors would simply prefer not to.

Ultimately, however, neither the Reorganized Debtors, nor the Debtors, have provided the Unions or this Court with any evidence that it is necessary to reject the CBAs in order to make the Plan of reorganization successful.

Accordingly, in light of the Debtors' failure to assume or reject the CBAs, and the degree of uncertainty engendered by the Debtors' refusal to commit to comply with the successorship

---

[2] Dave Griffing, FES Vice President for Governmental Affairs, falsely testified on April 17, 2019 before the Ohio House Energy and Natural Resources Subcommittee. When asked by Committee Co-chair Michael O'Brien about the union and its contracts, Dave Griffing testified that new CBAs "were in essence agreed upon…Both parties… believe the negotiations were acceptable…That issue was an issue and a concern for our employees. I completely understand that and we tried to address it as quickly as we could." http://ohiochannel.org/video/ohio-house-energy-and-natural-resources-subcommittee-on-energy-generation-4-17-2019 (1:04:55 to 1:07). That obviously was not true in April and it still is not true. Yet this information was provided to Ohio legislators as part of the Debtors' lobbying efforts in support of HB6.

18-50757-amk    Doc 2970    FILED 08/02/19    ENTERED 08/02/19 08:38:10    Page 7 of 19

clauses of the CBAs, the Court should not confirm the Plan at this time.

## ARGUMENT

### I. THE PLAN SHOULD NOT BE APPROVED UNTIL DEBTORS COMMIT TO ASSUME OR REJECT THE COLLECTIVE BARGAINING AGREEMENTS.

"[T]he Code imposes upon the Court a mandatory duty to determine whether a plan meets all the requirements for confirmation delineated in § 1129(a) of the Code." *In re Future Energy Corp.*, 83 B.R. 470, 481 (Bankr. S.D. Ohio 1988). "[T]he Court has an independent duty to determine compliance with each of the Bankruptcy Code's confirmation requirements." *In re Trenton Ridge Inv'rs, LLC*, 461 B.R. 440, 458 (Bankr. S.D. Ohio 2011).

> Section 1129 of the Bankruptcy Code requires the Court to confirm a Chapter 11 plan that meets certain requirements. The requirements vary depending on whether the plan is consensual or non-consensual. The Court "shall confirm a plan" pursuant to § 1129(a) of the Bankruptcy Code, but "only if all" of the applicable requirements set forth in that subsection are met. 11 U.S.C. § 1129(a).

*Id*. at 455. The proponents of the plan "bear the burden of proving that the requirements of § 1129(a) have been met." *In re Future Energy Corp.,* 83 B.R. at 481.

11 U.S.C. §1129(a)(1) provides that "[t]he court shall confirm a plan only if all of the following requirements are met: (1) The plan complies with the applicable provisions of this title." 11 U.S.C. §365(d)(2) provides in pertinent part:

> In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor *at any time before the confirmation of a plan* but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

(Emphasis added).

The U.S. Supreme Court has held that the decision whether to reject a contract must be made before confirmation. *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 46

8

(2008) ("[w]e agree with *Bildisco's* commonsense observation that the *decision* whether to reject a contract or lease must be made before confirmation") (emphasis in original); *N.L.R.B. v. Bildisco & Bildisco,* 465 U.S. 513, 529 (1984) ("[i]n a Chapter 11 reorganization, a debtor-in-possession has until a reorganization plan is confirmed to decide whether to accept or reject an executory contract"). *See In re Family Snacks, Inc*., 257 B.R. 884, 896 (B.A.P. 8th Cir. 2001) ("the timing of such action [rejection] is governed, not by 1113, but by 365(d)(2), which allows a debtor to defer such a decision *until confirmation of a plan*") (emphasis added).[3]

When the contract is a CBA, a prerequisite to rejection is that the debtor make a proposal to the union "which provides for those necessary modifications in the employees benefits and protections that are *necessary to permit the reorganization of the debtor* and assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably." 11 U.S.C. §1113(b)(1)(A) (emphasis added).[4] Accordingly, courts do not allow rejection unless the proposed modifications are "necessary to permit the reorganization of the debtor." *In re SAI Holdings Ltd.*, No. 06-33227, 2007 WL 927936, at *5 (Bankr. N.D. Ohio).[5]

In this case, the Plan, on its face, demonstrates that it does not comply with Sections 365 and 1113 of the Bankruptcy Code. As the Sixth Amended Plan and Schedules of Assumed,

---

[3] Section 365 "covers assumption and rejection of CBAs, except as specifically modified with regard to rejection in §1113." *Id*. at 900. "Section 1113 is designed to provide additional procedural requirements for rejection or modification of collective bargaining agreements, and only to that degree supersedes and supplements the provisions of §365." *Massachusetts Air Conditioning & Heating Corp. v. McCoy*, 196 B.R. 659, 663 (D. Mass. 1996).

