# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| | ) | Chapter 11 |
| In re: | ) | |
| | ) | Case No. 18-50757 |
| FIRSTENERGY SOLUTIONS CORP., *et al.*,[1] | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | Hon. Judge Alan M. Koschik |
| | ) | |

## DEBTORS' MOTION TO EXCLUDE
## <u>THE EXPERT REPORT OF PETER A. BRADFORD</u>

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: FE Aircraft Leasing Corp. (9245), case no. 18-50759; FirstEnergy Generation, LLC (0561), case no. 18-50762; FirstEnergy Generation Mansfield Unit 1 Corp. (5914), case no. 18-50763; FirstEnergy Nuclear Generation, LLC (6394), case no. 18-50760; FirstEnergy Nuclear Operating Company (1483), case no. 18-50761; FirstEnergy Solutions Corp. (0186); and Norton Energy Storage, LLC (6928), case no. 18-50764. The Debtors' address is 341 White Pond Dr., Akron, OH 44320.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT................................................................................................1

FACTUAL BACKGROUND ...............................................................................................2

ARGUMENT........................................................................................................................6

    I.      THE BRADFORD REPORT SHOULD BE EXCLUDED BECAUSE ELPC IS NOT A "PARTY IN INTEREST" WITH STANDING IN THIS BANKRUPTCY, AND THERE IS NO CAUSE FOR PERMISSIVE INTERVENTION. ...........................................................................................6

        A.     The ELPC Has No Constitutional or Prudential Standing in These Chapter 11 Proceedings Because It Has No Pecuniary Claim Against the Debtors.............................................................................7

        B.     ELPC Does Not Have "Cause" for Permissive Intervention Because It Has No Economic Interest in this Bankruptcy, It Has Not Articulated Any Concern Regarding Precedential Ramifications of the Case, and Its Interests are Already Represented...............................................................................10

    II.     BRADFORD'S OPINIONS ARE INADMISSIBLE UNDER F.R.E. 702 BECAUSE THEY ARE IRRELEVANT TO FEASIBILITY OF THE PLAN AND URGE THE ADOPTION OF AN IMPROPER LEGAL STANDARD. ...............................................................................................12

        A.     Legal Standard for Feasibility.....................................................12

        B.     Legal Standard for Admissibility of Expert Opinions. .............................13

        C.     Bradford's Opinions Are Inadmissible Because They Are Irrelevant to the Feasibility of the Debtors' Plan and Urge the Adoption of an Improper Legal Standard. ...............................................................14

    III.    THE PRINCIPLES OF DEFERENCE TO ADMINISTRATIVE AGENCY EXPERTISE AND CONSERVATION OF FEDERAL RESOURCES PROHIBIT THE COURT FROM RE-WRITING FEDERAL LAW REGARDING DECOMMISSIONING FUNDING ............................................16

        A.     The NRC Deserves Deference in the Regulation and Oversight of the Debtors' Decommissioning Funding. ...................................................16

        B.     The ELPC Has a Forum to Voice Its Concerns, and Its Arguments Have Been Duly Considered.................................................................17

CONCLUSION...................................................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Addison Cmty. Hosp. Auth.*,
175 B.R. 646 (Bankr. E.D. Mich. 1994) ...............................................................................6, 11

*Bourjaily v. United States*,
483 U.S. 171 (1987) ....................................................................................................................13

*Brereton v. United States*,
973 F.Supp. 752 (E.D. Mich. 1997) ...........................................................................................14

*In re Brice Rd. Devs. LLC*,
392 B.R. 274 (B.A.P. 6th Cir. 2008) ..........................................................................................12

*Matter of Briscoe Enterprises, Ltd., II*,
994 F.2d 1160 (5th Cir. 1993) ....................................................................................................12

*In re Brown*,
442 B.R 585 (E.D. Mich. 2011) ...................................................................................................7

*Commonw. of Mass. v. United States*,
856 F.2d 378 (1st Cir. 1988) .......................................................................................................17

*Computer Task Group, Inc. v. Brotby (In re Brotby)*,
303 B.R. 177 (9th Cir. BAP 2003) ..............................................................................................12

*In re Crescent*,
122 B.R. 979 (Bankr. N.D. Ohio 1990) .......................................................................................8

*In re CVC, Inc.*,
106 B.R. 478 (Bankr. N.D. Ohio 1989) ......................................................................................11

*Daubert v. Merrell Dow Pharms.*,
509 U.S. 579 (1993) ....................................................................................................................13

*In re Huggins*,
460 B.R. 714 (Bankr. E.D. Tenn. 2011) .....................................................................................11

*In re Ionosphere Clubs, Inc.*,
101 B.R. 844 (Bankr. S.D.N.Y. 1989) ...............................................................................8, 9, 11

*Jonas v. Geren*,
No. 08-2280, 2009 WL 10664193 (W.D. Tenn. Aug. 26, 2009) ...............................................17

ii

*Kane v. Johns-Manville Corp.*,
843 F.2d 636 (2d Cir. 1988).............................................................................12, 16

*Kelley v. Selin*,
42 F.3d 1501 (6th Cir. 1995) ..................................................................................17

*In the Matter of Louis S. Goldman*,
82 B.R. 894 (Bankr. S.D. Ohio 1988)...............................................................7, 8, 9

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)............................................................................................7, 9

*In re Morris Publ'g Grp.*,
No. 10-10134, 2010 WL 599393 (Bankr. S.D. GA. Feb. 10, 2010)...........7, 8, 9, 11

*In re Morton*,
298 B.R. 301 (B.A.P. 6th Cir. 2003)..........................................................................7

*Noskowiak v. Bobst SA*,
No. 04-C-0642, 2005 WL 2146073 (E.D. Wis. Sept. 2, 2005)..................................13

*In re Refco Inc.*,
505 F.3d 109 (2d Cir. 2007)......................................................................................11

*In re Rosenberg*,
472 F. App'x. 890 (11th Cir. 2012) ............................................................................7

*In re Saffold*,
373 B.R. 39 (Bankr. N.D. Ohio 2007)......................................................................10

*In re Scrap Metal Antitrust Litigation*,
527 F.3d 517 (6th Cir. 2008) ....................................................................................13

