## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
|  | ) Case No. 18-50757 (AMK) |
| FIRSTENERGY SOLUTIONS CORP., *et al.*,[1] | ) (Jointly Administered) |
|  | ) |
| Debtors. | ) |
|  | ) Hon. Judge Alan M. Koschik |
|  | ) |

## EXPERT DECLARATION OF CHARLES M. MOORE IN SUPPORT OF CONFIRMATION OF THE [SEVENTH] AMENDED JOINT PLAN OF REORGANIZATION OF FIRSTENERGY SOLUTIONS CORP., *ET AL*., PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

I, Charles M. Moore, hereby declare under penalty of perjury:

1.       I am a Managing Director at Alvarez & Marsal North America ("A&M"), a financial consulting firm. I am based in A&M's Detroit Office at 755 W. Big Beaver Road, Suite 650, Troy, Michigan 48084.

2.       A&M was engaged as a financial advisor by the Debtors on November 16, 2016. I was appointed as the Debtors' Chief Restructuring Officer by the FirstEnergy Solutions Corp. and FirstEnergy Nuclear Operating Company Board of Directors, effective as of the petition date of the above-captioned chapter 11 proceeding. As part of A&M's engagement, as well as part of my role as the Chief Restructuring Officer, I was asked by the Debtors to prepare an expert report evaluating the feasibility of the Debtors' Plan of Reorganization and the projections contained within Exhibit D to the Solicitation Version of the Fifth Amended Disclosure

---

[1]The Debtors in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, are: FE Aircraft Leasing Corp. (9245), case no. 18-50759; FirstEnergy Generation, LLC (0561), case no. 18-50762; FirstEnergy Generation Mansfield Unit 1 Corp. (5914), case no. 18-50763; FirstEnergy Nuclear Generation, LLC (6394), case no. 18-50760; FirstEnergy Nuclear Operating Company (1483), case no. 18-50761; FirstEnergy Solutions Corp. (0186); and Norton Energy Storage L.L.C. (6928), case no. 18-50764. The Debtors' address is: 341 White Pond Dr., Akron, OH 44320.

18-50757-amk    Doc 3057    FILED 08/16/19    ENTERED 08/16/19 16:43:09    Page 1 of 6

Statement With Respect to Fifth Amended Plan of Reorganization for the Debtors [Docket No. 2721] (the "Financial Projections").

3. Attached hereto as Exhibit A is a true and correct copy of my expert report (the "Moore Expert Report"), which was submitted on July 12, 2019 in these proceedings.

4. The Financial Projections were developed based on the Debtors' intention to cease generation (or "deactivate") at their fossil and nuclear power stations at varying dates through 2022, while concurrently maintaining optionality to extend the life of the plants if legislative support is realized and/or meaningful market reforms materialize.

5. Following the submission of my initial expert report, legislation was passed into law in Ohio that is expected to provide financial support to the Debtors nuclear generation operations. The commentary below addresses plan feasibility considerations under a scenario in which legislative support is realized, deactivation notices are rescinded for some or all of the Debtors' fossil and nuclear plants, and the power stations extend operations beyond their currently contemplated deactivation dates.

6. On July 17, 2019 the Ohio Senate amended and then passed its version of House Bill 6 ("HB6"). On July 23, 2019, the Ohio House of Representatives likewise passed the bill, and the bill was signed into law by Governor DeWine on the same date. The program provides a state-level legislative subsidy to the Debtors of $9.00 per megawatt hour ("MWh") for power produced by the Debtors' nuclear stations located in Ohio, the Perry and Davis-Besse power stations, for power generated from January 1, 2020 through December 31, 2026. Funding for the program is achieved through a new charge to electric consumers in Ohio for power consumed from January 1, 2021 through December 31, 2027. Based on the passage of HB6, on

2

July 26, 2019, the Debtors rescinded deactivation notices with PJM and the NRC for both of their Ohio nuclear power plants and their Ohio fossil plant.

7.    Listed below are key activities that are expected to occur with the passage of HB6:

A.  Reorganized NG would receive a nuclear resource credit (cash) up to $9.00 for each MWh of electricity a nuclear resource produces. Based on the anticipated annual generation of the Debtors' nuclear stations in Ohio, this would yield incremental operating cash flow of approximately $150 million per year.

B.  Because the deactivation notices have been rescinded, the Debtors may offer megawatts for some or all of their units into the Base Residual Auction ("BRA") for future planning years beginning with the 2022 / 2023 planning year.  If cleared volumes for the Ohio nuclear units are consistent with those contracted in the 2020 / 2021 planning year, and assuming a hypothetical clearing price of $77 per megawatt day, which is the same clearing price realized in the 2020 / 2021 planning year (the last year all the Debtors' nuclear units cleared the auction), the Debtors would receive approximately $57 million in annualized incremental capacity revenue starting on June 1, 2022.  Additional capacity revenue may be realized if additional power stations of the Debtors clear capacity in the 2022 / 2023 BRA, or if the clearing price is higher than $77 per megawatt day.

C.  In the near term through 2019 and early 2020, relative to a deactivation scenario, operating cash flow would decline primarily as a result of expenditures required to refuel the Davis-Besse power station prior to its next planned refueling outage in the spring of 2020.  Additional expenditures may also be required for planned

3

outage spend at the W.H. Sammis fossil power station which would be needed to support extended operations to the extent deactivation is rescinded for W.H. Sammis.

D.  The operating cost structure of the business would increase to support the extended operation of the plants, including increased direct operation and maintenance costs, increased capital expenditures, and increased corporate overhead costs. These costs would be partially offset by increased energy revenue sales to the open market (PJM) resulting from increased power generation.

E.  Nuclear decommissioning activities and associated cash outlays, including spent fuel management costs and any required nuclear decommission trust deficit payments, are expected to be reduced during the projection period as a result of rescinding deactivation notices for the Ohio nuclear units.

F.  On a total, net basis, as a result of the activities noted above, it is expected that the cumulative, extended operating cash flow of the business would be higher than what is otherwise currently contemplated in the Financial Projections.

8.  If the scenario described above is realized, the Debtors' capacity to meet expected post-emergence obligations of the Debtors would increase as a result of generating incremental cash flow over an extended period of time, thus increasing available cash resources to cover future environmental liabilities and other obligations.  At the same time, post-emergence obligations would likely decrease as a result of ceasing deactivation activities at several plants.

9.  If conditions change and the Debtors find they cannot continue to operate the units, even with funds received through legislative relief and/or market reform, the Debtors can always reissue deactivation notices and resume deactivation activities. The Debtors will not be

4

any worse off since this is what the Financial Projections currently contemplate. As such, it is my opinion that a continued operations scenario is feasible, accretive to the Debtors' business and would result in additional capital to fund anticipated obligations of the business.

10.     In accordance with my understanding of this Court's rules, I respectfully submit this Declaration as my direct testimony on behalf of the Debtors. If called to testify, I could and would testify competently to the facts and opinions stated in the Moore Expert Report.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  August 16, 2019                                    Respectfully submitted,

                                                           __ /s/ Charles M. Moore_____
                                                           Charles M. Moore