# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) Case No. 18-50757 |
| FIRSTENERGY SOLUTIONS CORP., et al. | ) (Jointly Administered) |
| | ) |
| Debtors. | ) Hon. Alan M. Koschik |
| | ) |

## OHIO VALLEY ELECTRIC CORPORATION'S MOTION TO CERTIFY CONFIRMATION ORDER FOR DIRECT APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

Pursuant to 28 U.S.C. § 158(d)(2) and Rule 8006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Ohio Valley Electric Corporation ("OVEC") hereby files this motion (the "Motion") requesting the Court to certify the *Order Confirming the Eighth Amended Plan of Reorganization of FirstEnergy Solutions Corp.*, et al.*, Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 3283] (the "Confirmation Order") for direct appeal to the United States Court of Appeals for the Sixth Circuit (the "Sixth Circuit").[1]   In support of this Motion, OVEC respectfully states as follows.

## PRELIMINARY STATEMENT

1.      This is the second appeal from the underlying bankruptcy case related to efforts by the Debtors to cease complying with their obligations under wholesale power contracts.  This Court certified the first appeal for direct appeal to the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit"), and the Sixth Circuit accepted the appeal.  *See Order Granting Ohio Valley Electric Corporation's Motion to Certify Rejection Order for Direct Appeal* [Docket No. 1262];

---

[1]      After having met and conferred with counsel for the Debtors, OVEC respectfully requests that the Court schedule this Motion for a hearing on December 3, 2019, a date on which OVEC understands that the Court and the Debtors have availability.

*In re Ohio Valley Electric Corporation*, 6th Cir. Case No. 18-0311, Order Granting Petition for Direct Appeal [Docket No. 031] (6th Cir. Nov. 5, 2018). That appeal involved several issues related to the role of the Federal Energy Regulatory Commission ("FERC") with respect to the Debtors' efforts to reject a wholesale power contract when that rejection would have the effect of abrogating the Debtors' obligations under the contract.

2.     This appeal involves a different, but related, issue relating to FERC's role at the plan confirmation stage, under 28 U.S.C. §1129(a)(6), when a plan of reorganization provides that a debtor will no longer abide by its obligations under a wholesale power contract.

3.     OVEC objected to the Debtors' *Sixth Amended Plan of Reorganization of FirstEnergy Solutions Corp.*, et al*., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 2934] as unconfirmable because the Debtors failed to satisfy the statutory requirements for confirmation set forth in 11 U.S.C. § 1129(a)(6), which provides that a bankruptcy court shall not confirm a reorganization plan unless "[a]ny governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval." The Debtors failed to satisfy that requirement because they had not sought—and had no intention of seeking—FERC's approval  for the change to the filed rate arising from Debtors' rejection of the multi-party inter-company power agreement with OVEC (the "ICPA"), as adopted and enforced through numerous Plan provisions.  The Court overruled OVEC's objection after a two-day confirmation hearing on August 20 and 21, 2019, and on October 16, 2019, confirmed the *Eighth Amended Plan of Reorganization of FirstEnergy Solutions Corp.*, et al*., Pursuant to Chapter 11 of the Bankruptcy Code* [3283] (the "Plan") and entered the Confirmation Order.

OVEC filed a notice of appeal in this Court on October 30, 2019.  *See Notice of Appeal and Statement of Election* [Docket No. 3332].

4.      For many of the same reasons this Court certified OVEC's appeal directly to the Sixth Circuit at the rejection stage, it should certify OVEC's appeal of the Confirmation Order directly to the Sixth Circuit, too, pursuant to 28 U.S.C. § 158(d)(2)(A), which provides that upon "the request of a party," the "appropriate court of appeals shall have jurisdiction of appeals" from all "final decisions, judgments, orders, and decrees" satisfying any of the four circumstances described in 28 U.S.C. § 158(d)(2)(A)(i) through (iii).  Direct certification of the Confirmation Order for appeal to the Sixth Circuit satisfies at least three of these circumstances, and the Motion should accordingly be granted.

5.      ***First***, the Confirmation Order involves an important question of law for which there is no controlling Sixth Circuit or Supreme Court precedent.  *See* 28 U.S.C. § 158(d)(2)(A)(i).  No appellate court has addressed the core question whether a plan of reorganization that provides that a debtor may cease complying with its obligations under a wholesale power agreement filed with FERC requires  FERC's approval before the plan may take effect, pursuant to 11 U.S.C. § 1129(a)(6).

