UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | § § | Case No. 18-50763 (AMK); |
| PLEASANTS CORP., *et al.*, | § § § | Cases Jointly Administered Under Case No. 18-50757 (AMK) |
| | § § | Chapter 11 |
| Debtors. | § § | Judge Alan M. Koschik |

### DECLARATION OF HENRY A. TERHUNE IN RESPONSE TO ORDER AND IN SUPPORT OF THE SIXTH INTERIM AND FINAL APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP

Pursuant to 28 U.S.C. § 1746, Henry A. Terhune declares as follows:

1. This Declaration is submitted by Henry A. Terhune in response to the Court's November 24, 2020 Order Directing Certain of the Debtors' Professionals to Make Sworn Statements in Support of the Sixth Interim and Final Application of Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") (Docket No. 4281).

2. I am over the age of eighteen (18), of sound mind, have not been convicted of a crime of moral turpitude, and am otherwise fully qualified to make this Declaration. All statements of fact contained herein are true and correct and based upon my personal knowledge and best recollection.

3. I am a partner at Akin Gump Strauss Hauer & Feld LLP and a member of the firm's Public Law and Policy ("PLP") group. I have reviewed the Court's November 24, 2020 order requiring that I, along with other PLP professionals, supply a verified supplemental declaration addressing the PLP team's work on behalf of FirstEnergy Solutions Corp. ("FES") and its debtors

and debtors-in-possession. I understand that questions "a," "b," "c," "f," "g," "j," and "k" are directed to me, and I answer them below.

1. I have been in the PLP group for over 30 years, joining the group, and the firm, in 1987. Prior to working at Akin Gump, I was a staff member in the United States House of Representatives. I graduated from The George Washington University Law School in 1986.

2. I advise clients on matters of public policy. I have particular expertise in matters of energy and environmental policy. In this role, I prepare advocacy materials, including draft legislation, talking points, testimony, and draft statements for policymakers; and I engage directly with executive and legislative decisionmakers at the federal level. We often work with other policy professionals such as media relations firms, grassroots advocates, and local consultants where there are issues of state or local interest.

3. My work for FES began in early 2018. FES hired Akin Gump's PLP team to communicate relevant information regarding the bankruptcy to federal and state officials and to advocate in favor of legislation or other government action to assist FES. FES's ability to continue its nuclear energy business operations would be facilitated if it, or the nuclear power sector generally, received support from the federal or state governments. On the FES team, I had significant responsibility for efforts at the federal level, involving the Department of Energy, the Federal Energy Regulatory Commission, and Congress, as the U.S. Government was considering significant proposals to assist the nuclear power sector. These federal efforts ultimately were unsuccessful. Over time, it became clear that policy solutions at the state level provided the greatest potential to provide support for FES's nuclear energy business.

4. Because Akin Gump primarily lobbies at the federal level, state-level legislative consultants in Ohio and Pennsylvania were hired to ensure FES had access to state-level

lobbying and policy expertise. One of the local consultants that we worked with in Ohio was Juan Cespedes of the Oxley Group.

*Question c:*

*Describe the nature of your interactions
and relationship with Juan Cespedes and the Oxley Group*

5. My recollection is that initially, Mr. Cespedes worked with Akin Gump to provide information about the political landscape in Ohio. Mr. Cespedes would provide updates as to what was occurring in Ohio, communicate relevant information regarding FES' bankruptcy and future business plans, and work to establish FES as an independent entity with key policy makers in Ohio. Over time, Mr. Cespedes became FES's principal state lobbyist in Ohio. In that role, Mr. Cespedes would communicate and meet with Ohio officials on FES' behalf, help develop a legislative approach based on those interactions and other input, and supply information to FES, the Akin Gump team, and FES' other outside consultants about what was going on at the state level.

6. From my recollection, between the point when Mr. Cespedes was retained in early 2018 and the passage of House Bill 6 in the summer of 2019, Akin Gump's PLP team had regular communications with Mr. Cespedes, often on calls with FES and FES' other consultants. I also recall that I participated in at least two in-person meetings with Mr. Cespedes, along with other members of the Akin Gump PLP team and FES, during which we discussed possible policy solutions to providing assistance to FES' struggling nuclear plants.

7. Akin Gump's policy work for FES in Ohio significantly diminished after House Bill 6's enactment, and I do not recall having regular interactions with Mr. Cespedes after the bill's passage. I was not aware of any illegal activity by Mr. Cespedes or others in connection the work on behalf of FES.

*Questions a and b:*

*Describe your role in the 2018 and 2019 contests
for the speakership of the Ohio House of Representatives;*

*Describe your role in the 2018 general elections for the Ohio legislature*

8. Regarding the 2018 general elections for the Ohio legislature or the 2018 and 2019 contests for the speakership of the Ohio House of Representatives, the Akin Gump PLP team monitored and discussed both elections both internally and with FES and its outside consultants, as the outcomes of the elections would inform our guidance and strategy.

9. I have some recollection that members of the Akin Gump PLP team, FES, and FES' other consultants discussed and developed a contribution strategy that involved donations to both parties, or entities related to both parties, in connection with the 2018 Ohio elections, but I do not recall being significantly involved in those conversations.

*Questions f and g:*

*Describe your role in the Ohio House vote on HB 6 in April 2019;*

*Describe your role in the Ohio Senate vote on HB 6 in July 2019*

10. My role in connection with the Ohio House's and Senate's consideration of House Bill 6 involved the same tasks PLP group members regularly undertake for clients where legislation is relevant to them, which include: developing and coordinating overall strategy, preparing advocacy materials, such as principles for potential legislation, fact sheets, talking points, and drafting witness testimony. My contributions generally involved these activities based on my years of experience in the energy sector. We would coordinate these efforts with FES' other outside consultants, including the company's on-the-ground lobbyists in Columbus, media team, and public affairs professionals.

*Questions j and k:*

*Did you or any other Akin Gump professional advise the Debtors with respect to the $1,879,457.00 electronic transfer to General Now on July 5, 2019, as disclosed in the Debtors' operating report for July 2019 (Docket No. 3139), or regarding any other transfer to or for the benefit of Generation Now?;*

*Were the Akin Gump Ohio statehouse team members aware of the existence of Generation Now at any time before February 27, 2020 (the Effective Date of the Debtor's Plan of Reorganization) and did they advise the Debtors with respect to any interaction with Generation Now during that time period?*

11.   I have no recollection of a $1,879,457.00 electronic transfer to Generation Now on July 5, 2019. I did not advise FES or the other Debtors, as that term is used in the Court's order, with respect to that transfer, nor do I have knowledge if any other Akin Gump professional advising FES or the other Debtors regarding that transfer. I have some recollection that members of the Akin Gump PLP team were aware of the existence of Generation Now prior to February 27, 2020, and discussed making contributions to Generation Now in 2018, but I did not play a significant role in discussions about FES' political contributions and do not have a more specific recollection of any contributions to Generation Now.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 8, 2021.

*[signature]*
Henry A. ~~Terhune~~