UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | § § | |
| PLEASANTS CORP., *et al.*, | § § § | Case No. 18-50763 (AMK); Cases Jointly Administered Under Case No. 18-50757 (AMK) |
| | § § | Chapter 11 |
| Debtors. | § § § | Judge Alan M. Koschik |

### DECLARATION OF SEAN G. D'ARCY IN RESPONSE TO ORDER AND IN SUPPORT OF THE SIXTH INTERIM AND FINAL APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP

Pursuant to 28 U.S.C. § 1746, Sean G. D'Arcy declares as follows:

1. This Declaration is submitted by Sean G. D'Arcy in response to the Court's November 24, 2020 Order Directing Certain of the Debtors' Professionals to Make Sworn Statements in Support of the Sixth Interim and Final Application of Akin Gump Strauss Hauer & Feld LLP (Docket No. 4281).

2. I am over the age of eighteen (18), of sound mind, have not been convicted of a crime of moral turpitude, and am otherwise fully qualified to make this Declaration. All statements of fact contained herein are true and correct and based upon my personal knowledge and best recollection.

3. I am a partner at the law firm of Akin Gump Strauss Hauer & Feld LLP and a member of the firm's Public Law and Policy ("Akin Gump PLP") group. I have been part of Akin Gump's PLP group for over 27 years, joining the group, and the firm, in 1993. Prior to working at Akin Gump, I was Tax Counsel for a member of the U.S. House of Representatives. I graduated from the Catholic University of America Columbus School of Law in 1991. I represent clients

1

before the U.S. Congress, the White House, and a wide range of federal agencies on a diverse set of policy matters. In certain matters, I, along with my colleagues in the Akin Gump PLP group, work with other policy professionals such as media relations firms, grassroots advocates, and local legislative consultants when firm clients have issues of state or local interest.

    4.    In a court order dated November 24, 2020, I was directed by the Honorable Alan M. Koschik to supply a verified declaration addressing my work and the work of the Akin Gump PLP team's work on behalf of First Energy Solutions Corp. ("FES") and its related debtors and debtors-in-possession. Below, I provide answers in response to each of the inquiries identified by the Court to the best of my recollection.

    a.    **Describe your role in 2018 and 2019 contests for the speakership of the Ohio House of Representatives.**

    b.    **Describe your role in the 2018 general elections for the Ohio legislature.**

    5.    Regarding the 2018 general elections for the Ohio legislature and the 2018 and 2019 contests for the speakership of the Ohio House of Representatives, the Akin Gump PLP team monitored and discussed the elections internally as well as with FES and its outside consultants. During those discussions, we considered possible policy approaches to provide support for FES' struggling nuclear plants.

    6.    I also recall that between September 2018 and November 2018, leading up to the general elections, members of the Akin Gump PLP team, FES representatives, and FES's other consultants discussed donations in connection with the 2018 Ohio general elections. This is something we often consider with our clients.

c. **Describe nature of your interactions and relationship with Juan Cespedes and the Oxley Group.**

7. As I recall, Akin Gump was engaged by FES in early 2018 to assess the prospects for passing legislation in Ohio that reflected the value that clean nuclear power generation brought to the state and electricity customers and which would provide financial assistance to FES's nuclear energy production business. Akin Gump needed personnel on the ground with local Ohio contacts and experience dealing directly with the Ohio legislature, Ohio agencies, and the Ohio executive branch. Local advisors and legislative consultants in the Columbus area were retained to gather intelligence to help us assess past legislative efforts made by the parent company, FirstEnergy Corp. ("FE") and the prospects for future legislative efforts. My recollection is that Juan Cespedes of the Oxley Group was one of the first Columbus-based legislative consultants engaged for this purpose.

8. From the time Mr. Cespedes was retained in early 2018 through the passage of House Bill 6 ("HB 6") in the summer of 2019, the Akin Gump PLP team and FES interacted and communicated regularly with Mr. Cespedes. I recall that Mr. Cespedes provided background information on both past legislative efforts by FE and the current prospects of passing legislation that would benefit FES's nuclear power business in the Ohio House of Representatives and Senate. I also recall that over time, Mr. Cespedes took a leadership role on behalf of FES in the effort to enact HB 6.

9. During the same time period, I recall being involved in regular teleconferences that included representative of FES, members of the Akin Gump PLP team, other Akin Gump professionals, and Ohio-based legislative consultants, as well as counsel for the Official Committee of Unsecured Creditors, and, in some instances, grass roots firms and media specialists. As legislative activity progressed, these teleconferences became more frequent. Mr. Cespedes was

involved in these teleconferences. I also recall that I contacted Mr. Cespedes directly to obtain current information on the legislative efforts in Columbus, which involved not only what was happening in the State Capitol from the FES perspective, but also what actions were being taken by the opponents of the proposed legislation (principally natural gas and petroleum interests).

      **d.    What were the "parent developments (August 1, 2018) and "past efforts" (September 10, 2018) referenced in Sean D'Arcy's time entries for those dates?**

10. I do not recall what "parent developments" refers to in my August 1, 2018 time entry. Regarding the "past efforts" in my September 10, 2018 time entry, I believe that I was involved in a teleconference with FE representatives regarding the past efforts made by FE to secure support for and passage of legislation that would reflect the value that nuclear energy brings to the State and provide assistance for FE's nuclear energy power plants.