[4] "While 'reorganization' is not a statutorily defined term, it is generally understood to include all types of debt adjustment, including a sale of assets, piecemeal or on a going concern basis, under §363 followed by a plan of reorganization which distributes the proceeds of the sale to creditors in accordance with the Bankruptcy Code's priority scheme." *In re Family Snacks, Inc*., 257 B.R. at 895.

[5] *See In re Family Snacks, Inc*., 257 B.R. at 897 ("'necessary to permit the reorganization of the debtor' means necessary to accommodate confirmation of a Chapter 11 plan"). "[E]xactly when a debtor satisfies the 'necessary to permit the reorganization' element does not hinge on the consummation of the asset sale but rather on the confirmation of the actual plan or reorganization to distribute the proceeds of that asset sale." *Id*. at 898. "Under the terms of the statute, Debtor will still ultimately have to show that rejection of the CBA is necessary to obtain a confirmable Chapter 11 plan." *Id*.

9

Rejected, and Assigned Contracts demonstrate, the Debtors want the benefits of the CBAs while reserving the right to reject them in the future. This is inconsistent with the Bankruptcy Code and 11 U.S.C. §§ 365, 1113, and the requirement that debtors decide whether to assume or reject a CBA "before the confirmation of a plan."[6]

In *In re Manor Oak Skilled Nursing Facilities, Inc.*, 201 B.R. 348 (Bankr. W.D. N.Y. 1996), the debtor filed a plan that contemplated the eventual sale of the nursing homes it operated. The plan did not assume or reject the CBA but contemplated that the CBA would remain in effect until the facilities were sold, and then would be rejected unless the buyer and the union agreed to a new CBA. When the union asked that the debtor either assume or reject the CBA, the debtor claimed that it had no obligation to decide at that point in time. The court noted that the debtor wanted the benefit of rejection, *i.e.,* no obligations under the CBA, but did not want the burden or risk of potential labor unrest. *Id*. at 350. The court held that the debtor "may not have its cake and eat it too." *Id*.

> For the Court to bind a union to a plan which does not propose prompt cure of the arrears, and that leaves the union only to such a resolution as it might later be able to bargain for with the new owners of the nursing homes, is not the kind of "interim" modification contemplated by §1113(e). Nor is the fact that the value of the Debtor's assets will be diminished if it is forced to either assume or reject, sufficient, of itself, to establish that the proposal is "essential" to the continuation of the Debtor's business or "essential" in order to avoid irreparable damage to the estate.

*Id*. The court noted that "[i]f the Debtor cannot afford to assume the Agreements, but cannot make the requisite showing for rejection, then it may be unreorganizable." *Id*. at n. 1. Accordingly, the court required the debtor to amend its plan to either assume or reject the CBAs.

---

[6] In *In re National Forge Co.*, 289 B.R. 803, 808 (Bankr. W.D. Pa. 2003), although the court approved rejection of the CBA, the court held that "[b]ecause of the successor language, Debtor and its advisors were compelled to seek rejection of the CBA prior to confirmation of the sale to eliminate a potential claim by the Union under the successor clause. Leaving open the possibility of such a claim would be detrimental and unfair to non-union employees, retirees and unsecured creditors."

10

Debtors have not contended that they must reject the CBAs in order to reorganize, but, by parsing their language, attempt to reserve the right to do so later, seeking the benefits of assumption without assuming, and avoiding the risks of rejection, without rejecting. They simply want the benefit of plan confirmation, without deciding whether to assume or reject. However, this is not what the law provides.

The Court should not put its imprimatur on the Debtors' attempt to obtain court approval for the Plan while reserving the right to reject the CBAs later. Accordingly, the Plan should not be confirmed.[7]

II.  DEBTORS' FAILURE TO REJECT THE PLAN CONSTITUTES AN ASSUMPTION OF THE COLLECTIVE BARGAINING AGREEMENTS BY OPERATION OF LAW.