*State of N.Y. v. United Parcel Serv., Inc.*,
No. 15-cv-1136 (KBF), 2016 WL 4735368 (S.D.N.Y. Sept. 10, 2016)...................13

*In re Teligent, Inc.*,
640 F.3d 53 (2d. Cir. 2011)..........................................................................................7

*In re Thompson*,
965 F.2d 1136 (1st Cir. 1992)....................................................................................10

*TNS, Inc. v. N.L.R.B.*,
296 F.3d 384 (6th Cir. 2002) ..............................................................................17, 18

*United States v. Mehanna*,
735 F.3d 32 (1st Cir. 2013)........................................................................................13

iii

*Weinman v. Crowley (In re Blair)*,
   588 B.R. 605 (Bankr. D. Colo. 2018) ....................................................................14

*In re Welding Fume Products Liab. Litig.*,
   No. 1:03-CV-17000, 2005 WL 1868046 (N.D. Ohio Aug. 8, 2005)........................13

*In re Westwood Cmty. Two Ass'n, Inc.*,
   293 F.3d 1332 (11th Cir. 2002) ............................................................................10

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
   45 F. Supp. 3d 724 (N.D. Ohio 2014)....................................................................13

**Statutes**

11 U.S.C. § 1109(b) .......................................................................................................7, 8

11 U.S.C. 1129(a)(11)........................................................................................................12

**Other Authorities**

10 C.F.R. § 2, Subpart M ..................................................................................................18

10 C.F.R. § 2.206 (2019) ..................................................................................................17

10 C.F.R. § 50.33 (2019) ..................................................................................................14

10 C.F.R. § 50.75 (2018) ...............................................................................................3, 14

10 C.F.R. § 50.80 (2019) ..................................................................................................14

Fed. R. Bankr. P. Rule 2018(a) ........................................................................................10

Fed. R. Evid. 402 ..............................................................................................................13

Fed. R. Evid. 702 ..............................................................................................................12

*Assuring the Availability of Funds for Decommissioning Nuclear Reactors,*
   ADAMS Accession No. ML112160012 (Oct. 2011) ...............................................5

Darin M. Benyak, *Application for Order Consenting to Transfer of Licenses and
   Conforming License Amendments*, ADAMS Accession No. ML19116A087
   (April 26, 2019) ........................................................................................................5

Darin M. Benyak*, Supplemental Information Needed for Acceptance of Requested
   Licensing Action RE: Application for Order Consenting to Transfer of
   Licenses and Conforming Amendments*, ADAMS Accession No.
   ML19151A531 (May 31, 2019)................................................................................5

iv

*Davis-Besse Nuclear Power Station, Unit No. 1 Renewed Facility Operating License*, ADAMS Accession No. ML053110490 (Dec. 8, 2015) ...........................................3

Donald A. Moul, *Certification of Permanent Cessation of Power Operations for Beaver Valley Nuclear Power Station, Unit Nos. 1 and 2, Davis-Besse Nuclear Power Station, Unit No. 1, and Perry Nuclear Power Plant Unit No.1.*, ADAMS Accession No. ML18115A007 (April 25, 2018) ...........................................3

Darin M. Benyak, *Submittal of the Decommissioning Funding Status Report for Beaver Valley Nuclear Power Station, Unit Nos. 1 and 2, Davis-Besse Nuclear Power Station, and Perry Nuclear Power Plant*, ADAMS Accession No. ML19074A242 (March 15, 2019) .........................................................5

Ho K. Nieh, *Director's Decision Under 10 CFR 2.206*, ADAMS Accession No. ML19052A041 (April 3, 2019) ........................................................................4

John W. Judge, *FirstEnergy Solutions Files Deactivation Notice for Three Competitive Nuclear Generating Plants in Ohio and Pennsylvania, FirstEnergy Solutions Press Release* (2019) .......................................................3

John W. Judge, *Withdrawal of Certification of Permanent Cessation of Power Operations for Davis-Besse Nuclear Power Station, Unit No. 1, and Perry Nuclear Power Plant, Unit No. 1*, ADAMS Accession No. ML19207A097 (July 26, 2019) ..........................................................................................3

Margrethe Kearney, *OED0-18-00160-ELPC Comments on Proposed Director's Decision on 10 CFR 2.206 Petition for Citizen Complaint and Request for Enforcement Action Regarding FirstEnergy Nuclear Facility Operations in Ohio and Pennsylvania,* ADAMS Accession No. ML19037A340 (January 22, 2019) .................................................................................................................4

*NRC: Decommissioning of Nuclear Facilities* (May 8, 2019).................................14, 17

*Perry Nuclear Power Plant, Unit No. 1 Facility Operating License*, ADAMS Accession No. ML053040355 (Nov. 13, 1986).........................................................3

v

FirstEnergy Solutions Corp. ("FES") and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors")[2] respectfully move this Court to exclude the opinions, testimony, and report of Peter A. Bradford (the "Bradford Report," attached hereto as **Exhibit A**), the purported expert tendered by the Environmental Law and Policy Center ("ELPC").

## PRELIMINARY STATEMENT

The Bradford Report should be excluded in its entirety for either of two independently sufficient reasons: (1) the ELPC lacks standing to participate in confirmation proceedings, and/or (2) Bradford's opinions are irrelevant to any issue before this Court, including whether FES's proposed Plan[3] is feasible.

The ELPC, a public interest organization with no financial stake or other protected interest in these chapter 11 proceedings, asserts that that the Debtors have not set aside sufficient funds to cover the estimated cost of decommissioning four nuclear power plants located in Ohio and Pennsylvania (the "Facilities"), and submits the Bradford Report in support of its concerns.[4] Bradford admits that the Debtors proposed Plan complies with applicable federal requirements established by the Nuclear Regulatory Commission ("NRC" or "Commission"), but nonetheless urges this Court to deem these regulations insufficient and require the Debtors to set aside additional decommissioning funds (although Bradford neither specifies the amount, nor the method to calculate the alleged shortfall).

---

[2] Capitalized terms used, but not defined, in the Preliminary Statement shall have the meaning ascribed to them below.