6.      ***Second***, the Confirmation Order involves matters of great public importance.  *See* 28 U.S.C. § 158(d)(2)(A)(i).  The Confirmation Order approved a plan of reorganization that by its terms prohibits a federal agency from approving the terms of the plan, notwithstanding a statutory provision requiring that agency's approval.  The question whether that order is lawful plainly involves a matter of public importance.   And the facts of this case, in particular, make this appeal important to the public because the federal agency the Plan ousts of jurisdiction is FERC, which is charged with reviewing rate changes in plans of reorganization for conformity with the

3

*public interest*. *See* 16 U.S.C. § 824(a).  Moreover, the issue involves unsettled questions of law that have national importance and are being contested in both the Sixth Circuit (via a pending appeal arising from this same bankruptcy) and the Ninth Circuit.  There can be no question that this case involve questions of public importance.

7.     ***Third***, direct certification of the Confirmation Order to the Sixth Circuit for appeal will materially advance the progress of these chapter 11 proceedings.   *See* 28 U.S.C. § 158(d)(2)(A)(iii).  It will fully and finally resolve the scope of the Debtors' post-confirmation regulatory obligations, which is necessary to determine whether the conditions precedent to the Effective Date[2] in the Plan have been satisfied, one of which is that "the Debtors shall have obtained all authorizations, consents, regulatory approvals, including from the FERC . . . [,] as applicable, rulings or documents that are necessary to consummate the Restructuring Transactions."  Plan, Art. IX.B.11.

### REQUEST FOR RELIEF

8.     OVEC hereby requests that this Court enter an order substantially in the form attached hereto as **Exhibit A**, certifying the Confirmation Order for direct appeal to the Sixth Circuit pursuant to 28 U.S.C. § 158(d)(2)(A) and (B).

### JURISDICTION AND VENUE

9.     The United States Bankruptcy Court for the Northern District of Ohio (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157, 158, 1334, and 1412.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The Sixth Circuit has appellate jurisdiction over this matter pursuant to 28 U.S.C. §§ 158 and 1292.  The bases for the relief requested in this Motion are 28 U.S.C. § 158(d)(2) and Bankruptcy Rule 8006.

---

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Confirmation Order and Plan.

## BACKGROUND

### A. Overview of OVEC and the ICPA.

10.    OVEC is an investor-owned utility that operates two coal-fired power plants—the Kyger Creek plant in Ohio, and the Clifty Creek plant in Indiana (the "Power Stations"). *See Stipulation of Facts* ("Stipulation") ¶ 3 [Docket No. 2960-1]. Since its formation on October 1, 1952, OVEC has been owned by several public utilities and electric power cooperatives (the "Sponsoring Companies"). *See id.* ¶ 4. On July 10, 1953, OVEC entered into the ICPA with its Sponsoring Companies, which is a cost-based, wholesale power contract, "govern[ing] the rates, terms, and conditions of wholesale sales of electricity." *Id.* ¶¶ 4, 7. As required by the FPA, the ICPA and each of its subsequent amendments has been filed with and accepted by FERC. *Id.* ¶¶ 5-7. By a delegated letter order "constitut[ing] final agency action," FERC "accepted for filing, effective May 23, 2011," the most recent iteration of the ICPA, dated as of September 10, 2010. *Id.* ¶ 6.

11.    Under the ICPA, OVEC makes the energy produced from the Power Stations available to the Sponsoring Companies in proportion to each entity's assigned "Power Participation Ratio." *See* Stipulation ¶¶ 8-9. Each Sponsoring Company is obligated to pay its pro rata share of OVEC's fixed and operating costs over the term of the contract (which extends to June 30, 2040)—including the costs of additions, upgrades, repairs, employee benefits, postretirement benefits obligations, and the eventual decommissioning of the Power Stations at the end of their lifespans—regardless of whether it elects to take its assigned power. *See* Stipulation ¶¶ 8-9.