      **e.    What was the "Columbus rollout" mentioned in Sean D'Arcy's October 8, 2018 time entry?**

11. The phrase "Columbus rollout" referred to a planned press event in Columbus announcing the creation the Ohio Clean Energy Jobs Alliance, a coalition of Ohio community leaders and organizations committed to preserving the jobs and economic benefits, carbon-free energy and electricity grid reliability that FES' Davis-Besse and Perry nuclear power plants provided to Ohio.

      **f.    Describe your role in the Ohio House vote on HB 6 in April 2019.**

      **g.    Describe your role in the Ohio Senate vote on HB 6 in July 2019.**

12. My review of public records indicates that the Ohio House passed HB 6 on May 29, 2019 and therefore my response describes my role in both April and May of 2019. In April and May of 2019, I spent a substantial amount of time preparing for legislative hearings on HB 6. Specifically, I helped develop advocacy materials showing, among other things, the vital economic

support and tax revenue the plants generated for their local communities; I reviewed economic analyses on the impact of clean nuclear power generation to the state and ratepayers; I reviewed opposition advocacy materials and assisted in developing critiques of opposition arguments: I reviewed analyses of the legislation; I participated in telephone conferences with FES representatives and other consultants in which we discussed the status of hearing witnesses, testimony, and strategic decisions. I also spent a significant amount of time helping coordinate the support efforts of interested parties in the communities surrounding FES' Davis-Besse and Perry nuclear energy power plants, such as local economic development professionals, school system personnel, union workers, and local residents. Finally, I monitored media coverage of the debate in Columbus regarding HB 6 and worked with media relations professionals to ensure that FES' messaging received appropriate attention.

13. My work in July 2019 related to the Senate vote was quite similar to the work I performed in April and May 2019 for the House vote. The focus of my efforts and that of the Akin Gump PLP team shifted to Senate committee activity and ultimately the Senate floor votes on the Senate version of HB 6. I recall that these efforts culminated in a July 23, 2019 vote by the House concurring with the changes made to the bill passed by the Senate.

14. To the best of my recollection, I made two trips to Columbus in May 2019, the first of which related to a May 15, 2019 Committee hearing on the HB 6 legislation. The second trip related to the May 29, 2019 House floor vote on the measure. I recall that a large number of Davis-Besse and Perry plant workers (along with family members in a number of instances) and local officials (e.g., county economic development professionals, school system officials, local elected leaders, organized labor) were traveling to Columbus for the May 15 hearing and May 29 floor vote. I was involved with assisting FES in making sure that these individuals had advocacy

materials, targeted lists of lawmaker visits based on the geographic location of the constituents, and appropriate talking points.

15. To the best of my recollection, I traveled to Columbus on July 17 and July 23, 2019 as well. Similar to my response above, the purpose of my trips was to assist FES to ensure that the large number of Davis-Besse and Perry plant workers (along with family members in a number of instances) and local officials (e.g., county economic development professionals, school system officials, local elected leaders, organized labor) had Senate advocacy materials, targeted lists of lawmaker visits based on the geographic location of the constituents, and appropriate talking points.

  h. **To the extent not already answered in response to Paragraphs 1f and 1g above, describe your role in the "whip counts" in 2019.**

16. The phrase "Whip" is a legislative term. For example, each party in the U.S. House and Senate has a "Whip," whose principle task is to keep track of the number of votes for and against a piece of legislation. "Whip counts" refers to what we were being told about the expected voting on the HB 6 legislation. In this matter, members of the Akin Gump PLP team would have regular calls with FES and FES' local advisors and legislative consultants about the expected voting on HB 6 in the House or Senate, depending on where the bill stood in the legislative process. The Akin Gump PLP team participated in these discussions and offered advice as to next steps. FES' local counsel and consultants in Columbus largely ran the portions of teleconferences pertaining to vote counts, as they had the relationships with lawmakers in Columbus and were "the boots on the ground."

  i. **What acts were you involved in "mobilizing the HB 6 vote" in July 2019?**

17. Please see my answer to question "g" above.

6

18-50757-amk    Doc 4379    FILED 10/12/21    ENTERED 10/12/21 16:08:36    Page 6 of 7

j.  Did you or any other Akin Gump professional advise the Debtors with respect to the $1,897,457.00 electronic transfer to Generation Now on July 5, 2019, as disclosed in the Debtors' operating report for July 2019 (Docket No. 3139), or regarding any other transfer to or for the benefit of Generation Now?

k.  Were the Akin Gump Ohio statehouse team members aware of existence of Generation Now at any time before February 27, 2020 (the Effective Date of the Debtor's Plan of Reorganization) and did they advise the Debtors with respect to any interaction with Generation Now during that time period?

18. I was not aware of the July, 5, 2019 transfer of $1,897,457 to Generation Now and I did not advise FES regarding that transfer. I am not aware of whether anyone else from Akin Gump was aware of the transfer.

19. I was aware of the existence of Generation Now prior to February 27, 2020. I became aware of Generation Now at some point in the middle of 2018. With respect to "any other transfer to Generation Now," I was among a number of Akin Gump professionals, local Ohio consultants, local counsel, and FES representatives who agreed that a contribution to Generation Now in the fall of 2018 was in the business interests of FES. I do not recall providing any advice to FES regarding any other interactions with Generation Now.

20. I was not aware of any actions by FES or any other party that I believed to be improper or illegal.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 8, 2021.

*Sean G. D'Arcy*

Sean G. D'Arcy