When a debtor seeks confirmation of a plan without seeking rejection of a collective bargaining agreement, the premise underlying the proposed confirmation is that the CBA is assumed, and not rejected, for "[u]nless and until a debtor follows § 1113's procedures and obtains bankruptcy court authorization to reject, § 1113(f) requires it to abide by the terms of the collective bargaining agreement." *United Steelworkers of Am., AFL-CIO v. Ohio Corrugating Co.*, No. 4:90CV0810, 1991 WL 213850, at *1 (N.D. Ohio). "[T]he debtor's failure to take affirmative steps to assume or to reject an executory contract or unexpired lease in a

---

[7] The Debtors' actions regarding assumption or rejection of the CBAs may affect other creditors under the plan. *See In re National Forge Co.*, 289 B.R. 803, 811 (Bankr. W.D. Pa. 2003) ("[a]bsent rejection prior to the sale, the estate is arguably exposed to a claim for damages to the Union for wages and benefits through the end of the term of the CBA"); *In re The Lady H Coal Company*, 193 B.R. 233, 243 (Bankr. S.D. W.Va. 1996) ("[e]mployee creditors are protected by the right to file claims for breach of the NBCWA with such damages to be satisfied by payments from the proceeds of the sale"); *In re Manor Oak Skilled Nursing Facilities*, 201 B.R. 348, 350 (Bankr. W.D. N.Y. 1996) ("all defaults under a collective bargaining agreement that has not been formally rejected are entitled to administrative expense status just as if the collective bargaining agreement had been 'assumed.' To treat them otherwise is precisely the kind of unilateral modification that is prohibited under 11 U.S.C. 1113(f)"); *In re Agripac, Inc.*, 699-60001, 12 (Bankr. D. Or., April 2, 1999) (breach of the CBA "may result in a substantial claim against the estate," which claim would be entitled to priority treatment as an administrative expense); *United Steelworkers of America v. The Ohio Corrugating Company*, 1991 WL 213850, *1 (N.D. Ohio) (Section "1113(f) does grant a priority to collectively bargained claims over and above the priorities set forth in §§503 and 507").

11

reorganization case results in that contract or lease 'rid[ing] through' the bankruptcy case unaffected." *In re Family Snacks, Inc.*, 257 B.R. at 905.

In *Adventure Res. Inc. v. Hollan*, 137 F.3d 786, 798 (4th Cir. 1998), the court held that "[t]he collective bargaining agreement between the UMWA and Adventure was assumed in bankruptcy as the result of the latter's failure to reject it in accordance with §1113." The court found that Section 1113 provides that "a Chapter 11 debtor (or trustee) may reject a collective bargaining agreement 'only in accordance with the provisions of this section.'" *Id*. at 796. "The whole of the agreement is protected as are its components." *Id.* The court noted that the debtors never sought to reject the CBA as provided in Section 1113.[8]

The Fourth Circuit followed the Third Circuit's decision in *In re Roth Am., Inc*., 975 F.2d 949 (3d Cir. 1992), where that court wrote:

> The Union contends that since Roth American has not sought to reject the collective bargaining agreement under section 1113, Roth American has "assumed" the collective bargaining agreement by operation of law, and that Roth American thus is bound by all its terms. We agree with the Union up to this point.

*Id*. at 957.[9]

In *In re Unimet Corp*., 842 F.2d 879 (6th Cir. 1988), the debtor, Unimet, in a Chapter 11 case, sought to avoid paying insurance premiums for retirees pursuant to the terms of a CBA by filing a Section 1113 motion to reject, which the bankruptcy court denied. The Union argued that, because the rejection motion was denied, Unimet was still bound by the CBA and required to pay the premiums. The Sixth Circuit agreed, holding that "Congress intended to give broad

---

[8] The court in *In re Family Snacks, Inc.* distinguished the *Adventure Resources* decision on the ground that, while the debtor in *Adventure Resources* continued to reap the benefits of the CBAs, the debtor in *In re Family Snacks* did not, but instead "moved quickly to liquidate its assets." *In re Family Snacks, Inc.*, 257 B.R. at 904-905. In this case, Debtors continue to reap the benefits of union labor.

[9] The court then disagreed with the union regarding the priority status of its claim.