[3] As used herein, "Plan" shall refer to the Debtors' *Sixth Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 2934] or any subsequent amended versions thereof. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

[4] The Facilities include the Beaver Valley Power Station, Units Nos. 1 and 2 ("BVPS-1" and "BVPS-2"), the Davis-Besse Nuclear Power Station, Unit No. 1 ("DBNPS") and Perry Nuclear Power Plant, Unit No. 1 ("PNPP").

1

It is well established that public interest groups such as the ELPC, which are merely interested in the outcome of a bankruptcy case, lack constitutional standing, are not "parties in interest," and lack "cause" to intervene. Furthermore, the ELPC has fully and repeatedly availed itself of its right to participate in proceedings before the NRC – the federal agency founded for the very purpose of drafting and enforcing regulations related to the commercial use of nuclear materials – in order to articulate the very concerns that it now seeks to offer to this Court through the Bradford Report. The NRC has determined that the Debtors have complied with all applicable regulations for decommissioning the Facilities, and provided its assurance that the agency will fulfill its mandate of closely monitoring the adequacy of the Debtors' decommissioning funding and addressing any issues that may arise in the future.

Even if the ELPC had standing to participate in these proceedings – which it does not – the Debtors' compliance with NRC regulations establishes, by definition, that in this respect its Plan is feasible. The ELPC and Bradford, by urging this Court to apply a more stringent standard than is presently required by applicable non-bankruptcy law, effectively ask this Court to usurp the authority of the NRC by re-writing the law governing nuclear decommissioning funding. For either or both of the foregoing reasons, neither of which presents a close call based on governing law, the Bradford Report should be excluded.

**FACTUAL BACKGROUND**

The NRC has established a robust framework of regulations governing the decommissioning of nuclear reactors. Among other things, the NRC requires licensees to notify the NRC when deactivation is planned, provide updates on decommissioning activities, and set

2

aside funds sufficient to cover radiological decommissioning, as determined by an NRC formula.[5]

The Facilities are owned by Debtor FirstEnergy Nuclear Generation, LLC ("NG") and operated by FirstEnergy Nuclear Operating Company ("FENOC"). In March 2018, FES announced its intention to permanently decommission the nuclear reactors located at the Facilities[6] and provided the required notice to the NRC regarding its decommissioning plans.[7,8] In response, on March 27, 2018, the ELPC filed a request for action with the NRC (the "Citizen Complaint," attached hereto as **Exhibit B**) objecting to the decommissioning of the Facilities. In the Citizen Complaint, ELPC asserted that FES did not have sufficient funding to decommission the Facilities and demanded that the NRC remedy this perceived public hazard. *See id.*

Shortly thereafter, on March 31, 2018, FES and its Debtor affiliates (including NG and FENOC) filed voluntary petitions for bankruptcy protection under chapter 11 of the United States Bankruptcy Code. [Dkt. No. 1]. The Debtors' proposed Plan contemplates that the nuclear operating licenses for the Facilities will be transferred to the reorganized successors of NG and FENOC. (*See* Plan, Art. IV.E-F). In accordance with NRC requirements, the effectiveness of the Plan is contingent upon receipt of "all authorizations, consents, regulatory approval . . . rulings or

---

[5] 10 C.F.R. § 50.75 (2018).

[6] John W. Judge, *FirstEnergy Solutions Files Deactivation Notice for Three Competitive Nuclear Generating Plants in Ohio and Pennsylvania*, FirstEnergy Solutions Press Release, (2019) https://www.fes.com/content/dam/fes/about/files/newsreleases/deactivation-release-final-letterhead.pdf.

[7] Donald A. Moul, *Certification of Permanent Cessation of Power Operations for Beaver Valley Nuclear Power Station, Unit Nos. 1 and 2, Davis-Besse Nuclear Power Station, Unit No. 1, and Perry Nuclear Power Plant Unit No. 1.*, ADAMS Accession No. ML18115A007, (April 25, 2018), https://www.nrc.gov/docs/ML1811/ML18115A007.pdf.

[8] FES subsequently rescinded the decommission notices for the Davis-Besse and Perry power plants. *See* John W. Judge, *Withdrawal of Certification of Permanent Cessation of Power Operations for Davis-Besse Nuclear Power Station, Unit No. 1, and Perry Nuclear Power, Plant, Unit No. 1, Facility Operating License*, ADAMS Accession No. ML19207A097, (July 26, 2019), https://www.nrc.gov/docs/ML1920/ML19207A097.pdf; *see also Davis-Besse Nuclear Power Station, Unit No. 1 Renewed Facility Operating License*, ADAMS Accession No. ML053110490 (Dec. 8, 2015), https://www.nrc.gov/docs/ML0531/ML053110490.pdf *Perry Nuclear Power Plant, Unit No. 1 Facility Operating License*, ADAMS Accession No. ML053040355 (Nov. 13, 1986), https://www.nrc.gov/docs/ML0530/ML053040355.pdf.

documents that are necessary to consummate the Restructuring Transactions," including NRC approval of the license transfers. (*Id.* at Art. IX.B.11).

In response to the ELPC's Citizen Complaint, the Director for the NRC's Office of Nuclear Reactor Regulation issued a proposed decision (the "Proposed Decision," attached hereto as **Exhibit C**) denying the ELPC's petition and concluding that the petition set forth "an insufficient basis on which to take enforcement action, issue civil penalties, or suspend a license." (*Id.* at 10). The Proposed Decision further explained that the NRC has a thorough regulatory framework in place to monitor FES's decommissioning funding for the Facilities and address any shortfalls. (*Id.* at 9-10). Displeased with this finding, ELPC filed comments to the Proposed Decision on January 22, 2019.[9]

On April 3, 2019, the NRC issued a final decision (the "Director's Decision," attached hereto as **Exhibit D**) denying the ELPC's Citizen Complaint.[10] This decision found that "FENOC met the minimum funding requirements for future radiological decommissioning of its NRC-licensed facilities for the 2017 reporting cycle, and that there were no shortfalls in decommissioning funding." (*Id.* at 11.) It also found that "the [ELPC's] financial concerns do not raise an imminent safety issue or indicate that [FENOC] is unable to safely operate the [Facilities]," (*id.* at 9), and that "there is no current public health [or] safety concern requiring immediate NRC action." (*Id.*). Further, the Director's Decision found that FENOC has submitted the required decommissioning funding status reports, and promised that "[t]he NRC staff will conduct a [] review of these decommissioning funding status reports for the [Facilities],

---

[9] Margrethe Kearney, *OED0-18-00160-ELPC Comments on Proposed Director's Decision on 10 CFR 2.206 Petition for Citizen Complaint and Request for Enforcement Action Regarding FirstEnergy Nuclear Facility Operations in Ohio and Pennsylvania,* ADAMS Accession No. ML19037A340, (January 22, 2019), https://www.nrc.gov/docs/ML1903/ML19037A340.pdf. (hereinafter, "ELPC Comments to Proposed Director's Decision").