12.    The ICPA is essentially a long-term joint venture premised on a multi-party power purchase agreement, whose participants have jointly committed to supporting OVEC's facilities and related costs, from cradle to grave. Each Sponsoring Company's obligations under the ICPA

5

are individual, and not joint. Accordingly, no Sponsoring Company has an obligation to cover any other Sponsoring Company's failure to pay its share of OVEC's operating or decommissioning costs. *See id.*

### B. Procedural Background

13. ***FERC Proceeding:*** FirstEnergy Solutions Corp. ("FES") is a FERC-regulated public utility, Sponsoring Company, and party to the ICPA, responsible for approximately 4.85% of OVEC's delineated costs and expenses. *See id.* ¶¶ 1, 10. On March 26, 2018, OVEC initiated an action before FERC (the "FERC Proceeding"), seeking a finding that allowing FES to use rejection to eliminate its obligations the ICPA without first obtaining FERC approval would violate of the FPA and the OVEC ICPA's express terms. *See id.* ¶ 11.

14. ***Adversary Proceeding:*** On March 31, 2018 (the "Petition Date"), FES and its affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. *See id.* ¶ 11. On April 1, 2018, FES filed an adversary proceeding (the "Adversary Proceeding"), seeking and obtaining an *ex parte* temporary restraining order (the "TRO") and a preliminary injunction to enjoin FERC from continuing the FERC Proceeding or initiating its own proceeding to with respect to the ICPA. *See id.* ¶¶ 12-13. Following a hearing on May 11, 2018, the Court entered a *Preliminary Injunction Against the Federal Energy Regulatory Commission* [Adv. Proc. Docket No. 114] (the "Preliminary Injunction") and a *Memorandum Decision Supporting Order Granting Preliminary Injunction* [Adv. Proc. Docket No. 125] (the "PI Memorandum Decision," and together with the Preliminary Injunction, the "Preliminary Injunction Order"), barring FERC "from taking any action or asserting any jurisdiction that would interfere with [the Debtors'] right to seek authority to reject [the ICPA] pursuant to [11 U.S.C. § 365(a)]." *See id.* ¶ 13; PI Memorandum Decision at 12. Notably, the Preliminary Injunction Order does not bar FERC from bringing any actions consistent with its rate approval authority under section 1129(a)(6).

15.  *Rejection Proceedings:* The same day the Adversary Proceeding was filed, the Debtors moved for the authority to reject the ICPA as of the Petition Date. *See* Stipulation ¶ 14. On August 9, 2018, the Court entered the *Order (I) Authorizing the Debtors to Reject a Certain Multi-Party Intercompany Power Purchase Agreement With the Ohio Valley Electric Corporation and (II) Granting Certain Related Relief* [Docket No. 1118] (the "Rejection Order"), authorizing the Debtors' rejection of the OVEC ICPA, and adopting in full the finding and conclusions in the Preliminary Injunction Order. *See id.* ¶ 15. The Court held that rejection of the ICPA did not implicate FERC's jurisdiction and enjoined FERC from conducting public-interest proceedings to determine whether the public interest permitted the Debtors to cease preforming their obligations under the ICPA.

16.  *Appellate Proceedings:* The parties to the Adversary Proceeding jointly certified that a direct appeal of the Preliminary Injunction Order to the Sixth Circuit was appropriate, and the Court authorized direct certification. *Order Granting Ohio Valley Electric Corporation's Motion to Certify Preliminary Injunction Order for Direct Appeal to the United States Court of Appeals for the Sixth Circuit* [Adv. Proc. Docket No. 146] ¶ 2. Upon OVEC's motion, the Court similarly certified the Rejection Order for direct appeal. *Order Granting Ohio Valley Electric Corporation's Motion to Certify Rejection Order for Direct Appeal to the United States Court of Appeals for the Sixth Circuit* [Docket No. 1262] ¶ 2. OVEC argued, and the Court agreed, that the issues underlying both the Preliminary Injunction and Rejection Orders were sufficiently similar to merit direct certification to the Sixth Circuit, which subsequently consolidated the Appellate Proceedings and several related appeals filed by other interested parties, including FERC. *See id.* ¶¶ 17-18. The parties have completed all of their respective briefing in the Appellate Proceedings,

and the Court heard oral argument on June 26, 2019.  *See id.* ¶ 17.  To date, the Sixth Circuit has not issued a decision.  *See id.* ¶ 20.[3]