12

protection to collectively bargained for rights which are threatened by a corporate reorganization under Chapter 11 of the Bankruptcy Code." *Id*. at 885. "[S]ection 1113 unequivocally prohibits the employer from *unilaterally* modifying *any provision* of the collective bargaining agreement." *Id*. at 884 (emphasis in original).

Similarly, in *United Steelworkers of Am., AFL-CIO v. Ohio Corrugating Co.*, No. 4:90CV0810, 1991 WL 213850, at *1 (N.D. Ohio), the court held that claims pursuant to an unrejected CBA are entitled to full payment. "Unless and until a debtor follows § 1113's procedures and obtains bankruptcy court authorization to reject, § 1113(f) requires it to abide by the terms of the collective bargaining agreement." *Id*. By requiring that

> benefits of the unrejected collective bargaining agreement be paid, despite failing to qualify as an administrative expense, *Unimet*, in effect, established a super-priority over section 507. The wording of section 1113(f) supports this conclusion: "*No* provision of this title shall be construed to permit a trustee to unilaterally terminate or alter *any* provisions of a collective bargaining agreement prior to compliance with the provision of this section."

*Id*. at 4 (emphasis in original).[10]

In *Chicago Dist. Council of Carpenters Pension Fund v. Cotter*, 914 F. Supp. 237, 242 (N.D. Ill. 1996), the defendant, which was party to a CBA, filed for bankruptcy and obtained confirmation of a plan which did not reject the CBA. The Funds sought an audit of contributions for a period after the confirmation. The former debtor argued that the provision of the confirmed plan rejecting all executory contracts not explicitly assumed was a rejection of the CBA. The district court disagreed, finding that because the company did not file a Section 1113 motion to

---

[10] *See In re Continental Airlines*, 125 F.3d 120, 137 (3d Cir. 1997) (section 1113 "operates to preclude the application of other bankruptcy code provisions to the advantage of debtors and trustees to permit them to escape the terms of a collective bargaining agreement without complying with the requirements of section 1113."); *In Re Ionosphere Clubs, Inc*., 922 F.2d 984, 990-91 (2d Cir. 1990) (Section 1113(f) "was meant to prohibit the application of any other provision of the Bankruptcy Code when such application would permit a debtor to achieve a unilateral termination or modification of a collective bargaining agreement without meeting the requirements of 1113.").

13

reject the CBA, the CBA was not rejected in the bankruptcy. "Section 1113 makes clear, however, that collective bargaining agreements cannot be rejected through Section 365," and that Section 1113 "provides the exclusive means by which to reject a collective bargaining agreement." *Id*. at 242.

> Section 1113 creates strict requirements for debtors to follow when rejecting a collective bargaining agreement. It makes clear Congressional intent to put the burden on the debtor to affirmatively resolve a collective bargaining agreement. Although the Funds should perhaps have noticed American, Inc.'s error earlier, they had no duty to come forward. American, Inc. is therefore still bound to the terms of the collective bargaining agreement.

*Id.* at 243.

Accordingly, the Court should not approve the Plan without finding that the Debtors assumed the CBAs.

### III. THE PLAN SHOULD BE REJECTED BECAUSE IT CONSTITUTES A UNILATERAL ALTERATION OF THE CBAS IN VIOLATION OF 11 U.S.C. §1113(F).

Debtors, by seeking plan confirmation, essentially seek Court approval for their breach of the successorship clauses of the CBAs. The Plan does not provide for the Reorganized Debtors to assume the CBAs. This is a violation of 11 U.S.C. §1113(f) which prohibits a Debtor from unilaterally altering the terms of a CBA.

Approval of the Plan as proposed by Debtors would constitute a unilateral alteration of the plan in violation of 1 U.S.C. §1113(f). 11 U.S.C. §1113(f) provides:

> No provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section.

*See In re Continental Airlines*, 125 F.3d 120, 137 (3d Cir. 1997); *In Re Ionosphere Clubs, Inc.*, 922 F.2d 984, 990-91 (2d Cir. 1990). "[S]ubsection 1113(f) mandates that any conflict between

14

§1113 and other code sections must be resolved in favor of §1113 as a whole." *In re World Sales, Inc.*, 183 B.R. 872, 878 (B.A.P. 9th Cir. 1995).