[10] Ho K. Nieh, *Director's Decision Under 10 CFR 2.206*, ADAMS Accession No. ML19052A041 (April 3, 2019), https://www.nrc.gov/docs/ML1905/ML19052A041.pdf.

4

and will consider the new expected shutdown dates, funding levels as of December 31, 2018, and any updated financial information necessary to demonstrate reasonable assurance that sufficient funds will be available for the radiological decommissioning of the sites . . . [i]f the staff identifies a funding shortfall, the NRC will evaluate any such scenario on a case-by-case basis." (*Id.* at 12).

Subsequently, in order to secure approval for the license transfers contemplated by the Plan, FENOC, filed an application (the "LTA") with the NRC for the transfer of the operating licenses to the Facilities' restructured successors.[11]  Following this, on May 31, 2019, FENOC filed a supplement (the "Supplement")[12] addressing a potential shortfall in the decommissioning trust for one of the Facilities – BVPS-1.[13]  The potential shortfall was premised upon a planned deactivation of the plant in 2021.  In the Supplement, FENOC committed to rectifying the potential shortfall and proposed that the NRC include in its license transfer order a condition requiring that sufficient funding assurance be in place before the transfer is consummated.[14]

In response to the Debtors' LTA, the NRC opened license transfer proceedings (the "License Transfer Proceedings") and published a notice (the "Notice," attached hereto as **Exhibit**

---

[11] *See* Darin M. Benyak, *Application for Order Consenting to Transfer of Licenses and Conforming License Amendments*, ADAMS Accession No. ML19116A087 (April 26, 2019), https://www.nrc.gov/docs/ML1911/ML19116A087.pdf.

[12] Darin M. Benyak*, Supplemental Information Needed for Acceptance of Requested Licensing Action RE: Application for Order Consenting to Transfer of Licenses and Conforming Amendments*, ADAMS Accession No. ML19151A531 (May 31, 2019), https://www.nrc.gov/docs/ML1915/ML19151A531.pdf.

[13] This potential shortfall was identified in FENOC's March 15, 2019 decommissioning funding status report to the NRC. *See* Darin M. Benyak, *Submittal of the Decommissioning Funding Status Report for Beaver Valley Nuclear Power Station, Unit Nos. 1 and 2, Davis-Besse Nuclear Power Station, and Perry Nuclear Power Plant*, ADAMS Accession No. ML19074A242 (March 15, 2019), https://www.nrc.gov/docs/ML1907/ML19074A242.pdf.

[14] *See* Supplement at 3-4. As noted in the License Transfer Application and Supplement, in the ordinary course of business, the Applicants would have until the next annual decommissioning status report to correct the shortfall.  *See* Regulatory Guide 1.159 (Rev. 2), *Assuring the Availability of Funds for Decommissioning Nuclear Reactors*, ADAMS Accession No. ML112160012 at 14 (Oct. 2011) https://www.nrc.gov/docs/ML1121/ML112160012.pdf. ("[S]hortfalls identified in a biennial report must be corrected by the time the next biennial report is due").  This would in FENOC's case require resolving the funding shortfall by March 2020.  However, here the shortfall will be resolved by emergence from bankruptcy, which is expected to occur sooner than March 2020.  Supplement at 3.

**E**) in the Federal Register regarding the requested transfers. The Notice invited public comments on the LTA, and offered an opportunity for persons potentially affected by the transfer to file hearing requests and intervention petitions. Seizing this opportunity for a second bite at the apple, the ELPC filed a petition to intervene (the "Petition to Intervene," attached hereto as **Exhibit F**) in the License Transfer Proceedings on July 17, 2019. In its Petition to Intervene, the ELPC again challenged the adequacy of the Debtors' decommissioning funding for the Facilities.

While waiting for the NRC to rule on its Petition to Intervene, which is still pending, the ELPC served the Debtors with the Bradford Report and filed an objection to the Debtors' Plan.[15] The Debtors move to exclude the Bradford Report (and any related testimony) both because the ELPC lacks standing to participate in these proceedings, and because, irrespective of standing, Bradford's opinions are wholly irrelevant to feasibility of the Plan.

### ARGUMENT

I.      **THE BRADFORD REPORT SHOULD BE EXCLUDED BECAUSE ELPC IS NOT A "PARTY IN INTEREST" WITH STANDING IN THIS BANKRUPTCY, AND THERE IS NO CAUSE FOR PERMISSIVE INTERVENTION.**

In order to interject itself into a bankruptcy, a prospective litigant must either: (1) have constitutional and prudential standing to participate as a "party in interest," or (2) meet the requirements for permissive intervention. *See, e.g.*, *In re Addison Cmty. Hosp. Auth.*, 175 B.R. 646, 650-51 (Bankr. E.D. Mich. 1994). As set forth below, ELPC fails to pass either test.

---

[15] On August 2, 2019, ELPC, Ohio Citizen Action ("OCA"), Ohio Environmental Council ("OEC") and Environmental Defense Fund ("EDF") (collectively, the "Citizen Organizations") filed an objection to the Debtors" Plan with the Court. (*See* Feasibility Objection of the Environmental Law & Policy Center, Ohio Citizen Action, Ohio Environmental Counsel and Environmental Defense Fund to Debtors' Sixth Amended Joint Plan of Reorganization, [Dkt. No.2984]) (the "Plan Objection"). The Citizen Organizations lack standing to file the Objection and FES will address this issue, as well as substantive issues with the Objection, in a separate filing.