17.    ***The Debtors' Actions After the Rejection Order:*** Following the entry of the Rejection Order, FES ceased comply with its obligations under the ICPA.  *See id.* ¶ 21.  Following the entry of the Preliminary Injunction Order, the Debtors have not taken any steps or action at FERC in connection with the ICPA.  *See id.* ¶ 22.  Since the Petition Date, the Debtors have not sought any regulatory review or approval from FERC relating to the ICPA.  *See id.*  Nor have Debtors indicated that they intend to seek regulatory review or approval from FERC with regard to the ICPA as part of their efforts to confirm the Plan.  *See id.*

C.    **The Plan**

18.    As relevant here, the Plan provides that the Debtors will not satisfy their filed-rate regulatory obligations under the ICPA and the FPA on a going-forward basis.  The Plan independently provides that "[a]ll Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims against the applicable Debtor and shall be treated in accordance with the Plan," that "[i]n no event shall any counterparty to a Rejected Executory Contract or Unexpired Lease be permitted to exercise any non-monetary contractual remedies under such Executory Contract or Unexpired Lease against the Debtors, the Reorganized Debtors, their Estates, or other respective properties," and that "[a]ll such remedies shall, as of the Effective Date, be permanently enjoined."  Plan, Art. V(B).  The Plan also expressly provides that executory contracts "previously . . . rejected by the Debtors,"

---

[3]        The Debtors have agreed not to seek to dismiss any appeal as moot.  *See* Stipulation ¶ 1 ("The Debtors will agree that they (a) will not seek to dismiss OVEC's appeals in the PPA Appeal Proceedings, or, if applicable, OVEC's appeal of an order with respect to an objection by OVEC to confirmation of the plan arising under section 1129(a)(6) of the Bankruptcy Code . . . on the grounds of mootness[.]").

8

which includes the ICPA, will not be assumed moving forward. Plan, Art. V(A)(i). And the Plan expressly provides that "[t]he Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring." Plan, Art. VIII(A).

19.    The Plan also expressly adopts and enforces the Preliminary Injunction Order, which "nothing in [the] Plan or the Confirmation Order terminates or limits." Plan, Art. VIII(I). The Plan further expressly includes injunctions against "commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or respect to" any such claim or interest discharged under the Plan. Plan, Art. VIII(G).

20.    Consistent with the provisions incorporating the Preliminary Injunction and Rejection Orders, Article VII sets forth the procedures for resolving contingent, unliquidated, and disputed Claims, the litigation and settlement of which is subject to the Plan Administrator's "sole authority." Plan, Art. VII(B). Article VIII(A) of the Plan provides that "the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever[.]" And Article IV(B)(2)(a)(3) provides that any "transferred assets and liabilities" to the reorganized company "shall not include … any Rejected Executory Contract," which would include the ICPA.

### D.    Confirmation Proceedings

21.    On August 2, 2019, OVEC filed the *Objection to Confirmation of Joint Plan of Reorganization of FirstEnergy Solutions Corp.,* et al.*, Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 2978] (the "Objection"). Plan objections were also filed by FERC and the Office of the Ohio Consumers' Counsel (the "OCC") on similar grounds. *See Objection of Federal Energy Regulatory Commission* [Docket No. 2971] (the "FERC Objection"); *Ohio Consumers' Counsel's Joinder with Objection of FERC and Own Objection* [Docket No. 2973] (the "OCC

Objection"). On August 16, 2019, the Debtors filed a *Seventh Amended Joint Plan of Reorganization* [Docket No. 3056], and filed their *Memorandum of Law in Support of Confirmation of the Seventh Amended Joint Plan of Reorganization* [Docket No. 3064] (the "Memorandum") the same day. Beginning on August 20, 2019, the Court conducted a two-day confirmation hearing, and on August 21, 2019, made an oral ruling overruling OVEC's Plan Objection, in addition to the FERC and OCC Objections. *See* Aug. 21, 2019 Hr'g Tr. at 192:23-193:3. On October 11, 2019, the Debtors filed the *Eighth Amended Joint Plan of Reorganization* [Docket No. 3270], which was confirmed by the Court on October 16, 2019.