"Unlike §365, which does not constrain a debtor's rejection of burdensome executory contracts, §1113 prescribes strict procedural and substantive requirements before a CBA can be rejected." *In re Trump Entertainment Resorts*, 810 F.3d 161, 171 (3d Cir. 2016). Section 1113 "establishes a negotiation process that the debtor must satisfy before a bankruptcy court will approve a rejection motion." *In re Journal Register Co.*, 488 B.R. 835, 838 (Bankr. S.D.N.Y. 2013). Most importantly, "Subsection 1113(f) evinces an intent that other provisions of the Bankruptcy Code are inoperable to the extent that they allow the debtor to bypass the requirements of §1113." *Id*. at 838.

Bankruptcy courts have not allowed debtors to use reorganizations pursuant to plan confirmations to unilaterally alter the terms of CBAs in violation of Section 1113. In *In re Stein Henry Co., Inc.*, No. 91-15491S, 1992 WL 122902 (Bankr. E.D. Pa.), the union objected to the debtor's plan because it did not provide for the purchaser to assume the CBA, as required by the CBA's successorship clause. The court found that it could not confirm the plan with a proviso that such confirmation did not affect the union's rights with respect to the purchaser of the debtor's assets.

> We have little doubt that a plan which is contrary to the terms and effect of 11 U.S.C. § 1113 cannot be confirmed. The Debtor has clearly not complied with the demanding notice and negotiation requirements of 11 U.S.C. § 1113.
>
> We are convinced that the Plan's failure to preserve a union's rights against a successor-purchaser of a Chapter 11 debtor's assets violates 11 U.S.C. § 1113. Only through the medium of 11 U.S.C. § 1113(f) can a collective bargaining agreement be terminated or modified in any way. Rights provided in the agreement as to successor-entities must be preserved unless there is, unlike here, compliance with the procedures of 11 U.S.C. § 1113.

15

*Id.* at *2 (citations omitted). The court found that the plan purported to reject all executory contracts, but that the debtor had not filed a motion pursuant to Section 1113. Therefore, the court denied confirmation of the plan because, "[t]o be confirmed, the plan must satisfy all applicable Code requirements." *Id*. at *3.

This case is similar because in each of its three schedules of assumed contracts, rejected contracts, and assigned contracts, the Debtors repeat the language claiming they cannot assume the CBAs, despite the fact that nothing prevents the Debtors from providing identical benefits to those set forth in the CBAs. Nothing prevents the Debtors from replicating all the benefits – including pensions –that are set forth in the respective CBAs. The Plan should not be approved before the Debtors comply with Section 1113.

In *American Flint Glass Workers Union v. Anchor Resolution Corp*., 197 F.3d 76 (3d Cir. 1999), the debtor assigned the CBA to the purchaser, but attempted, through the terms of the asset purchase agreement, to limit the purchaser's obligations under the CBA. The Third Circuit held that where a debtor "binds itself contractually to obtain a change in the legal relations created by a CBA as a condition precedent to closing a sale of substantially all of the debtor's assets, that constitutes an attempt to effect an alteration of the CBA." *Id*. at 81-82. The court found that the debtor had "misuse[d] the Code in an effort to avoid the collective bargaining process that Congress deemed essential to the balance between labor and reorganizing debtors that it struck in Section 1113." *Id*. at 82. *See also Chicago Dist. Council of Carpenters Pension Fund v. Cotter*, 914 F.Supp. 237, 242 (N.D. Ill. 1996) (CBA cannot be rejected as part of plan pursuant to section 365); In re The Lady H Coal Company, 193 B.R. 233, 242 (Bankr. S.D. W.Va. 1996) ("a debtor has a duty under 1113 to not obligate itself prior to negotiations with its union employees, which would likely preclude reaching a compromise").

16

In *In re Journal Register Co.*, 488 B.R. 835, 840 (Bankr. S.D.N.Y. 2013), the court held that the debtor could not use the guise of a sale to avoid the successorship clause of the CBA.