**A. The ELPC Has No Constitutional or Prudential Standing in These Chapter 11 Proceedings Because It Has No Pecuniary Claim Against the Debtors.**

To have the right to participate in chapter 11 proceedings, a prospective litigant must have constitutional standing and qualify as a "party in interest" under 11 U.S.C. § 1109(b) (the latter characterized as prudential standing). *See, e.g., Brown*, 442 B.R. 585, 598 (E.D. Mich. 2011). The prospective litigant bears the burden of proving these elements. *See, e.g. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

i. ***The Requirements for Constitutional and Prudential Standing.***

Constitutional standing requires: (1) an injury in fact that is "concrete and particularized" and "actual or imminent;" (2) "a causal connection between the injury and the conduct complained of;" and (3) redressability of the injury "by a favorable decision." *Lujan*, 504 U.S. at 560–61. Prudential standing in a bankruptcy as a "party in interest" requires that a prospective litigant have a financial stake in the bankruptcy. *See In re Morton*, 298 B.R. 301, 305-306 (B.A.P. 6th Cir. 2003) (only "persons whose pecuniary interests are directly affected by the bankruptcy proceedings" are "part[ies] in interest") (internal citations omitted); *In re Brown*, 442 B.R. at 589-99 (a challenge to "party in interest" classification "is rooted in the distinctly separate concept of prudential standing"); *In re Teligent, Inc.*, 640 F.3d 53, 60 (2d. Cir. 2011) (same); *In re Rosenberg*, 472 F. App'x. 890 (11th Cir. 2012) (upholding dismissal where plaintiff-appellants had no financial interest); *In re Morris Publ'g Grp.*, No. 10-10134, 2010 WL 599393, at *2 (Bankr. S.D. GA. Feb. 10, 2010) ("the concept of 'party in interest' is not infinitely elastic."); *In the Matter of Louis S. Goldman*, 82 B.R. 894, 896 (Bankr. S.D. Ohio 1988) (a "stranger to . . . bankruptcy proceedings" without some kind of direct relationship with the debtor, the debtor's property, or the administration of the bankruptcy estate is generally not a "party in interest").

7

The mere assertion of concern by a public interest group is insufficient for prudential standing where the group has no pecuniary interest affected by confirmation of a debtors' plan. *See In re Morris Publ'g Grp., LLC*, 2010 WL 599393, at *4 ("[t]he [o]bjecting [p]arties raise what could generally be termed public interest issues . . . [and] therefore have not met the standard under § 1109(b)"); *In the Matter of Goldman*, 82 B.R. at 896 ("[a]lthough the term 'party in interest' is broader than the term 'creditor,' it does not encompass entities that are merely 'concerned' with the results of a debtor's bankruptcy proceedings").  Furthermore, a public interest group cannot step into the shoes of its constituents to gain prudential standing. *See In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 849 (Bankr. S.D.N.Y. 1989) ("[t]his Court is not persuaded by [movant's] assertion that due to its self-proclaimed status as protector of consumers, it has the unique power to step into the shoes of [consumers], and receive their status as a party in interest").

Typically, only an entity claiming a right to payment from a debtor will have standing to object to a debtor's plan.  *In re Ionosphere*, 101 B.R. at 849-50 (holding that consumer union lacked standing because it had no right to payment from, or other direct financial relationship with, the debtor); *see also In re Crescent*, 122 B.R. 979, 981 (Bankr. N.D. Ohio 1990) ("the party requesting standing must either be a creditor of a [d]ebtor . . . or be able to assert an equitable claim against the estate") (internal citations omitted); *In re Morris Publ'g Grp.*, 2010 WL 599393, at *3 ("Congress did not intend to grant all parties in interest standing to be heard . . . on every single aspect of the reorganization proposal and the effects of its consummation") (internal citation omitted).

As courts have repeatedly recognized, enforcement of standing requirements is essential to facilitate a speedy and efficient reorganization process.  *See In re Morris Publ'g Grp.*, 2010

8

WL 599393, at *4 ("limits on standing are vital in bankruptcy, where clouds of persons indirectly affected by the acts and entitlements of others may buzz about, delaying final resolution of cases") (internal citations omitted); *In re Ionosphere*, 101 B.R. at 850 ("it is important that a bankruptcy court is not too facile in granting applications for standing [because] [o]verly lenient standards may . . . over-burden the reorganization process").

    ii.    ***The ELPC Has Neither Constitutional Standing Nor Prudential Standing as a "Party in Interest" Because It Will Not Be Financially Harmed By Confirmation of the Debtors' Plan.***

The ELPC is a self-proclaimed community activist organization seeking to protect the interests of individuals in the Midwestern United States. (*See* Ex B at 1 n.1) ("ELPC is a non-profit, public interest environmental legal advocacy and eco-business innovation organization working throughout the Midwest states to improve environmental quality and protect natural resources in the Midwest"). ELPC will not be financially, or otherwise, harmed by confirmation of the Debtors' Plan. Thus, it has no "injury in fact," much less one that is "concrete and particularized" and "actual or imminent." *See Lujan*, 504 U.S. at 560–61. And even if ELPC's individual constituents might be harmed by confirmation —which ELPC has not alleged—the ELPC cannot step into their shoes as "parties of interest." *Id*. at 566 (the Bankruptcy Code does not create "rights of action in persons who have not been injured in fact"). In short, the ELPC is a "stranger" to this bankruptcy and will suffer no prejudice from a lack of representation in confirmation proceedings. *See In re Morris Publ'g Grp.*, 2010 WL 599393, at *4; *In the Matter of Goldman*, 82 B.R. at 896.