## QUESTIONS PRESENTED

22. The Confirmation Order addresses the following question of law that is appropriate for certification for direct appeal to the Sixth Circuit:

> i. Does 11 U.S.C. § 1129(a)(6) require a debtor to seek FERC approval of a plan of reorganization that provides that the debtor may cease complying with its filed-rate obligations under a FERC-jurisdictional wholesale power contract?

## ARGUMENT

## I. THE COURT SHOULD CERTIFY THE CONFIRMATION ORDER FOR DIRECT APPEAL UNDER 28 U.S.C. § 158(D)(2).

23. Under 28 U.S.C. § 158(d)(2), parties may appeal bankruptcy court orders directly to the Court of Appeals to expedite appellate review in significant cases and generate binding precedent in bankruptcy, "whose caselaw has been plagued by indeterminacy." *In re Pac. Lumber Co.*, 584 F.3d 229, 241–42 (5th Cir. 2009) (citing H.R. Rep. No. 109–31 pt. I, at 148 (2005)). Before the Court of Appeals can consider whether to authorize direct appeal of an order, this Court should certify the order for direct appeal. A party may request such certification under Bankruptcy Rule 8006(f). *See* Bankruptcy Rule 8006(f)(1) ("A request by a party for certification that a circumstance specified in 28 U.S.C. § 158(d)(2)(A)(i)-(iii) applies . . . must be filed with the clerk

of the court where the matter is pending within 60 days after the entry of the judgment, order, or decree.").

24.     28 U.S.C. § 158(d)(2)(B)(i) provides that the bankruptcy court "shall" certify an order for direct appeal "on the request of a party" if it determines that any of the circumstances specified in 28 U.S.C. § 158(d)(2)(A)(i) through (iii) exist:

> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, *or* involves a matter of public importance;
>
> (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; *or*
>
> (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken.

28 U.S.C. § 158(d)(2)(A)(i)-(iii) (emphasis added).

25.     Just as the Preliminary Injunction and Rejection Orders warranted certification of a direct appeal under 28 U.S.C. § 158(d)(2)(A), the Confirmation Order does too. Everyone agreed that the issues presented there implicate unsettled questions of law that are of immense public importance and whose resolution would materially advance the bankruptcy. While the issue in the Confirmation Order is legally distinct, they share common ground with the questions currently pending on appeal. Indeed, the requirements of 11 U.S.C. § 1129(a)(6) were directly referenced both in the parties' arguments and in the text of the Preliminary Injunction and Rejection Orders themselves to illustrate the different ways in which the regulatory requirements of the FPA and the Bankruptcy Code might interact—hypotheticals that came to fruition during the Confirmation Proceedings that ultimately led to the Confirmation Order. For many of the same reasons the

11

appeal of the Preliminary Injunction and Rejection Orders warranted certification for direct appeal, the Confirmation Order does too.

**A.   This Certification Order Involves Questions of Law For Which There Is No Controlling Sixth Circuit or Supreme Court Authority.**

26.   Like the Preliminary Injunction and Rejection Orders, the Confirmation Order involves important legal issues that have never been addressed by the Sixth Circuit or the Supreme Court, and for which there is no binding precedent, in the Sixth Circuit or otherwise.  Specifically, the Confirmation Order addresses the question whether 11 U.S.C. §1129(a)(6) requires a debtor to seek FERC's approval at confirmation where the plan of reorganization provides that a party to a FERC-jurisdictional wholesale power contract may cease complying with its filed-rate obligations under the contract.  No decisions of the Sixth Circuit or Supreme Court have answered that question, and the Debtors impliedly recognized as much in their Memorandum, which does not cite any controlling or even persuasive authority for the unsubstantiated propositions that "Section 1129(a)(6) is not applicable to the Plan," and the "Plan does not effect a rate change." Memorandum at 50.  On that basis alone, the Court is required to certify the Confirmation Order for direct appeal to the Sixth Circuit.  *See* 28 U.S.C. § 158(d)(2)(A)(i).