> The collective bargaining agreement continues to bind the debtor post-petition, and a debtor cannot reject a collective bargaining agreement except in accordance with Bankruptcy Code § 1113. Generally speaking, a rejection represents a decision not to perform a burdensome executory contract. A debtor cannot bypass § 1113 and obtain a *de facto* rejection of its collective bargaining agreement simply by refusing to perform it. Although the obligation to comply with the successor clause is only one duty among many under a collective bargaining agreement, a debtor's intentional breach of a material provision of the collective bargaining agreement is tantamount to a rejection, or alternatively, a unilateral alteration of its provisions in violation of Bankruptcy Code § 1113(f). Thus, as a general proposition, a sale under Bankruptcy Code § 363 cannot circumvent the condition imposed under a successor clause absent compliance with § 1113.

Accordingly, the Plan should not be approved before Debtors comply with Section 1113.

IV.   THE DEBTORS CANNOT EITHER ASSUME THE CBAS "CONDITIONALLY" OR PARTIALLY REJECT THEM.

Debtors seek to assume the CBAs to the extent that the CBAs benefit Debtors' business interests, but seek to do so conditionally, *i.e.*, on the condition that they, or the Reorganized Debtors, can negotiate a pension program of lesser value to the bargaining unit members. Debtors seek to reserve the right to reject the CBAs, *in toto*, at any point in the future at which Debtors determine that the CBAs are not to their benefit. Such a conditional assumption or partial rejection is not permitted by the Bankruptcy Code.

"It is well established that a Debtor cannot retain the beneficial aspects of a contract while rejecting the contract's burdens." *In re Ritchey*, 84 B.R. 474, 476 (Bankr. N.D. Ohio 1988). "[A]n executory contract or unexpired lease must be rejected *in toto*. To hold otherwise, would construe the bankruptcy law as providing a debtor in bankruptcy with greater rights and powers under a contract than the debtor had outside of bankruptcy." *Id. See In re Arts Dairy,*

*LLC*, 417 B.R. 495, 500 (Bankr. N.D. Ohio 2009) ("[a]ssumption must be done *cum onere*—that is, the contract must be assumed with all of its benefits and burdens").

In *Massachusetts Air Conditioning & Heating Corp. v. McCoy*, 196 B.R. 659, 661 (D. Mass. 1996), the debtor attempted to avoid its obligations under a CBA by including language in its plan, similar to that of the debtors in this case, attempting to assume those parts of the CBA favorable to it, while rejecting its obligations. The plan stated that the "Debtor intends to assume this Collective Bargaining Agreement in order to preserve its relationship with Local 103 in the post-petition period, which assumption, the Debtor believes, will result in a future benefit to the estate by virtue of the Debtor's ability to employ Local 103 members on an 'as needed' basis and without resort to additional collective bargaining negotiation," but requested that the bankruptcy court approve the assumption "*on condition* that the Debtor be allowed to reserve its rights with respect to the treatment of Local 103's pre-petition claim, *pursuant to the priority of payment methodology proscribed under 11 U.S.C. Section 507(a)(4).*" *Id.* at 661 (emphasis in original). The court held that a limited or conditional assumption was ineffective.

> Having chosen to assume—to "preserve its relationship with Local 103" and to create "a future benefit to the estate" (BR, Item 15)—the claim is now properly elevated to "administrative" priority, (*see* BR, Item 7 (Second Amended Plan of Reorganization)), and becomes due immediately and in full. Mass. Air cannot now avoid this consequence by relying on its requested "conditional" assumption. In short, Mass. Air cannot have it both ways. The Bankruptcy Court, in its efforts to direct reorganization, ordered Mass. Air to reject or assume. Mass. Air chose to assume.

*Id.* at 663.

Accordingly, the Court should reject the Debtors' attempt to conditionally assume, or partially reject, the CBAs without complying with Section 1113.

18

18-50757-amk    Doc 2970    FILED 08/02/19    ENTERED 08/02/19 08:38:10    Page 18 of 19

## CONCLUSION

For the foregoing reasons, the Unions request that the Court deny confirmation of the Plan.

Dated:  August 2, 2019    Respectfully submitted,

**GOLDSTEIN GRAGEL LLC**

 /s/ Joyce Goldstein
Joyce Goldstein (#0029467)
*jgoldstein@ggcounsel.com*
Richard L. Stoper, Jr. (#0015208)
*rstoper@ggcounsel.com*
1111 Superior Avenue, Suite 620
Cleveland, Ohio 44114
(216) 771-6633 ext. 3
(216) 771-7559 (fax)

Counsel for Utility Workers Union of America, Locals 270, AFL-CIO, International Brotherhood of Electrical Workers Local 29, AFL-CIO