The ELPC suggests in its Plan Objection that it should be deemed a "party in interest" because it previously "participated in these [chapter 11] proceedings," including by joining an opposition to the Debtors' initial disclosure statement. [Dkt. No. 2984 at 2]. Yet the Plan

9

Objection cites no authority indicating that such participation can confer standing that is otherwise plainly lacking, and Debtors expressly reserved their rights to object to ELPC's standing to participate in these chapter 11 proceedings.[16, 17]  Indeed, courts have consistently rejected the assertion that mere participation confers standing upon a litigant.  *See In re Westwood Cmty. Two Ass'n, Inc.*, 293 F.3d 1332, 1336 (11th Cir. 2002) ("[a]lthough the bankruptcy court allowed the [litigant] to appear in the bankruptcy proceedings, that fact alone does not give the [litigant] standing to appeal an order of the bankruptcy court"); *In re Thompson*, 965 F.2d 1136, 1141–42 (1st Cir. 1992) ("mere participation in a hearing . . . in an adversary proceeding does not constitute *de facto* intervention.

For the foregoing reasons, the ELPC lacks both constitutional and prudential standing to participate in confirmation proceedings.

> **B.  ELPC Does Not Have "Cause" for Permissive Intervention Because It Has No Economic Interest in this Bankruptcy, It Has Not Articulated Any Concern Regarding Precedential Ramifications of the Case, and Its Interests are Already Represented.**

> i.  ***The Legal Standard for Permissive Intervention.***

Federal Rule of Bankruptcy Procedure 2018(a) provides that "*for cause shown*, the court may permit any interested entity to intervene generally or with respect to any specified matter." F.R.B.P. 2018(a) (emphasis added).  However, it is well established that a prospective litigant must have either: (1) "an economic interest in the case or one of its aspects", or (2) "a concern

---

[16] The Debtors, and the FE Non-Debtor Parties, have consistently and repeatedly made clear that the ELPC does not have standing and that they were preserving any objection to standing.  *See, e.g.*, FE Non-Debtor Parties' Statement in Supp. of Mot. Of Debtors to Approve Settlement Among the Debtors, Non-Debtor Affiliates & Certain Other Settlement Parties Pursuant to 11 U.S.C. §§ 105, 363, 365 & 502 and Rule 9019 of the Fed. R. Bankr. P. [Dkt. No. 1224 at 8]; Debtors' Responses and Objections to the EPLC, OCA, OEC, and EDF's First Request for Production of Documents from the Debtors and First Set of Interrogatories to the Debtors (May 10, 2019), (hereinafter "Debtors' Responses & Objections,"attached hereto as **Exhibit G**.

[17] An objection to constitutional standing may be raised at any time and cannot be waived.  *E.g. In re Saffold*, 373 B.R. 39, 43 (Bankr. N.D. Ohio 2007) ("standing can be raised at any time and is not subject to waiver").

with its precedential ramifications" in order to demonstrate "cause" for intervention. *In re Morris Publ'g Grp.*, 2010 WL 599393, at *5 (internal citations omitted); *see also In re Ionosphere*, 101 B.R. at 853 (same); *In re Refco Inc.*, 505 F.3d 109, 119 (2d Cir. 2007) (upholding denial of intervention where movant had no economic interest in the bankruptcy); *In re Huggins*, 460 B.R. 714, 720 (Bankr. E.D. Tenn. 2011) (rejecting appellant's status as a "party in interest" and "cause" for intervention where appellant lacked a financial stake in the bankruptcy). Even where "cause" is demonstrated, a bankruptcy court may properly deny intervention where it "would cause unwarranted delay or prejudice to the original parties" or "the potential intervenor's interests are already adequately represented." *In re Addison Cmty. Hosp. Auth.*, 175 B.R. at 651; *see also In re Ionosphere*, 101 B.R. at 853 ("permissive intervention . . . should not be given if . . . [it] would result in undue delay or prejudice to the original parties") (internal citations omitted); *In re CVC, Inc.*, 106 B.R. 478, 480 (Bankr. N.D. Ohio 1989) (denying intervention where it would cause "undue delay, prejudice to the rights of the original . . . and increased cost to the estate").

ii. ***The ELPC Has No "Cause" For Permissive Intervention.***

As set forth above, ELPC has no economic interest in confirmation of the Debtors' Plan or any other aspect of this bankruptcy proceeding. *See supra*, ¶ I(A)(ii). Nor has ELPC articulated any concerns regarding potential procedural ramifications of confirmation of the Debtors' Plan. Moreover, the safety and welfare interests of the public are adequately represented in this bankruptcy by the governmental bodies tasked with regulating this very issue—the NRC and the U.S. Department of Justice. *See* (Ex. D at 13) (Director's Decision) ("[t]he U.S. Department of Justice and the NRC's Office of the General Counsel are working closely together to represent the NRC's interests in the bankruptcy proceeding, including

11

protection and preservation of the decommissioning trust funds and continued compliance with the requirements for decommissioning funding"). Thus, the ELPC has no "cause" for intervention.

In the absence of both standing and "cause" for intervention, the ELPC has no legal basis to offer the Bradford Report or any related testimony into evidence, and the Bradford Report must therefore be excluded.

**II.     BRADFORD'S OPINIONS ARE INADMISSIBLE UNDER F.R.E. 702 BECAUSE THEY ARE IRRELEVANT TO FEASIBILITY OF THE PLAN AND URGE THE ADOPTION OF AN IMPROPER LEGAL STANDARD.**

Even if ELPC had standing to object to the Debtors' Plan or qualified for permissive intervention —which it does not—the Bradford Report is irrelevant to the feasibility of the Debtor's Plan, and should be excluded from the Court's consideration.

**A.  Legal Standard for Feasibility.**

In order to demonstrate that the Plan is feasible, the Debtors need only show that confirmation "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor." 11 U.S.C. § 1129(a)(11). As the Sixth Circuit has articulated, "'[t]he Code does not require the debtor to prove that success is inevitable, and a relatively low threshold of proof will satisfy § 1129(a)(11)'" *In re Brice Rd. Devs.*, LLC, 392 B.R. 274 (B.A.P. 6th Cir. 2008) (quoting *Computer Task Group, Inc. v. Brotby (In re Brotby)*, 303 B.R. 177, 191 (9th Cir. BAP 2003)); *see also Matter of Briscoe Enterprises, Ltd., II*, 994 F.2d 1160, 1165–66 (5th Cir. 1993) ("[o]nly a reasonable assurance of commercial viability is required.") (internal citations omitted); *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988) ("[s]uccess need not be guaranteed").