**B.   The Confirmation Order Involves Matters of Public Importance.**

27.   The Confirmation Order unquestionably involves matters of public importance. *See* 28 U.S.C. § 158(d)(2)(A)(i).   To start, it limits the scope of the Debtors' regulatory responsibilities, implicating the jurisdiction of a FERC (a federal agency) and the meaning of the FPA and Bankruptcy Code (two Acts of Congress).  On top of that, Congress passed the FPA with the express recognition that the "business of transmitting and selling electric energy for ultimate distribution to the public is affected with *a public interest*," and, accordingly, FERC's role in reviewing changes to filed-rate obligations is for conformity with the *public interest*.  16 U.S.C.

§ 824(a) (emphasis added).  There can be no serious question that the issue here is of immense public importance.

28.     These public-importance implications are not merely lurking in the background of this case; they are obvious on the face of the order.  The Confirmation Order expressly provides that the "Plan does not contain any rate changes for the Debtors that would require approval of any governmental regulatory commission and therefore will not require governmental regulatory approval."  Confirmation Order ¶ 57.  That conclusion has critical public-facing implications for this case, as well as potentially broad-ranging implications on federal bankruptcy and federal power law (and the intersections of the two) writ large.  Such rippling consequences will impact not only the rights and responsibilities of FERC, but also contractual counterparties to wholesale power agreements, debtors, and their respective creditor constituents in all manner of chapter 11 proceedings in the future.

29.     The FERC and OCC Objections further highlight the public importance of the § 1129(a)(6) issue addressed in the Confirmation Order.  FERC "has consistently maintained that it has public interest obligations with respect to filed rates for wholesale electricity, independent of private contractual rights"—obligations which it is precluded from complying with by the entry of the Confirmation Order.  FERC Objection ¶ 11.  And as noted by the OCC, "the statutorily-designated representative for residential utility consumers in Ohio," precluding FERC from exercising its regulatory obligations to review and approve rate changes in the Plan as a condition to confirmation of the Plan "could potentially harm consumers by taking away the ability of regulators to exercise their non-bankruptcy jurisdiction over activities by FES which could lead to increased wholesale electrical rates or other changes in terms of wholesale service that are

13

ultimately harmful to consumers." OCC Objection at 1, 6. These views of a federal agency and consumer organization further support the presence of the public-importance factor.

30.     Finally, the §1129(a)(6) issue is quickly becoming a matter of national importance and attention, as related issues are simultaneously being litigated and decided both in the Sixth and Ninth Circuits. On June 7, 2019, the bankruptcy court for the Northern District of California issued a decision in *In re PG&E Corp.*, 603 B.R. 471 (Bankr. N.D. Cal. 2019), granted debtor PG&E's motion for a declaratory judgment that FERC does not have concurrent jurisdiction over the court's decision to authorize PG&E to reject or assume certain power purchase agreements—a ruling which cited to and relied on this Court's reasoning in its Preliminary Injunction Order. *Id.* at 479-80. That order, like the Preliminary Injunction and Rejection Orders, has now been certified for direct appeal to the Ninth Circuit. *See In re PG&E Corp.*, No. 19-30088-DM, 2019 WL 2477433, at *2-4 (Bankr. N.D. Cal. June 12, 2019). Just as the *PG&E* bankruptcy court concluded that the issues presented therein are "very much a matter of public importance," the Court should conclude the same with respect to the Confirmation Order. *Id.* at *2.

**C.     A Direct Appeal of the Confirmation Order Will Materially Advance the Progress of These Chapter 11 Proceedings.**

31.     Finally, certification of the Confirmation Order is appropriate because it will materially advance the progress of these chapter 11 proceedings under 28 U.S.C. § 158(d)(2)(A)(ii).

32.     The Confirmation Order provides that the "Plan shall not become effective unless and until the conditions set forth in Article IX.B of the Plan have been satisfied or waived pursuant to Article IX.C of the Plan." Confirmation Order ¶ 72. Article IX.B.11 of the Plan provides that "the Debtors shall have obtained all authorizations, consents, ***regulatory approvals***, including from the FERC and NRC, as applicable, rulings or documents that are necessary to consummate the

14

Restructuring Transactions," of which the rejection of the ICPA is one. Plan, Art. IX.B.11 (emphasis added). In light of this language, the appeal of the Confirmation Order by OVEC, FERC, and other interested parties creates a live dispute not only regarding the scope of the Debtors' regulatory obligations as they relate to Plan confirmation proceedings, but also the regulatory approvals required in order for the Plan to go effective. It is presently unclear whether and to what extent the Debtors can satisfy the conditions precedent to effectiveness of the Plan to the extent OVEC and / or FERC prevail on appeal of the Confirmation Order, and the Sixth Circuit determines that FERC approval of the Plan provisions authorizing and enforcing the rejection of the ICPA is required.