12

### B. Legal Standard for Admissibility of Expert Opinions.

Pursuant to Federal Rule of Evidence 702, an expert's opinion or testimony may only be admitted if it, among other things, "will help the trier of the fact to understand the evidence or to determine a fact in issue." *E.g. Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993); *see also United States v. Mehanna*, 735 F.3d 32, 66 (1st Cir. 2013) (in order for expert testimony to be helpful, "there must be a 'valid connection … between the expert's testimony and the disputed issue'"). The proponent of expert testimony bears the burden of demonstrating that the expert's opinions will be helpful to the trier of fact. *See, e.g. Bourjaily v. United States,* 483 U.S. 171, 176 (1987).

Although exclusion of expert testimony "is the exception rather than the rule," *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 530 (6th Cir. 2008), courts properly exclude expert opinions where the proponent fails to demonstrate their relevance. *See e.g. In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 45 F. Supp. 3d 724, 745 (N.D. Ohio 2014) (excluding expert opinion relating to dismissed claims); *see also* Fed. R. Evid. 402 ("irrelevant evidence is not admissible"); Fed. R. Evid. 402, Adv. Comm. Nootes to 1972 Proposed Rules ("that evidence which is not relevant is not admissible [is] a presupposition involved in the very conception of a rational system of evidence") (internal citations omitted). Indeed, there are obvious efficiency gains in precluding testimony that is plainly irrelevant. *State of N.Y. v. United Parcel Serv., Inc.*, No. 15-cv-1136 (KBF), 2016 WL 4735368, at *1 (S.D.N.Y. Sept. 10, 2016) ("[s]uch testimony is a waste of everyone's time"). Likewise, courts consistently exclude expert opinions premised upon improper legal standards. *See, e.g., In re Welding Fume Products Liab. Litig.*, No. 1:03-CV-17000, 2005 WL 1868046, at *7 (N.D. Ohio Aug. 8, 2005) (portions of expert testimony "improperly premised upon … an erroneous [] standard … are

13

inadmissible"). While confusing the fact-finder is less likely in a bench trial than a jury trial, the exclusion of irrelevant expert testimony in a bench trial is nonetheless appropriate. *See Noskowiak v. Bobst SA*, No. 04-C-0642, 2005 WL 2146073, at *5 (E.D. Wis. Sept. 2, 2005) ("testimony should not be a source of confusion by invoking a legal standard which entails a different set of issues than those operative in the present controversy"); *Brereton v. United States*, 973 F.Supp. 752, 758 (E.D. Mich. 1997) (excluding expert opinions as "unhelpful"); *Weinman v. Crowley (In re Blair)*, 588 B.R. 605, 608 (Bankr. D. Colo. 2018) (irrelevant testimony "does not assist the Court (as the trier of fact) to understand the evidence or to determine a fact in issue").

**C. Bradford's Opinions Are Inadmissible Because They Are Irrelevant to the Feasibility of the Debtors' Plan and Urge the Adoption of an Improper Legal Standard.**

i. *Feasibility is Evidenced By Compliance With NRC Regulations, and the NRC Has Determined that the Debtors Have Complied With All Applicable Regulations.*

The NRC is responsible for ensuring that nuclear plant licensees meet their decommissioning funding obligations, and the agency has an extensive regulatory framework governing both decommissioning and license transfers. *See NRC: Decommissioning of Nuclear Facilities*, (May 8, 2019) https://www.nrc.gov/waste/decommissioning; 10 C.F.R. § 50.80 (2019) (regarding license transfer); 10 C.F.R. § 50.33 (2019) (regarding financial qualifications), 10 C.F.R. § 50.75 (2019) (regarding financial assurance for decommissioning); (NUREG-1577, Revision 1) (Feb. 1999), https://www.nrc.gov/reading-rm/doc-collections/nuregs/staff/sr1577/r1/sr1577r1.pdf. (hereinafter, "NUREG 1577 Rev. 1"). The ELPC has articulated its fears regarding the Debtors' decommissioning funding to the NRC in multiple forums. (*See* Ex. B. at 2-6) (raising concerns with the adequacy of decommissioning funding for the Facilities); (Ex. F. at 7-12) (requesting a hearing on the pending NRC license transfer application to challenge the

14

adequacy of decommissioning funding for the Facilities); (Exhibit 1 to Ex. F) (the Bradford Report).

The NRC has determined that the ELPC's initial concerns regarding the adequacy of decommissioning funding for the Facilities were unsubstantiated.  (*See* Ex. D at 11) ("FENOC met the minimum funding requirements for future radiological decommissioning of [the Facilities."]).  The NRC also undertook to closely monitor the Debtors' decommissioning funding to ensure that the Debtors remain in compliance with NRC requirements. (*See id.* at 12) ("NRC staff will conduct a [] review of the[] decommissioning funding status reports for the units [submitted to the NRC on March 15, 2019], and will consider the new expected shutdown dates, funding levels as of December 31, 2018, and any updated financial information necessary to demonstrate reasonable assurance that sufficient funds will be available for the radiological decommissioning of the sites . . . [i]f the staff identifies a funding shortfall, the NRC will evaluate any such scenario on a case-by-case basis").  Further, the NRC has received, and is reviewing, the Bradford Report which the ELPC attached to its Petition to Intervene in the License Transfer Proceedings.  *See* (Exhibit 1 to Ex. F); NUREG 1577 Rev. 1 (explaining that, during a license transfer review, the NRC is required to make an affirmative finding that decommissioning funding is sufficient).

The Bradford Report does not dispute that the Debtors have met NRC requirements regarding decommissioning and license transfers.  (*See* Ex. A at 5) ("[t]he Debtors' Plan of Reorganization must meet the minimum decommissioning trust funding requirements of the NRC" but "meeting NRC minimum funding requirements does not assure that costs of decommissioning Debtors' nuclear power plants [the Facilities] will be fully covered").  Instead, Bradford simply claims, without reference to specifics, that the decommissioning funding levels

15

required by the NRC—the very agency specifically tasked with publishing regulations to ensure that the decommissioning of nuclear power plants in the United States is done safely and effectively—are too low, and urges the Court to deny confirmation of the Debtors' plan solely on that basis. At bottom, the ELPC is asking this Court to hold that the NRC's regulations concerning reserves for the costs of decommissioning are inadequate, and to ignore such regulations.