33.     Accordingly, direct certification of the Confirmation Order for appeal to the Sixth Circuit will assist in resolving the uncertainty that presently exists regarding those issues, to ensure the Debtors' orderly and efficient exit from chapter 11, thereby materially advancing the progress of these chapter 11 proceedings.

## CONCLUSION

34.     OVEC respectfully requests that the Court grant this Motion and certify the Confirmation Order to the Sixth Circuit for direct review under 28 U.S.C. § 158(d)(2).

Dated: November 7, 2019

/s/ Mark McKane, P.C.

David R. Seligman, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:   david.seligman@kirkland.com

Mark McKane, P.C. (admitted *pro hac vice*)
Michael P. Esser (admitted *pro hac vice*)
Kevin K. Chang (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
555 California Street
San Francisco, California 94104
Telephone:    (415) 439-1400
Facsimile:    (415) 439-1500
Email:   mark.mckane@kirkland.com
          michael.esser@kirkland.com
          kevin.chang@kirkland.com

Erin E. Murphy (*pro hac vice* forthcoming)
Kasdin M. Mitchell (*pro hac vice* forthcoming)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
655 Fifteenth Street, N.W.
Washington, District of Columbia 20005
Telephone:    (202) 879-5000
Facsimile:    (202) 879-5200
Email:   erin.murphy@kirkland.com
          kasdin.mitchell@kirkland.com

Matthew C. Fagen (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:   matthew.fagen@kirkland.com

*Counsel to Ohio Valley Electric Corporation*

16

## CERTIFICATE OF SERVICE

I, Mark McKane, certify that on November 7, 2019, a true and correct copy of *Ohio Valley Electric Corporation's Motion to Certify Confirmation Order for Direct Appeal to the United States Court of Appeals for the Sixth Circuit* was served via the Court's Electronic Case Filing System on those entities and individuals who are listed on the Court's Electronic Mail Notice List.

*/s/ Mark McKane, P.C.* .
Mark McKane, P.C.

**Exhibit A**

**Proposed Order**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FIRSTENERGY SOLUTIONS CORP., et al. | ) Case No. 18-50757 |
| | ) (Jointly Administered) |
| | ) |
| Debtors. | ) Hon. Alan M. Koschik |
| | ) |

## ORDER GRANTING OHIO VALLEY ELECTRIC CORPORATION'S MOTION TO CERTIFY CONFIRMATION ORDER FOR DIRECT APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

Upon the Ohio Valley Electric Corporation's ("OVEC") *Motion to Certify Confirmation Order for Direct Appeal to the United States Court of Appeals for the Sixth Circuit* (he "Motion"),[1] seeking entry of an order (this "Order") to certify the *Order Confirming the Eighth Amended Plan of Reorganization of FirstEnergy Solutions Corp.*, et al.*, Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 3283] (the "Confirmation Order") for direct appeal to the United States Court of Appeals for the Sixth Circuit (the "Sixth Circuit") pursuant to 28 U.S.C. § 158(d)(2) and Federal Rule of Bankruptcy Procedure 8006, and it appearing that good cause exists for the granting of

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

such Motion, it is HEREBY ORDERED THAT:

1.       The Motion is granted as set forth herein.

2.       The Confirmation Order is certified for direct appeal to the Sixth Circuit under 28 U.S.C. § 158(d)(2)(A), because it involves an important question of law for which there is no controlling Sixth Circuit or Supreme Court precedent, 28 U.S.C. § 158(d)(2)(A)(i), it involves matters of great public importance, *id.*, and certification will materially advance the progress of these chapter 11 cases, 28 U.S.C. § 158(d)(2)(A)(iii).

#   #   #

2

**Order Submitted by:**
*/s/ Mark McKane, P.C.*
Mark McKane, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
555 California Street
San Francisco, California 94104
Telephone:     (415) 439-1400
Facsimile:     (415) 439-1500
Email:   mark.mckane@kirkland.com

*Counsel to Ohio Valley Electric Corporation*

3