Compliance with NRC regulations is more than sufficient to evidence that the Debtors have met the "low bar" of "a reasonable assurance of commercial viability" of the Plan. *Kane*, 843 F.2d at 649. Bradford's assertion that the Debtors must meet a higher (and undefined) standard is both unreasonable, and an attempt to convince the Court to adopt an improper legal standard. *See id*. at 649. Thus, the Bradford Report is unhelpful to the Court in deciding the matter at issue – feasibility of the Debtors' Plan— and must be excluded.

**III. THE PRINCIPLES OF DEFERENCE TO ADMINISTRATIVE AGENCY EXPERTISE AND CONSERVATION OF FEDERAL RESOURCES PROHIBIT THE COURT FROM RE-WRITING FEDERAL LAW REGARDING DECOMMISSIONING FUNDING.**

**A. The NRC Deserves Deference in the Regulation and Oversight of the Debtors' Decommissioning Funding.**

The NRC was established for the specific purpose of drafting and enforcing regulations regarding public health and safety related to the commercial use of nuclear materials. *See NRC: Who we Are, What We Do* ADAMS Accession No. ML16076A366 (Feb. 2018) https://www.nrc.gov/docs/ML1607/ML16076A366.pdf. Applying this expertise, while considering input from ELPC and others, the NRC has determined that FENOC met the funding requirements for decommissioning the Facilities for the 2017 reporting cycle, that the ELPC's concerns do not constitute a public health or safety concern, and that the NRC has the means to

16

address any issues that happen to arise with decommissioning funding for the Facilities. (*See* Ex. D at 9; 11-12). Moreover, the NRC has an extensive and time-honored process to address the potential shortfall identified in FENOC's 2019 report, a fact Mr. Bradford ignores. The Court should give deference to the NRC's determination and process, which are solidly within the NRC's scope of expertise. *See TNS, Inc. v. N.L.R.B.*, 296 F.3d 384, 398 (6th Cir. 2002) ("[i]n general, courts have held that scientific regulatory agencies such as the NRC should be given extreme deference within their area of expertise"); *Kelley v. Selin*, 42 F.3d 1501, 1511-12 (6th Cir. 1995) ("deference is especially applicable when the NRC is structuring its own rules of procedure and methods of inquiry") (internal citations omitted); *see also Jonas v. Geren*, No. 08-2280, 2009 WL 10664193, at *11 (W.D. Tenn. Aug. 26, 2009) ("[t]he [NRC]'s determination based on the administrative record is entitled to deference, and the Court will not substitute its own judgment for that of an agency that has adequately studies the relevant issues") (citing *Kelley*, 42 F.3d at 1518–19); *Commonw. of Mass. v. United States*, 856 F.2d 378 (1st Cir. 1988) (holding that NRC's regulation regarding licensure of nuclear power facilities was entitled to deference).

### B. The ELPC Has a Forum to Voice Its Concerns, and Its Arguments Have Been Duly Considered.

The NRC provides members of the public, such as the ELPC, many opportunities to participate in decommissioning and license transfer proceedings. *See* 10 C.F.R. § 2.206 (2019) (any person may file a request to institute a proceeding at the NRC to modify, suspend, or revoke a license); *NRC: Decommissioning of Nuclear Facilities* (explaining numerous opportunities for public participation in the NRC decommissioning process); (Ex. G at 2-3) (Debtors' Responses & Objections) ("The public has several opportunities to participate in the decommissioning process. A public meeting is held in the vicinity of the facility after submittal of a post-shutdown

decommissioning activities report to the NRC. Another public meeting is held when NRC receives the license termination plan. An opportunity for a public hearing is provided prior to issuance of a license amendment approving the plan or any other license amendment request.").

The ELPC is well-aware of its multiple opportunities for participation, and has taken full advantage of numerous avenues to articulate its concerns regarding the Debtors' decommissioning funding. (*See* Ex. B) (Citizen Complaint); ELPC Comments to Proposed Director's Decision; (Ex. F) (Petition to Intervene). The ELPC's Citizen Complaint was dismissed as meritless, (*see* Ex. D), but its Petition to Intervene and accompanying request for a hearing are still under consideration. If the NRC determines that there is any merit to the ELPC's claims, it will allow the ELPC to intervene and hold trial-like proceeding addressing the ELPC's concerns. *See* 10 C.F.R. Part 2, Subpart M (hearing procedures for NRC license transfer proceedings). If the NRC finds the ELPC's arguments valid, it can impose additional requirements on the Debtors regarding the Facilities. *See NRC Adjudications (Hearings)*, (Jan 19, 20218). After such a proceeding, the ELPC will also have the right to appeal the NRC decision to a district court if the ELPC believes the NRC abused its discretion. *See, e.g. TNS, Inc.*, 296 F.3d at 398. Thus, the Debtors' requested relief in this motion will not deprive the ELPC of an appropriate federal forum in which to articulate its concerns, and before which it can request relief. The Bradford Report, however, has no place in these confirmation proceedings and should be excluded in its entirety.

## CONCLUSION

For all of the foregoing reasons, the Debtors respectfully request that the Court exclude the opinions, export report and testimony of Peter A. Bradford.

18

Dated:   August 12, 2019

*/s/Kate M. Bradley*
**BROUSE MCDOWELL LPA**
Marc B. Merklin (0018195)
Kate M. Bradley (0074206)
Bridget A. Franklin (0083987)
388 South Main Street, Suite 500
Akron, OH 44311-4407
Telephone: (330) 535-5711
Facsimile: (330) 253-8601
mmerklin@brouse.com
kbradley@brouse.com
bfranklin@brouse.com

- and -

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira Dizengoff (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
Joseph L. Sorkin (admitted *pro hac vice*)
Brad Kahn (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
aqureshi@akingump.com
jsorkin@akingump.com
bkahn@akingump.com

- and -

Scott Alberino (admitted *pro hac vice*)
Kate Doorley (admitted *pro hac vice*)
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
salberino@akingump.com
kdoorley@akingump.com

*Counsel for the Debtors and Debtors in Possession*

19